UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| IN RE: ZOFRAN (ONDANSETRON) PRODUCTS LIABILITY LITIGATION, | ) ) ) ) | MDL No. 1:15-md-2657-FDS |
| This Document Relates To: | ) ) | |
| All Cases | ) ) ) | |

**MDL Order No. 20**
**October 14, 2016**

**ORDER CONCERNING PRODUCTION FORMAT
OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION**

**SAYLOR, J.**

For good cause shown, it is hereby ORDERED that the production of documents, including electronically stored information ("ESI") and paper documents, in this case shall be conducted in accordance with the following protocols.

**I.    GENERAL PROVISIONS**

**A.    Scope.**  This Order is intended to give effect to the command of Fed. R. Civ. P. 1 "to secure the just, speedy and inexpensive determination of every action and proceeding." Its purpose is to reduce litigation costs and expedite the resolution of the case without harming any party's position on the underlying merits.

**B.    Cooperation.**  The parties are directed to cooperate on issues relating to discovery of ESI and other documents. Counsels' zealous representation of their clients will not be considered compromised by conducting discovery in a cooperative manner. The parties recognize that cooperation in reasonably limiting discovery requests on the one hand, and in reasonably

responding to discovery requests on the other hand, tends to reduce litigation costs and delay. The parties agree to engage in a cooperative exchange of information at the earliest possible stage of discovery.

The parties will endeavor to engage in informal discussions about the discovery of electronically stored information at the earliest stage of the discovery process. For purposes of those discussions, counsel should be knowledgeable about the parties' electronic systems, including how potentially relevant data is stored and retrieved. Counsel may engage the assistance of someone knowledgeable about a party's electronic systems, as necessary.

   C. **Not Reasonably Accessible ("NRA") Data Sources.** A producing party shall not have an obligation initially to search, or to produce from, sources of electronically stored information that are not reasonably accessible because of undue burden or cost in accordance with Fed. R. Civ. P. 26(b)(2)(B), and no such obligation will arise unless and until a showing of good cause is made by the requesting party that such searches and production are necessary, considering the limitations of Fed. R. Civ. P. 26(b)(2)(C). A producing party shall retain the right to contend that certain sources of electronically stored information are not reasonably accessible because of undue burden or cost and further retains the right to seek cost-shifting, as appropriate, in the event a requesting party demands and shows good cause supporting production from sources that are not reasonably accessible.

Absent a showing of good cause or written agreement of the parties, there is no need to preserve or collect electronically stored information ("ESI") from the following sources, which are deemed to be NRA:

    1. Voice mails;

    2. "deleted," "slack," "fragmented," or "unallocated" data on hard drives; provided, however, that this Order is not intended to restrict otherwise

                permissible discovery of information about the deletion of such ESI;

      3.      random access memory (RAM) or other ephemeral data;

      4.      on-line access data such as temporary internet files, history, cache, cookies, etc.;

      5.      disaster recovery backup media;

      6.      data in metadata fields that are frequently updated automatically, such as last-opened dates; and

      7.      other forms of ESI whose preservation requires extraordinary affirmative measures that are not utilized in the ordinary course of business.

    **D.**    **Resolution of Disputes.**  The parties shall meet and confer in a good faith effort to resolve any disputes arising under this Order before submitting such disputes to the Court for determination.

**II.**    **Production Format Specifications**

    **A.**    **General Specifications.**

        **1.**    **Produce in TIFF and Native Format.**  Each page of each paper document for production shall be electronically scanned to create a single-page TIFF image file, and each page of each electronic document for production shall be converted to a single-page TIFF image file, with the exception of files not subject to redaction that are provided in native format. A placeholder TIFF image endorsed with PRODBEG will be supplied for any document produced in native format along with a corresponding reference to the placeholder TIFF in the image load file (described below). For any documents produced in native format, a file path to the produced native file will be provided in the NATIVEPATH field of the data load file. The required specifications for these TIFF image files are contained in Appendix 1. Additional required specifications for these native files are contained in Appendix 5. Any document containing Confidential Information pursuant to MDL Order No. 13 shall be designated by noting its

confidential status in the file name of the produced native file. "Native format" shall mean the same file format in which the file is ordinarily created or maintained by the producing party.

2. **Use of Documents in Depositions and Trials.** To avoid confusion, and in order to ensure that evidentiary exhibits remain consistent in formatting, all document exhibits used in depositions or at trial shall be the TIFF image of the document. The parties may mutually agree to modify this requirement in appropriate circumstances, or to seek modification from the Court.

3. **Provide Additional Standard Files.** In addition to the TIFF image or native files referred to above, the parties shall supply with each production (a) a data load file, (b) text files, and (c) an image load file corresponding to the produced TIFF image files, as set forth below.

(a) **Data Load File.** The data load file shall contain certain metadata about each produced document. The required specifications for the data load files are contained in Appendix 2.

(b) **Text Files.** A single text file shall be provided for each respective document, not one text file per page, containing the readable text within that document obtained using either a standard OCR process (for scanned paper documents or redacted ESI) or a standard text extraction process (for ESI). The required specifications for the text files are contained in Appendix 3.

(c) **Image Load File.** Produced TIFF images shall be provided with a standard Opticon image load file that can be loaded into standard litigation-support software. The required specifications for the image load file are contained in Appendix 4.

4. **Unitizing of Paper Documents.** In scanning paper documents, the

unitization of the document and any attachments shall be maintained as it existed in the original when creating the image file.  Distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records (that is, paper documents should be kept together).  Parent-child relationships (the association between an attachment and its parent document) shall be preserved.  Documents will be unitized at the lowest possible level and attachment information preserved.  For example, if a folder contains two documents, the folder and each document will constitute a separate document, but the relationship among the documents in the folder should be reflected in proper coding of the fields in the data load file.

      **5.**    **Additional ESI Processing Specifications**.

      **(a)**    **De-Duplication.**  "Duplicate ESI" means files that are exact duplicates based on the files' MD5 or SHA-1 hash values.  The producing party need produce only a single copy of responsive Duplicate ESI.  A producing party shall take reasonable steps to de-duplicate ESI globally (that is, both within a particular custodian's files and across all custodians).  Entire document families may constitute Duplicate ESI.  De-duplication shall not break apart families.  When the same Duplicate ESI exists in the files of multiple custodians, those persons shall be listed in the Custodian field identified in Appendix 2.

      **(b)**    **Word Processing Files.**  The TIFF image of a word processing file, including without limitation Microsoft Word files (*.doc and *.docx), will be created with any tracked changes and comments showing in such images.

      **(c)**    **Presentation Files.**  Presentation files will be produced in native file format.

      **(d)**    **Spreadsheet or Worksheet Files.**  Spreadsheet or Worksheet files, including without limitation Microsoft Excel files (*.xls or *xlsx), will be produced in native file

format.

**(e)** **Parent-Child Relationships.**  Parent-child relationships (for example, the associations between e-mails and their attachments) will be preserved.  E-mail and other ESI attachments will be produced as independent files immediately following the parent e-mail or ESI record.

**(f)** **Dynamic Fields.**  Files containing dynamic fields, such as file names, dates, and times will be produced showing the field code (for example, "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed.

**(g)** **English Language.**  To the extent any data exists in more than one language, the data will be produced in English, if available.  If no English version of a file is available, the producing party shall not have an obligation to produce an English translation of the data.

**(h)** **Embedded Objects.**  Some Microsoft Office and .RTF files may contain embedded objects.  Such objects typically are the following file types:  Microsoft Excel, Word, PowerPoint, Project, Outlook, and Access as well as Adobe Acrobat (PDF).  Subject to claims of privilege and immunity, as applicable, objects with those identified file types shall be extracted as separate files and shall be produced as attachments to the file in which they were embedded.

**(i)** **Compressed Files.**  Compressed file types (for example, CAB, .GZ, .TAR. .ZIP) shall be decompressed in a reiterative manner to ensure that a compressed file within a compressed file is decompressed into the lowest possible compression resulting in individual files.

**(j)** **Encrypted Files.**  The producing party will take reasonable steps to unencrypt any discoverable electronically stored information that exists in encrypted format (for

example, because password-protected) and that can be reasonably unencrypted.  If a producing party cannot unencrypt discoverable electronically stored information that exists in encrypted format, the producing party will notify the requesting party, and the parties agree to meet and confer regarding how such information should be handled.

**(k)** **E-Mail Threads.**  E-mail threads are e-mail communications that contain prior or lesser-included e-mail communications.  A most inclusive e-mail thread is one that contains all of the prior or lesser-included e-mails, including attachments, for that branch of the e-mail thread.  The producing party may remove from production the wholly-included, prior-in-time, or lesser-included e-mail communications.  Additionally, the producing party may list on any required privilege log only the most inclusive e-mail thread.

**(l)** **Structured Data.**  The parties shall negotiate separately regarding the production of structured database files and shared drives, if any.  To the extent the parties cannot reach agreement as to a particular database file or shared drive, the Court will endeavor to resolve any disputes in a manner that takes into account the specifics of the files or drives in question, the narrowly-tailored needs of the requesting party, and the anticipated burden on the producing party.

**(m)** **Multimedia Files.**  A producing party shall identify the existence of discoverable ESI that is comprised of multimedia such as audio files, video files, or photographic images.  Any such files shall be reasonably identified, and the parties shall negotiate separately regarding their production.

**B.** **Redactions.**  The producing party may redact from any TIFF image or metadata field material in accordance with the Protective Order Governing Confidential and Privileged Material.  Each redaction shall be indicated clearly on the redacted document.  The redacted TIFF image will be OCR'd and file-level OCR text will be provided in lieu of extracted text.

  C. **<u>Family Groups</u>.**  A document and all other documents in its attachment range constitute a family group.  The fact that one document in a family is responsive, and is produced, does not require that all documents in the family be produced.  Documents within the same family as produced documents may be withheld as non-responsive or may be withheld as privileged and placed on a privilege log.  In preparing document families for production, the producing party also may omit entire attachments that are wholly non-responsive and produce slipsheets in their place.

  D. **<u>Time Zone</u>.**  When processing ESI, Greenwich Mean Time (GMT) shall be selected as the time zone.

  E. **<u>Color</u>.**  If an original color image is produced in black and white, the receiving party may for good cause request the producing party to produce the image in color.  Following a request for color production, the parties shall meet and confer on a reasonable cost-effective means of providing the requested documents in color, which may include the receiving party's payment of any costs associated with producing the image in color.

  F. **<u>Production Media</u>.**  Unless otherwise agreed, documents and ESI will be produced on optical media (CD/DVD), on an external hard drive, via a secure FTP site, or similar electronic format.  Such media should have an alphanumeric volume name.  If a hard drive contains multiple volumes, each volume should be contained in an appropriately named folder at the root of the drive.  Volumes should be numbered consecutively (ABC001, ABC002, etc.).  Production media should be labeled with the name of this action, the identity of the producing party, and the following information: volume name, production range(s), and date of delivery.  If the production range will not fit on the production media label, that information should be included in the cover letter accompanying the production.  If the producing party encrypts the production, the producing party shall provide an explanation of how to decrypt the files.

      **G.**    **Replacement Documents.**  Any documents that are replaced in later productions shall be clearly designated as such, by appending an "R" to the production number.  When a party produces a replacement production indicated by "R," the receiving party must discard or return to the producing party all copies, including working copies, of the original, replaced image.

      **H.**    **Exceptions.**  The producing party shall make reasonable efforts to limit the extent of documents that cannot be processed.  For documents and ESI that convert with errors to TIFF (for example, oversized drawings and picture files), the parties shall meet and confer regarding a reasonable alternative form of production.

**III.**    **Miscellaneous Provisions**

      **A.**    **Modifications.**  Any practice or procedure set forth herein may be varied by agreement of the parties, where appropriate.  Any such agreement should be made or confirmed in writing, by e-mail or otherwise.

      **B.**    **Objections.**  Nothing in this Order shall be interpreted to require disclosure of irrelevant information or information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.  The parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents or ESI.

      **C.**    **Rolling Productions.**  Because the parties will be producing large volumes of documents, production shall be made on a rolling basis.

      **D.**    **Identifying Requests not Required.**  Production of scanned paper documents and converted ESI in the reasonably usable form set out in this Order need not refer to the requests to which a document or ESI may be responsive.

      **E.**    **Inadvertent Disclosures.**  Inadvertent disclosures of information that a producing party contends are privileged or protected by the attorney-client privilege or work-product doctrine

will be handled in accordance with the Protective Order Governing Confidential and Privileged Material.

   F. **Search Methodologies.** Search terms may be used as part of an overall search methodology to identify files for review and production.  To the extent the Parties wish to use search terms or alternative search methodologies with respect to the review and production of ESI, they shall meet and confer and attempt in good faith to reach agreement regarding the search methodology, including the identities of custodians from whom ESI will be collected and searched.  To the extent a party has already employed a search methodology or knows it intends to use a search methodology, the parties shall meet and confer to discuss that methodology.  Otherwise, each Party shall discuss its proposed methodology within a reasonable time of employing it.  Nothing in this Protocol shall prevent any Party from conducting a manual review of documents after application of ESI search methodologies for responsiveness, privilege, and confidentiality.

   G. **Privilege Logs.** Privilege logs shall be prepared and produced in accordance with the Protective Order Governing Confidential and Privileged Material.

   H. **Preservation.** The Parties have represented to the Court that they have taken reasonable measures to preserve documents (including electronic data) from its active information systems that are potentially responsive to the claims made, the defenses asserted, and the discovery propounded.  The Parties have further represented that their ongoing efforts are designed to preserve relevant and potentially relevant documents and data in a timely manner.

**So Ordered.**

Dated:  October 14, 2016

/s/ F. Dennis Saylor  
F. Dennis Saylor IV  
United States District Judge

## Appendix 1: TIFF Image File Specifications

TIFF image files created for this litigation pursuant to this Order shall comport with the following specifications:

- The TIFF image file shall be a Group IV compression, black-and-white, single-page TIFF image file using a 300 x 300 dots-per-inch (DPI) optical scan resolution and an 8.5 x 11 inch page size, except for documents that in the producing party's reasonable judgment require a different resolution or page size.

- Original document orientation should be maintained (*i.e.* an original landscape document should be produced in landscape format).

- Each TIFF image file shall be branded with a legible, unique Bates number in the lower right corner, positioned so as not to interfere with reading the document. The Bates number shall: (1) be unique across the entire document production; (2) be a combination of an alphabetic prefix along with an 8-digit number (*e.g.* ABC00012345), wherein the numeric portion shall be zero-padded leftwards as needed to comprise 8 digits, (3) contain no special characters or embedded spaces, and (4) be numerically sequential within a given document. If a production number or set of production numbers is skipped, the skipped number or set of numbers will be communicated to the receiving party.

- Confidentiality designations, if any, will be branded on the lower left corner of the applicable image, also positioned so as not to interfere with reading.

- The resulting TIFF image file shall be named according to the naming convention *number*.TIF, where "*number*" is the Bates number of the corresponding page. File names for these files shall not contain any special characters or embedded spaces.

- Image files shall be grouped in folders on the production media of no more than 1,000 TIFF files each unless necessary to prevent a file from splitting across folders. Files will not be split across folders, and separate folders will not be created for each file.

**Appendix 2: Data Load File Specifications**

The data load file is a delimited text file containing data about each document needed for use with standard litigation support software.

The file name of the data load file should contain the volume name of the production media, although additional description information may be provided after the volume name. For example, both "ABC001.dat" and "ABC001_metadata.dat" would be acceptable names for a data load file having a production volume named "ABC001." File names shall not contain any special characters or embedded spaces.

Unless other delimiters are specified, the data in each field should be separated using Concordance default delimiters. A semicolon should be used as a multi-entry separator. A carriage-return line-feed should be used to indicate the start of the next record.

The first line of the data load file must contain each field name, separated by a delimiter, corresponding to the order in which the data appears in the file.

Load files should not span across media (*e.g.* CDs, DVDs, hard drives, etc.); a separate volume should be created for each piece of media delivered.

Data for documents shall be produced in only one data load file throughout the productions, unless that document is noted as being a replacement document in the Replacement field of the data load file.


Metadata Fields to be Included in the Data Load File

For all documents or electronic files produced, the following metadata fields for each document or electronic file, if available at the time of collection and processing and unless such metadata fields are protected from disclosure by attorney-client privilege or work-product immunity or otherwise prohibited from disclosure by law or regulation, including the European Data Privacy Regulation, will be provided in the data load file Where a document or electronic file has been produced with redactions of subject matter that are the same subject matter of a metadata field, the corresponding content of that metadata field may be omitted.

The term "Scanned Docs" refers to documents that are in paper form at the time of collection and have been scanned into *.tif images. The term "Email and E-Docs" refers to files that are in electronic form at the time of their collection.

| Field Name | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| PRODBEG | ABC00000001 | Yes | Yes | Beginning production number |
| PRODEND | ABC00000008 | Yes | Yes | Ending production number |
| PRODBEGATT | ABC00000009 | Yes | Yes | Beginning production number of parent in a family |

| Field Name | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| PRODENDATT | ABC00001005 | Yes | Yes | Ending production number of last page of the last attachment in a family |
| CUSTODIAN(S) | Smith, John | Yes | Yes | Custodian(s) that possessed the document or electronic file—multiple custodians separated by semicolon |
| FILEDESC | Microsoft Office 2007 Document | N/A | Yes | Description of the type file for the produced record. |
| FOLDER | \My Documents\Document1.doc | N/A | Yes | Original source folder for the record produced. |
| FILENAME | Document1.doc | N/A | Yes | Name of original electronic file as collected. |
| DOCEXT | DOC | N/A | Yes | File extension for email or e-doc |
| PAGES | 2 | Yes | Yes | Number of pages in the produced document or electronic file. |
| AUTHOR | John Smith | N/A | Yes | Author information as derived from the properties of the document. |
| DATECREATED | 10/09/2005 | N/A | Yes | Date that non-email file was created as extracted from file system metadata |
| DATELASTMOD | 10/09/2005 | N/A | Yes | Date that non-email file was modified as extracted from file system metadata |
| SUBJECT | Changes to Access Database | N/A | Yes | "Subject" field extracted from email message or metadata properties of the document |
| FROM | John Beech | N/A | Yes | "From" field extracted from email message |
| TO | Janice Birch | N/A | Yes | "To" field extracted from email message |
| CC | Frank Maple | N/A | Yes | "Cc" or "carbon copy" field extracted from email message |
| BCC | John Oakwood | N/A | Yes | "Bcc" or "blind carbon copy" field extracted from email message |
| DATESENT | 10/10/2005 | N/A | Yes | Sent date of email message (mm/dd/yyyy format) |
| TIMESENT | 10:33 am | N/A | Yes | Sent time of email message, time zone set to GMT |
| DATERCVD | 10/10/2005 | N/A | Yes | Received date of email message (mm/dd/yyyy format) |
| TIMERCVD | 10:33 am | N/A | Yes | Received time of email message, time zone set to GMT |
| CONFIDENTIALITY | CONFIDENTIAL | Yes | Yes | Text of confidentiality designation, if any |
| REDACTION | REDACTED | Yes | Yes | User-generated field indicating whether a document was redacted. |
| TEXTPATH | Text\001\001\ABC00000001.txt | Yes | Yes | Path to *.txt file containing extracted or OCR text |
| MD5 HASH | 30999747f4e6d7bef786e614ff2cf4b0 | N/A | Yes | MD5 Hash for electronic document |

| Field Name | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| REPLACEMENT | REPLACEMENT | Yes | Yes | "Replacement" indicates the image is a replacement for a previously produced image; otherwise blank. |
| PRODVOL | VOL001 | Yes | Yes | Name of the Production Volume |
| NATIVEPATH | Natives\0001\ABC 00000001.xls | N/A | Yes | Path and file name for native file on production media |

**Appendix 3: Text File Specifications**

- The text file will contain the text in the respective document, omitting any text redacted from the produced document.

- The file naming convention for the text file shall be in the form *number.TXT*, where "*number*" is the Bates number for the first page of the respective document TIFF image. File names shall not contain any special characters or embedded spaces.

- The presumptive source of a text file shall be extracted text, except in the case of scanned documents or redacted documents, in which case the presumptive source of the text will be OCR-sourced text from a TIFF image.

- The full path and file name of the text file must be provided in the data load file as specified in Appendix 2.

- OCR text should be generated by applying optical character recognition processes to the image of the document.  The parties will endeavor to generate accurate OCR and will utilize quality OCR processes and technology.  OCR shall be performed on a document level and provided in document-level text files.  OCR text should not be delivered in the data load file or any other delimited file.

**Appendix 4: Image Load File Specifications**

- The name of the image load file should mirror the name of the delivery volume, and should have an .OPT extension (*e.g.* ABC001.OPT).  File names shall not contain any special characters or embedded spaces.

- The volume names should be consecutive (*e.g.* ABC001, ABC002, etc.).

- Every image in the delivery volume should be contained in the image load file, one row in the load file per TIFF image.  The total number of documents referenced in the image load file should match the total number of designated documents in the data load file for that production.

- Load files should not span across media (*e.g.* CDs, DVDs, Hard Drives, Etc.), *i.e.*, a separate volume should be created for each piece of media delivered.

**Appendix 5: Native File Specifications**

- The file naming convention for the native file shall be in the form number.EXT, where "number" is the Bates number for the respective placeholder TIFF image and "EXT" is the file extension.  File names shall not contain any special characters or embedded spaces.  If the native file contains Confidential Information as defined in MDL Order No. 13, the word "CONFIDENTIAL" shall additionally be included in the file name.

- The full path and file name of the native file must be provided in the data load file as specified in Appendix 2.