**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| **IN RE :  ZOFRAN® (ONDANSETRON) PRODUCTS LIABILITY LITIGATION**<br><br>This document relates to: All Actions | MDL No. 1:15-md-2657-FDS |

**GLAXOSMITHKLINE LLC'S MEMORANDUM IN SUPPORT OF ITS EMERGENCY
MOTION TO ENFORCE THE COURT'S CASE MANAGEMENT ORDER**

Defendant GSK files this emergency motion in response to Plaintiffs' unanticipated and improper 85-page "Motion to Admit Their General Causation Expert Testimony" (hereinafter "Motion") filed on the deadline for "motions to exclude or limit expert testimony" under this Court's Case Management Order ("CMO") No. 28. In essence, Plaintiffs have decided to try to evade their 125-page limit for responding to GSK's *Daubert* challenges to their experts by filing an additional 85-page motion to bolster their experts.

Plaintiffs' Motion violates the terms of the Court's CMO, is at odds with the established sequence of *Daubert*/Rule 702 motions, and is not supported by any procedural or evidentiary rule. Moreover, the Motion is a waste of judicial resources as it adds an entirely unnecessary 200-plus pages of *Daubert* briefing to the hundreds of pages that this Court has already approved as sufficient for the parties to address the issues. Additionally, the Motion is highly prejudicial to GSK. In essence, Plaintiffs propose to respond to an "imaginary" motion that they "anticipated" GSK would write, confusing the arguments that they speculated GSK "may make" with those actually made in GSK's motion.

Moreover, the Motion sets forth **counsel's** version of the science divorced from the witnesses' testimony about the science, and argues for the adoption of a causation methodology at odds with the methodology used by their own experts. In other words, Plaintiffs attempt to preemptively respond to a hypothetical version of GSK's *Daubert* challenge to their experts, while sidestepping the methodological and evidentiary concessions made by those same experts. The Motion asks the Court to close its eyes to the sworn testimony of Plaintiffs' experts and admit their opinions based on counsel's representations about the science—a relief that this Court is simply not authorized to give. While Plaintiffs' concern about their experts' admissions is perhaps understandable, their attempts to drown those admissions in hundreds of pages of unauthorized briefing must be rejected outright.

Accordingly, GSK asks that the Court summarily deny Plaintiffs' Motion without prejudice to their ability to raise the same arguments, if appropriate, in response to GSK's actual challenges to their experts, as contemplated by CMO 28 and the Federal Rules of Evidence. Alternatively, if the Court allows the Motion to stand, it should count against Plaintiffs' page limit for their opposition to GSK's *Daubert* challenges.

## ARGUMENT

**I.    THE MOTION VIOLATES CASE MANAGEMENT ORDER NO. 28, HAS NO BASIS IN THE LAW, AND IS A WASTE OF JUDICIAL RESOURCES.**

"It is axiomatic that the court possesses the inherent authority to enforce its own orders." *Greenfield Mills Inc. v. Carter*, No. 1:00 CV 0219, 2008 WL 4757323, at *1, n.1 (N.D. Ind. Oct. 29, 2008); *Garcia v. Spaulding*, 324 F. Supp. 3d 228, 235 (D. Mass. 2018) (same). It is similarly, well-established that "for the sake of judicial economy," a court may deny or dismiss "duplicative" motions. *See, e.g., United States v. $7,679.00 United States Currency*, 13-CV-727A, 13-CV-

1057A, 2017 WL 696849, at *2 (W.D.N.Y. Feb. 22, 2017); *United States v. Barker*, 182 F.R.D. 661, 664, n.5 (S.D. Ga. 1998).

Plaintiffs' Motion not only violates the terms of CMO 28, but is patently duplicative of Plaintiffs' opposition to GSK's *Daubert* motion that is due on January 11th. While the Motion is styled as a *Daubert*/Rule 702 motion, it is universally acknowledged that *Daubert* motions seek to *exclude* expert testimony. Fed. R. Evid. 702. Not surprisingly, this Court's Case Management Order No. 28 (that sets forth the deadlines and page limits for these motions) repeatedly states that it applies to "motions to exclude or limit expert testimony." (Doc. 1209). There is no procedural rule that even contemplates, let alone permits, an anti-"*Daubert*" motion to *admit* expert testimony.

Plaintiffs' Motion not only puts *Daubert* on its head, but is a waste of judicial resources. Plaintiffs have filed a "straw-motion" that purports to preemptively "anticipate" and respond to GSK's *Daubert* arguments. Many of these are arguments that GSK has not raised in its challenge to Plaintiffs' experts and, indeed, has no intention of raising. Plaintiffs also misstate some arguments that GSK did actually make. It is a waste of judicial resources for the Court to wade through 85 pages about arguments that GSK "may" raise, only to then turn to GSK's opposition, which will by necessity have to be lengthy, to learn that GSK is not even making several of those arguments *at all.* Furthermore, because this confuses arguments that GSK "may make" with those it actually is making, it is highly prejudicial to GSK.

As for arguments that GSK actually *is* making, they are already addressed in GSK's *Daubert* motion, and Plaintiffs have an opportunity to respond to it in 125 pages pursuant to CMO 28. The Court should not allow Plaintiffs to get two bites of the same apple, adding 200-plus pages of duplicative briefing (*i.e.,* Plaintiffs' 85-page motion, GSK's response, and Plaintiffs' reply) to

the already generous page allotment of the CMO.[1] Plaintiffs' motion is unduly burdensome to both

GSK and the Court and should not be countenanced.[2]

## II.    THE MOTION IS UNNECESSARY AND IMPROPERLY SEEKS TO SUPPLANT PLAINTIFFS' EXPERTS' METHODOLOGY WITH COUNSEL'S ARGUMENT.

Even taking the Motion at face value, Plaintiffs try to justify it based upon their

"expectation" that GSK will challenge Plaintiffs' experts "in piecemeal fashion." Motion at 2. This

is simply not the case. GSK filed a single brief with a general overview of the science, law, and

methodological admissions applicable to every expert, in addition to its challenges to the

individual experts based on the individual methodology and opinions proffered by each

expert. Thus, by Plaintiffs' own admission, the Motion is unnecessary.

Moreover, the Motion is a blatant attempt by Plaintiffs' counsel to supplant their own

experts' methodology, as sworn to at their depositions, with a methodological theory put forth by

counsel—one that is at odds with that of the very experts whose testimony they seek to

admit. Counsel has already been afforded an opportunity to put their theory of causation before

the Court at Science Day. They should not be permitted to hijack the proceedings contemplated by

---

[1] To the extent Plaintiffs argue the Motion is not duplicative of their forthcoming response to GSK's *Daubert* motion, then it also violates Local Rule 7.1, which provides that "Memoranda supporting or opposing allowance of motions shall not, without leave of court, exceed 20 pages, double-spaced."

[2] GSK is aware that a "Motion to Fully Include Their Causation Experts' Testimony at Trial" was filed by the plaintiffs in the case of *Allen v. Martin Surfacing*, 263 F.R.D. 47 (D. Mass.), in 2007, and ultimately granted by this Court. Case No. 05-40048-FDS (Doc. #54). The circumstances in *Allen*, however, are completely different. First, the defendant failed to raise any procedural objection to the plaintiffs' motion. Second, the plaintiffs in *Allen* did not have an opportunity to submit a 125-page opposition, as Plaintiffs do here, to the actual motion to exclude. To the contrary, the plaintiffs' affirmative motion and opposition to the defendants' motion together totaled less than 53 pages (Doc #54, 58). Moreover, the *Allen* motion essentially laid out, in summary fashion, the factual and methodological underpinnings of plaintiffs' experts' opinions, as set forth in their expert reports.  (Doc #54).  It did not improperly ask the Court to accept counsel's view of the science divorced from the record or wrongly anticipate/ mischaracterize defendants' arguments.  Thus, *Allen* certainly does not support the proposition that this Court should tolerate duplicative and burdensome preemptive motion practice.

CMO 28 for a second attempt to discuss ***counsel's theory***, rather than defending the admissibility of the actual opinions of their experts.

Finally, there is no procedural basis for the relief that Plaintiffs seek. Plaintiffs ask the Court to make an affirmative finding as to the admissibility of ***Plaintiffs' counsel's theory of causation*** and then permit Plaintiffs' experts to testify to that theory, without consideration of the methodology or opinions of the individual experts themselves. Just by way of example, the Motion argues that "epidemiologic studies are not required for admissibility" (Motion at pp. 5-7) even though Plaintiffs' experts repeatedly and unequivocally testified to the contrary at their depositions.[3]

Federal Rule of Evidence 702 and *Daubert* relate to the admissibility of ***specific*** expert testimony, not reliability of the science through counsel's eyes. *In re Aredia & Zometa Prods. Liab. Litig.*, No. 3:06-0381, 2009 WL 2497467, at *1 (M.D. Tenn. Aug. 13, 2009) ("A *Daubert* analysis applies to a specific expert witness and a specific expert witness' testimony. . . . Plaintiffs do not ask the Court to exclude a particular expert witness or specific testimony of a specific expert witness; instead, Plaintiffs ask the Court to exclude all testimony on particular subjects. A *Daubert* motion does not provide a vehicle for the relief sought by Plaintiffs herein.").

Not surprisingly, each and every one of the cases cited by Plaintiffs was a determination by a court as to the admissibility of a particular expert's testimony based on that expert's specific

---

[3] Danielsson Dep. 60:11-15 ("Q. Dr. Danielsson, you agree that consistent findings by two or more high-quality epidemiologic studies are necessary to demonstrate human teratogenicity? A. Yes, yes, yes."); Sadler Dep. 45:17-21 ("Fair enough, Dr. Sadler. My question is, though, that you need human epidemiology because there's a background rate of these defects in the population? That's all I'm asking. A. Yes."); Louik Dep. 55:24–56:4 ("Q. But you agree, Dr. Louik, that in trying to determine if an exposure like Zofran increases the risk of septal defects or cleft palate, you need controlled epidemiological studies? A. Controlled studies, yes, absolutely."); Abdulla Dep. 52:19-22 ("Q. Okay. Would you degree [sic] that epidemiological studies are necessary for – to determine if an exposure causes cardiac defects? A. Oh, absolutely . . .").

methodology in a specific scientific context. There is not a single case that holds that a general theory of causation put forth by counsel is admissible, such that any expert, regardless of that expert's qualifications or methodology, should be allowed to testify to that theory.

## CONCLUSION

For these reasons, GSK respectfully requests that this Court enforce CMO 28 by summarily dismissing Plaintiffs' Motion without prejudice to their ability to raise the same arguments, if appropriate, in response to GSK's actual challenges to their experts. Alternatively, if the Court allows the Motion to stand, it should count against Plaintiffs' page limit for their response to GSK's *Daubert* challenges.

Dated: December 14, 2018

Respectfully submitted,

*/s/ Jennifer Hill*
Madeleine M. McDonough
Jennifer M. Stevenson
Jennifer Stonecipher Hill
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
mmcdonough@shb.com
jstevenson@shb.com
jshill@shb.com
*Admitted pro hac vice*

Mark D. Seltzer (BBO # 556341)
Brain K. French (BBO # 637856)
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110
Telephone: 617-345-1000
Facsimile: 617-345-1300
mseltzer@nixonpeabody.com
bfrench@nixonpeabody.com

George W. Vien (BBO # 547411)
DONNELLY, CONROY & GELHAAR LLP
260 Franklin Street, Suite 1600
Boston, MA 02110
Telephone: 617-720-2880
Facsimile: 617-720-3554
gwv@dcglaw.com

Attorneys for Defendant GlaxoSmithKline LLC

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent via first class mail to those identified as non-registered participants.

*/s/ Jennifer Hill*
Jennifer Hill