# EXHIBIT I

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

|  |  |  |
|---|---|---|
| IN RE: | : | MDL DOCKET NO. 4:03-CV-1507-WRW |
| PREMPRO PRODUCTS LIABILITY | : |  |
| LITIGATION | : | ALL CASES |

### ORDER Re: WHI EXTENSION STUDY DATA

After considering the parties' submissions, and hearing argument at the June 26, 2009, Status Conference, Wyeth's Second Motion to Compel Production of Documents by Fred Hutchinson Cancer Research Center ("FHCRC") (Doc. No. 2049) is GRANTED as set out below:

1.  FHCRC must forthwith produce the data and documents ("the Data") requested by Wyeth in the February 5, 2009, subpoena.

2.  FHCRC may bill (and, if billed, Wyeth must pay) for the reasonable and appropriate production costs incurred to produce the Data. These production costs will be paid in the first instance by Wyeth and will be shared among those other defendants requesting the documents and data in a manner agreed upon by them or by further Order of the Court.

3.  To protect the privacy rights of participants of the Women's Health Initiative ("WHI") study and such interests in the confidentiality of the Data as may exist:

    a.  The Data will not contain the names, addresses, social security numbers, places of birth, cities of birth, or contact data of the participants in the WHI study; the interviewer identification numbers; unedited, verbatim responses of participants; identification of family relationships and pedigrees; original study identification numbers (new identifiers will be assigned at Wyeth's expense); clinical center identifiers (new identifiers will be assigned at Wyeth's expense); "sensitive data" (as defined by the NHLBI guidelines); and dates (dates will be recoded relative to a specific reference point [*i.e.*, enrollment date] with flags for the

1

approximate dates of certain events such as letters to participants to the extent Wyeth requests such information).

        b.      A party who receives the Data will not undertake any efforts to determine the identity of the participants or the clinical center(s) associated with each participant.

        c.      A party may provide the Data to its retained experts for use in the hormone therapy litigation only, provided that the experts first receive a copy of this Order, sign the "Conditions of Disclosure" form attached to this Order, and provide the signed forms to counsel for FHCRC "for her eyes only."

        d.      The manufacturer defendants may make the Data available to executives or employees within their companies and to the Food and Drug Administration.[1]

        e.      If the Data is disclosed to a deposition witness, the witness must be shown a copy of this Order and will be bound by the "Conditions of Disclosure" form. The portions of the deposition transcript and deposition exhibits related to the Data will be subject to this Order.

        f.      Submissions to the Court specifically mentioning the Data must be made under seal (submissions including only routine information need not be submitted under seal).

        g.      Nothing in this Order may be construed as granting to or permitting the parties and their counsel an implied license in or right or option to use the intellectual property rights arising from any written analysis or review of the Data by FHCRC or WHI investigators other than use in the hormone therapy litigation.

    4. Until FHCRC takes the position that the Data is no longer confidential, a party or persons subject to its control will not publish or seek to publish any analysis of the Data without permission of the Court.

---

[1] In order to meet any requirement under the Federal Food, Drug, and Cosmetic Act or associated regulations, the Data may be provided to the FDA.

5. Before the termination of MDL-1507, the parties or FHCRC may petition the Court regarding whether the Data should be returned to FHCRC (or destroyed) at that time or whether continued use of the Data will be required on remand of cases to the transferor courts.

6. Any person or entity who intentionally violates this Order will be subject to contempt of court and the imposition of civil sanctions, including reasonable attorneys' fees and costs.

7. Any unresolved issues relating to enforcement of any alleged violations of the terms of this Order will be resolved by this Court or, upon the termination of MDL-1507, any court with jurisdiction over the person against whom enforcement is sought.

IT IS SO ORDERED this 13th day of July, 2009.

/s/ Wm. R. Wilson, Jr._____
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

| | | |
|---|---|---|
| | : | **MDL DOCKET NO. 4:03-CV-1507-WRW** |
| **IN RE:** | : | |
| **PREMPRO PRODUCTS LIABILITY** | : | |
| **LITIGATION** | : | **ALL CASES** |

**CONDITIONS OF DISCLOSURE**

    I, _____, do hereby certify that I have read the July 13, 2009, Confidentiality Order Re: WHI Extension Study Data ("Confidentiality Order").  Because it is necessary for me in connection with my participation in this case to have access to data subject to the Confidentiality Order, I have read the entire Confidentiality Order and understand and agree that I am bound and subject to all terms and provisions contained in the Confidentiality Order.

    I understand that if I intentionally violate or attempt to violate any provision of the Confidentiality Order, I will be subject to contempt of court and the imposition of civil sanctions, including but not limited to reasonable attorneys' fees and costs.

    I acknowledge that Fred Hutchinson Cancer Research Center ("FHCRC") asserts that the responsive data has inherent value, that the research being conducted by FHCRC is important to both FHCRC and its researchers, and that in order for the FHCRC researchers and others associated with WHI to fully exercise their contractual rights to publish the results of the WHI in peer reviewed journals, the responsive data must be kept confidential.  I agree that, in the event that I use the data in violation of the Confidentiality Order, injunctive relief barring such misuse is warranted and may be issued by this Court or another Court of appropriate jurisdiction.

4

I acknowledge that the Court has jurisdiction to enforce the terms of the Confidentiality Order as to me.

Witness my signature this _____ day of _____, _____.

_____
Name

_____
Address

_____
Telephone

STATE OF                              )
                                              ) ss.
COUNTY OF                          )

On this day personally appeared before me _____, to me known to be the individual described in and who executed the within and foregoing instrument and acknowledged that s/he signed the same as his/her free and voluntary act and deed, for the uses and purposes therein mentioned.

GIVEN under my hand and official seal this _____ day of _____, _____.

_____
Notary Signature

_____
Print Notary Name

Notary Public in and for the State of _____, residing at _____

My commission expires _____

NOTE THAT PER COURT ORDER, A COPY OF THIS DOCUMENT MUST BE SENT TO COUNSEL FOR FHCRC, JUNE K. CAMPBELL, LANE POWELL PC, 1420 FIFTH AVENUE, SUITE 4100, SEATTLE, WASHINGTON, 98101-2338 MARKED "CONFIDENTIAL".

5

FILED ___ ENTERED
LODGED ___ RECEIVED

AUG 19 2002

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY ___ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE: PHENYLPROPANOLAMINE (PPA) PRODUCTS LIABILITY LITIGATION, | MDL NO. 1407 ORDER RE: MOTION TO QUASH SUBPOENAS RE YALE STUDY'S HOSPITAL RECORDS |
| This document relates to all actions | |

## I. INTRODUCTION

Plaintiffs filed an Emergency Motion to Quash Subpoena[s] Re: Yale Study's Hospital Records. Having reviewed pleadings filed in support of and in opposition to the motion, along with the remainder of the record, and, being fully advised, the court finds and concludes as follows:

## II. BACKGROUND

Plaintiffs seek to quash a series of subpoenas duces tecum served on hospitals possessing medical records for participants in the Yale Hemorrhagic Stroke Project ("HSP"). Yale provided defendants with all of the documentation relating to the HSP in their possession and joins plaintiffs in their objection to the hospital subpoenas.

Defendants served subpoenas on thirty two hospitals seeking

ORDER
Page - 1 -

medical records on twenty seven different patients, all participants in the HSP identified as consuming PPA-containing products prior to suffering strokes. The subpoenas appear to seek copies of all medical records, reports, and/or documents pertaining to the patients at issue.[1] They request redactions generally mirroring those conducted on the documents received from Yale (i.e., name; social security number; street address; last four digits of telephone number; family member names; birthday; doctors' names; etc.) To reduce the redaction burden, the hospitals are advised to contact defendants as to the volume of documents affected by the subpoena, so that any necessary adjustments can be made, and defendants offer reimbursement for redaction and copying costs.

At the time defendants filed their opposition, seven hospitals had produced documents, and three hospitals had objected based on confidentiality.[2]

III. DISCUSSION

Plaintiffs first argue that the documents are not discoverable because they are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. They assert that Yale has already produced the records they utilized in conducting the HSP. They further argue that the defendants

---

[1] As discussed below, however, defendants argue that the subpoenas seek only the medical records to which the HSP investigators had access.

[2] Plaintiffs assert without further detail that four hospitals have indicated no record of service of a subpoena, but intend to move to quash such a subpoena should they be served.

ORDER
Page - 2 -

1. cannot show that their need for the records outweighs the burden
2. placed on participating hospitals.  See, e.g., Deitchman v. E.R.
3. Squibb & Sons, Inc., 740 F.2d 556, 560-61 (7th Cir. 1984).
4. Both plaintiffs and Yale argue that the documents are
5. privileged based on their confidential nature.  In particular,
6. Yale points to the Confidentiality Certificate issued by the
7. Department of Health and Human Services in connection with the
8. HSP.  That certificate "requires that there be no disclosures of
9. identifying characteristics of research subjects in any Federal .
10. . . proceedings."  See Yale University's Submission re Plain-
11. tiffs' Motion to Quash Subpoena Re Yale Study's Hospital Records,
12. at 1.  Yale is not confident the general redaction indication in
13. the subpoenas suffices or that the redaction would be completed
14. thoroughly and properly.  They also aver that the production of
15. unrelated medical records would violate the confidentiality
16. expectations of the patients.  To the extent the subpoenas are
17. enforced, Yale strongly suggests the requirement of compliance
18. with a uniform redaction protocol.
19. Finally, both plaintiffs and Yale assert the "chilling
20. effect" resulting from these types of subpoenas.  That is, the
21. idea that parties may in the future obtain *all* of one's medical
22. records may dissuade individuals from participating in important
23. medical research, particularly those individuals with rare or
24. stigmatizing medical conditions, mental health problems, and/or
25. those who engage in the use of illegal drugs or alcohol.
26. Defendants concede their desire to verify the accuracy of

ORDER
Page - 3 -

the data underlying the HSP and to clarify the extent to which the HSP participants were scrutinized for "potential stroke risk confounders." See MDL Defendants' Opposition to MDL Plaintiffs' Emergency Motion to Quash Subpoena Regarding Hospitals' Records, at 12. They assert a strong likelihood of, among other flaws, bias in the HSP.[3]

Defendants reject the assertion that all of the participants' medical records have been produced by Yale. Specifically, they point to two patients for whom no medical records were produced, and aver only a limited production of records for many others. Defendants concede that Yale may have never received these records and may have instead received only research forms containing summaries of the information contained within the records. Defendants also assert that the subpoenas seek only the medical records to which the HSP investigators had access.

Federal Rule of Civil Procedure 26 allows discovery, for good cause, of "any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). To the extent documents were reviewed and/or utilized by the HSP investigators, but not produced by Yale, they are unquestionably relevant. Moreover, even where records relevant to the study were never

---

[3] See, e.g., Deitchman, 740 F.2d at 562-63 (allowing defendant drug company to review the data underlying a study key to the case; stating that "a study of this sort may have a number of different, but inadvertent, biases present" and that "if the conclusions or end product of a research effort is to be fairly tested, the underlying data must be available to others equally skilled and perceptive.")

ORDER
Page - 4 -

released to Yale in other than summary form, those records would still be relevant to this litigation and discoverable pursuant to Rule 26.

Moreover, the confidentiality agreements already associated with those relevant documents, taken together with defendants' requests for redaction, mitigates any concern with respect to issues of confidentiality. The parameters of the subpoena redaction indication appear to be modeled on the Yale redaction agreement. However, as suggested by Yale, the parties should agree as to a uniform redaction protocol to apply to these documents.

The court also does not find that the subpoenas as they relate to documents relevant to the HSP impose an undue burden on the hospitals. The letters accompanying the subpoenas clarify that defendants will work with the hospitals to narrow requests if necessary and will pay for redaction and copying costs. Nor does the argument as to a chilling effect succeed with respect to these documents. The HSP has been concluded for some time, many thousands of HSP-related documents have been produced to date, and the patients involved in the HSP agreed to the disclosure of their relevant medical records, so long as any identifying information was redacted.

However, contrary to defendants' assertion, the court reads the plain language of the subpoenas as seeking *all* of the patients' medical records. As such, the requests incorporate a multitude of documents entirely irrelevant to the HSP and the

1 issues before this court.  Moreover, in agreeing to disclose
2 medical records to Yale for the HSP, patients presumably did not
3 believe such records would include entirely unrelated documents,
4 and particularly those unrelated documents associated with
5 matters of a more personal nature.
6     As such, the court believes the documents appropriately
7 produced in response to these subpoenas should include only those
8 documents relevant to the HSP.  The court orders the defendants
9 to work with the hospitals from whom they have not yet received
10 any documents to ensure that the productions will include only
11 such relevant documents.  As described above, the parties should
12 also agree to a uniform redaction protocol applying to these
13 document productions.

## IV.  CONCLUSION

15     For the reasons stated above, the court hereby DENIES
16 Plaintiffs' Emergency Motion to Quash Subpoena[s] Re: Yale
17 Study's Hospital Records.  The parties are ordered to meet and
18 confer as to an appropriate uniform redaction protocol.  Defen-
19 dants are ordered to work with the hospitals to ensure that the
20 document productions are conducted in accordance with the parame-
21 ters of this order.
22     DATED at Seattle, Washington this 16th day of August, 2002.

*[Signature]*
BARBARA JACOBS ROTHSTEIN
UNITED STATES DISTRICT JUDGE

ORDER
Page - 6 -