**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| **IN RE : ZOFRAN® (ONDANSETRON) PRODUCTS LIABILITY LITIGATION** | **MDL No. 1:15-md-2657-FDS**<br><br>**This document relates to:**<br><br>*All Actions*<br><br>**FILED UNDER SEAL** |

**GLAXOSMITHKLINE LLC'S**
**MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL PLAINTIFFS'**
**DISCOVERY RESPONSES RELATING TO THE ZAMBELLI-WEINER STUDY**

Over the past few months, a troubling pattern of facts has developed that calls into question the independence and trustworthiness of one of the studies Plaintiffs' experts have sought to place at the center of this litigation. Revelations through discovery so far suggest that Plaintiffs have been less than forthcoming, if not actually misleading, when describing the nature and extent of their relationship (financial and otherwise) with April Zambelli-Weiner, Ph.D., the study author. To create the appearance of scientific independence, Dr. Zambelli-Weiner provided the Court with an affidavit that her counsel later described as containing "inaccurate" factual representations. Plaintiffs, for their part, have downplayed their association with Dr. Zambelli-Weiner as limited and irrelevant, yet they simultaneously try to hide behind a broad view of the protections available for work product and consulting experts under Federal Rule of Civil Procedure 26. Their conflicting positions cannot be squared. Accordingly, GSK asks this Court to compel complete responses to its written discovery requests. To the extent Plaintiffs seek to withhold responsive documents as work product, the documents should be produced to the Court for *in camera* review.

## FACTUAL BACKGROUND

On August 10, 2018, GSK served requests for production seeking, among other things, communications between Plaintiffs' counsel and Dr. Zambelli-Weiner or TTi Health Research & Economics ("TTi") regarding her study on ondansetron and the risk of birth defects (the "Study").[1] Specifically, Request No. 6 asked Plaintiffs to produce "all communications between Plaintiffs' Attorneys and the TTi research organization, or any of its owners or employees, regarding any of the studies identified in Request No. 5." *See* GSK's Requests for Production, Aug. 10, 2018 ("GSK's Aug. 2018 RFPs"), No. 6 (attached as Ex. A). Plaintiffs objected on the basis that it called for information not discoverable under Fed. R. Civ. P. 26(b)(3) and 26(b)(4)(D) and provided no responsive communications. Pls.' Obj. and Resp. to GSK's RFPs, Sept. 10, 2018 ("Pls.' Sept. 2018 Resp."), No. 6 (attached as Ex. B).

GSK then issued a subpoena seeking Dr. Zambelli-Weiner's deposition. Plaintiffs moved for a protective order on November 26, yet never suggested that communications with Dr. Zambelli-Weiner were protected from discovery as work product relating to a retained expert. *See* Pls.' Mot. for Protective Order, Doc. 1224. In fact, Plaintiffs cited to the Court's statement that "deposing scientists who are neither testifying experts nor consulting experts but simply scientists in the field . . . is troublesome," implying she was neither, while neglecting to mention that Dr. Zambelli-Weiner had served as their consulting expert on Zofran. *See id.* at 6. Nevertheless, the Court denied Plaintiffs' motion on December 7. *See* Doc. 1243.

---

[1] Published as Zambelli-Weiner A, Via C, Yuen M, Weiner DJ, Kirby RS. First trimester ondansetron exposure and risk of structural birth defects. *Reprod Toxicol* 2019;83:14-20.

Then, on January 9, 2019, attorney Robert Rudolph filed a motion for protective order on Dr. Zambelli-Weiner's behalf, based on her affidavit, in which she swore under penalty of perjury that she had "not been retained as an expert witness by any party in this case" and had "no direct factual information about the litigation." *See* Aff. of Dr. Zambelli-Weiner at ¶ 5 (Doc. 1272), attached as Ex. C. When the parties convened for a status conference on January 16, 2019, Plaintiffs' counsel made no attempt to correct the record, which they knew was false, despite the fact that the Court indicated its willingness to rule on the papers as they stood. *See* Tr. at 7:5-17 (Jan. 16, 2019) (attached as Ex. D). Instead, Plaintiffs' counsel suggested merely that Dr. Zambelli-Weiner planned to file a reply brief. *Id.* at 7:5-10. However, no such brief was filed, and the Court denied the motion on January 18, 2019. Doc. 1292. Hours after the motion was denied, Dr. Zambelli-Weiner's counsel filed an emergency motion to withdraw, citing factual representations in Dr. Zambelli-Weiner's original affidavit that counsel had learned to be "inaccurate." Emergency Mot. to Withdraw Appearance for Non-Party April Zambelli-Weiner, Ph.D., Doc. 1293 at 3. Her counsel also filed a "Notice Advising the Court of Factual Inaccuracies in Non-Party April Zambelli-Weiner Ph.D.'s Affidavit and Motion for Protective Order," which explained that her counsel "received information indicating that certain of the factual assertions in [her] Motion for Protective Order and Affidavit were inaccurate." Doc. 1294.

It was not until January 29, 2019, that Dr. Zambelli-Weiner served on the parties a Supplemental Affidavit, which acknowledged that her company, TTi, had entered into two "consulting arrangement[s]" with the Grant & Eisenhofer firm, lead counsel for Plaintiffs. Zambelli-Weiner Supp. Aff. at ¶¶ 1, 3 (attached as Ex. E). These "arrangements" covered two discrete time periods: "December 10, 2014[,] to approximately March 2015" and "March 29,

3

2017[,] to approximately November 2017." *Id.* Dr. Zambelli-Weiner has not filed the Supplemental Affidavit with the Court, nor has her counsel or Plaintiffs' counsel corrected any "factual inaccuracies" about their relationship with Dr. Zambelli-Weiner.

In response to the revelations from Dr. Zambelli-Weiner, GSK promptly served necessary additional interrogatories and requests for production on Plaintiffs on January 30, 2019 ("GSK's Jan. 2019 Interrogatories and RFPs," attached as Ex. F). Plaintiffs responded on March 1, objecting to five of the six requests. *See* Pls.' Steering Committee's Obj. and Resp. to GSK's Second Set of Interrogatories and Fifth Set of Requests for Production, Mar. 1, 2019 ("Pls.' Mar. 2019 Resp."), attached as Ex. G.

## ARGUMENT

The Court should reject each of Plaintiffs' baseless objections related to this litigation-changing development. Specifically, GSK seeks to compel full responses to the following discovery requests:

- ***Communications with TTi and the Zambelli-Weiner Authors (GSK's Aug. 2018 RFPs, No. 6):*** In Request No. 6, GSK sought communications between Plaintiffs' counsel and TTI or any of its owners or employees regarding certain ondansetron studies, including the study published by Dr. Zambelli-Weiner. Plaintiffs objected, claiming that the request "calls for information that is not discoverable under Fed. R. Civ. P. 26(b)(3) and 26(b)(4)(D)." They produced nothing in response to this request.

- ***Payments to TTi and the Zambelli-Weiner authors, including related documentation (GSK's Jan. 2019 Interrogatories and RFPs, Interrogatory Nos. 1-2 and RFP No. 2):*** Through Interrogatory Nos. 1 and 2, GSK asked Plaintiffs to identify any payment,

4

compensation, or donation provided by any Plaintiffs' Leadership Attorney to TTi or the Zambelli-Weiner authors within the last five years and, for each, state the date, amount, and purpose. Request for Production No. 2 sought copies of any invoices, billing statements, documentation, or correspondence regarding any such payments. Plaintiffs refused to provide a complete answer and asserted a boilerplate objection, stating that the "request exceeds the scope of permissible discovery under Federal Rule of Civil Procedure 26." They further claimed that the request exceeds the scope of a stipulation of the parties related to *testifying* experts. Except as to Dr. Kirby (whom they claimed not to have paid), Plaintiffs limited their response to payments they made to TTi related to Zofran.

- ***Written agreements or consulting arrangements (GSK's Jan. 2019 Interrogatories and RFPs, RFP No. 1):*** In Request for Production No. 1, GSK sought copies of any written agreement or consulting arrangement between any Plaintiffs' Leadership Attorney or their firms or representatives and TTi or any of the Zambelli-Weiner authors. Plaintiffs objected, claiming that the "request calls for information that is not discoverable under Fed. R. Civ. P. 26(b)(3) and 26(b)(4)(D)."

- ***Written materials from Mass Torts Made Perfect (GSK's Jan. 2019 Interrogatories and RFPs, RFP No. 3):*** In Request for Production No. 3, GSK sought written materials presented or prepared in connection with the "Zofran Litigation Update" at the Mass Torts Made Perfect conference in October 2015. Again, Plaintiffs objected and invoked Rule 26(b)(3) and 26(b)(4)(D).

As explained below, Plaintiffs' objections are misplaced. The information and documents GSK seeks related to their financial entanglements with TTi and Dr. Zambelli-Weiner are not only

relevant, but critical to Plaintiffs' reliance on the Zambelli-Weiner study to prop up one of their "lines of evidence." *See* Pls.' Opp. to GSK's Mot. to Exclude Pls.' Gen. Causation Experts at 82-83. Plaintiffs must make a full and complete disclosure.

**I.    GSK's Motion Should Be Automatically Allowed Due to Plaintiffs' Refusal to Participate in a Discovery Conference.**

On March 8, as required by Local Rule 37.1(a), counsel for GSK emailed six of Plaintiffs' Leadership Attorneys requesting to meet and confer regarding the discovery responses Plaintiffs served on March 1. A few hours later, in correspondence to the Court regarding scheduling of a *Daubert* hearing, Plaintiffs' counsel acknowledged that GSK had requested "additional follow up on discovery of Plaintiffs' lawyers" (*see* Doc. 1390), yet, consistent with their earlier insistence that the *Daubert* record be "frozen," Plaintiffs' counsel never responded to GSK's request to meet and confer.

The Court should not condone Plaintiffs' transparent efforts to withhold discovery from GSK, stall, and prevent these important facts from coming to light before the *Daubert* hearing. Under Local Rule 37.1(a), a party is obligated to respond to a request for a discovery conference within seven days. Failure to respond "shall be grounds for sanctions, which may include automatic allowance of the motion." LR 37.1(a); *see also Cohen v. City of Newton*, 248 F.R.D. 92, 92 (D. Mass. Feb. 19, 2008) (automatically allowing a motion to compel when the opposing party failed to respond to a party's request to arrange a discovery conference). While Plaintiffs may rather avoid additional harmful facts about their "financial support" of the Zambelli-Weiner study, they cannot simply refuse to participate in the process as the rules require. The Court should enforce the letter of the local rules and grant GSK's motion.

## II.      In Any Event, Communications Pre- and Post-Dating the Claimed Consulting Relationship Are Not Protected.

By using Dr. Zambelli-Weiner's purportedly independent study to support their causation theory, while at the same time trying to shield all of their communications with the study author, Plaintiffs are trying to have it both ways. Although Rules 26(b)(3)(A) and 26(b)(4)(D) provide certain protections for work product prepared by parties in anticipation of litigation or trial and facts and opinions held by consulting experts, they do not provide a blanket protection when a party then tries to capitalize on the claimed independence of the consultant's work. *See In re PolyMedica Corp. Sec. Litig.*, 235 F.R.D. 28, 32-33 (D. Mass. 2006) ("A party cannot put attorney-client communications at issue by raising the defense and then assert the privilege to shield any unfavorable evidence. . . . The same concern for fairness underlies the treatment of discovery of experts under Federal Rule of Civil Procedure 26(b)(4).").

Plaintiffs' expert epidemiologist, Dr. Carol Louik, asserts her reliance on the Study. *See* Supp. Expert Report of Carol Louik, Sc.D., Nov. 11, 2018 (JA000675). All the while, Plaintiffs have maintained that they had no influence over the results of the Study, despite evidence that has been brought to light ████████████████████████████████████████ ████████████████████████████████████████████████████. *See* GSK's Memo. in Supp. of Its Mot. to Compel Testimony from Dr. Carol Louik (Doc. 1382-1). If they are allowed to shield their communications with Dr. Zambelli-Weiner, GSK and the Court will be forced to take Plaintiffs and Dr. Zambelli-Weiner at their word. Plaintiffs have injected the Study, and its purported independence, as a key factual issue in this litigation. Communications that would shed light on this topic should be produced.

Even if Plaintiffs' counsel's communications with Dr. Zambelli-Weiner are entitled to protection as materials prepared in anticipation of litigation or as communication with non-testifying experts, this shield does not apply to communications that pre- or post-date their claimed consulting relationship. Courts recognize that non-testifying experts can have multiple roles. *See Bartram, LLC v. Landmark Am. Ins. Co.*, No. 1:10-cv-00028-SPM-GRJ, 2011 WL 28448, *3 (N.D. Fla. Jan. 24, 2011). For example, "[t]he expert may be considered a normal fact witness before the expert has been retained then may become a non-testifying expert witness after the expert is retained." *Id.* In such a situation, communications with the expert while he acted as a fact witness are not protected. *See id.* (holding that a later-retained consulting expert's pre-retention communications with a party were not protected under Rule 26(b)(4)(D)). The Advisory Committee notes explains that experts "whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit" are not protected by this rule. Ad. Comm. Notes Fed. R. Civ. P. 26. Instead, "[s]uch an expert should be treated as an ordinary witness." *Id.*

Here, Dr. Zambelli-Weiner has identified two finite periods during which she claims to have been working as a consultant for Plaintiffs' counsel: (1) December 10, 2014, to approximately March 2015 and (2) March 29, 2017 to approximately November 2017. Zambelli-Weiner Supp. Aff. at ¶¶ 1, 3. Communications with Dr. Zambelli-Weiner outside of these periods are not protected from disclosure because she was not a consultant for Plaintiffs. *See In re Grassi*, No. 3:12-CV-00344-RCJ, 2013 WL 6623189, at *1 (D. Mass. Dec. 13, 2013), citing favorably, *Rocky Mountain Natural Gas v. Cooper Indus.*, 166 F.R.D. 481, 482 (D. Colo. 1996) (courts allow "a party to engage in discovery with respect to information consultive experts acquired prior to being

retained by an opposing party in anticipation of the underlying litigation"); *see also Eliasen v. Hamilton*, 111 F.R.D. 396, 403 (N.D. Ill. 1986) (explaining that "the purpose of [rule 26(b)(4)(D)] is to protect from discovery only those facts and opinions the expert has acquired and developed for the client who hired him in anticipation of litigation or for trial").

Through discovery directed to Dr. Zambelli-Weiner, it has come to light that Plaintiffs' counsel, in fact, communicated with her by email at least twice outside of her consulting periods, when she was working to publish her supposedly independent study on Zofran. ████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████[2] *See* Resp. to Notice of Deposition Duces Tecum at 4, attached as Ex. H. In addition, ████████████████

████████████████████████████████. Zambelli-Weiner Dep. Part I at 50:16-51:14 (Feb. 1, 2019), attached as Ex. I. None of these emails have been produced by Plaintiffs. Plaintiffs must make a full and complete production in response to GSK's RFP No. 6.

## III. Plaintiffs' Payments to the Zambelli-Weiner Authors Are "Relevant to Bias, Irrespective of Whether the Financial Relationship Was Related Specifically to Zofran"[3] and Should Be Produced (Interrogatory Nos. 1-2, RFP No. 2).

Plaintiffs' objections to fully disclosing the payments that their leadership attorneys made to TTi or the Zambelli-Weiner study authors should be overruled. Plaintiffs cannot hide behind

---

[2] She did not offer that detailed disclosure in her article.

[3] Pls.' Memo. in Supp. of Pls.' Proposed Defendant Fact Sheet at 6, Apr. 8, 2016 (Doc. 205).

any prior stipulation. The information and documents sought by GSK are relevant, and nothing in Rule 26 prevents their disclosure.

### A.     The parties' stipulation as to testifying experts is irrelevant.

At the outset of depositions of testifying expert witnesses, the parties agreed not to seek production of invoices and documentation of the payments made to the testifying expert witnesses. Instead, the parties agreed to accept disclosure of the total amount of the expert's compensation for work related to Zofran. Non-testifying consultants were never discussed as part of this agreement, and Plaintiffs cannot credibly argue that the stipulation somehow covers Plaintiffs' payments to TTi and/or the Zambelli-Weiner authors, which, due in large part to Plaintiffs' obfuscation, have only come to light in the past seven weeks. Their objection invoking this stipulation is frivolous and should be ignored.

### B.     Plaintiffs' non-specific objection citing the "scope of permissible discovery" is improper and unfounded.

Plaintiffs' generic objections to Interrogatory Nos. 1 and 2 and RFP No. 2 should be considered waived. Federal Rule of Civil Procedure 33(b)(4) is clear: "The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Plaintiffs' claim that the interrogatories "exceed[] the scope of permissible discovery under Federal Rule of Civil Procedure 26" is hardly the specificity required in a proper objection, as Rule 26 includes multiple subparts on "General Provisions Governing Discovery." Plaintiffs provide no explanation as to how Rule 26 supports their refusal to answer, and there is no good cause to excuse this disregard of their obligations in properly responding to discovery.

10

Even giving Plaintiffs the benefit of the doubt, and assuming that they intended to assert a relevance objection, it is baseless. Plaintiffs' choice to limit their response to payments specifically related to Zofran is not only unjustifiable in this situation, but it is irreconcilable with the position they took at the outset of this litigation and the standard that they fought to impose on GSK. As the parties negotiated the Defendant Fact Sheet (DFS) for GSK to complete in each and every case, Plaintiffs asked GSK to identify all consulting relationships with any treating healthcare provider identified by any plaintiff, including any payments made, regardless of whether the consulting relationships or payments related to Zofran. Pls.' Memo. in Supp. of Pls.' Proposed Defendant Fact Sheet at 6, Apr. 8, 2016 (Doc. 205). They argued that "[c]onsultants for pharmaceutical companies tend to be loyal and may have unfair biases in favor of the company regardless of the subject matter of the financial relationship. Limiting this information to specifically Zofran-only consultants could result in concealing information as to biases." *Id.* at 7. The Court accepted Plaintiffs' position as to this part of the DFS (*see* MDL Order No. 12 [Doc. 253-1]), and GSK has since completed hundreds of DFSs without limiting its searches to consulting relationships and payments specifically related to Zofran. Now, when it comes to their own payments and consulting relationships, Plaintiffs take the complete opposite position.

If Plaintiffs can justify requiring GSK to search for any payments it may have made to any number of treating healthcare providers that each of the 400+ plaintiffs in this MDL have identified, without date limitations, regardless of whether the payments related specifically to Zofran, the same should be true for the payments Plaintiffs' Leadership Attorneys made to TTi or the Zambelli-Weiner authors. What is good for the goose is good for the gander. Moreover, unlike the DFSs that GSK has completed, GSK's interrogatories to Plaintiffs seek a narrow set of facts

11

and documents that are limited to a discrete set of parties (TTi and the five study authors) and are confined to the last five years.

The court in *In re Welding Fume Product Liability Litigation* recognized the necessity of disclosing information relating to the identities of consulting experts, including payments made to them, when the consulting experts' scientific literature was being used at trial. *In re Welding Fume Prod. Liab. Litig.*, 534 F. Supp. 2d 761 (N.D. Ohio 2008). Indeed, the court observed the very real potential for prejudice:

> First, … authors may be of the impression that future payments could be forthcoming if the science they generate favors the position of the potential payors. Second, and more important, it is at least possible that the consultation would have the effect of coloring the views of the scientist, rendering the ultimate opinions less than objective.

*Id.* at 770-71. The same concerns have materialized here. Information about payments made to TTi and the Zambelli-Weiner authors will shed light on their potential bias, regardless of whether the payments were specifically earmarked as Zofran-related payments. Further, Plaintiffs' counsel has represented both that "Plaintiffs' Leadership Attorneys paid $210,000 as financial support relating to" Dr. Zambelli-Weiner's study and that they "did absolutely nothing to directly financially support the study or pay anything in support of the study." *Compare* Pls.' Mar. 2019 Resp., No. 1, *with* March 5, 2019, Tr. at 12:19-21, attached as Ex. J. The only point that is clear in these contrary representations is that seeing the actual billing statements and invoices is necessary.

## IV.    Even if Protected Under Rule 26(b)(3) or 26(b)(4)(D), the Circumstances Justify the Production of Written Agreements with the Zambelli-Weiner Authors.

Plaintiffs' objections to producing written agreements or consulting arrangements between Plaintiffs' Leadership Attorneys and TTi or the Zambelli-Weiner authors should be overruled. Even if Plaintiffs could satisfy their burden of showing that the rules protect the documents from

disclosure,[4] the circumstances warrant production here because of Plaintiffs' and Dr. Zambelli-Weiner's irreconcilable representations regarding the critical issue of their so-called consulting relationship. Plaintiffs cite Rule 26(b)(3)(A), which provides:

> (A)    *Documents and Tangible Things.* Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> (i) they are otherwise discoverable under Rule 26(b)(1); and
>
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Plaintiffs also rely on Rule 26(b)(4)(D), which provides certain protections for non-testifying consultants:

> (D)    *Expert Employed Only for Trial Preparation.* Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:
>
> (i) as provided in Rule 35(b); or
>
> (ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

On its face, Rule 26(b)(4)(D) applies to "interrogatories or deposition," while GSK seeks written agreements or consulting arrangements through a request for production directed to

---

[4] The party asserting protection for work product or non-testifying experts bears the burden of establishing that it applies. *See In re PolyMedica Corp. Sec. Litig.*, 235 F.R.D. at 31 ("This Court noted in *In re Grand Jury Subpoena* that 'the party asserting an applicable privilege has the burden of establishing that it applies' and that the privilege's applicability must be demonstrated by a fair preponderance of the evidence. While that case addressed the work-product doctrine and Rule 26(b)(3), the same standard ought to apply to the protection of non-testifying experts under [Rule 26(b)(4)(D)].") (citations omitted).

Plaintiffs' counsel. But even assuming that Plaintiffs can adequately demonstrate that the documents GSK seeks warrant protection as materials prepared in anticipation of trial (Rule 26(b)(3)) or as "facts known or opinions held by" a consulting expert (Rule 26(b)(4)(D)), the exceptions of both rules would apply.

The facts about Dr. Zambelli-Weiner's study and Plaintiffs' involvement have been a persistently moving target. Dr. Zambelli-Weiner first averred under oath that she had "not been retained as an expert witness by any party in this case." Jan. 9, 2019 Aff. of Dr. Zambelli-Weiner at ¶ 5 (Doc. 1272), Ex. C. She acknowledged receiving funds from Plaintiffs' attorneys, which she claimed was for "unrelated work" (*id.* at ¶ 8) ███████████████████████████ (Zambelli-Weiner Dep. Part I at 138:6-141:3, Ex. I). The story changed when Plaintiffs stated, in their interrogatory responses, that "Plaintiffs' Leadership Attorneys paid $210,000 as financial support relating to" Dr. Zambelli-Weiner's study. *See* Pls.' Mar. 2019 Resp., No. 1, Ex. G. Then, curiously, at the March 5, 2019, status conference, Plaintiffs told the Court that they "did absolutely nothing to directly financially support the study or *pay anything in support of the study*." March 5, 2019, Tr. at 12:19-21, Ex. J. There is no way to get to the truth on this important issue without seeing the agreements themselves.

## V. Plaintiffs Waived Any Protection as to Written Materials Presented or Prepared in Connection with the Mass Torts Made Perfect Conference.

Plaintiffs' objection to producing written materials from the Mass Torts Made Perfect conference should be overruled. Even if such materials fell within Rules 26(b)(3) and 26(b)(4)(D), any protection would be waived. Waiver of work product protection occurs by "disclosing material in a way inconsistent with keeping it from an adversary." *Blattman v. Scaramellino*, 891 F.3d 1, 5 (1st Cir. 2018); *see also Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 377-78 (5th Cir.

14

2010) (Protection for work product and for non-testifying consultants can be waived if disclosure "has substantially increased the opportunities for potential adversaries to obtain the information.").

Here, the materials GSK seeks were those presented or prepared in connection with the "Zofran Litigation Update" presented by Plaintiffs' Co-Lead Counsel and Dr. Zambelli-Weiner at the Mass Torts Made Perfect conference in October 2015. The annual conferences are marketed as "the largest gatherings of mass torts attorneys in the world with over 1000 participants from 500 law firms." *See* Mass Torts Made Perfect, available at: https://mtmp.com/registration/. Registration is open to all attorneys, exhibitors, sponsors, legal assistants, and employees of companies engaged in providing services to the legal profession. *See id.* Indeed, Dr. Zambelli-Weiner considered her participation in the Mass Torts Made Perfect conference to be a business development opportunity. Zambelli-Weiner Dep. Part I at 108:2-109:1, Ex. I.

There is no justification for protecting written materials presented or prepared in connection with a public conference attended by over a thousand people. Plaintiffs' counsel's use of such materials at this type of widely attended conference underscores the fact that they never meant to keep the materials to themselves; the materials were disclosed in a way inconsistent with keeping it from an adversary. Further, written materials related to this conference are critical to understanding Dr. Zambelli-Weiner's claimed independence during the time leading up to her Zofran study, and it is impractical, if not impossible, to obtain these materials created by Plaintiffs' counsel through alternative sources. GSK sought these materials from Dr. Zambelli-Weiner, who, subject to objections, stated that she was not in possession of any presentation materials or handouts from the conference. *See* Feb. 15, 2019 Letter to Eva Canaan, Ex. L to GSK's Mot. to Compel Dr. Zambelli-Weiner, No. 15 (Doc. 1389-12). In the next several weeks, the Court will

consider the admissibility of Plaintiffs' experts; every one of these experts with a causation opinion considered and relied on Dr. Zambelli-Weiner's study. The requested materials should be produced without further delay so that these important facts can be considered.

## **CONCLUSION**

The Court should grant GSK's Motion to Compel and order Plaintiffs to fully respond to No. 6 of GSK's Aug. 2018 RFPs and Interrogatory Nos. 1-2 and RFP Nos. 1-3 of GSK's Jan. 2019 Interrogatories and RFPs.

Dated: March 19, 2019

Respectfully submitted,

*/s/ Jennifer Stonecipher Hill*
Madeleine M. McDonough
Jennifer M. Stevenson
Jennifer Stonecipher Hill
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
mmcdonough@shb.com
jstevenson@shb.com
jshill@shb.com
*Admitted pro hac vice*

Mark D. Seltzer (BBO # 556341)
Brain K. French (BBO # 637856)
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110
Telephone: 617-345-1000
Facsimile: 617-345-1300
mseltzer@nixonpeabody.com
bfrench@nixonpeabody.com

George W. Vien (BBO # 547411)
DONNELLY, CONROY & GELHAAR LLP
260 Franklin Street, Suite 1600
Boston, MA 02110
Telephone: 617-720-2880
Facsimile: 617-720-3554
gwv@dcglaw.com

Attorneys for Defendant GlaxoSmithKline LLC

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent via first class mail to those identified as non-registered participants.

/s/ Jennifer Stonecipher Hill
Jennifer Stonecipher Hill