## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **IN RE: ZOFRAN® (ONDANSETRON) PRODUCTS LIABILITY LITIGATION** | MDL No. 1:15-md-02657-FDS<br><br>FILED UNDER SEAL |

### NON-PARTY WITNESS APRIL ZAMBELLI-WEINER, PH.D.'S OPPOSITION TO GSK'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Non-Party April Zambelli-Weiner, Ph.D., by and through her undersigned counsel, Eric W. Gunderson and Davis, Agnor, Rapaport & Skalny, LLC, submits the following points and authorities in opposition to Defendant GlaxoSmithKline LLC's ("GSK") motion seeking to compel Dr. Zambelli-Weiner to produce certain documents:

### I.  OVERVIEW

GSK has moved to compel Dr. Zambelli-Weiner to produce documents in response to various documents requests made by GSK in connection with her deposition.  However, GSK fails to mention to this Court that it never actually served her with a subpoena commanding her to produce the documents it now seeks to compel her to produce.  Accordingly, in failing to serve Dr. Zambelli-Weiner with a subpoena commanding the requested documents GSK has failed to comply with the Court's rules in seeking this document discovery from her, and, thus, there is no legal basis for this Court to compel her to produce the requested documents.

Notwithstanding this lack of legal basis for an order compelling the requested production, Dr. Zambelli-Weiner respectfully submits that GSK's request for an order compelling her to produce the requested documents should be denied on its merits.  GSK attempts to make the argument that the additional documents now being sought from Dr. Zambelli-Weiner are needed

to further explore the accusation that she engaged in research fraud in connection with the Zofran Study and that the PSC influenced that effort. However, given the subsequent sworn and uncontroverted deposition testimony of both Dr. Zambelli-Weiner and her research partner, Dr. Russ Kirby, those accusations have proven to be completely unfounded. This Court, then, should reject GSK's continued reliance on these now unfounded and unsubstantiated accusations in its effort to compel even more discovery from her and other non-party witnesses.

In addition, aside from the fact that GSK's premise for seeking additional documents from Dr. Zambelli-Weiner has proven to be unfounded and no longer warrants any further discovery from this non-party witness, Dr. Zambelli-Weiner's stated responses and objections to the particular document requests at issue were appropriate and should be upheld.

For all of these reasons, and as more fully explained below, GSK's Motion should be denied and costs should be awarded to Dr. Zambelli-Weiner.

## II. ARGUMENT

### A.    GSK Did Not Serve Dr. Zambelli-Weiner With a Subpoena Commanding Production of Any of the Documents It Now Seeks to Compel Her to Produce.

GSK's motion to compel is based on the contention that GSK served Dr. Zambelli-Weiner with document requests in connection with her deposition and that her objections to those requests are without merit. Yet, GSK fails to point out to this Court the critical fact that it never actually served her with a subpoena commanding her to produce the documents it now seeks to compel her to produce. As this Court is likely well-aware, pursuant to Rule 45, in order to command a non-party witness to produce documents a party must serve that non-party witness with a subpoena commanding such production. *See* Fed. R. Civ. P. 45; *Greenburg v. United States*, 1990 U.S. Dist. LEXIS 12091 *4 (D. Mass. 1990) ("When seeking document from nonparties, a litigant must

proceed according to Fed. R. Civ. P. 45 allowing depositions of witnesses."); *see also Highland Tank & Mfg. Co. v. PS Int'l, Inc.*, 227 F.R.D. 374, 379 (W.D. Pa. 2005) ("Rule 45 is the only discovery method whereby information may be obtained from a nonparty to the suit."); *Blazek v. Capital Recovery Assocs., Inc.*, 222 F.R.D. 360, 361 (E.D. Wisc. 2004) ("[A]ny person may be required to produce documents…  If the person is not a party to the litigation, the party seeking such discovery must utilize a subpoena to compel such discovery."); *Cuthbertson v. Excel Indus.*, 179 F.R.D. 599, 602 (D. Ka. 1998) ("Generally, the court acquires jurisdiction over non-parties during the discovery process by the issuance and service of a subpoena upon the person."). Here, GSK did not do that.

On February 8, 2019, prior to the second day of Dr. Zambelli-Weiner's deposition, GSK sent her counsel a Notice of Continued Deposition that contained in the body of the Notice 19 new document requests, along with a general request that any responsive documents be produced by February 15, 2019 – one week prior to her scheduled deposition on February 22, 2019. (See Email from Eva Canaan, Esq., dated Feb 8, 2019, attached hereto as **Exhibit A**).  However, no subpoena accompanied the Notice.  GSK, most likely well-aware of this failure to comply with the procedural rules, does not even attach to its Motion to Compel the Notice of Deposition, and fails to even re-state in its Motion the actual document requests that are the subject of its motion.  GSK even titles its motion "Motion to Compel Dr. Zambelli-Weiner to Produce Documents In Compliance With the Court's Prior Orders," yet there are no prior Orders of this Court – not even a subpoena – that commanded Dr. Zambelli-Weiner to produce the requested documents.

Suffice to say that in failing to serve Dr. Zambelli-Weiner with a subpoena commanding the requested documents GSK has failed to comply with the Court's rules in seeking this document discovery from Dr. Zambelli-Weiner, and, thus, there is no legal basis for this Court to compel Dr.

Zambelli-Weiner to produce the requested documents. *See Harco National Insurance Co. v. Sleegers Engineering, Inc.*, 2014 U.S. Dist. LEXIS 150201 at *11-12 (E.D. Mich. 2014) (denying motion to compel where party did not serve the non-party with a subpoena seeking the requested discovery); *Cuthbertson*, 179 F.R.D. at 602 (denying motion to compel where party failed to serve non-party witness with subpoena thus failing to take necessary steps to assure court's jurisdiction over the person).  For this reason alone GSK's Motion to Compel should be denied.

Moreover, given that Dr. Zambelli-Weiner has had to incur the unnecessary cost of having to respond to this legally-baseless Motion, she respectfully requests that pursuant to Rule 37(a)(5)(B) GSK be ordered to reimburse her for the costs and attorney's fees she has incurred in having to defend and oppose this Motion.

> **B.      GSK's Request for an Order Compelling Dr. Zambelli-Weiner to Produce Documents Is Premised on an Accusation of Research Fraud That Has Proven Unfounded By Subsequent Deposition Testimony and Is Being Made In the Face of Absolutely No Evidence of Any Influence By The PSC on the Zofran Study.**

GSK spends a good deal of effort in its supporting memorandum attempting to make the argument that the additional documents now being sought from Dr. Zambelli-Weiner are needed to further explore the accusation that she engaged in research fraud in connection with the Zofran Study and that the PSC influenced that effort (See GSK's Memo., pp. 6-9).  However, given the subsequent sworn and uncontroverted deposition testimony of both Dr. Zambelli-Wiener and her research partner, Dr. Russ Kirby, that accusation has proven unfounded.  Not only did Dr. Zambelli-Weiner and Dr. Kirby explain away the particular issues concerning the Zofran Study that GSK was pointing to as the basis for its accusation of research fraud, but after 14 hours of questioning of the Study's authors and having obtained numerous documents from both of them, there is absolutely no evidence that the PSC had any influence on the Study.  Therefore, even if

this Court were to consider GSK's request to compel Dr. Zambelli-Weiner to produce the requested documents despite not having served her with a subpoena, Dr. Zambelli-Weiner respectfully submits that this Court should reject GSK's continued reliance on these now unfounded and unsubstantiated accusations in its effort to compel even more discovery from her and other non-party witnesses.

### 1.      GSK's Continued Accusation of Research Fraud Is Unfounded.

GSK makes essentially two claims in support of its accusation that the Zofran Study was the result of improper and unethical research tactics: ███████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████. During the course of many hours of very direct questioning of Dr. Zambelli-Weiner and Dr. Kirby regarding both of these issues (in fact questioning on these two issues took up the vast majority of the time spent deposing these witnesses), both Dr. Zambelli-Weiner and Dr. Kirby provided uncontroverted explanations for both of these claimed criticisms of the Study and in doing so explained away any notion of unethical research fraud.

In particular, as to the claim that ████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████. Plaintiffs, in the Memorandum submitted in support of their recently filed Cross-Motion for Protective Order to Preclude Further Discovery Concerning the Weiner/Kirby Independent Scientific Study, provided citations and summary of Dr. Zambelli-Weiner's and Dr. Kirby's deposition testimony on this issue (see PEC's Memo., pp. 11-14), and therefore it is unnecessary

to re-cite that testimony here.  Dr. Zambelli-Weiner incorporates here those citations and the arguments made by Plaintiffs on this same issue.

As for the claim that ████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████████████████████████.  Again, Plaintiffs set forth in detail the deposition testimony and explanations provided by both Dr. Zambelli-Weiner and Dr. Kirby on this issue, and therefore Dr. Zambelli-Weiner simply incorporates herein the deposition citations and arguments made by Plaintiffs in their supporting Memorandum. (See PEC's Memo., pp. 14-21).

Again, this Court should reject GSK's continued reliance on the unfounded and unsubstantiated accusation of research fraud in its effort to compel even more discovery from Dr. Zambelli-Weiner.[1]

## 2.    GSK's Claim That the PSC Influenced the Study Is Also Unfounded.

As this Court likely recalls, despite its concerns about giving GSK a "free shot" at attacking

---

[1]   In support of its unsubstantiated claims of research fraud, GSK also misrepresents two matters that concerned Dr. Zambelli-Weiner's deposition that warrant clarification here. ████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████████████████████.

████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████.

the underlying methodology of the Zofran Study by permitting it to depose the study's authors, the Court nonetheless permitted GSK to depose Dr. Zambelli-Weiner regarding her work in connection with the Zofran Study in order to allow GSK to discover to what extent, if any, the PSC had influence over the Study by virtue of the consulting relationship one of the PSC firms had with Dr. Zambelli-Weiner as a consulting expert.  The fact is that at this point after 14 hours of deposition testimony and the production of numerous documents concerning the work that led up to the Study, there is zero evidence of any influence by the PSC on the Study.  In fact, the only evidence is the opposite – the PSC had no influence whatsoever.  Again, the Plaintiffs cited the deposition testimony and other evidence reflecting the lack of any influence over the Study, and so Dr. Zambelli-Weiner incorporates those citations and arguments here. (See PEC's Memo., pp. 8-11).[2]

Therefore, given the uncontroverted evidence in the record, it is plainly improper for GSK to continue to espouse and rely upon this unfounded claim of influence to seek additional document discovery.  This Court, then, should reject GSK's continued reliance on this unsubstantiated accusation in its effort to compel even more discovery from Dr. Zambelli-Weiner.

### C.      Dr. Zambelli-Weiner's Objections to the Document Requests Are Valid and Should Be Upheld.

Notwithstanding the fact that GSK's premise for seeking additional documents from Dr. Zambelli-Weiner has proven to be unfounded and no longer warrants any further discovery of this third-party witness, Dr. Zambelli-Weiner's stated responses and objections to the document requests at issue were appropriate, complete, and should be upheld.

---

[2] It is also important to note that Dr. Kirby, who had no consulting relationship with any of the Plaintiff's law firms, was the co-author to the Study and fully stands behind the way the Study was designed, conducted, and published. (See Kirby Depo., pp. 307:17-309:14; 360:21-363:11, attached to Pl's Memo. In Support of Cross-Motion for Protective Order as Exhibit 6).

1.     **Requests That Seek Documents Beyond the Scope of the Court's January 18, 2019 Order or Are Otherwise Not Proportional to the Needs of the Case.**

On January 18, 2019, this Court ordered that GSK was permitted to depose Dr. Zambelli-Weiner to discover relevant information involving, but not necessarily limited to, any relationships she has had with any of the Plaintiff's counsel and whether any effect such relationships may have had on her Zofran Study. The Court, however, clearly excluded from this discovery the substance of any research she conducted not related to Zofran exposure and risk, *i.e.* the Zofran Study. Moreover, during the February 1, 2019, conference call with the Court in the middle of Dr. Zambelli-Weiner's deposition, the Court instructed the parties that GSK was permitted to explore "within reasonable bounds" whether any outside influence by Plaintiff's counsel impacted the Study, such as did the Study change at any point prior to publication or was the design and methodology not in accordance with professional standards. (See Status Conference Tr., pp. 9-10, GSK's Exhibit D).

In addition, in general with respect to any requested discovery, in particular discovery of non-party witnesses, the federal rules impose a limit on discovery that is not proportional to the needs of the case when considering the lack of value such evidence may have to the issues in the case in comparison to the burden responding to such discovery has on the non-party witness. *See* Rule 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely

8

benefit."); *United Therapeutics Corp. v. Watson Labs.*, 200 F. Supp. 3d 272, 276-277 (D. Mass. 2016) (denying motion to compel non-party witness to produce documents where burden imposed on non-party witness to produce its confidential documents was greater than the limited value the documents would have on the movant's case).

Here, Dr. Zambelli-Weiner objected to several of the requests for these reasons:

Request No. 4:  All DOCUMENTS concerning any analyses or data relating to Zofran and birth defects that were not reported in the Study.

**Response:      Dr. Zambelli-Weiner objects to the Request on the grounds that it seeks documents outside the scope of the Court's January 18, 2019 Order; and that the Request is not proportional to the needs of the case considering the lack of relevance such information has to discovering what influence, if any, Dr. Zambelli-Weiner's financial arrangements with Plaintiff's counsel had on the Study and the additional time, burden and expense that would be imposed on this non-party witness in having to respond to such request.**

Request No. 5:  All communications between you or any other employee of TTi, and Truven Health Analytics and/or Truven Health MarketScan regarding the Study.

**Response:      Dr. Zambelli-Weiner objects to the Request on the grounds that it seeks documents outside the scope of the Court's January 18, 2019 Order; and that the Request is not proportional to the needs of the case considering the lack of relevance such information has to discovering what influence, if any, Dr. Zambelli-Weiner's financial arrangements with Plaintiff's counsel had on the Study and the additional time, burden and expense that would be imposed on this non-party witness in having to respond to such request.**

Request No. 6:  All DOCUMENTS concerning any analyses or data relating to other antiemetics and birth defects that were analyzed pursuant to the "Antiemetic Study Proposed Protocol."

**Response:      Dr. Zambelli-Weiner objects to the Request on the grounds that it seeks documents outside the scope of the Court's January 18, 2019 Order; and that the Request is not proportional to the needs of the case considering the lack of relevance such information has to discovering what influence, if any, Dr. Zambelli-Weiner's financial arrangements with Plaintiff's counsel had on the Study and the additional time, burden and expense that would be imposed on this non-party witness in having to respond to such request.**

<u>Request No. 7:</u>  Unredacted copies of all DOCUMENTS produced on January 25, 2019, bates numbered AZW-1 through AZW-28.

**<u>Response:</u>      Dr. Zambelli-Weiner objects to the Request per the Court's January 18, 2019 Order that prohibited disclosure of research and work that was not related to ondansetron exposure and risk.   Without waiving this objection, Dr. Zambelli-Weiner notes that unredacted copies of AZW 3-4 were contained in the Kirby production (Kirby 367-368).**

<u>Request No. 9:</u>  All COMMUNICATIONS between you and Dr. Russell Kirby, or any other Study author, regarding the Study.

**<u>Response:</u>      Dr. Zambelli-Weiner objects to the Request on the grounds that it seeks documents outside the scope of the Court's January 18, 2019 Order; and that the Request is not proportional to the needs of the case considering the lack of relevance such information has to discovering what influence, if any, Dr. Zambelli-Weiner's financial arrangements with Plaintiff's counsel had on the Study and the additional time, burden and expense that would be imposed on this non-party witness in having to respond to such request.**

<u>Request No. 10:</u>  All COMMUNICATIONS between you and Dr. Russell Kirby regarding Zofran and birth defects.

**<u>Response:</u>      Dr. Zambelli-Weiner objects to the Request on the grounds that it seeks documents outside the scope of the Court's January 18, 2019 Order; and that the Request is not proportional to the needs of the case considering the lack of relevance such information has to discovering what influence, if any, Dr. Zambelli-Weiner's financial arrangements with Plaintiff's counsel had on the Study and the additional time, burden and expense that would be imposed on this non-party witness in having to respond to such request.**

<u>Request No. 11:</u>  All COMMUNICATIONS between you and Dr. Russell Kirby regarding the "Antiemetic Study Proposed Protocol."

**<u>Response:</u>      Dr. Zambelli-Weiner objects to the Request on the grounds that it seeks documents outside the scope of the Court's January 18, 2019 Order; and that the Request is not proportional to the needs of the case considering the lack of relevance such information has to discovering what influence, if any, Dr. Zambelli-Weiner's financial arrangements with Plaintiff's counsel had on the Study and the additional time, burden and expense that would be imposed on this non-party witness in having to respond to such request.**

Request No. 12:  All COMMUNICATIONS between you and Dr. Russell Kirby regarding the deposition subpoenas in the Zofran birth defects litigation.

**Response:**       **Dr. Zambelli-Weiner objects to the Request on the grounds that it seeks documents outside the scope of the Court's January 18, 2019 Order; and that the Request is not proportional to the needs of the case considering the lack of relevance such information has to discovering what influence, if any, Dr. Zambelli-Weiner's financial arrangements with Plaintiff's counsel had on the Study and the additional time, burden and expense that would be imposed on this non-party witness in having to respond to such request.**

Dr. Zambelli-Weiner submits that these objections should be upheld.  In particular, documents concerning communications with Truven (Request 5) and the request for all communications between her and her co-author Dr. Kirby (Requests 9-12) are not at all proportional to the needs of the case given the lack of relevance such information would have on discovering what influence, if any, the PSC had on the Study.   Dr. Zambelli-Weiner's communications with Truven, of course, would not reveal anything relevant to whether the PSC influenced the Study.   Moreover, in seeking these communications GSK relies again on misrepresenting the fact that ██████████████████████████████████████ ████████████████████████████████ – a claim, as explained above, has been proven to be unfounded given the testimony of both Dr. Zambelli-Weiner and Dr. Kirby.  As for all communications between Dr. Kirby and Dr. Zambelli-Weiner, both parties were subjected to 7 hours of deposition questioning about the study's design, the methodologies used, the underlying data considered, and the published results.  Not to mention numerous e-mail communications between the two have already been produced.  There is no reason proportional to the needs of the case to further burden either of these non-party witnesses with the obligation to search, gather, review and produce the requested communications.

In addition, the request to produce analyses and data regarding other antiemetics that Dr.

Zambelli-Weiner has studied (Requests 6-7) seek documents outside the scope of the Court's January 18 Order that clearly prohibited discovery of Dr. Zambelli-Weiner's research on drugs other than Zofran.

## 2.    Requests That Seek Privileged Communications.

At the beginning and during various stages of Dr. Zambelli-Weiner's deposition, Plaintiff's counsel made it clear that it would object – and in fact did object – to various lines of questioning that sought to elicit the substance of any communications Dr. Zambelli-Weiner had with Plaintiff's counsel to the extent it concerned matters within the scope of her consulting relationship with one of the Plaintiff's firms.  Dr. Zambelli-Weiner, in the interest of preserving those objections based on privilege, followed the instruction of her counsel not to answer those questions.

Similarly, when faced with various document requests that sought the production of written communications with Plaintiff's counsel not directly related to the Zofran Study, Dr. Zambelli-Weiner objected to producing those documents in the interest of preserving Plaintiff's objection based on privilege.  She responded as follows:

Request No. 2:  All COMMUNICATIONS between you or any other TTi employee and Plaintiffs' counsel regarding Zofran and birth defects.

**Response:    Per the objection made by Plaintiff's counsel at her deposition, Dr. Weiner objects to producing the requested documents on the grounds that such communications are privileged communications with a consulting expert witness and are not discoverable.**

**Without waiving this objection, Dr. Weiner is not aware of any such Communications between any other employee of TTi and Plaintiffs' counsel.**

Request No. 8: All COMMUNICATIONS between you and Robert Jenner, or any other Plaintiffs' counsel, on, or after, November 12, 2018.

**Response:    Per the objection made by Plaintiff's counsel at her deposition, Dr. Zambelli-Weiner objects to producing the requested documents on the grounds that such communications are privileged communications with a consulting expert witness**

**and are not discoverable.**

Request No. 13:  All retention and/or consulting agreements between TTi and Grant & Eisenhofer.

**Response:      Per the objection made by Plaintiff's counsel at her deposition, Dr. Weiner objects to producing the requested documents on the grounds that such communications are privileged communications with a consulting expert witness and are not discoverable.**

Request No. 14:  All invoices and billing records concerning consulting services rendered by TTi to Grant & Eisenhofer.

**Response:      Per the objection made by Plaintiff's counsel at her deposition, Dr. Weiner objects to producing the requested documents on the grounds that such communications are privileged communications with a consulting expert witness and are not discoverable.**

Dr. Zambelli-Weiner again requests that the Court uphold these objections to the extent they seek the production of privileged communications and documents containing privileged information.

Dr. Zambelli-Weiner does point out that while she is objecting to producing communications with Plaintiff's counsel in general, including communications regarding Zofran in general, she did produce to GSK, per its request, all communications with Plaintiff's counsel concerning the Zofran Study.

### 3.      Requests That Seek Documents Concerning the Peer Review Conducted by the NEJM and Journal of Reproductive Toxicology.

As established by case law in this federal district and elsewhere, documents concerning the peer review process conducted by scientific journals are afforded substantial protection from discovery, particularly communications between the journal and the authors and comments of peer reviewers. *See In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 249 F.R.D. 8, 13-15 (D. Mass. 2008) (denying motion to compel scientific journal to produce communications

with authors and peer reviewer comments); *In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 2008 U.S. Dist. LEXIS 21098 *9-10 (N.D. Ill. 2008) (same); *see In re NHL Players' Concussion Injury Litig.*, 2017 U.S. Dist. LEXIS 63465 (D. Minn. 2017) (despite permitting some discovery from scientific research facility as to the underlying data used in its research regarding CTE and head trauma, the Court denied the defendant's motion to compel the research facility to produce documents concerning its published peer review articles including peer reviewer comments and responses); *Shoemake v. Eli Lilly & Co.*, 2015 U.S. Dist. LEXIS 56873, *9 (denying motion to compel production of a peer review comments); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, 2011 U.S. Dist. LEXIS 132056, *9 (denying motion to compel journal's peer review comments); *see also Solarex Corp. v. Arco Solar, Inc.*, 121 F.R.D. 163, 173-174 (denying motion to compel identity of peer reviewer of scientific journal where balancing test weighed in favor of maintaining confidentiality of the journal's peer review process particularly where party's request for such discovery as a fishing expedition to seek support for a claim of fraud which up to that point was not substantiated by the evidence).

Accordingly, for this reason Dr. Zambelli-Weiner objected to requests that sought communications between her and the NEJM and the Journal of Reproductive Toxicology and requests that sought peer reviewer comments.

Request No. 17: All email correspondence and/or other communications between you, any other TTi employee, or Study co-author and the New England Journal of Medicine concerning the basis for rejection of the study titled "First Trimester Ondansetron Exposure and Risk of Structural Birth Defects."

**Response:      Dr. Zambelli-Weiner objects to the Request on the grounds that it seeks documents outside the scope of the Court's January 18, 2019 Order; and that the Request is not proportional to the needs of the case considering the lack of relevance such information has to discovering what influence, if any, Dr. Zambelli-Weiner's financial arrangements with Plaintiff's counsel had on the Study and the additional time, burden and expense that would be imposed on this non-party witness in having to respond to such request.**

**In addition, Dr. Zambelli-Weiner objects to this Request on the grounds that it seeks confidential and privileged peer review documents of the New England Journal of Medicine.**

Request No. 19:  All peer-review comments received concerning the Study.

**Response:**     **Dr. Zambelli-Weiner objects to the Request on the grounds that it seeks documents outside the scope of the Court's January 18, 2019 Order, as clarified by the Court during the conference with the Court on February 1, 2019; and that the Request is not proportional to the needs of the case considering the lack of relevance such information has to discovering what influence, if any, Dr. Zambelli-Weiner's financial arrangements with Plaintiff's counsel had on the Study and the additional time, burden and expense that would be imposed on this non-party witness in having to respond to such request.**

**In addition, Dr. Zambelli-Weiner objects to this Request on the grounds that it seeks confidential and privileged peer review documents of the Journal of Reproductive Toxicology.**

Based on the precedent set by the Court in *In Re Bextra*, *supra*, and the other cited cases, Dr. Zambelli-Weiner requests that the Court uphold these objections particularly considering that the need for such information is greatly outweighed in this case by the interests of preserving the confidentiality of the peer review process and protecting against the well-founded and well-reasoned concerns acknowledged by the courts in invading that process.

### III.   CONCLUSION

After its claims of research fraud and influence by the PSC on the Zofran Study were proven to be completely unfounded given the sworn deposition testimony of Dr. Zambelli-Weiner and Dr. Kirby and the documents they have produced to date, GSK is attempting to further use and abuse the non-party discovery process to engage in a witch hunt to seek support for these unsubstantiated and disproven claims.  In fact, perhaps most revealing of GSK's tactic to abuse the opportunity granted by this Court to engage in reasonable discovery of the Zofran Study were

comments by GSK's counsel during the first day of Dr. Zambelli-Weiner's deposition where counsel reveled the true reason for wanting to depose Dr. Zambelli-Weiner – not to discover what influence the PSC may have had with respect to the Study, but to simply find a way to undermine the Study whether the PSC had any influence on it or not (see Zambelli-Weiner Depo., pp. 234:9-237:1, Pl's Exhibit 5).  This was the very concern this Court had expressed in granting the deposition in the first place.  Moreover, if not previously the case, certainly at this point the discovery directed at Dr. Zambelli-Weiner – and the other non-party witnesses for that matter – has turned from an effort to discover what influence, if any, the PSC may have had on the Zofran Study to an effort to attempt to unduly harass and intimidate a scientific researcher conducting important research of one of its pharmaceutical drugs.  Dr. Zambelli-Weiner, who finds herself in the middle of this abuse of discovery, respectfully requests that the Court prohibit GSK from continuing down this path any further.

Respectfully Submitted,

DAVIS, AGNOR, RAPAPORT & SKALNY, LLC

/s/ Eric W. Gunderson
Eric W. Gunderson [Pro Hac Vice]
10211 Wincopin Circle, Suite 600
Columbia, Maryland  21044
410-995-5800 / 410-309-6161 Fax
E-mail: egunderson@darslaw.com
Counsel for Non-Party April Zambelli-Weiner

16

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 22nd day of March, 2019, this document was filed through the Court's CM/ECF system and will be sent electronically to the registered participants identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated on the NEF as non-registered participants on February 6, 2019.

/s/ Eric W. Gunderson
Eric W. Gunderson