## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **IN RE: ZOFRAN® (ONDANSETRON) PRODUCTS LIABILITY LITIGATION** | MDL No. 1:15-md-2657-FDS |
| **This Document Relates To:** | |
| **All Actions** | |

## GSK'S MEMORANDUM IN SUPPORT OF ITS EMERGENCY MOTION TO QUASH THE PARKER SUBPOENA AND DEPOSITION NOTICE, OR IN THE ALTERNATIVE, MOTION FOR PROTECTIVE ORDER

Plaintiffs seek to depose Dr. Samantha Parker on August 22, 2019 and issued a subpoena on April 8, 2019 commanding her to attend the deposition and produce documents. The Court should grant GSK's Motion to Quash for two independent reasons.

First, Plaintiffs disregarded Rule 45's notice requirements and then sought to benefit from that conduct. Despite Rule 45's requirement that Plaintiffs notify all parties *prior to* the service of a subpoena, Plaintiffs failed to notify GSK of the subpoena and Dr. Parker's deposition for nearly four months. Plaintiffs failed to do so despite multiple appearances before the Court at monthly status conferences where the parties discussed upcoming depositions and discovery. During that time, they engaged in unilateral, *ex parte* discussions with counsel for the witness regarding the scope of the subpoena, document requests, and the deposition, depriving GSK of the opportunity to object to the subpoena. Responsive documents have now been produced, and a deposition was unilaterally scheduled for August 22, 2019—a date on which GSK is not available.

Second, Dr. Parker is a neutral, third-party scientist. As the Court recalls from the parties' *Daubert* briefing and the three-day *Daubert* argument, Dr. Parker is the lead author and co-author on the 2018 publication entitled "Ondansetron for Treatment of Nausea and Vomiting of

Pregnancy and the Risk of Specific Birth Defects." This publication reported on the results of two epidemiology studies—one from the National Birth Defects Prevention Study and one from the Slone Birth Defects Study—assessing Zofran and specific birth defects. Unlike Dr. Zambelli-Weiner, neither of these epidemiology studies were financially supported by GSK. Thus, Dr. Parker fits squarely within the type of witness for whom this Court has already noted a deposition would be "troublesome." Nov. 14, 2018 Hr'g Tr. at 14-15. Moreover, there is no compelling need for this deposition. Plaintiffs' experts have already espoused that Parker is a well-designed study, and they have no criticism of it. And Plaintiffs' experts have testified that they rely only on published epidemiology studies; they do not consider deposition testimony or even other documents produced by study authors.

Plaintiffs' failure to abide by Rule 45's notice requirements (and their unexplained silence over this issue for four months) forces GSK to file this emergency motion. The deposition is unnecessary and unwarranted. Regardless, there is no reason it must proceed on August 22, given GSK's counsel's unavailability, the lack of a trial setting, and Plaintiffs' recently requested extension of deadlines.

In the alternative, to protect Dr. Parker from undue harassment, the Court should enter an order admonishing Plaintiffs' counsel to adhere to this Court's rules, conduct themselves professionally, and allow the witness to fully explain her answers.

## FACTUAL BACKGROUND

On or around April 9, 2019, Plaintiffs' counsel served a subpoena ("the subpoena") on Dr. Samantha Parker. *See* April. 9, 2019 Subpoena, attached as Ex. 1. The parties were in front of the Court for a status conference just one day before, on April 8, 2019. Despite updates on expert issues and third-parties, Plaintiffs did not mention their intention to subpoena Dr. Parker.

The subpoena commanded Dr. Parker to produce documents and appear for deposition on May 9, 2019. *Id.* The face of the subpoena, which was issued on behalf of "MDL Plaintiffs," stated:

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

*Id.* (emphasis in original). Plaintiffs did not serve a notice or copy of the subpoena prior to its service.

A Notice of Deposition was served on Dr. Parker along with the subpoena. *See* Apr. 9, 2019 Notice of Deposition, attached as Ex. 2. The Notice of Deposition referenced the subpoena and stated that the MDL Plaintiffs would take Dr. Parker's deposition on May 9, 2019. Appended to the Notice of Deposition was a certificate of service, certifying that the Notice was "filed with the Court through the CM/ECF system" and would be "sent electronically to all registered participants." *Id*. Plaintiffs did not file the April 9, 2019 Notice of Deposition as represented. Nor did Plaintiffs serve the Notice of Deposition on GSK.

On April 18, Plaintiffs' counsel and Dr. Parker's counsel, Mr. Larry Elswit, had a teleconference regarding the subpoena. *See* April 19, 2019 letter from Mr. Elswit to Mr. Nabers, attached as Ex. 3. At this time, GSK was still unaware of the existence of the subpoena and was not invited or made aware of the teleconference.

On April 19, 2019, Mr. Elswit sent a letter to Mr. Nabers regarding the subpoena. The letter noted that Dr. Parker was "8+ months pregnant" and "unable to attend or participate remotely in a deposition that is currently scheduled for May 9, 2019." *Id*. Mr. Elswit suggested that the deposition be rescheduled for "a date in late August." *Id.* Mr. Elswit also objected to the documents requested by the subpoena, noting that the subpoena "risks creating a chilling effect on the

willingness of both study subject and their families to participate in research" and "would also have a chilling effect on researchers who are actively working to develop a deeper understanding of the mechanisms of various pharmaceutical products and their potential impact on pregnant women." *Id.* Mr. Elswit's letter recapped his April 19, 2019 conversation with Mr. Nabers, stating that he was "prepared to open a dialogue with you in order to find common ground, and you have agreed to review Exhibit A to the subpoena and propose a less invasive request for information." *Id*. Plaintiffs' counsel did not inform GSK that (1) they were negotiating a different deposition date in late August for Dr. Parker; (2) that Dr. Parker's counsel had objected to the document request; or (3) that Plaintiffs' counsel had agreed to serve a narrowed request for documents. Nor did GSK have any reason to inquire about these subjects. At this time, GSK was still unaware that the subpoena had even been served, let alone that Plaintiffs' counsel were unilaterally negotiating its scope.

On April 24, 2019, the first day of the *Daubert* hearing, Mr. Nabers and Dr. Parker's counsel apparently reconvened by phone to discuss the subpoena. *See* May 30, 2019 email from Mr. Elswit to Mr. Nabors (referencing April 24 call), attached as Ex. 4. During the teleconference, Mr. Nabers negotiated the scope of the forthcoming document production with Dr. Parker's counsel and agreed to "modify" the request. *Id.* Despite ongoing discussions regarding the scope of the subpoena, Plaintiffs' counsel still failed to serve it on GSK or otherwise inform GSK or the Court that it had been served, even as the parties discussed the Parker study in detail at the three-day *Daubert* hearing on April 24-26.

On May 8, 2019, the parties again appeared before the Court for a monthly status conference. Again, Plaintiffs never mentioned the subpoena or their efforts to depose Dr. Parker.

On May 30, 2019, Dr. Parker produced documents to Plaintiffs in response to the narrowed subpoena. *Id*. Dr. Parker's counsel also responded to questions raised by the document requests and by Mr. Nabers. For example, Dr. Parker's counsel informed Mr. Nabers that "GSK's representation (that you shared with me) is accurate – neither ondansetron study received support from GSK." *Id.* Dr. Parker's counsel also responded to a request for communications with GSK "regarding the subject matter of the Study, before, during, or after the study completion date," noting "My clients cannot recall any communications with GSK regarding the ondansetron analysis." *Id.* Plaintiffs' counsel did not inform GSK that Dr. Parker had produced documents and information in response to the subpoena. Indeed, at this time, Plaintiffs had still not informed GSK of the subpoena's existence.

On June 11, 2019, the parties were in front of the Court for a monthly status conference. Again, Plaintiffs did not mention the subpoena. Plaintiffs likewise made no reference to the subpoena or ongoing negotiations and discussions related to it at the July 10, 2019 status conference.

On July 10, 2019, the Court vacated the September 16, 2019 trial setting to allow time to decide GSK's Renewed Motion for Summary Judgment on Federal Preemption. *See* July 15, 2019 Minute Order, Doc. 1575. On August 5, 2019, the Court held a telephone conference with the parties. *See* August 6, 2019 Minute Order, Doc. 1622. The Court did so because Plaintiffs' counsel wanted to extend the time for Plaintiffs to file their opposition to GSK's renewed motion and first decide Plaintiffs' motion to strike. The Court granted Plaintiffs' request. The Court also previously adjusted the deadlines for Plaintiffs to respond to GSK's case-specific summary judgment and *Daubert* motions. June 25, 2019 MDL Order No. 34, Doc. 1542.

On August 5, 2019, Plaintiffs' counsel filed on ECF a "First Amended Notice of Deposition," noticing Dr. Parker's deposition for August 22, 2019, "pursuant to the Subpoena served upon you." First Amended Notice of Deposition, Doc. 1621. *This was the first time GSK received any notice of the subpoena Plaintiffs served four months earlier.* Plaintiffs' counsel did not consult with GSK regarding the deposition date, or even inform GSK that they were negotiating a deposition with Dr. Parker.

After receiving Plaintiffs' August 5, 2019 filing, GSK phoned counsel for Plaintiffs and Dr. Parker regarding the subpoena. Mr. Elswit informed GSK counsel that he had already agreed to produce Dr. Parker for a one-day deposition on August 22, 2019, and to allow Plaintiffs seven hours of deposition time.

GSK likewise phoned Mr. Nabers regarding the subpoena. Mr. Nabers had no explanation for why GSK was not informed of the subpoena prior to its service as required under the Rules, other than his understanding that it was the MDL Plaintiffs' "responsibility." Nor did he offer any explanation for why Plaintiffs failed to inform GSK of the subpoena at any point during the prior four months as Plaintiffs were unilaterally negotiating the scope of the document production and deposition. GSK requested that Plaintiffs withdraw the subpoena and cancel the deposition, but Plaintiffs refused. Plaintiffs' counsel would not even agree to move the deposition date, unless GSK agreed not to oppose the deposition, necessitating this emergency motion.

## ARGUMENT

I. **The Court Should Quash the Parker Subpoena and the August 22 Deposition Due to Plaintiffs' Failure to Comply with Rule 45.**

A. **Plaintiffs Have Still Failed to Comply With Rule 45.**

The Court can and should quash the Parker subpoena and the August 22 deposition based on Plaintiffs' failure to comply with Rule 45. The rule provides that parties "must" serve a notice

and a copy of the subpoena to all parties *before* serving a subpoena. Rule 45(a)(4) ("If the subpoena commands the production of documents . . . then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party."); *see also Pagan-Colon v. Walgreens*, 264 F.R.D. 25, 28 (D.P.R. 2010) ("Courts have held that the notice has to be made prior to the service of the subpoena on the non-party.").

Numerous courts have quashed subpoenas when, as here, a party failed to satisfy Rule 45's notice requirement. *See Firefighters' Institute for Radical Equality ex rel. Anderson v. City of St. Louis*, 220 F.3d 898, 903 (8th Cir. 2000) (holding that district court properly quashed subpoena for lack of notice); *Haviland v. Catholic Health Initiatives-Iowa, Corp.*, 692 F. Supp. 2d 1040, 1049 (S.D. Iowa 2010) (failure to give prior notice of subpoena justified quashing subpoena); *Murphy v. Board of Educ. of Rochester City Sch. Dist.*, 196 F.R.D. 220, 221–22 (W.D.N.Y. 2000) (explaining that, in response to issuance of subpoenas without notice, "the [c]ourt quashed all of the twelve offending subpoenas").[1]

As in these cases, here, Plaintiffs served a subpoena on Dr. Parker months ago, on April 9, 2019. *See* Apr. 9, 2019 Subpoena, Ex. 1. To this day, Plaintiffs have failed to provide GSK with a copy of the subpoena as required by Rule 45(a).[2] This alone provides a sufficient basis to quash the subpoena and cancel the August 22 deposition.

---

[1] *See also Solais v. Vesuvio's II Pizza & Grill, Inc*., No. 1:15CV227, 2015 WL 6110859, at *15 (M.D.N.C. Oct. 16, 2015) ("Because Defendants failed to comply with Rule 45(a)(4)'s prior notice requirement, the Court will quash the nonparty subpoenas.") (collecting cases); *F.D.I.C. v. Kaplan*, No. 8:14–CV–2484–T–27JSS, 2015 WL 4744361, at *2 (M.D. Fla. Aug. 10, 2015) (failure to give prior notice of subpoena justified quashing subpoena); *Mirra v. Jordan*, No. 13 Civ. 5519(AT), 2014 WL 2511020, at *3 (S.D.N.Y. May 28, 2014) (quashing subpoenas for failure to comply with Rule 45(a)(4) on the ground that "the notice provision is mandatory and failure to abide by this requirement constitutes grounds to quash a subpoena").

[2] GSK received a copy of the subpoena from Dr. Parker's counsel.

## B. Plaintiffs Misrepresented that the Subpoena Had Been Served.

In addition to failing to give notice, Plaintiffs inaccurately represented to Dr. Parker that prior notice had in fact been given to all parties, both in the subpoena and Notice of Deposition. *See id*.; Apr. 9, 2019 Notice of Deposition, Ex. 2.[3] Anyone reading these documents would have no reason not to take them on their face and could reasonably assume GSK was already informed of the subpoena, but was simply uninterested. Had Dr. Parker not been more than eight months pregnant when the subpoena was served, she may well have been deposed by Plaintiffs on May 9, 2019, without GSK ever receiving any notice.

## C. Plaintiffs' Conduct Related to the Parker Subpoena Has Prejudiced GSK.

Plaintiffs' months-long *ex parte* discussions with Dr. Parker's counsel have prejudiced GSK. Plaintiffs served the initial subpoena on Dr. Parker on April 9, 2019. Since then, Plaintiffs have had numerous opportunities to inform GSK and the Court of the subpoena's existence and the desire to depose Dr. Parker, but they chose not to do so. This failure to disclose occurred over a four-month period, including three status conferences with the Court. This failure also occurred during the three-day *Daubert* hearing on April 24-26 where Plaintiffs made no mention of the subpoena or a deposition of Dr. Parker even though the parties specifically and extensively discussed the Parker study. Instead, Plaintiffs engaged in stealthy, one-sided negotiations with Dr. Parker's counsel regarding the scope of the document production and upcoming deposition. Remarkably, Plaintiffs issued the undisclosed subpoena and had discussions about its scope with Dr. Parker's counsel after the Court advised the parties that deposing scientists in the field is "troublesome." Nov. 14, 2018 Hr'g Tr. at 14-15, attached as Ex. 5.

---

[3] The facts belie any claim that Plaintiffs' failure to serve the subpoena was inadvertent. If Plaintiffs truly believed that had properly notified GSK of the subpoena prior to its service, then certainly they would have informed GSK that the deposition was not proceeding as noticed on May 9, 2019 and would be rescheduled in late August. That conversation never occurred.

Plaintiffs' *ex parte* discussions deprived GSK of the opportunity to meaningfully participate in discussions regarding the appropriateness of the subpoena and the scope of the document requests and deposition. Had GSK known about the subpoena at the outset, GSK certainly would have shared with Dr. Parker's counsel this Court's comments regarding its view that depositions of truly independent scientists like Dr. Parker are "troublesome." GSK also would have made Dr. Parker's counsel aware of Mr. Nabers's conduct at recent depositions (*see* section III), including his treatment of third-party witnesses and counsel defending depositions. As it stands now, Dr. Parker's counsel has already produced documents to Plaintiffs and agreed to: (1) produce his client for deposition on August 22; and (2) allow Plaintiffs seven hours of deposition time. Lead science counsel for GSK will be out of the country and is not available on August 22. Of course, GSK is entitled to equal deposition time in the event this Court permits the deposition.

GSK is also prejudiced because it never knew that a subpoena seeking documents had been served in April and, therefore, did not have the opportunity to object prior to the production of documents. *See Pagan-Colon*, 264 F.R.D. at 28 (The purpose of the notice requirement is to "afford all parties the opportunity to object to the production of documents."); *Potomac Elec. Power Co. v. Elec. Motor Supply, Inc.*, 190 F.R.D. 372, 380 (D. Md. 1999) ("When a party fails to receive prior notice of the information sought from a non-party, a party is deprived of its greatest safeguard under the Rule, that is, the ability to object to the release of the information prior to disclosure."). Compounding the prejudice, Plaintiffs have had had unilateral access to the produced documents for more than a month—since May 30. During this time, GSK has filed a supplemental *Daubert* brief related to Drs. Sadler and Abdulla, which discussed opinions in their supplemental reports related to Dr. Parker's publication. Plaintiffs responded to that brief and, all the while, failed to mention that they were in possession of documents related to Dr. Parker's two studies.

In sum, Plaintiffs failed to comply with Rule 45's notice requirement and represented in the certificate of service that they had done so. Responsive documents have now been produced, prejudicing GSK and depriving it of the ability to object to the production. Worse still, in the more than four months since the subpoena was served, Plaintiffs' counsel unilaterally negotiated the scope of the document production and unilaterally scheduled Dr. Parker' deposition, securing seven hours of deposition questioning time on a date when GSK is not available. For all of these reasons, the subpoena should be quashed and the August 22 deposition cancelled.

II. **The Parker Subpoena and the August 22 Deposition Should Be Quashed Because Dr. Parker Is a Neutral Scientist with No Connection to the Litigation.**

Even if Plaintiffs had complied with their Rule 45 obligations, the subpoena should still be quashed and the deposition cancelled. As this Court has repeatedly made clear, depositions of neutral, third party scientists are not appropriate. First, on November 14, 2018, the Court said:

> I think as a general proposition, the idea of parties from either side deposing scientists who are neither testifying experts nor consulting experts but simply scientists in the field to understand their methodology or the science or whatever is troublesome, not because it's completely irrelevant because it probably is not but because it is both a little far afield and because the potential for harassment of busy scientists I think is considerable.

Nov. 14, 2018 Status Conf. Tr. at 14-15, Ex. 5. About three weeks later, the Court reiterated this view: "Normally, as I indicated at the last hearing, discovery is not permitted on underlying articles or science on which experts rely. If that methodology is wrong in some way or biased in some way, normally the way to attack that is through the experts . . . ." Dec. 7, 2018 Hr'g Tr. at 39, attached as Ex. 6. The Court repeated this view for a third time at the status conference in January of 2019: "Again, I'm not sure my views have changed that as a general proposition if it's someone who is simply a research scientist, I don't know that a deposition is in order, but if it's someone

who may have financial ties to one side or the other, that that, you know, creates a different situation." Jan. 16, 2019 Hr'g Tr. at 11-12, attached as Ex. 7.

All of the facts show Dr. Parker falls squarely within the category of scientists for whom a deposition should not be permitted. Unlike Dr. Zambelli-Weiner, Dr. Parker has not been paid by any of the parties. As GSK stated in its written discovery responses, GSK has not provided any payment, compensation, grant, or donation to Dr. Parker. *See* GSK's Answers, Resp., and Obj. to PSC's Apr. 2019 Interrog. and Req. for Prod., attached as Ex. 8. She identifies no conflicts of interest or financial disclosures in her publication. *See* Parker SE, et al., Ondansetron for Treatment of Nausea and Vomiting of Pregnancy and the Risk of Specific Birth Defects, Obstet. Gynecology 132(2):385-394 (2018), attached as Ex. 9. Instead, these two epidemiology studies in the Parker publication were supported by agreements with the Birth Defects Branch of the Centers for Disease Control and Prevention, the Massachusetts Department of Public Health or the National Institutes of Health. *See id*. Dr. Parker's counsel reiterated this fact to Plaintiffs' counsel, noting: "GSK's representation (that you shared with me) is accurate - neither ondansetron study received support from GSK." May 30, 2019 email from Mr. Elswit to Mr. Nabers, Ex. 4. Her counsel further shared, "My clients cannot recall any communications with GSK regarding the ondansetron analysis . . ." *Id.* Because there is no reason to believe that Dr. Parker is not a neutral, third-party researcher with no connection to this litigation, the subpoena should be quashed.

Nor can Plaintiffs legitimately argue that they need documents or deposition testimony from Dr. Parker related to the two studies at issue. Their epidemiologist has already conceded that the studies were well-designed, well-conducted, and well-powered. Louik Dep. at 239:17-20; 226:8-11; 227:15-17, attached as Ex. 10. Drs. Abdulla and Sadler, two of Plaintiffs' other experts, made similar concessions. May 30, 2019 Sadler Dep. at 221:21-222:15 (both Parker studies are

well-designed and well-conducted and he is not offering the opinion that any of analyses are underpowered), attached as Ex. 11; May 2, 2019 Abdulla Dep. at 115:10-15 (study was adequate and competent); 90:2-10 (no disagreement with study methodology), attached as Ex. 12. And their experts have also testified that they do not consider deposition testimony material to their opinions. Indeed, Drs. Sadler and Abdulla testified that they had not read Dr. Zambelli-Weiner's deposition and had no plans to do so. May 2, 2019 Abdulla Dep. at 179:25-184:17, Ex. 12; May 30, 2019 Sadler Dep. at 250:3-12, Ex. 11. They also had not seen the documents produced by Dr. Kirby that refuted Plaintiffs' causation claims, and they had no plans and no desire to review those documents. May 2, 2019 Abdulla Dep. at 179:25-184:17, Ex. 12; May 30, 2019 Sadler Dep. at 251:24-252:19; 272:1-25; Ex. 11. If Dr. Zambelli-Weiner's deposition and documents were not material to Plaintiffs' experts, notwithstanding the significant issues surrounding that study, certainly Plaintiffs and their experts do not need to review deposition testimony or documents regarding studies their experts already acknowledged were well done.

Even if Plaintiffs were to cure their failure to comply with Rule 45, there is no need to reschedule the deposition of Dr. Parker on these facts. The Court should grant GSK's Motion and quash the Subpoena and related First Amended Notice of Deposition.

### III.   In the Alternative, the Court Should Grant a Protective Order, Admonishing Counsel to Conduct Themselves Professionally.

Should the deposition be permitted to occur, GSK has concerns that counsel planning to take the deposition will employ aggressive and discourteous tactics that are particularly inappropriate for a third-party witness who has no personal connection to this litigation. Rule 26(c) permits the Court to grant a protective order in matters relating to depositions for good cause to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). Courts across the country, including those within the First Circuit,

have readily issued protective orders and sanctions against counsel for abusive deposition conduct. *See McDonough v. Keniston,* 188 F.R.D. 22, 26 (D.N.H. 1998) (imposing sanctions for improper coaching, speaking objections, and instructions not to answer); *Heinrichs v. Marshall & Stevens Inc.,* 921 F.2d 418 (2d Cir. 1990) (upholding district court's protective order and imposition of sanctions when attorney's deposition behavior was "not merely discourteous, offensive and unprofessional, but in some instances, incomprehensibly vicious."); *Purser v. Trauner, Cohen & Thomas, L.L.P.*, No. 1:07-CV-0395-JOF, 2007 WL 4458455, at *7 (N.D. Ga. Dec. 14, 2007) (granting protective order when counsel's behavior "resembles that of a schoolyard bully taunting his classmates").[4] Egregious behavior censured by courts includes argumentative questions,[5]

---

[4] *See also, Deville v. Givuadan Fragrances Corp*., 419 F. App'x. 201, 207 (3rd Cir. 2011) (upholding sanctions for abusive, unprofessional and obstructive conduct); *Layne Christensen Co. v. Bro-Tech Corp,* 2011 WL 6934112 at *2, 4 (D. Kan. 2011) (imposing sanctions when improperly instructed a witness not to answer which conduct "impeded, frustrated and delayed the fair examination of the deponent"); *Specht v. Google, Inc.*, 268 F.R.D. 596, 598-599, 603 (N.D. Ill. 2010) (imposing sanctions for speaking objections that obstructed the deposition); *Cordova v. United States*, No. Civ.05 563 JB/LFG, 2006 WL 4109659, at *3 (D.N.M. July 30, 2006) (awarding sanctions based on a lawyer's deposition coaching because "it became impossible to know if [a witness's] answers emanated from her own line of reasoning or whether she adopted [the] lawyer's reasoning from listening to his objections"); *Morales v. Zondo, Inc*., 204 F.R.D. 50, 54 (S.D.N.Y. 2001) (sanctioning counsel who "appeared on more than 85 percent of pages of deposition transcript with statements other than objections as to form"); *Freeman v. Schointuck*, 192 F.R.D. 187, 190 (D. Md. 2000) (lawyer sanctioned for insulting, antagonistic, and sarcastic comments directed at opposing counsel and witness); *Van Pilsum v. Iowa State University*, 152 F.R.D. 179, 181 (S.D. Iowa 1993) (sanctioning a lawyer who had "no justification … for monopoliz[ing] 20% of his client's deposition" and whose objections "were for the most part groundless and were only disputatious grandstanding").

[5] *See Freeman*, 192 F.R.D. at 190 (D. Md. 2000) (sanctions for issuing insulting, antagonistic, and sarcastic comments).

antagonistic and sarcastic comments,[6] threats,[7] excessive and disruptive objections,[8] and inappropriate instructions to the witness not to answer.[9]

During the recent deposition of Dr. Sadler, Plaintiffs' counsel, Mr. Nabers, directed rude and disparaging remarks at GSK counsel throughout her examination of the witness, at one point stating that counsel was "terrible." May 30, 2019 Sadler Dep. at 123:3, Ex. 11; *see also* id at 35:2-36:8; 66:15-68:3; 215:15-:20; 328:13-329:5; 373:7-16. Mr. Nabers has unfortunately engaged in similar behavior at other expert depositions. *See, e.g.*, Sep. 25, 2018 Sadler Dep. at 137:21-138:3; 242:17-243:2, attached as Ex. 13; Sep. 27, 2018 Levin Dep. at 91:2-17, attached as Ex. 14; May 2, 2019 Abdulla Dep. at 203:6-19; 322:20-323:8, Ex. 12; May 15, 2019 Lassetter Dep. at 142:1-143:3, attached as Ex. 15.

Worse still, this behavior has not been limited to witnesses with a connection to this litigation. In the deposition of Dr. Krista Huybrechts, a third-party witness and a study author (like Dr. Parker), Mr. Nabers on several occasions refused to allow Dr. Huybrechts to complete her answers and repeatedly cut her off.

> MR. NABERS:   If ASDs in preterm kids were not included in your study, then that could theoretically bias the relative risk towards the null, correct?
> MR. SHEEHAN: Objection.
> DR. HUYBRECHTS:   And I disagree. And this is where I think I would like to explain why we use very strict outcome definition. Can I?
> MR. NABERS:   No.

---

[6] *See id.* (inappropriate conduct includes accusing the witness of "feigned ignorance" and "get[ting] an A plus" in being evasive, and for engaging in a continuous stream of sarcastic comments suggesting that the witness was lying).

[7] *See id.* (inappropriate threatening comments include "if you want to continue with your antics, then you will see another motion").

[8] *Morales*, 204 F.R.D. at 54 (sanctioning counsel who "appeared on more than 85 percent of pages of deposition transcript with statements other than objections as to form"); Fed. R. Civ. P. 30(d), 1993 committee's note subd. d ("an excessive number of unnecessary objections may itself constitute sanctionable conduct").

[9] *See Layne Christensen Co.*, 2011 WL 6934112 at *2, 4 (imposing sanctions when improperly instructed a witness not to answer); *Cordova*, 2006 WL 4109659, at *3 (counsel "frustrated the fair examination of [the witness]" by repeatedly instructing him not to answer for a reason not covered by Rule 30).

Feb. 21, 2019 Huybrechts Dep. at 122:23-123:7, attached as Ex. 16.

----

Dr. HUYBRECHTS: I disagree, and I look forward to the opportunity to explain why I disagree.
MR. NABERS: Okay.
MR. SHEEHAN: Why don't you just let her explain, Scott?
MR. NABERS: Not interested.
*Id.* at 126:3-9.

----

MR. NABERS: And if you exclude heart defect cases from your analysis, that can bias your relative risk or finding towards the null, correct?
MR. SHEEHAN:  Objection.
DR. HUYBRECHTS: I do not agree.
MR. NABERS: You don't think that if you -- let me ask it this way.
DR. HUYBRECHTS:  If you would allow me to explain why high specificity is important, which I've tried a couple times, then we could avoid a lot of this.
MR. NABERS:  I don't want to avoid this.
*Id.* at 234:5-17.

Should the deposition be permitted to occur, the Court should intervene to protect this witness and the integrity of the judicial process, particularly for third parties with no personal or financial ties to this litigation. Given counsel's prior conduct, in this situation, the Court should admonish counsel to obey this Court's rules, conduct themselves professionally, and allow the witness to fully respond to the questions asked.

Dated: August 13, 2019

Respectfully submitted,

*/s/ Jennifer M. Stevenson*
Madeleine M. McDonough
Jennifer M. Stevenson
Jennifer Stonecipher Hill
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
mmcdonough@shb.com
jstevenson@shb.com
jshill@shb.com
*Admitted pro hac vice*

Attorneys for Defendant GlaxoSmithKline LLC

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent via first class mail to those identified as non-registered participants.

/s/ *Jennifer M. Stevenson*
Jennifer M. Stevenson