**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **IN RE: ZOFRAN® (ONDANSETRON) PRODUCTS LIABILITY LITIGATION** | MDL no. 1:15-md-2657-FDS<br><br>This document relates to:<br><br>All Parties |

**MDL PLAINTIFFS' MEMORANDUM IN RESPONSE TO**
**GSK'S EMERGENCY MOTION TO QUASH THE PARKER SUBPOENA AND**
**DEPOSITION NOTICE, OR IN THE ALTERNATIVE,**
**MOTION FOR PROTECTIVE ORDER**

Plaintiffs respectfully ask the Court to deny GSK's Emergency Motion to Quash the Parker Subpoena and Deposition Notice, or In the Alternative, Motion for Protective Order because Plaintiffs' counsel's inadvertent failure to serve the original deposition notice of Samantha Parker causes no harm or prejudice to GSK.

A.  FACTUAL BACKGROUND

1. MDL Plaintiffs issued a subpoena with the original notice of deposition on Samantha Parker, PhD., on April 9, 2019.  The subpoena was served on Dr. Parker on or about April 10, 2019.  *See Subpoena attached as Exhibit A.*

2. Dr. Samantha Parker is not a party to this suit.  Dr. Parker conducted a study, which was subsequently published in 2018, entitled *Ondansetron for Treatment of Nausea and Vomiting of Pregnancy and the Risk of Specific Birth Defects*.  GSK claims that this is a penultimate study on the issue of whether its drug, Zofran, caused the congenital birth defects suffered by the minor plaintiffs in this litigation.  GSK's other most relied upon study was the 2018 Huybrechts' study entitled, *Association of Maternal First-Trimester Ondansetron Use with*

1

*Cardiac Malformations and Oral Clefts in Offspring*, which leading author, Krista Huybrechts, was deposed in the Zofran litigation without GSK's objection.

3. On or about August 5, 2019, after communicating with Dr. Parker's counsel, the original notice of deposition was amended and served on all parties, including GSK. Pending this motion to quash, Dr. Parker is scheduled to be deposed on August 22, 2019.

4. On August 7, 2019 counsel for GSK, Thomas Sheehan, emailed MDL Plaintiffs' counsel, Scott Nabers, notifying him that they were surprised to learn on Monday, August 5th, that Dr. Parker was going to be deposed and that the Notice of Deposition and Subpoena for Dr. Parker was not served on GSK pursuant to FRCP 45. *See Email attached as Exhibit B*. In addition, Mr. Sheehan stated in his email that it is GSK's position that the deposition of Dr. Parker is unnecessary and unwarranted, and that GSK would file a motion to quash the deposition. *See Exhibit B*. The parties, through email, agreed to schedule a phone conference the following day to discuss these issues. In preparation for that phone conference, Plaintiffs' counsel made inquiry of local counsel in Boston and reviewed the original Deposition Notice and Subpoena and checked the ECF and learned for the first time that GSK had not been served with the documents.

5. On August 8, 2019 Plaintiffs' counsel had the phone call with GSK counsel to discuss Dr. Parker's deposition and the service issue. Scott Nabers informed Mr. Sheehan that he had made an inquiry and review of the documents and that a clerical error had occurred, and the documents had not been served on GSK. *See Exhibit C*. Mr. Nabers apologized for the error and explained he was unaware that GSK had not been served with the deposition notice and/or subpoena and that it was his understanding and belief all along that GSK had been served. Mr. Nabers offered to move the deposition back a few weeks into September to give GSK some

additional time. However, Mr. Sheehan informed Mr. Nabers that he had already spoken with counsel for Dr. Parker and he was not available to do the deposition until December due to his trial schedule. Mr. Nabers explained to Mr. Sheehan that moving the deposition to December was too late as the testimony would be needed for the bell weather trial in December. The call ended with Mr. Sheehan indicating that GSK would be filing a motion to quash the deposition.

6. On August 12, 2019, Plaintiffs counsel learned for the first time, through submission of a proposed Status Conference Agenda, that GSK intended to file an Emergency Motion to Quash the deposition of Dr. Parker and to have it heard by the Court at the monthly Zofran status conference on Aug. 14th, which left little time for this response.

7. Despite GSK's unwillingness to proceed with the deposition, Scott Nabers requested alternative dates from Dr. Parker's counsel in the hopes that GSK would be reasonable in resolving this discovery dispute without Court intervention. Unfortunately, counsel for Dr. Parker explained that if the deposition is pushed back, he will not be available to do the deposition until December, after the first trial begins in this litigation. *See Email attached as Exhibit D*. GSK's testifying expert witnesses are relying on this study to support their testimony at trial.

8. On August 9, 2019, Plaintiffs' counsel, Scott Nabers, sent an email to Dr. Parker's counsel to confirm that GSK had indeed received all documents responsive to the subpoena sent out by Plaintiffs. In follow up on August 9th, Dr. Parker's counsel's office responded back that on August 6th, GSK had been provided with a copy of the email and with the responsive documents that had been provided to Plaintiffs. *See Email attached as Exhibit E*. In spite of GSK's claims of prejudice, it will have been in possession of all responsive documents to the Parker subpoena for sixteen (16) days before the August 22nd deposition.

9. In preparation for Dr. Parker's deposition, Scott Nabers purchased non-refundable airfare and hotel accommodations, which he certainly would not have done had he known there was a service problem with the original deposition notice and subpoena for Dr. Parker. Dr. Parker has made a great deal of effort to respond to the production requests and incorporate a deposition into her schedule. Dr. Parker's counsel made arrangements and preparations to accommodate the deposition, as well. It would seem that with multiple law firms and lawyers representing GSK in the Zofran litigation, and with sixteen (16) days advanced notice of the deposition and responsive documents that GSK has not been truly prejudiced in this process.

10. MDL Plaintiffs would ask the Court to deny GSK's motion to quash and request for protective order and allow the deposition of Dr. Parker to proceed on August 22, 2019.

## B. ARGUMENT

*Dr. Samantha Parker's deposition is of paramount importance to the litigation.*

11. Dr. Parker is the first named author on an epidemiological publication entitled *Ondansetron for Treatment of Nausea and Vomiting of Pregnancy and the Risk of Specific Birth Defects* that is a seminal study that GSK and every one of its experts relies on to support their opinions on causation. Dr. Parker is also the designated "Corresponding Author," which means that all inquiries about the paper are to be directed to her.

12. The Parker paper is a study using data from 2 different databases, the NBDPS and the Slone BDS that investigates the issue of whether 1st trimester use of Zofran increases the risk of birth defects. The senior author on the paper is Dr. Allen Mitchell, who was involved in all aspects of the Parker study and who has been a paid consultant to GSK to the tune of some $439,000 in the past. *See Exhibit F*. Dr. Mitchell is the lead investigator for the Slone BDS, one of the databases used in the Parker study, and documents show that GSK has funded the Slone BDS.

4

*See Exhibit G.* In fact, Dr. Mitchell and Van Bennekom, also an author on Parker paper, disclosed in October 2017 in a published paper entitled, Tdap Vaccination Coverage During Pregnancy-Selected Sites, United States, 2006-2015 that the BDS of the Slone Epidemiology Center at Boston University had received funding from GSK during the previous 36 months during which the data was being analyzed and presented and the manuscript was being drafted for the Parker paper. *See Exhibit H.*

13. In addition, through discovery in this case Plaintiffs have discovered emails and documents between GSK and some of the authors on the Parker study that demonstrate both a working and professional relationship. *See Exhibit I.* As a result of these relationships GSK was able to communicate with the authors of the Parker paper concerning poster presentations made and requests to receive manuscripts and slides of the paper before it was published.

14. It was discovered from emails produced in this litigation that GSK tried to hire Dr. Allen Mitchell, senior author on the Parker study, to be a member of the Joint Safety Committee for Zofran at or around the same time that he was working on the Parker paper. *See Exhibit J.* Dr. Mitchell, as the senior author on the Parker study, has been a paid consultant to GSK as mentioned above.

15. As counsel for hundreds of children with birth defects in this litigation, attorneys owe their best efforts to advocate for justice for these families and the above evidence demonstrates GSK's influence with the authors, institutions and Slone database used for the Parker publication. Plaintiffs should be entitled to take Dr. Parker's deposition to discover and determine the impact and effect of GSK's extensive influence and funding on the Parker publication, which all GSK's experts rely heavily upon.

*Plaintiffs' counsel respectfully asks the Court not to delay this crucial deposition because of an unintentional failure to serve GSK with its original notice.*

16. Plaintiffs' counsel acknowledges that his office made an inadvertent clerical error in failing to notify GSK of the issued subpoena.  Respectfully, Plaintiffs' counsel asks the Court not to deny or delay Dr. Parker's essential deposition, but to allow it to go forward as scheduled due to the weight GSK gives this study in this litigation and the quickly approaching trial dates. Since August 5th, GSK intentionally delayed filing any motion to quash, which flies in the face of the "Emergency" motion before the Court.  Since August 6th, GSK possessed Dr. Parker's production of documents, which is not voluminous or too burdensome to review, especially for a robust national defense firm.

17. Thomas Sheehan, from his first email, was not interested in resolving this dispute without court action.  On August 8th, Plaintiffs' counsel asked Thomas Sheehan to participate in the deposition as scheduled, especially considering that GSK sends at least 4-5 attorneys to represent its interests at other, less important, depositions.  Thomas Sheehan denied the request.

18. On August 8th, Plaintiffs' counsel asked Thomas Sheehan to agree to delay Dr. Parker's deposition a few weeks, but Thomas Sheehan denied the request.

19. There was nothing Plaintiffs' counsel could do short of agreeing not to proceed with Dr. Parker's deposition to appease GSK's counsel.  It is evidently clear that GSK does not want Dr. Parker's deposition taken, despite the pivotal role her study plays in GSK's defense in this litigation.

*GSK does not have standing to challenge the subpoena because it does not affect a right or claim of privilege with respect to the materials subpoenaed, nor is there good cause to issue a protective order.*

20. Although a court may, on timely motion, quash or modify a subpoena to protect a person subject to or affected by the subpoena, this is not a case in which the Court should do so.  *See*

6

Fed.R.Civ.P. 45(c)(3). Likewise, this is not a case in which the Court should issue a protective order. *See* Fed.R.Civ.P. 26(c)(1).

21. The Court should deny GSK's motion to quash and request for a protective order for the following reasons:

    a. The subpoena does not require disclosing privileged or protected material that affects GSK. Fed.R.Civ.P. 45(c)(3)(A)(iii);

    b. The subpoena does not subject GSK to an undue burden. Fed.R.Civ.P. 45(c)(3)(A)(iv);

    c. The subpoena does not require disclosing a trade secret or other confidential information that affects GSK. Fed.R.Civ.P. 45(c)(3)(B)(i);

    d. The subpoena does not require disclosing an unretained expert's opinion or information that is unrelated to the case and not developed as a result of a party's request. Fed.R.Civ.P. 45(c)(3)(B)(ii);

    e. GSK has not met its burden of showing that there is good cause for a protective order; and

    f. Plaintiffs' examination is not being conducted in bad faith, nor is it unreasonable, especially considering the pivotal role Dr. Parker's study plays in GSK's defense of this litigation.

    C. RESPONSE TO CHARACTER ASSASSINATION BY GSK's COUNSEL

22. In my 28 years of service as an attorney, who has been on multiple PSC steering committees I have never been attacked in a manner like GSK has done in this motion. I have litigated against GSK since approximately 2006 beginning with the Paxil, Advair and Polygrip litigations and never have I been the subject of a motion like this. It astonishes me how callously some attorneys, as professionals, will try to assassinate someone's

character in order to get what they want. While I refuse to sling mud or demean opposing lawyers in court filings, I do want this Court to understand that I am a professional in all matters and that I stand by my actions in this litigation. I invite the Court to review the video footage of any deposition in this matter and see for himself what Plaintiffs' counsel at large has had to endure during depositions and outside of the courtroom. If the Court wants to entertain evidence of abuse by GSK and its lawyers, then I have plenty of evidence I can show in this litigation. However, for purposes of this motion I have attempted to avoid such degrading behavior and address the issues of the motion.

### D.  CONCLUSION

23.  For these reasons, Plaintiffs ask the Court to deny GSK's motion to quash and request for protective order and allow Dr. Samantha Parker's deposition to proceed on August 22, 2019.

Date: August 13, 2019                                  Respectfully Submitted,

/s/ *Scott Nabers*
J. Scott Nabers
Texas Bar Number: 14769250
NABERS LAW FIRM, PLLC
3737 Buffalo Speedway, Suite 1850
Houston, TX 77098
Telephone: (713) 422-1200
Facsimile: (713) 422-1210
snabers@naberslaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing ("NEF").

/s/ Scott Nabers
J. Scott Nabers