UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: ZOFRAN (ONDANSETRON) )<br>PRODUCTS LIABILITY LITIGATION )<br>                                                        )<br>                                                        )<br>_____)  | MDL No. 1:15-md-2657-FDS<br><br>This document relates to:<br>All Actions |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO
STRIKE EVIDENCE FROM GSK'S RENEWED MOTION FOR
SUMMARY JUDGMENT BASED ON PREEMPTION**

**I.    INTRODUCTION**

On May 17, 2018, this Court entered MDL Order 25, following up on prior scheduling orders and establishing the key remaining deadlines for this case. MDL Order 25 included a June 29, 2018 deadline for general science and liability discovery, along with a requirement to supplement discovery responses under Fed. R. Civ. P. Rule 26(e). This Court also set a deadline for GSK's motion on preemption for June 15, 2018. Likewise, GSK's expert disclosure deadline was set for August 6, 2018. With liability, science and expert discovery closed, the parties briefed and argued clear evidence preemption, and this Court denied GSK's Motion for Summary Judgment in February 2019 as well as GSK's Motion for Reconsideration. *See* Docs. 1325; 1452.

In light of the United States Supreme Court decision in *Merck Sharp & Dohme Corp. v. Albrecht*, 139 S.Ct. 1668, 1679 (2019) requiring that this Court (rather than a jury) decide the issue of "clear evidence" preemption, this Court permitted GSK to file a renewed motion for summary judgment. This Court also provided that Plaintiffs may file any necessary motion to strike relating to the renewed GSK motion.[1] *See* Doc. 1580. On July 18, GSK filed its renewed Motion for

---

[1] *See* MDL Order No. 35 (Doc. 1580) and the colloquy of this Court during the July 10, 2019 Status Conference allowing Plaintiffs to "file a motion to strike or otherwise preclude a party from offering information," and noting if Plaintiffs are "going to move to strike…I want to know what

Summary Judgment. With substantial and voluminous new evidence, new exhibits, and new expert reports—all of which could have and should have been produced within the prior deadlines—GSK threatens massive prejudice to the Plaintiffs and delay to this litigation. In short, GSK knew it could not chin the bar of preemption with the facts it produced at the Court-ordered deadlines in this case. So instead, once it was denied and once it had *Albrecht* as a pretext for change in circumstances, it piled together more than 100 new exhibits and dozens of new allegations in a continued effort to change this Court's prior ruling that GSK's *prior* submissions (or lack thereof) on summary judgment did not establish a case for preemption.

GSK's current submissions violate the Federal Rules and interpretive case law. If this Court were to entertain GSK's renewed motion with the benefit of this new evidence, it would signal that GSK is permitted to turn over new discovery in violation of Court orders establishing deadlines for production of evidence. And if that unfortunate outcome came to pass, Plaintiffs must be afforded the opportunity to conduct discovery relating to new documents and testimony. Unquestionably, that would result in extensive delay to the trial in this case and in massive costs to Plaintiffs.

With discovery closed and the parties precluded from producing new evidence bearing on regulatory or scientific issues, it was expected that GSK's renewed motion would be limited to the existing evidence in the case—evidence that the parties have had four years to develop. The renewed motion would ostensibly demonstrate that GSK fully informed the FDA of all material evidence bearing on whether Zofran poses a risk of fetal injury when administered to pregnant women. Instead, on July 18, GSK presented a renewed motion that introduced 143 exhibits, 101

---

we're talking about and why you think it's unfair." Tr. July 10, 2019 Status Conf. at 44:9–11; 48:9–11.

of which are new, spanning thousands of pages (as compared to 29 exhibits in its original motion for summary judgment on preemption); 54 pages of statements of fact (as compared to 9); and 242 paragraphs to its statements of fact (as compared to 40). GSK also presented four brand new declarations as part of its 101 new exhibits. GSK did not file a renewed motion; it filed a new motion full of new evidence and new expert opinions.

Plaintiffs are mindful that this Court wants to get it right given the weighty issue of clear evidence preemption and the nascent status of this litigation relative to *Albrecht*. Getting it right, however, would mean holding parties to the obligations of the Rules to produce discovery within deadlines assigned by the Court and to supplement when new discovery is *first* available. GSK chose not to do that and now wants to be rewarded for intentionally withholding evidence. In February of 2019, this Court pointed out GSK's failure to create a record sufficient to prevail on its affirmative burden in its first summary judgment motion. *Albrecht* left this Court as the fact finder; it did not permit GSK to create or submit new facts when those facts were long past due. And again, if this Court were to decide that "getting it right" is to open the door to this new evidence, then getting it right would likewise mean full opportunity to the Plaintiffs to conduct discovery relative to newly produced evidence. Of course, there is no scenario where Plaintiffs should bear the costs of GSK's dilatory conduct.

GSK claimed all along that clear evidence was exclusively a question for the Court to resolve (and not a jury), including submitting evidence in its first motion for summary judgment in support of that argument. GSK will now undoubtedly claim that its first summary judgment motion was resolved when it was uncertain whether the Supreme Court would deem that clear evidence preemption was a jury question. *Albrecht*, of course, made it clear that a trial court is now the finder of fact on this issue; *Albrecht* also made clear that the standard for clear evidence

preemption did not change (and hence the moniker remains). Accordingly, the evidence GSK now ushers in on the brink of trial in an effort to patch the holes identified by this Court in its earlier ruling is not only untimely, but also is harmful and unfairly prejudicial to Plaintiffs. There is no justification (in *Albrecht* or otherwise) to support GSK's bootstrapping of new evidence to its previously unsuccessful summary judgment record.

Plaintiffs, therefore, request that this Court strike all evidence that was not previously part of the preemption summary judgment record, including GSK's four new declarations, accompanying exhibits, and other exhibits totaling thousands of pages that this Court and Plaintiffs would have to review and analyze. Specifically, Plaintiffs seek to strike the four new declarations from Patrick Wier, Dena Hixon, Luise Rogg, and Gary Shaw, as well as the accompanying exhibits to those declarations. Plaintiffs also move for this Court to strike the remaining exhibits untethered to a declaration, but which GSK now seeks anew to introduce into the summary judgment record.

Preemption discovery closed more than a year ago; however, the essential question of clear evidence preemption has remained the same: would the FDA have found the four categories of Plaintiffs' evidence immaterial? GSK should not be permitted to create new evidence, and offer evidence previously available to it, in an attempt to generate a different answer from this Court on the very same question. This evidence must be struck as a matter of fairness and unfair prejudice to Plaintiffs.

## II.  FACTS

In MDL Orders Nos. 19 and 25—which followed this Court's denial of GSK's Motion to Dismiss All Claims on Preemption Grounds—this Court established that Phases 2 and 3 of discovery would entail, among other things, discovery on "preemption issues (that is, whether any FDA approval or other action preempts any or all of plaintiffs' claims)." *See* Docs. 458 and 1006.

4

This Court ordered that Phases 2–4 of discovery must finish by June 29, 2018. *See* Doc. 1006 at 2. In accordance with Rule 26(a)(2), MDL Order No. 25 also required GSK to disclose all experts by August 6, 2018. *Id.* at 5.

On July 2, 2018, with Phases 2–4 discovery complete, GSK filed its Motion for Summary Judgment Based on Preemption, in which it wrote: "The past two and a half years of discovery have afforded Plaintiffs ample opportunity to develop the facts in this case." Def. GSK's Mem. in Supp. of Its Mot. for Summary Judgment (Doc. 1067) at 27.

In February, this Court denied GSK's Motion, finding:

> GSK has not proved, based on the undisputed facts, either (1) that the CBE process was unavailable to it to make more substantial warnings concerning the ingestion of Zofran during pregnancy, or (2) that there is "clear evidence" that the FDA would not have approved a label including such warnings. Accordingly, GSK is not entitled to summary judgment in its favor based on an affirmative defense of federal preemption.

Mem. and Order on Def.'s Mot. for Summary Judgment Based on Federal Preemption (Doc. 1325) at 51. In its March Reply in Support of its Motion for Reconsideration, fully aware that the Supreme Court would be imminently ruling on whether clear evidence preemption was a jury question, GSK wrote:

> What is more, in this case, **there are no disputed historical facts necessary to resolve the case-dispositive issue of preemption**. The parties agree on the information that the FDA had, and did not have, when it made its labeling decisions." The only open question is whether four supposed defects (e.g., appropriately identifying but not attaching the full study data for duplicative animal studies performed in Japan) would have been material to the FDA's decision to reject the warning Plaintiffs say state law required.

GSK's Reply in Supp. of Motion for Reconsideration (Doc. 1403) at 2–3 (emphasis added). In May, the Supreme Court wrote in *Albrecht*:

> We do not further define *Wyeth*'s use of the words "clear evidence" in terms of evidentiary standards, such as "preponderance of the evidence" or "clear and convincing evidence" and so forth, because, as we shall discuss, *infra*, at 15–17,

5

courts should treat the critical question not as a matter of fact for a jury but as a matter of law for the judge to decide. And where that is so, the judge must simply ask himself or herself whether the relevant federal and state laws "irreconcilably conflic[t]."

*Albrecht*, 139 S.Ct. at 1679. Following the Supreme Court's decision, this Court vacated "relevant portions" of its previous Order, and permitted GSK to file a Renewed Motion for Summary Judgment to resolve this "question of law to be decided by the Court." Doc. 1580 at 1–2. GSK did so on July 18, 2019. With this filing, GSK included 143 exhibits, attempting to add thousands of pages of documents—some of which Plaintiffs had never been privy to—into the record.

## III. LAW

Federal Rule of Civil Procedure 26(a)(2)(A) requires that "a party must disclose to the other parties the identity of any [expert] witness it may use at trial to present evidence ...." Subsection (B) notes that "this disclosure must be accompanied by a written report--prepared and signed by the witness--if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." *Id.*[2] Subsection (D) requires that: "A party must make these disclosures at the times and in the sequence that the court orders." *Id.*

As this Court has previously written:

Rule 37(c)(1) provides that: "[a] party that without substantial justification fails to disclose information required by 26(a) ... is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion, any witness or information not so disclosed." Rule 37(c)(1) contemplates strict adherence to the discovery requirements; furthermore, the required sanction in the ordinary case is

---

[2] The report must also contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case. Fed. R. Civ. P. 26(a)(2)(B).

> mandatory preclusion of the untimely disclosed information. However, Rule 37(c)(1) contains a narrow escape hatch that allows courts to admit untimely evidence if the proponent's failure to reveal it was either substantially justified or harmless. Plaintiff [here] carries the burden of proving substantial justification or harmlessness.

*Bay State Sav. Bank v. Baystate Fin. Servs., LLC*, No. CIV.A. 03-40273-FDS, 2007 WL 6064455, at *7 (D. Mass. Mar. 23, 2007) (Saylor, J.) (internal citations and quotations omitted). The First Circuit is steadfast in holding that "[t]he expert disclosure requirements are not merely aspirational, and courts must deal decisively with a party's failure to adhere to them." *Lohnes v. Level 3 Commc'ns, Inc.*, 272 F.3d 49, 60 (1st Cir. 2001); *Klonoski v. Mahlab,* 156 F.3d 255, 269 (1st Cir. 1998) ("Rule 37(c)(1) 'clearly contemplates stricter adherence to discovery requirements, and harsher sanctions for breaches of this rule, and the required sanction in the ordinary case is mandatory preclusion.'")

The First Circuit has even specifically sanctioned a party's failure to unveil an expert until after summary judgment, as being "exactly the type of unfair tactical advantage that the disclosure rules were designed to eradicate." *Lohnes*, 272 F.3d at 60; *Thibeault v. Square D. Co.*, 960 F.2d 239, 244 (1st Cir. 1992) (explaining that expert disclosure rules were promulgated to facilitate a "fair contest with the basic issues and facts disclosed to the fullest practical extent"). In acknowledging that the adoption of Rule 37(c)(1) in 1993 "gave teeth to a significantly broadened duty" to comply with case management orders, the First Circuit wrote that "[m]andatory preclusion [is] the required sanction in the ordinary case)." *Primus v. United States,* 389 F.3d 231, 235 (1st Cir. 2004).

In determining whether a party's submission of an expert report was harmless, this Court has written that it considers several factors, including the history of the litigation, the proponent's

need for the challenged evidence, the justification for the late disclosure, and the element of surprise. *Bay State Sav. Bank*, 2007 WL 6064455 at *7.

## IV.   DISCUSSION

As a matter of fundamental fairness, avoiding undue prejudice to Plaintiffs, continued mounting costs, and in the interest of the "just, speedy and inexpensive determination of these proceedings," this Court should strike all evidence not previously part of the summary judgment record. Fed. R. Civ. P. 1. This newly produced information is either prejudicial to Plaintiffs or irrelevant to clear evidence preemption. Specifically, Plaintiffs seek to strike the four new declarations from Patrick Wier, Dena Hixon, Luise Rogg, and Gary Shaw, as well as the accompanying exhibits to those declarations. Plaintiffs also move for this Court to strike the remaining exhibits untethered to a declaration, but which GSK now seeks anew to introduce into the summary judgment record.

In its Renewed Motion for Summary Judgment, GSK submitted expert opinions from a GSK reproductive toxicologist, Patrick Wier, Ph.D., who had never been disclosed as an expert witness for general causation or preemption. *See* Ex. 4 to Doc. 1594. GSK also submitted two declarations that included new opinions from their already disclosed experts, Dena Hixon, M.D. and Gary Shaw, DrPH. *See* Exs. 1, 3 to Doc. 1594. GSK also submitted a declaration from Luise Rogg, M.D., Ph.D., who offers new factual testimony, though not an expert opinion.

> **1.   The entirety of Patrick Wier's declaration and exhibits should be struck as untimely, unfairly prejudicial, not substantially justified, and harmful to Plaintiffs.**

In the form of a sworn declaration four years into this MDL, GSK elevates its current employee, Patrick Wier, from fact witness to expert witness, now offering expert opinions on a central issue for preemption—the teratogenicity of the Japanese animal studies—after already

8

having offered six experts to opine on that topic and after full *Daubert* briefing challenging GSK's experts' opinions has been completed. *See* Pls.' Mot. to Exclude Opinions of York, Baldwin, Scialli, Obican, Kass, and Roth, filed Dec. 10, 2018 (Doc. 1248); Def.'s Resp. (Doc. 1297); and, Pls.' Reply (Doc. 1336)

Patrick Wier's declaration is in fact an expert report, complete with his qualifications, opinions, a curriculum vitae, and a reference list. *See* Ex. 4 to Doc. 1594. Dr. Wier has been employed by GSK since 1987. Plaintiffs deposed Dr. Wier as a fact witness in March of 2018—four months before GSK's Motion for Summary Judgment was filed—related to his work at GSK on Zofran.[3] GSK did not and has not ever disclosed Dr. Wier as an expert witness related to general causation or preemption. Now, GSK asks Dr. Wier "to evaluate (1) whether the ondansetron (Zofran) animal embryo-fetal development ("EFD") studies performed in Japan ("Japanese studies") are materially different from the Zofran animal EFD studies performed in the U.K. ("U.K. studies") with regard to design, conduct, and results, and (2) whether the Zofran EFD studies individually and in totality demonstrate a teratogenic or embryo-fetal toxic effect of Zofran." *Id.* at 3. Dr. Wier offers 27 pages worth of expert opinions, including that "there is no scientific basis to hypothesize that the Japanese studies would have altered the FDA's decision regarding the Zofran labeling." *Id.* at 8.

Rule 26(a) is clear: a party must disclose any experts by the deadline set in a court order—which in this case was August 6, 2018, as ordered by this Court in MDL Order No. 25. As this

---

[3] Dr. Wier states in his declaration that: "In connection with my duties at GSK, I participated in evaluations of the safety of Zofran use during pregnancy, including evaluations of the Zofran preclinical animal studies, Zofran's on-target (*i.e.*, 5-HT3 receptor antagonism) and potential off-target (*e.g.*, hERG inhibition) effects, evaluations of human and animal placental transfer of Zofran, and evaluations of human epidemiological studies of Zofran use in pregnancy." Ex. 4 to Doc. 1594 at 1.

Court has written, "Rule 37(c)(1) contemplates strict adherence to the discovery requirements; furthermore, the required sanction in the ordinary case is mandatory preclusion of the untimely disclosed information." *Bay State Sav. Bank*, 2007 WL 6064455 at *7.

GSK, without question, has violated Rule 26(a) with respect to Dr. Wier's expert opinions in the form of his July 18, 2019 declaration. GSK never listed Dr. Wier as a potential expert witness in general causation or any topic at issue in preemption and never produced an expert report from Dr. Wier until this declaration—which comes one year *after* this Court ordered the parties to disclose all expert witnesses, and eight months after Plaintiffs moved to exclude GSK's six other experts who opined on the same topic for which GSK now offers Dr. Wier's opinion. As noted above, mandatory preclusion generally is the required sanction for such a disregard of the Rules. *See Primus,* 389 F.3d at 235; *see also Eghnayem v. Boston Scientific Corp.*, 57 F. Supp. 3d 658 (S.D. W. Va. 2014) (excluding MDL expert report when disclosure 51 days after deadline where defendant had prepared to depose the doctor as a fact witness rather than as an expert witness).

Accordingly, it is GSK's burden to prove that Dr. Wier's new expert opinion was substantially justified or harmless. *See id.* It cannot.

Despite the fact that Dr. Wier was deposed by Plaintiffs prior to GSK's filing of its Motion for Summary Judgment (and thus GSK was in possession of sworn testimony for potential consideration on summary judgment), GSK only offers these new expert opinions from its newly coined expert because of this Court's February 2019 Order, in which the Court wrote:

> GSK contends that submission of the full Japanese animal studies would not have been material to the FDA's decision-making….
>
> GSK has not, however, submitted an expert or other affidavit to that effect….

10

The Court therefore cannot conclude, on the present record, that the Japanese animal studies were not "newly acquired information" or would not have revealed "risks of a different type or greater severity or frequency" than previously included in submissions to the FDA, or that there is "clear evidence" that the FDA would have rejected plaintiffs' proposed label changes even if a more comprehensive disclosure had been made.

Doc. 1325 at 44.

The reason why GSK is only *now* offering such testimony is not because *Albrecht* changed the standard for clear evidence preemption (it did not); and the claim that GSK somehow would have chosen not to present this evidence when preemption was potentially a jury question defies all common sense, especially when GSK has taken the position in writing all along that preemption is a question for the Court only and presented its defense accordingly. *See* GSK Mem. in Supp. of Its Motion for Reconsideration, (Doc. 1353) at 2 ("The relevant historical facts raised by GSK's motion for summary judgment are undisputed. And, assuming the Supreme Court reverses the Third Circuit in *Albrecht*, whether the facts of this case demonstrate compliance with FDA regulatory reporting requirements presents a pure question of law.").

GSK's true motivation is thinly veiled: it realized that the record it built over four years in this MDL was insufficient for this Court to grant its motion filed over a year ago when this Court denied its first motion. In an effort to whitewash its repeated preemption failures, GSK recognized that it must now create a *new* record with *newly offered* evidence, including, a declaration in the form of an expert report from Dr. Wier.

Such a reason is not "substantial justification." And permitting Dr. Wier's declaration to be considered on summary judgment would cause real, tangible harm to Plaintiffs. Plaintiffs would then be faced with new expert scientific opinions—on a central issue in this litigation, on the precipice of trial—that have not been contested by Plaintiffs after spending years of resources in discovery, regulatory documents, scientific research, depositions, and motions (including

11

having avoided summary judgment on a closed record that GSK deemed provided Plaintiffs "ample opportunity to develop the facts in this case").[4] To permit GSK to introduce Dr. Wier's declaration (and the hundreds of pages of exhibits GSK failed to present on summary judgment before), would be a manifest injustice to Plaintiffs. To permit Dr. Wier's declaration and exhibits to stand would contravene every notion cited in Federal Rule of Civil Procedure 1: "[these Rules] should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Preemption discovery closed more than a year ago. GSK's deadline to name Dr. Wier as an expert passed then. None of the opinions he offers are based on new evidence not previously available to GSK. Plaintiffs request that the entirety of Dr. Wier's declaration and all accompanying exhibits that were not part of the prior summary judgment record be struck from consideration in GSK's Renewed Motion for Summary Judgment Based on Federal Preemption.

---

[4] Moreover, and as further evidence of unfair prejudice to Plaintiffs, Dr. Wier's testimony via his declaration has changed since his deposition. On March 28, 2018, Dr. Wier testified that he did not know whether the animal studies were submitted to the FDA. Dep. of Patrick Wier 334:10–13 ("Q: So you don't know which of the animal studies were submitted to the FDA? A. I do not know"). In his new expert declaration, Dr. Wier, suddenly now knows the regulatory history of the animal studies. Ex. 4 to Doc. 1594 at 5;19 ("The U.K. studies were submitted to and reviewed by the FDA in connection with NDA 20-007."; "Study 100422 was submitted to the FDA in full in 1997 for NDA 20-781.").

Dr. Wier also testified at his deposition on March 28, 2018 that he did not know whether the laboratory that conducted the Japanese animal studies was independent of GSK. *See* Dep. of Patrick Wier 336:14–23 ("A. If you look further below it indicates who actually conducted the study. This could just be who produced the document, Nippon Glaxo. This study was carried out by Hashima Research Laboratory, Nihon Bio Research Center. It doesn't tell me that it is a Glaxo entity. Q. Do you know if it is? A. I do not know."). Now, in his sworn declaration, Dr. Wier states that it was in fact an independent outside laboratory. Ex. 4 to Doc. 1594 at 18 ("Study 100422 is a definitive EFD (Segment II) study. It was sponsored by Nippon Glaxo and conducted by independent researchers at Hashima Research Laboratory, an outside laboratory, in 1988.").

### 2. The entirety of Dr. Hixon and Dr. Shaw's declarations and exhibits should be struck as untimely, unfairly prejudicial, not substantially justified, and harmful to Plaintiffs.

GSK submits Dr. Hixon and Dr. Shaw's declarations with new opinions as part of its Renewed Motion for Summary Judgment. Dr. Hixon and Dr. Shaw both submitted expert reports prior to the August 6, 2018 deadline as set out in MDL Order No. 25. The timing and content make clear that GSK's delay in producing these new opinions were not in fact because of *Albrecht*, but because GSK again must impermissibly patch holes in the record related to adverse events made clear in this Court's February 2019 Order.

Rule 26(a)(2) not only requires the disclosure of an expert's existence, but also the opinions of the expert. *See* Fed. R. Civ. P. 26(a)(2)(B)(i–iii) (requiring "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them," among other things). GSK clearly failed to comply with these obligations under Rule 26 by offering new opinions from Drs. Hixon and Shaw in July 2019—well after the August 6, 2018 deadline. Again, Rule 37 demands that absent a showing of substantial justification or harmlessness, this new information must be precluded from consideration.

Dr. Hixon offers 16 pages of new opinions after being asked by GSK "to evaluate how FDA would treat certain information relating to adverse event reports ('AERs') concerning the use of Zofran/ondansetron in pregnancy, for purposes of making decisions regarding the drug's pregnancy-related labeling." Ex. 1 to Doc. 1594 at 2. Dr. Shaw, meanwhile, was asked "to describe what laryngomalacia is; to discuss how the term "major malformation" is defined for purposes of birth defect research; and whether a case of laryngomalacia would fall within that

definition so as to be included in the published Einarson study on ondansetron." Ex. 3 to Doc. 1594 at 2.

GSK cannot offer a substantial justification as to why it is only now producing these opinions. Again, the true explanation for these opinions only surfacing now is that GSK is attempting to patch the holes in its previous summary judgment record. To surprise Plaintiffs with these new opinions and exhibits is not harmless. As the First Circuit as noted, the reason for expert deadlines is to prevent an "unfair tactical advantage that the disclosure rules were designed to eradicate," *see Lohnes*, 272 F.3d at 60, and to facilitate a "fair contest with the basic issues and facts disclosed to the fullest practical extent." *Thibeault*, 960 F.2d at 244; *see also Stillwater of Crown Point Homeowner's Ass'n, Inc. v. Kovich*, 820 F. Supp. 2d 859 (N.D. Ind. 2011) (striking expert's statements in affidavit as untimely as they had not been previously disclosed to defendants and they were not supplements served within 30 days of prior report).

With respect to adverse events, which both declarations are designed to address, Plaintiffs would suffer an especially egregious harm and would unfairly reward GSK for its dilatory discovery production of adverse event information. *See* Ltr. of Aug. 14, 2018 to Magistrate Judge Judith G. Dein (attached as Ex. 1). Exhibit 1 to this Motion chronicles the relentless motions practice Plaintiffs were forced to engage in to receive even the most basic adverse event data from GSK. Plaintiffs filed their Motion to Compel Adverse Event Data and Source Documents from GSK's Drug Safety Database on **February 23, 2018**. *See* Doc. 956 Motion to Compel (attached as Ex. 2). Making GSK's recent introduction of new adverse event evidence even more egregious, GSK had the temerity to write to Judge Dein, " Plaintiffs had every opportunity to explore these issues, or to request the documents identified in Exhibit A to their notice, at any time in past 20

months of discovery on GSK. They cannot show good cause for waiting until the last day of discovery to do so." Ltr. of Aug. 13, 2018 to Magistrate Judge Judith G. Dein (attached as Ex. 3).

Only now, faced with the prospect of a second attempt at preemption via summary judgment does GSK produce new evidence on adverse events. These discovery tactics should not be rewarded, no matter how relevant GSK claims them to now be.[5] Accordingly, Plaintiffs request that this Court strike the declarations and accompanying exhibits of Drs. Hixon and Shaw, as they are untimely, not substantially justified, and are prejudicial to Plaintiffs. Additionally, Plaintiffs request that this Court strike Exhibits 5–13, which include deposition excerpts that were either taken after GSK's filing of its Motion for Summary Judgment or not included in GSK's previous Motion for Summary Judgment. Finally, Plaintiffs move this Court to strike Dr. Hixon's expert report (Ex. 17) as it is unsworn and not proper for consideration under Rule 56.[6]

---

[5] Although not cast as an expert opinion, Luise Rogg, M.D.'s, declaration and accompanying exhibits introducing new evidence related to adverse events should be struck for the same reasons. Plaintiffs had to spend months to pry any information from GSK related to adverse events, and it would be manifestly unjust to permit GSK to volunteer *new* information related to adverse events now that it has the opportunity for this Court to consider clear evidence preemption again. Moreover, Dr. Rogg exceeds her boundaries as a fact witness and opines on the significance of adverse event reports vis-à-vis epidemiologic and pharmacovigilance data. *See* Ex. 2 to Doc. 1594 at 3 ("Moreover, because litigation generated reports were included in GSK's safety database, the DPA results were skewed by 'stimulated' reporting. In other words, the DPAs included in the 2015 SERM reports provided only cumulative information and were superseded in significance by GSK's detailed analyses of the epidemiologic and pharmacovigilance data"). For the same reasons as Drs. Wier, Hixon, and Shaw, Dr. Rogg's declaration and accompanying exhibits should be struck in their entirety.

[6] To the extent this Court may permit any of the declarations or evidence not previously part of the summary judgment record, Plaintiffs request that this Court permit Plaintiffs to take all such discovery needed to respond to GSK's newly presented evidence and order GSK to be responsible for the costs of any additional discovery and depositions due to its violation of Rule 26.

## V.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that all information not previously part of the summary judgment record be struck and precluded from consideration on GSK's Renewed Motion for Summary Judgment.

Respectfully submitted,

*/s/ Robert K. Jenner*
Robert K. Jenner (BBO No. 569381)
JENNER LAW, P.C.
1829 Reisterstown Road, Suite 350
Baltimore, MD 21208
410-413-2155
rjenner@jennerlawfirm.com

Tobias L. Millrood
POGUST MILLROOD LLC
8 Tower Bridge, Suite 940
Conshohocken, PA  19428
610-941-4204
tmillrood@pogustmillrood.com

Kimberly D. Barone Baden
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
843-216-9265
kbarone@motleyrice.com

M. Elizabeth Graham
GRANT & EISENHOFER P.A.
123 S. Justison Street
Wilmington, DE  19801
302-622-7099
egraham@gelaw.com

                      James D. Gotz
                      HAUSFELD
                      One Marina Park Drive, Suite 1410
                      Boston, MA 02210
                      617-207-0600
                      jgotz@hausfeld.com

Dated: August 26, 2019                    *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

    I hereby certify that the foregoing Plaintiffs' Memorandum in Support of Their Motion to Strike Evidence from GSK'S Renewed Motion for Summary Judgment Based on Preemption, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing and paper copies will be sent via first class mail to those identified as non-registered participants.

                                                                    /s/ *Robert K. Jenner*
                                                                     Robert K. Jenner