**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **IN RE: ZOFRAN® (ONDANSETRON) PRODUCTS LIABILITY LITIGATION** | MDL No. 1:15-md-02657-FDS |

**NON-PARTY WITNESS APRIL ZAMBELLI-WEINER, PH.D.'S OPPOSITION TO GSK'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND FOR LEAVE FOR SECOND DEPOSITION**

Non-Party April Zambelli-Weiner, Ph.D., by and through her undersigned counsel, Eric W. Gunderson and Davis, Agnor, Rapaport & Skalny, LLC, submits the following points and authorities in opposition to Defendant GlaxoSmithKline LLC's ("GSK") motion seeking to compel Dr. Zambelli-Weiner to produce certain documents and for her to appear for a second deposition:

### I. OVERVIEW

GSK seeks to compel the production of documents responsive to a document request (Request No. 3) that seek the production of Stata output for analyses done in connection with the Study. Dr. Zambelli-Weiner, through counsel, has advised GSK both in formal written discovery responses and in written meet-and-confer correspondence that the Stata output for the Study is contained in the Study manuscript and supporting tables, and that it does not exist in any other format. Simply put, Dr. Zambelli-Weiner's response to Request No. 3 is complete and there are no documents that exist for this court to compel Dr. Zambelli-Weiner to produce.

GSK also moves to compel Dr. Zambelli-Weiner to appear for a second, full 7-hour deposition, purportedly to allow GSK to question her about all of the documents that she and others have produced since her first deposition. While the production of new documents in some

circumstances may justify the taking of a second deposition, the Court here should reject GSK's request. Leave to take a second deposition should not be granted since GSK chose to conduct the first deposition knowing full well the risk that that there were outstanding document requests and unresolved discovery disputes that may later result in the production of new documents. Therefore, in light of the limitations and protections imposed by the rules with respect to the taking of a second deposition, GSK's request to take a second deposition of Dr. Zambelli-Weiner should be denied.

For all of these reasons, and as more fully explained below, GSK's Motion should be denied and costs should be awarded to Dr. Zambelli-Weiner.

## II. ARGUMENT

### A. GSK'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS RESPONSIVE TO DOCUMENT REQUEST NO. 3 SHOULD BE DENIED.

#### 1. Background Concerning Request for Stata Output

GSK is moving to compel production of documents responsive to a document request - Request No. 3 --- that was served on Dr. Zambelli-Weiner on February 8, 2019. (See GSK's Ex. 10). The request, which seeks the Stata output for the analyses done for the published Zofran Study, states:

> Concerning the Study:
> The entire Stata/MP13.1, SAS, or any other statistical software output/printout of the analyses, including the final analyses and preliminary or other analyses that were not reported in the Study. To the extent necessary, generate this output/printout from the existing Stata/MP13.1 codes.

(See GSK Ex. 10, Notice of Deposition, Exhibit A). Prior to the deposition, undersigned counsel, on behalf of Dr. Zambelli-Weiner, in a written response to all of the 19 document requests included

in the Notice of Deposition, advised GSK's counsel that as to Request No. 3 that no such documents exist. (See Eric Gunderson Letter, dated February 15, 2019 GSK Ex. 11,).  At her deposition that followed about a week later, GSK's counsel did not ask any questions about this written response to Request No. 3 nor about anything concerning the Stata output.  Then, after the deposition, while GSK moved to compel discovery concerning a number of the other document requests set forth in the February 8 Notice of Deposition, GSK did not include in its motion any request to compel production of documents responsive to Request No. 3.

It was not until recently, many months later, that GSK engaged undersigned counsel in a meet and confer concerning Request No. 3, and at that time undersigned counsel advised GSK's counsel once again that the Stata output did not exist in some format other than what was included in the Study itself. (See Eric Gunderson Letter, dated September 3, 2019, GSK Ex. 14).  GSK's counsel stated that they are under the belief that Stata output in some other format does exist because Dr. Zambelli-Weiner produced some printed Stata output when it produced supplemental documents in response to the Court's order granting GSK's earlier motion to compel.  However, undersigned counsel explained that this production of some printed Stata output (AZW 073-450) consisted of copies of Stata output that were not related to the Zofran Study – rather they were believed to be pages of Stata output that reflected preliminary and draft analyses done in connection with the PISCES project.  It was further explained that these pages of Stata output were located in response to the Court's order to produce all documents responsive to a document request seeking all documents concerning any analyses conducting by Dr. Zambelli-Weiner and her team that related to Zofran and birth defects even if not related to the Study. (See Gunderson Letter, dated September 3, 2019, GSK Ex. 14).

Accordingly, contrary to GSK's presumption, the supplemental production of these pages

of Stata output does not confirm that there exist other Stata output related to the Study that has not yet been produced – the Stata output related to the Study does not exist in a format outside of what was included in the published Study and supporting tables and appendices, which have been produced, and Dr. Zambelli-Weiner has consistently advised GSK of this fact from the very beginning.

**2.  Dr. Zambelli-Weiner's Response to Request No. 3 Is Complete**

**a.  The Stata Output for the Study Does Not Exist In a Format Other Than What Was Included In the Published Study and Supporting Appendices.**

As explained, GSK seeks to compel the production of the Stata output for analyses done in connection with the Study in a format different than what was included in the Study and its supporting appendices; and Dr. Zambelli-Weiner, through counsel, has advised GSK both in formal written discovery responses and in written meet-and-confer correspondence that the Stata output for the Study does not exist in any other format other than what they have already.  Simply put, Dr. Zambelli-Weiner's response to Request No. 3 is complete and there are no documents that exist for this court to compel Dr. Zambelli-Weiner to produce.

As was explained to GSK in writing, when the Stata output was generated, the results were copied and pasted into manuscript tables in real time, and the Stata output was not printed out or saved electronically in any additional formats.  In fact, this practice of copying and pasting the output directly into an excel or word document is noted as a valid – and the easiest way - for output to be saved as per Stata's own website and material.[1] The following is an excerpt from a book published by Stata:

---

[1] See *https://www.stata.com/support/faqs/data-management/copying-tables/*.

> 1.8  Reusing commands                                                                                      19
>
> ## Copying output to a word-processor document
>
> From the Results window, the Viewer window, or a text editor, you may copy and paste a highlighted part of the output to a word-processor document. To align the text correctly, you must select a monospaced font in the word processor, e.g., Lucida Console 9 pt.
>
> For many tables, you can obtain a more sophisticated result. You can copy results directly to a word-processor document as an HTML table, or you can use Microsoft Excel (or another spreadsheet program) as an intermediary. This method works best if the output is arranged in nice columns.
>
> To copy results as an HTML table, do the following:
>
> 1. Highlight the table in the Results window. Right-click the mouse and select **Copy Table as HTML**.
> 2. Paste the table into your word-processor document. Once it is there, you should be able to right-click on it to format the cells.
>
> To copy results using a spreadsheet program, do the following:
>
> 1. Highlight the table in the Results window. Right-click the mouse and select **Copy Table**.
> 2. Open Excel, and paste the table into it (*Ctrl-V*). Format the table if needed, e.g., by adjusting the number of decimals (you will need to use Excel's formatting tools).
> 3. Copy and paste the table from Excel to your word-processor document.

See *An Introduction to Stata for Health Researchers* (Svend Juul), p. 19. In other words, when you run analyses in Stata there are various ways to output the results. It does not automatically save the results. One of the ways is to do exactly what Dr. Zambelli-Weiner and her team did, which is to output the results into a document. Accordingly, the Stata output has already been produced in the Study's tables themselves.

      **b.**  **Dr. Zambelli-Weiner Is Not Able to Produce the Stata Output In Some Other Format By Clicking A Button.**

Taking Dr. Zambelli-Weiner's testimony out of context (which notably was testimony taken during the first day of her deposition before she was served with the notice for the continued deposition that contained Request No. 3), GSK tries to make the case that Dr. Zambelli-Weiner agreed that she could generate the entire Stata output for all of the analyses done by her team in connection with the Study by simply clicking a button. While Dr. Zambelli-Weiner agreed that

the Stata software allows a user to generate an output for a particular analyses by clicking a button and that this would not take much effort, she was not referring to generating the entire Stata output for her published Study that would contain all of the hundred or so analyses done by her team that took more than a year to do.  In other words, while Dr. Zambelli-Weiner agreed in theory that the Stata software allows a user to generate an output for a particular analyses with little effort, she did not mean that it would take little effort or time to generate a Stata output for all of the analyses conducted in connection with the Study.  There is a difference between running a piece of code through a statistical software program by clicking a button, and actually re-doing an entire study – which is what would be required if the Court were to order Dr. Zambelli-Weiner to generate Stata output in the format GSK's is seeking for all of the analyses conducted in connection with the Study.

### c. Accepted Practices Did Not Require Retaining the Output in Some Other Format.

In support of GSK's claim that Dr. Zambelli-Weiner *should* have the Stata output in other formats – which is not really relevant to the question of whether it *exists* or not – GSK relies on the guidelines for the journal in which Dr. Zambelli-Weiner published her Study.  However, these guidelines did not require Dr. Zambelli-Weiner to retain a copy of the Stata output in other formats for her Study as GSK suggests.

GSK refers to and attaches as Exhibit 3 to its motion the Elsevier "Ethics in Research & Publication" guidelines.  (The copy submitted by GSK in support of its motion only includes the odd pages, and so a full copy is attached hereto as **Exhibit A**.)  Contrary to the opinion of GSK's expert, these guidelines only require Dr. Zambelli-Weiner to retain the raw source data for purposes of possible editorial review (which in this case would be the raw data Dr. Zambelli-

Weiner obtained from Truven, which Dr. Zambelli-Weiner has retained). (See "Ethics in Research & Publication," p. 14, **Exhibit A**) ("Data access & Retention.  Authors may be asked to provide the raw data in connection with a paper for editorial review.")  There is no mention of preserving output generated by software programs.

To the extent GSK's expert refers to the journal's statement that it encourages authors to share data, it is first noted that this statement is simply an encouraged guideline and not a mandatory requirement.  Second, Dr. Zambelli-Weiner and her team in fact did share additional study data that was not included in the published manuscript by voluntarily including codes and additional data and calculations in supplemental appendices to the manuscript – which were made available through the journal (and which GSK has obtained in connection with this litigation).

        **d.**      **There Is No Justification for Requiring Dr. Zambelli-Weiner To Provide Additional Testimony Regarding the Stata Output.**

In the event that Dr. Zambelli-Weiner continues to assert that the Stata output does not exist in other formats – which is consistent with her prior written responses to GSK's discovery requests for these documents – GSK suggests that this Court should compel Dr. Zambelli-Weiner to provide an affidavit attesting to various facts concerning whether it exists and what the process was for not retaining it and so on.  However, the fact is that GSK's counsel, who had received Dr. Zambelli-Weiner's written responses advising GSK that the Stata output does not exist in other formats, had every opportunity to explore any question or issues relating to the Stata output with Dr. Zambelli-Weiner during the five (5) hours of examination that GSK undertook of her during the second day of her deposition.  GSK's counsel, however, chose not to ask her one single question about it.  There is simply no justification, then, for compelling Dr. Zambelli-Weiner to provide answers to what would amount to further deposition questions about the Stata output that

GSK had every opportunity to ask at her deposition.

### 3. GSK Can Assess the Reliability of the Study With The Information Already Available To It.

Finally, GSK attempts to make the case that it needs this specific format of Stata output in order to assess the methods and reliability of Dr. Zambelli-Weiner's Study. The fact is that this Court has permitted discovery of Dr. Zambelli-Weiner and the Study in order to allow GSK to discover how the study was designed and the methods used. At this point, GSK has everything it needs to assess the methods and design of the study – this is all laid out in the manuscript itself as well as the additional documents already produced. In fact, it is Dr. Zambelli-Weiner's understanding that GSK's experts in this case have already assessed the reliability of the study and issued expert reports critical of the Study.

GSK sites deposition testimony of Dr. Zambelli-Weiner in the Talc litigation to suggest that she agreed in that context that lack of transparency as to the statistical coding that went into a study compromises the reliability of its results. That is not at all what she was suggesting in her testimony in that case. The testimony quoted was in reference to an evaluation of peer-review published literature as analyzed in a meta-analysis, which is a specific type of study. She opined that a scientific expert can assess the reliability of a study when its *methods* are transparent and reproducible, *i.e.* another scientific researcher could reproduce the same results if they conducted their own analyses. She was not suggesting that a reliability of a study depends on the transparency and production of the study's statistical coding that was used. In fact, Dr. Zambelli-Weiner's testimony in that case highlights the notion that reliability of a study can be assessed scientifically *without* having the statistical output and underlying statistical coding that a researcher inputted into some statistical software.

If what GSK is claiming is true – that it cannot assess the reliability of the Study with only the information it already has – than that would call into question whether any similar peer-reviewed epidemiological study could ever be called reliable.  Presumably in this very litigation GSK and its experts have asserted that certain studies relied upon by its experts are scientifically reliable based on an analysis and review of the methods used, without the need for reviewing the various statistical coding that the researcher inputted into software programs they may have used to analyze the data.   Would Dr. Kimmel – who opines that the statistical output is necessary in order to assess the reliability of Dr. Zambelli-Weiner's study – agree that in order to assess the reliability of a study he has participated in he would need to produce and publish along with the manuscript a copy of the statistical coding inputted into the software program that was used for his study?  We presume not.

Dr. Zambelli-Weiner and her team, which included Dr. Russell Kirby, a leading expert in his field and recent President of the American College of Epidemiology, were very transparent in their methods so that other researchers could evaluate the reliability of those methods and, if they wanted to, reproduce the study based on those methods.  GSK, then, has all the information it needs to opine regarding the reliability of the Study.

**B.    GSK'S REQUEST FOR A SECOND DEPOSITION OF DR. ZAMBELLI-WEINER SHOULD BE DENIED.**

GSK also moves to compel Dr. Zambelli-Weiner to appear for a second, full 7-hour deposition, purportedly to allow GSK to question her about all of the documents that she and others have produced since her first deposition.  This request should be denied.

A deposition is limited, absent contrary stipulation or court order, to "one day of 7 hours." Fed. R. Civ. P. 30(d)(1).  If the parties do not stipulate to the taking of a second deposition, a party

"must obtain leave of court," and leave is given to the extent consistent with the principles set forth in Rule 26(b)(2).  See Fed. R. Civ. P. 30(a)(2)(A)(ii).  Rule 26(b)(2) requires the court to limit discovery where, among other things, the deposition would be unnecessarily cumulative and where "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C)(ii).  Relying on these limitations, courts have held that while the production of new documents may justify the taking of a second deposition, courts have rejected leave to take a second deposition if the party that requested those documents chose to conduct the first deposition knowing that there are outstanding document requests or unresolved discovery disputes that may later result in the production of new documents.

For example, in Moreno v. SERCO Inc., 2016 U.S. Dist. LEXIS 140139 (N.D. Ga. 2016), the federal district court there, which distinguishes the case cited by GSK, Le v. Diligence, Inc., 312 F.R.D. 245 (D. Mass 2015), held that a party was not entitled under the rules to take a second deposition of the plaintiff.  The court there rejected the defendant's request to take a second deposition because of newly produced documents made available subsequent to the deposition because the defendant knew going into the deposition that plaintiff's production was deficient and did not seek court intervention to resolve the discovery dispute prior to taking the deposition.  See Moreno, 2016 U.S. Dist. LEXIS 140139 *5-6.   Similarly, in Nellcor Puritan Bennett LLC v. CAS Med. Sys., Inc., 2013 U.S. Dist. LEXIS 89589 (E.D. Mich. 2013), the Court, denying a request for leave to take a second deposition of a witness, held:

> Here, Nellcor received a large number of documents related to communications with consumers or potential consumers that Mr. Herwig either authored or received.  Nellcor urges that Mr. Herwig should be deposed for a second time given the newly discovered information contained in the documents. Nellcor's argument is compelling, but as CAS asserts, **Nellcor decided to depose Mr. Herwig in the midst of a discovery dispute concerning consumer**

> **records and accuracy. Instead of delaying the deposition, Nellcor took a risk by deposing Mr. Herwig before all the necessary information was available.** And at the conclusion of the deposition, Nellcor was aware of the possibility that more information could be discovered regarding Mr. Herwig and elected not to leave the deposition open pending resolution of the discovery dispute.

Id. at *10-11 (internal docket citations omitted) (emphasis added); see also Estate of Romain v. City of Grosse Pointe Farms, 2016 U.S. Dist. LEXIS 75604 (E.D. Mich. 2016) (holding that while courts may allow for a witness to be re-deposed where new information comes to light, the plaintiff's request for leave to re-depose two witnesses is denied since "counsel elected to proceed with their depositions despite not having all of the discovery requested from Defendants.")

Here, GSK seeks to take a second deposition of Dr. Zambelli-Weiner because subsequent to her first deposition Dr. Zambelli-Weiner and others produced additional documents in the case pursuant to a court order that resolved various discovery disputes. However, prior to her deposition, GSK was advised by Dr. Zambelli-Weiner's counsel in writing of the various objections she was asserting to several of the document requests served on her (see Gunderson Letter, dated February 15, 2019, GSK Ex. 11); and so, GSK knew *before* taking her deposition that Dr. Zambelli-Weiner had objected to the production of certain documents and was withholding certain documents from production on the basis of those objections. In fact, undersigned counsel advised GSK's counsel that any dispute regarding the document requests should be resolved prior to the taking of her deposition to avoid the very problem that GSK has now created. (See Gunderson Letter, dated February 15, 2019, GSK Ex. 11). Undersigned counsel stated:

> In addition, please be advised that it is our position that any formal motion by you to seek to compel the production of any of these documents should be undertaken prior to Dr. Zambelli-Weiner's

11

> continued deposition – if, instead, you decide to proceed on Feb 20 without filing such motion and without continuing her deposition until the court has ruled on any such motion, please understand that in the event at some point later she is ordered to produce some or all of the requested documents Dr. Zambelli-Weiner will not consent to returning for a third day.

(See GSK Ex. 11).

GSK decided, however, to proceed with Dr. Zambelli-Weiner's deposition knowing the risk that additional documents may later be provided not only by Dr. Zambelli-Weiner but by other parties and third-parties in the event that disputes concerning the discovery were resolved. GSK's counsel could have continued the deposition until such time as any disputes regarding the document requests were resolved, and also could have reserved 1-2 hours of deposition time at the end of that conclusion of the second day of her deposition to further depose Dr. Zambelli-Weiner in the event additional documents were later produced -- GSK's counsel did neither. It was certainly GSK's counsel's choice, of course, to proceed with the deposition knowing that additional documents may be produced by Dr. Zambelli-Weiner and others, and there may have been strategic reasons for proceeding with the deposition at that time without the benefit of additional documents; but, Dr. Zambelli-Weiner should not now be forced to shoulder the consequences of that decision by being subjected to a second deposition and third day of deposition testimony when GSK had the option of resolving the discovery disputes and waiting on document production from the Plaintiffs and other third-parties prior to taking her deposition.

In addition, Dr. Zambelli-Weiner respectfully offers to the court that the discovery of her and her Study must end at some point. GSK has conducted 14 hours of questioning of the Study's two main authors, have obtained thousands of pages of documents from the Study's authors, have obtained correspondence between Plaintiff's counsel and Dr. Zambelli-Weiner, have obtained

discovery from the Journal that published the Study and from Truven, the company that provided Dr. Zambelli-Weiner with the source data.  GSK has been permitted ample opportunity to explore the question they raised as to whether Plaintiff's attorneys had any control over or otherwise directed or interfered in the Study's design, methods, or results – which was ostensibly the purpose of GSK's discovery of Dr. Zambelli-Weiner and her Study in the first place.  Dr. Zambelli-Weiner respectfully submits that given the scope and breadth of the discovery already permitted that this Court should not allow further discovery of her and her Study by permitting a second deposition of her, particularly given the circumstances here where GSK created this situation it now finds itself in.

## III.  CONCLUSION

In light of the foregoing points and authorities, Dr. Zambelli-Weiner respectfully request that (1) GSK's motion to compel production of documents responsive to Request No. 3 be DENIED; and (2) GSK's motion for leave to conduct a second deposition of Dr. Zambelli-Weiner be DENIED.

Respectfully Submitted,

DAVIS, AGNOR, RAPAPORT & SKALNY, LLC


/s/ Eric W. Gunderson
Eric W. Gunderson [Pro Hac Vice]
10211 Wincopin Circle, Suite 600
Columbia, Maryland  21044
410-995-5800 / 410-309-6161 Fax
E-mail: egunderson@darslaw.com
*Counsel for Non-Party April Zambelli-Weiner*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 17th day of October, 2019, this document was filed through the Court's CM/ECF system and will be sent electronically to the registered participants identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated on the NEF as non-registered participants on October 17, 2019.

/s/ Eric W. Gunderson
Eric W. Gunderson