# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

```
_____
                                      )
IN RE: ZOFRAN (ONDANSETRON)           )
PRODUCTS LIABILITY LITIGATION         )   MDL No. 1:15-md-2657-FDS
                                      )
                                      )
This Document Relates To:             )
                                      )
All Actions                           )
_____)
```

## MEMORANDUM AND ORDER ON GSK'S EMERGENCY MOTION TO STRIKE THE SUPPLEMENTAL REPORTS OF PLAINTIFFS' GENERAL CAUSATION EXPERTS

**SAYLOR, J.**

This is a multi-district litigation ("MDL") proceeding arising out of product-liability claims that the use of the drug Zofran (ondansetron) by pregnant women caused certain types of birth defects in their children.

Defendant GlaxoSmithKline LLC ("GSK") has moved to strike the second supplemental report of one of plaintiffs' expert witnesses on general causation, Dr. Bengt R. Danielsson. Dr. Danielsson previously filed an expert report in this matter in July 2018. In that report, he opined that, based on his review of the available medical literature, the use of Zofran by pregnant women can cause a variety of birth defects.

Since Dr. Danielsson's initial report, three relevant studies—one by Huybrechts *et al.*, one by Parker *et al.*, one by Zambelli-Weiner *et al.*—have been published. Dr. Danielsson has twice supplemented his initial report to address the Parker and Zambelli-Weiner studies: once in a brief report on November 23, 2018, and a second time in a more detailed submission on February 28, 2019. As for the Huybrechts study, Dr. Danielsson has supplemented his initial report to address it only once, in his submission on February 28, 2019.

The issue before the Court is whether that February 2019 report was timely under Fed. R. Civ. P. 26. For the reasons set forth below, the Court concludes that it was timely as to the Huybrechts study, but not as to the Parker and Zambelli-Weiner studies, and that exclusion of the untimely portion of the report is appropriate. Accordingly, GSK's motion to strike will be granted as to those portions of the February 2019 report.[1]

## I.     Background

Dr. Bengt. R. Danielsson, M.D., Ph.D. is a physician and teratologist. A focus of his research is how drug-induced alterations in the heart rhythms of human embryos can cause various birth defects. Plaintiffs have engaged Dr. Danielsson to opine on whether Zofran "is capable of causing birth defects such as congenital heart defects and orofacial clefts." (Danielsson Report at 1).

On May 17, 2018, this Court issued MDL Order No. 25. Among other things, that order set a timetable for "[e]xpert discovery on general causation and general liability issues." (MDL Order No. 25 (Docket No. 1006)).[2] It provided that plaintiffs were to serve "expert disclosures under Fed. R. Civ. P. 26(a)(2), including expert reports," by July 16, 2018. (*Id.*). The order did not set a deadline by which the parties were required to supplement their expert disclosures. (*See id.*).

On July 10, 2018, Dr. Danielsson submitted his initial expert report in this matter.[3] In that report, he concluded that Zofran "is capable of causing congenital heart defects and orofacial

---

[1] In its motion to strike, GSK also moved to strike the supplemental reports of two of plaintiffs' other experts, Drs. Ra-id Abdulla and Thomas W. Sadler. (GSK Mem. at 1). However, GSK subsequently withdrew its motion as to those reports. (*See* Oct. 15, 2019 Hr'g Tr. at 8:24-9:5).

[2] Dr. Danielsson's opinion as to whether Zofran is capable of causing certain types of birth defects is a "general causation" expert report.

[3] Dr. Danielsson's report is dated July 5, 2018, (Danielsson Report at 68), but it was not submitted until July 10, 2018, (GSK Mem. at 2).

2

defects, both in animals and in humans, through the hERG-mediated mechanism of teratogenicity." (Danielsson Report at 68). He wrote that in forming his opinion, he had considered "the totality of the available evidence," including, among other things, several epidemiological studies in humans. (*Id.* at 3-4). While he relied on at least one abstract from an epidemiological study, (*Id.* at 5 (Andersen et al., 2013a)), he apparently did not consider the abstracts from three epidemiological studies that were eventually published later in 2018: Huybrechts, Parker, and Zambelli-Weiner. (*See id.* at References).[4]

On August 27, 2018, Dr. Danielsson submitted a "Supplemental and Rebuttal Expert Report." That report also did not address the Parker or Zambelli-Weiner studies.

On October 12, 2018, GSK deposed Dr. Danielsson. Dr. Danielsson confirmed that he had neither reviewed the Parker study nor discussed it in either his initial or his rebuttal report. (Danielsson Dep. at 112:17-113:7). Counsel for GSK asked why he had not reviewed the study in order to prepare his rebuttal report even after GSK's own experts referred to it. (*Id.* at 120:21-122:16). He replied that he had not had the opportunity to read every study cited by GSK's experts, and that he was "on holiday" when the Parker study came out and could not spend "every day looking at the reference list." (*Id.* at 121:14-17). He also had not reviewed an abstract for the Huybrechts study, which had not yet been published at that point. (*Id.* at 389:17-21).

On November 23, 2018, Dr. Danielsson submitted an "Additional References

---

[4] The full citations for these studies are Krista F. Huybrechts et al., *Association of Maternal First-Trimester Ondansetron Use with Cardiac Malformations and Oral Clefts in Offspring*, 23 J. AM. MED. ASS'N 2429 (2018), https://www.ncbi.nlm.nih.gov/pubmed/30561479; Samantha E. Parker et al., *Ondansetron for Treatment of Nausea and Vomiting of Pregnancy and the Risk of Specific Birth Defects*, OBSTETRICS & GYNECOLOGY, Aug. 2018, at 385, https://doi.org/10.1097/AOG.0000000000002679; and April Zambelli-Weiner et al., *First Trimester Ondansetron Exposure and Risk of Structural Birth Defects*, REPRODUCTIVE TOXICOLOGY, Jan. 2019, at 14, https://doi.org/10.1016/j.reprotox.2018.10.010. The Zambelli-Weiner study was formally published in January 2019 but was available online on October 29, 2018.

Considered" list, which listed the Parker and Zambelli-Weiner studies. (GSK Mem., Ex. C). At the bottom of the list, Dr. Danielsson wrote that "[h]aving considered this additional material . . . my opinions from my expert report are unchanged." (*Id.*).

Dr. Danielsson's most recent report is dated February 28, 2019. (GSK Mem., Ex. F ("Danielsson 2019 Report") at 3). It is three pages long. (*Id.*). GSK contends that it did not receive the report until March 15, 2019. (GSK Mem. at 3). In that report, Dr. Danielsson describes the Huybrechts, Parker, and Zambelli-Weiner studies; interprets their results; and concludes that they do not alter the opinion he offered in his initial report. (*See id.*). Curiously, he does not include the Parker article, which he discusses, on his list of additional references considered. (*Id.* at 3).

GSK has moved to strike Dr. Danielsson's February 2019 report.

## II.  Legal Standard

### A.  Fed R. Civ. P. 26(a)(2)

Fed. R. Civ. P. 26(a)(2) governs the disclosure of expert testimony. "[A] party must disclose to the other parties the identity of any [expert] witness it may use at trial to present evidence . . . ." Fed. R. Civ. P. 26(a)(2)(A). If the witness "is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," the party must also submit a "written report" with numerous detailed facts, data, exhibits, and other items. Fed. R. Civ. P. 26(a)(2)(B).[5]

"A party must make these disclosures at the times and in the sequence that the court

---

[5] Specifically, the party disclosing under this subsection must include "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case." Fed. R. Civ. P. 26(a)(2)(B)(i)-(vi).

orders." Fed. R. Civ. P. 26(a)(2)(D). As with all disclosures made under Rule 26(a), parties must "supplement or correct" their expert disclosures "in a timely manner" if a party learns of an omission or error unknown to the other party or "as ordered by the court." Fed. R. Civ. P. 26(e)(1). "For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition." Fed. R. Civ. P. 26(e)(2).

### B. Fed R. Civ. P. 37

Rule 37 provides sanctions for violations of Rule 26. "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "[T]he required sanction in the ordinary case is mandatory preclusion." *Poulis-Minott v. Smith*, 388 F.3d 354, 358 (1st Cir. 2004) (alteration in original) (internal quotation marks omitted) (quoting *Klonoski v. Mahlab*, 156 F.3d 255, 269 (1st Cir. 1998)). But "preclusion is not a strictly mechanical exercise; district courts have some discretion in deciding whether or not to impose that onerous sanction." *Santiago-Díaz v. Laboratorio Clínicio y de Referencia del Este,* 456 F.3d 272, 276 (1st Cir. 2006). In determining the proper sanction, the court should consider "(1) the party's justification for the late disclosure; (2) the opposing party's ability to overcome any prejudice; (3) the impact on the court docket; (4) the party's history of litigation abuse; and (5) the party's need for the late evidence." *Glass Dimensions, Inc. ex rel. Glass Dimensions, Inc. Profit Sharing Plan & Tr. v. State Street Bank & Tr. Co.*, 290 F.R.D. 11, 17 (D. Mass. 2013) (citing *Harriman v. Hancock Cty.*, 627 F.3d 22, 30 (1st Cir. 2010)).

A party may avoid a Rule 37 sanction if it shows "that its failure to comply with the Rule was either justified or harmless and therefore deserving of some lesser sanction." *Wilson v.*

5

*Bradlees of New England, Inc.*, 250 F.3d 10, 21 (1st Cir. 2001). A substantial justification, as used in Rule 37, "is one that 'could satisfy a reasonable person.'" *Pan Am. Grain Mfg. Co. v. Puerto Rico Ports Auth.*, 295 F.3d 108, 117 (1st Cir. 2002) (interpreting prior, similar version of Rule 37). "[S]ubstantially justified does not mean justified to a high degree, but only justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Sheppard v. River Valley Fitness One, L.P.*, 428 F.3d 1, 12 (1st Cir. 2005) (internal quotations omitted). In weighing the justification for and harm caused by a disclosure violation, "[t]he Court must bear in mind the intent of the disclosure rules 'to facilitate a fair contest with the basic issues and facts disclosed to the fullest practical extent.'" *Jalbert v. Grautski*, 2009 WL 3754698, at *4 (D. Mass. Feb. 12, 2009) (quoting *Poulis-Minott*, 388 F.3d at 358).

## III. <u>Analysis</u>

### A. <u>Whether Dr. Danielsson's February 2019 Report Was Timely</u>

The first issue is whether Dr. Danielsson's February 2019 report is properly characterized as a "supplemental" report. Fed. R. Civ. P. 26(e)(1) "requires a party to 'supplement or correct' its disclosure if it later 'learns that in some material respect the disclosure . . . is incomplete or incorrect.'" *Bentley v. Highlands Hosp. Corp.*, 2016 WL 5867496, at *3 (E.D. Ky. Oct. 6, 2016) (quoting Fed. R. Civ. P. 26(e)(1)). While the rule permits an expert to supplement his or her report even after initial disclosure deadlines have passed, it "is not a license to freely amend expert reports to bolster a party's position." *Id.* at *4; *see also Massachusetts Mut. Life Ins. Co. v. DB Structured Prods., Inc.,* 2015 WL 12990692, at *4 (D. Mass. Mar. 31, 2015). Ordinarily, the proper scope of a supplemental report is limited to "correcting inaccuracies" or "filling interstices" in an initial report. *Munchkin, Inc. v. Playtext Prods., LLC*, 600 Fed. App'x. 537, 538 (9th Cir. 2015). While experts may "fill gaps in initial reports when they later learn of the missing information," they may not "add new analyses, opinions, or theories under the guise of

6

supplementation." *Bentley*, 2016 WL 5867496, at *4; *see also Southern v. Bishoff*, 675 Fed. App'x 239, 249 (4th Cir. 2017); *DB Structured Prods.*, 2015 WL 12990692, at *4. In the case of a medical or scientific opinion, new developments or discoveries may permit (or indeed require) a supplemental report. But a report that exceeds the proper scope of a supplemental report will be construed as an initial disclosure of a new expert opinion; "if the deadline for such disclosures has passed, then the report is untimely. *Bentley*, 2016 WL 5867496, at *5.

Here, part of Dr. Danielsson's February 2019 report is indeed supplemental. The report's sole focus is to discuss three epidemiological studies that were published after his initial report: Huybrechts, Parker, and Zambelli-Weiner. (Danielsson 2019 Report at 1-3). For one of those studies—the Huybrechts study—Dr. Danielsson is, in fact, addressing a new development. He had not previously addressed that study in either his initial July 2018 report or his November 2018 supplemental report.[6] In the February 2019 report, he discusses the Huybrechts study and concludes that "[his] prior opinion that [Zofran] exposure in early human pregnancy is capable of causing cardiovascular malformations and orofacial clefts remains unchanged." (*Id.* at 3). That conclusion is identical to the one that he offered in his initial report. (Danielsson Report at 68).[7]

However, Dr. Danielsson had previously filed a supplemental report that addressed the Parker and Zambelli-Weiner studies. He had already stated in his November supplemental 2018 report that he had reviewed those two studies. (GSK Mem., Ex. C). He concluded that "[h]aving

---

[6] Dr. Danielsson's November 2018 list of additional references that he considered is clearly a supplemental report, because it simply lists several articles that he subsequently reviewed and re-affirms the opinions in his initial report.

[7] As GSK points out, Dr. Danielsson's initial report discussed the epidemiological literature only briefly. (*See* Danielsson Report at 5-6). In his initial report, he opined that such studies had produced conflicting results as to whether Zofran can cause birth defects. (*Id.*). But he chose not to discuss those studies in more depth because he believed they suffer from "methodological limitations." (*See id.*; Danielsson Dep. at 395:3-22). Consistent with those opinions, his supplemental report describes the conflicting results and methodological limitations of the Huybrechts, Parker, and Zambelli-Weiner studies.

7

considered this additional material . . . my opinions from my expert report are unchanged." (*Id.*). Thus, with respect to the Parker and Zambelli-Weiner studies, Dr. Danielsson's February 2019 report does not supplement his initial report; it does not address new scientific studies or new data, or correct an error. Rather, it simply bolsters the November 2018 supplemental report—addressing the same matters, but in greater detail. *See Bentley*, 2016 WL 5867496, at *4-5. Accordingly, as to the Parker and Zambelli-Weiner studies, Dr. Danielsson's February 2019 report is untimely and violates Fed. R. Civ. P. 26(a)(2).[8]

The next question is whether the section of Dr. Danielsson's February 2019 report that was a proper supplementation—the portion addressing the Huybrechts study—was timely. Fed. R. Civ. P. 26(e)(1) governs the timeliness of supplemental discovery disclosures:

> **(1) *In General.*** A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:
>
> > **(A)** in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
> >
> > **(B)** as ordered by the court.
>
> **(2) *Expert Witness.*** For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

Fed. R. Civ. P. 26(e). Thus, absent a court order, any supplemental expert report must be filed

---

[8] The Parker study was published in August 2018, and the Zambelli-Weiner study was available online in October 2018. Yet Dr. Danielsson did not create the report at issue, which contains his analysis of the Parker and Zambelli-Weiner studies, until February 28, 2019—97 days later. Moreover, GSK did not receive Dr. Danielsson's February 2019 report until March 15, 2019, a full 112 days later after his prior supplemental report. Because more than three months had elapsed since Dr. Danielsson first learned of the Parker and Zambelli-Weiner studies and submitted his skeletal November 2018 report, those portions of his February 2019 report would likely be untimely even if construed as supplementation. *See Paolino v. JF Realty, LLC*, 830 F.3d 8, 12-13 (1st Cir. 2016) (expert supplementation more than three months after previous, partial report was untimely).

"in a timely manner" and no later than "the time the party's pretrial disclosures under Rule 26(a)(3) are due." *Id.* Because the Court did not set a different deadline for the supplementation of expert reports, the default rule applies.[9]

While it is perhaps a close call, the Court concludes that Dr. Danielsson's supplementation with respect to the Huybrechts study was timely. He was at least aware of the Huybrechts study by the time of his deposition on October 12, 2018, when he was asked whether he had reviewed an abstract of the study (he had not). (Danielsson Dep. at 389:17-21). The full Huybrechts study was published more than two months later, on December 18, 2018. Dr. Danielsson did not supplement his report as to the study until February 28, 2019, 139 days after he was deposed about the Huybrechts abstract and 72 days after the publication of the full study. While that delay of more than two months is at the outer limits of timeliness, it is not so unreasonable, in the context of this litigation, as to require exclusion. At the time of Dr. Danielsson's February 28, 2019 report, the first trial was scheduled for September 9, 2019—still more than six months away. (Docket No. 1301). Obviously, some amount of time was necessary to review and analyze the Huybrechts study, communicate with counsel, and write and submit his report. The fact that he is located in Sweden is a further contributing factor, if a relatively minor one. Under the circumstances, the Court concludes that it was submitted "in a timely manner" within the meaning of Fed. R. Civ. P. 26(e).

---

[9] MDL Order No. 25 provided that discovery on general causation issues "shall conclude on June 29, 2018, except as set forth in this order." (MDL Order No. 25 (Docket No. 1006) at 2). Arguably, that meant that any expert witness supplementations on general causation issues were due by that date—because, under Fed. R. Civ. P. 26(e)(2), they are due by "the time the party's pretrial disclosures under Rule 26(a)(3) are due." However, that interpretation would lead to an absurd result here: the party's expert supplementations would have been due before the expert reports themselves were due. Instead, the Court will construe its Order to mean that, under Fed. R. Civ. P. 26(e), any expert supplementations on general causation were due "in a timely manner" and no later than the time the party's pretrial disclosures were due for *all* issues. Because discovery remains ongoing, that interpretation means that the parties may still, even now, submit expert supplementations, but they are still bound by the requirement of Rule 26(e)(1) that they do so "in a timely manner."

9

### B. Whether Portions of Dr. Danielsson's 2019 Report Should Be Excluded

The question then becomes whether the untimely portions of Dr. Danielsson's February 2019 should be excluded under Fed. R. Civ. P. 37. To make that determination, the Court should consider the following factors: "(1) the party's justification for the late disclosure; (2) the opposing party's ability to overcome any prejudice; (3) the impact on the court docket; (4) the party's history of litigation abuse; and (5) the party's need for the late evidence." *Glass Dimensions*, 290 F.R.D. at 17 (citing *Harriman*, 627 F.3d at 30). Under the circumstances, the Court finds that exclusion is warranted.

First, plaintiffs' offered justification is unpersuasive. Plaintiffs contend that Dr. Danielsson should be permitted to supplement his report to address medical studies published after its submission because the Court invited such supplementations. (*See* Jan. 16, 2019 Hr'g Tr. at 11:13-19 ("if the study is significant for either or both sides and the experts want to react to it, [then] it makes sense to give them a reasonable opportunity to do that")). But that was simply a rough paraphrasing of the requirements of Rule 26(e), not a court order providing for an unlimited amount of time to supplement expert reports. And while Dr. Danielsson was certainly entitled to supplement his report to address the new studies, he already had an opportunity to do so with his November 2018 report, and plaintiffs have not adequately explained why he needed yet a further opportunity.

Second, the admission of the supplemental report would prejudice GSK. The report comes months after the close of expert discovery on general causation, the submission of his previous supplemental report, and the publication of the most recent study he addressed. GSK has had no opportunity to depose Dr. Danielsson about his new opinions on the Parker and Zambelli-Weiner studies or to file a rebuttal report.

Third, further discovery on this issue will cause further delays. The first bellwether trial

is scheduled to begin in three months, and the parties are still conducting discovery regarding individual causation, product identification, and damages. A further opportunity for GSK to depose Dr. Danielsson would likely delay those trial preparation efforts.

Fourth, plaintiffs do not have a compelling need for the late evidence. Dr. Danielsson has already affirmed in his November 2018 supplemental report that the Parker and Zambelli-Weiner studies do not change his opinion in this case.

GSK's motion to strike will therefore be granted as to those portions of the report of Dr. Danielsson submitted on February 28, 2019, in which he discusses the Parker and Zambelli-Weiner studies. (Danielsson 2019 Report at 2, 3).

## IV. Conclusion

For the foregoing reasons, GSK's Emergency Motion to Strike the Supplemental Reports of Plaintiffs' General Causation Experts is GRANTED as to those portions of Dr. Bengt R. Danielsson's February 28, 2019 report that discuss the Parker and Zambelli-Weiner studies, and otherwise DENIED.

**So Ordered.**

Dated: October 23, 2019

/s/ F. Dennis Saylor IV  
F. Dennis Saylor IV  
United States District Judge