**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE: ZOFRAN (ONDANSETRON) PRODUCTS LIABILITY LITIGATION | ) ) ) ) MDL No. 1:15-md-2657-FDS |
| THIS DOCUMENT RELATES TO: ALL CASES | ) ) ) ) ) ) |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT GLAXOSMITHKLINE LLC'S MOTION FOR LEAVE TO FILE AMENDED RENEWED MOTION FOR SUMMARY JUDGMENT BASED ON FEDERAL PREEMPTION AND STATEMENT OF UNDISPUTED MATERIAL FACTS**

Defendant, GlaxoSmithKline LLC's ("GSK") Motion for Leave to File Amended Renewed Motion for Summary Judgment Based on Federal Preemption and Statement of Undisputed Material Facts ("Amended Motion"), while seemingly cosmetic, constitutes a deliberate and surreptitious attempt to circumvent this Court's October 8, 2019 Order by retaining opinion testimony specifically stricken by this Court as untimely.

Under the guise of being "helpful to the Court," GSK's Amended Motion misleadingly: (1) removes the citations appended to stricken opinion testimony while keeping the stricken opinions,  (2) cites to documents which do not provide underlying support for the portion of the stricken opinion they are attempting to reattribute, and (3) broadly cites to "Exhibits" (some voluminous) to support a portion of stricken testimony without providing the Court with a pin-cite at which to locate the supported proposition.  As such this Court should deny GSK's Amended Motion and require GSK to observe the Order of this Court on the Motion to Strike.

I.      **Background**

GSK Amended Motion is a thinly veiled attempt to buttress its preemption efforts, now for a fifth time (the third such motion for summary judgment).[1]   On May 20, 2019, the Supreme Court issued its decision in *Albrecht*. The Court, "in light of that decision"[2] permitted GSK to file a renewed motion for summary judgment based on federal preemption.  However before GSK filed its Renewed Motion for Summary Judgment ("RMSJ"), this Court gave GSK fair notice as to the rules that governed submissions and the Plaintiffs opportunity to move to strike anything prejudicial and untimely:

> "I think what I'm going to do is to let the parties submit what they
> think they want to submit, presumably if either side is unhappy with
> that can file a motion to strike…."

and

> "You know, I assume [Plaintiffs are] not going to like what [GSK]
> file[s] and [Plaintiffs are] going to move to strike it."

*See July. 10, 2019 Hr'g Tr.* at 44:7-11; 48:8-9.  Thus, GSK knew when it drafted its RMSJ that it risked new opinions being struck and could have cited accordingly. On July 22, 2019, GSK filed its RMSJ to which GSK attached 139 exhibits and declarations by four witnesses: Dr. Dena Hixon, Dr. Luise Rogg, Dr. Gary Shaw, and Dr. Patrick Wier. *See*, GSK's Renew. Mot. for Summ. J., Exs. 1-143. On August 26, 2019, Plaintiffs filed their Motion to Strike Evidence from GSK's RMSJ.  On October 9, 2019 this Court granted Plaintiffs' Motion, in part, and struck the

---

[1] In its October 9, 2019 Memorandum Opinion and Order this Court provided a procedural history detailing the voluminous and long standing motion practice in this case with regards to preemption. *See,  October 9, 2019 Memorandum and Order on Plaintiff's Motion to Strike Evidence From GSK's Renewed Motion For Summary Judgement Based on Preemption, Doc 1670 at 3-7*
[2] *See id* at 6

Declarations of Dr. Hixon, Dr. Shaw, and Dr. Wier in their entirety. *See*, *October 9, 2019 Memorandum and Order*, Doc 1670 at 2.[3]  In its opinion the Court found the Declarations of Dr. Hixon, Dr. Shaw, and Dr. Wier and their July 2019 opinions concerning preemption to be untimely pursuant to Fed R. Civ. P. 26 and Fed. R. Civ. P. 37. *See id*.  The Court's 30 page Order and Opinion did not require, or even suggest, that GSK submit an Amended RMSJ.  On October 11, 2019, GSK filed the motion at issue seeking leave to file an Amended RMSJ and Statement of Undisputed Facts. To its Amended Motion GSK attached and amended preemption brief and statement of undisputed material facts. *See, Doc*. 1681, Exs. A and B, respectively. GSK also attached redlines comparing the two documents to the originally filed versions. *See, Doc*. 1681 Exs. C and D, respectively. GSK characterizes its Amended Motion as benign and "merely"  a helpful way to clarify the record:

> "Apart from removing substantive assertions that were supported only by the stricken declarations, GSK's edits merely remove the citations to the declarations and, where appropriate, provide the corresponding citation to GSK's documentary exhibits that are already part of the record."

*See, Doc*. 1681 at 2.   A review of GSK's Amended Motion unmasks it as an attempt to circumvent this Court's Order striking the untimely opinions of Dr. Hixon, Dr. Shaw, and Dr. Wier by editing their citations in an attempt to obfuscate and as such should be denied.

II.     **Argument**

A. **GSK's Amended Motion Removes the Citations it Appended to Stricken Opinion Testimony While Keeping the Stricken Opinions**

---

[3] The court made a point of defining what Dr. Weir's declaration consisted of: "***Dr. Wier's declaration consists of 28 pages of text, plus another 10 pages of appendices***, not including his curriculum vitae. *See Doc 1670* at 19.

GSK's Amended Motion brazenly deletes citations to the stricken declarations while at the same time, attempting to keep stricken opinions.  For example GSK's Renewed RMSJ cites to Dr. Hixon's opinion (found in her declaration) regarding whether the manner in which GSK compiled the DPA could have affected labeling decisions:

> "Because GSK's October 2015 DPA was never supplied to the FDA, the manner in which GSK compiled the DPA could not have affected the FDA's labeling decisions. Ex. 1 (Hixon Decl.) ¶ 30
>    In any event...."

*See*, Doc 1681 Ex. C at 44.   Dr. Hixon's opinion, at ¶ 30 of her declaration, which was stricken by the Court states:

> "30. Because the October 2015 report was not supplied to FDA, the manner in which GSK conducted the DPA therein could not have affected FDA's labeling decisions."

*See*, Doc 1595 Ex. 1 at 8. GSK's Amended Motion includes Dr. Hixon's exact same statement without citation:

> "Because GSK's October 2015 DPA was never supplied to the FDA, the manner in which GSK compiled the DPA could not have affected the FDA's labeling decisions.
>    In any event…."

*See*, Doc 1681 Ex. A at 42.   This is an egregious example of GSK's Amended Motion's attempt to mislead the court under the guise of being helpful and providing clarity.

A second such example can be seen in GSK's Renewed RMSJ's cite to Dr. Shaw's opinion regarding whether an incidence of laryngomalacia would have been material to the FDA:

> "Even supposing laryngomalacia were a major malformation, nothing suggests that this one event would have been material to the FDA or in any way altered study results.  *See* Ex. 3 (Shaw Decl.) ¶16. Whether there were…"

*See*, Doc 1681 Ex. C at 51.   The exact same statement can be found in the Amended Motion only

without attribution.

> "Even supposing laryngomalacia were a major malformation,
> nothing suggests that this one event would have been material to the
> FDA or in any way altered study results.  Whether there were…"

*See*, Doc 1681 Ex. A at 48-49.   GSK cannot simply remove the citation and keep the stricken

opinion as that is contrary to both the spirit and the letter of the Court's Order. This practice is

GSK's attempt to circumvent the Order and expand the record with impermissible and untimely

opinions and as such their Amended Motion should be denied.

### B. <u>GSK's Amended Motion Cites to Documents Which Do Not Provide Underlying Support For the Portion of the Stricken Opinion They are Attempting to Reattribute</u>

GSK's Amended Motion cites to documents which do not provide underlying support for

the portion of the stricken opinion they are attempting to reattribute.  GSK's Renewed RMSJ cites

to Dr. Wier's opinion:

> "Finally Nippon Glaxo conducted a study 100441 involving oral
> formulation of Zofran in rabbits. Ex 120.  Study 100441 is the
> Japanese equivalent of U.K. study L10649. The study investigators
> did not find any fetal lethal or teratogenic effect in any treatment
> group. Ex. 4 (Wier Decl.) ¶ 32. The investigators did find some
> evidence of fetal growth retardation in the mid- and high-dose
> groups, but concluded that the retardation was due to maternal
> toxicity and not directly related to the treatment of Zofran. Id."

*See*, Doc 1681 Ex. C at 19 (*emphasis added*).   Dr. Weir's opinion at ¶ 32 which was stricken by

the Court states:

> "32.  …. There was some evidence of fetal growth retardation
> (decreased bodyweight of female fetuses and delayed ossification)
> in the mid- and high-dose groups. The study investigators
> determined that the fetal growth retardation was due to maternal
> toxicity, and not directly related to the treatment of Zofran."

*See*, Doc 1595 Ex. 4 at 21. GSK's Amended Motion includes the exact same statement of stricken

opinion with a citation to Exhibit 120:

> *"Finally Nippon Glaxo conducted a study 100441 involving oral formulation of Zofran in rabbits. Ex 120.   Study 100441 is the Japanese equivalent of U.K. study L10649. The study investigators did not find any fetal lethal or teratogenic effect in any treatment group. Id. at -7398, 7413-74145. The investigators did find some evidence of fetal growth retardation in the mid- and high-dose groups, but concluded that the retardation was due to maternal toxicity and not directly related to the treatment of Zofran. Id. at 7415."*

*See*, Doc 1681 Ex. A at 18.    However, Exhibit 120 at -7415 does not provide GSK with support

for the stricken opinion it is attempting to reattribute:

```
Reproduction Study (Seg.II) on GR38032F (SN-307)
in Rabbits by Oral Route (Study No. 100441)              ZFN00077415


        A decrease in body weight of female fetuses and a decrease in ossification
center at proximal epiphysis of humerus and tibia were observed in the 2.5
mg/kg or more groups, and fetal growth retardation is estimated.
This fetal growth retardation is considered to be due to the indirect
effect of the decrease in food consumption and body weight in dams.
Since there were no effects on the numbers of ossified phalanges, sacral and
caudal vertebrae and sternebrae, which are usually used as indices of
ossification degree, the retarded ossification observed in this study is
considered to be a mild change.
```

*See*, Doc 1595 Ex. 120 at -7415.  A plain reading shows that GSK's representation is not what the

citation says that it is.  This is another example of GSK's Amended Motion's disingenuous attempt

to mislead the Court under the guise being helpful and providing clarity.

C. **GSK's Amended Motion Broadly Cites to "Exhibits" to Support a Portion of Stricken Testimony Without Providing the Court With a Pin-Cite at Which to Locate the Supported Proposition**

GSK's Amended Motion broadly cites to "Exhibits" (some voluminous) to support a portion of stricken testimony without providing the Court with a pin-cite at which to locate the supported proposition  In its Renewed RMSJ cites to Dr. Wier's opinion, from his declaration at ¶ 28, regarding malformations being well within background rate in Study 100422:

> "The incidence of malformations in the study was well within the background control range. Ex. 4 (Weir Decl.) ¶ 28. Notably, there...."

*See*, Doc 1681 Ex. C at 18.   Dr. Weir's opinion at ¶ 28 which was stricken by the Court states:

> "28. …. The incidence of malformations in the Study 100422 was well within the background control range. For instance…. "

*See*, Doc 1595 Ex. 4 at 18. GSK's Amended Motion includes the exact same statement but provides cites to exhibits 80 and 116.

> "The incidence of malformations in the study was well within the background control range. See Exs. 80, 116.  Notably, there...."

*See*, Doc 1681 Ex. A at 17.   GSK refers the Court to Exhibit 116, a 246 page document, without providing a pin-cite.  At the very least this omission only creates more work for the Court by asking it to parse the voluminous exhibit in order to find the support for the proposition GSK claims is contained somewhere therein.

Again here instead of clarifying, GSK is obfuscating the truth. These tactics should not be rewarded, no matter how helpful and relevant GSK claims them to now be.  Accordingly, Plaintiffs request that this Court deny GSK's Amended Motion, as untimely, not substantially justified, and prejudicial to Plaintiffs.

III.    **Conclusion**

For the foregoing reasons this Honorable Court should deny GSK's Motion for Leave to File Amended Renewed Motion for Summary Judgment Based on Federal Preemption and Statement of Undisputed Material Facts.

Respectfully submitted,

*/s/ Robert K. Jenner* Robert K. Jenner (BBO No. 569381)
JENNER LAW, P.C.
1829 Reisterstown Road, Suite 350
Baltimore, MD 21208
410-413-2155
rjenner@jennerlawfirm.com

Tobias L. Millrood
POGUST MILLROOD LLC
8 Tower Bridge, Suite 940
Conshohocken, PA 19428
610-941-4204
tmillrood@pogustmillrood.com

Kimberly Barone Baden
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
843-216-9265
kbarone@motleyrice.com

M. Elizabeth Graham
GRANT & EISENHOFER P.A.
123 S. Justison Street
Wilmington, DE 19801
302-622-7099
egraham@gelaw.com

James D. Gotz
HAUSFELD
One Marina Park Drive, Suite 1410
Boston, MA 02210
617-207-0600
jgotz@hausfeld.com

October 28, 2019                              *Attorneys for all Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the foregoing Plaintiffs' Response in Opposition to Defendant's Motion for Leave to File Amended Renewed Motion for Summary Judgment Based on Federal Preemption and Statement of Undisputed Material Facts, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing and paper copies will be sent via first class mail to those identified as non-registered participants.

_____

/s/ *Robert K. Jenner*
Robert K. Jenner
