# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE : ZOFRAN® (ONDANSETRON) PRODUCTS LIABILITY LITIGATION | MDL No. 1:15-md-2657-FDS<br><br>This document relates to:<br><br>*All Actions* |

## GSK'S MEMORANDUM REGARDING ITS CITIZEN PETITION

GSK submits this memorandum regarding its November 1, 2019 citizen petition in response to the Court's direction at the November 5 hearing.

GSK is confident that it is entitled to preemption based on the current record. Plaintiffs all but abandoned most of their arguments at the November 5 hearing. As this Court recognized after hearing the parties' oral arguments, Plaintiffs' argument against preemption "really boils down to Study 424." Ex. A (11/5/19 Hr'g Tr.) 65:21-25. The question before this Court is whether FDA would have viewed results from Study 100424 that cannot be distinguished from chance as material to its labeling decisions notwithstanding the conclusion of the study investigators that the study did not show teratogenicity and notwithstanding FDA's own conclusions that similar studies conducted both in the U.K. and Japan did not show teratogenicity. For all the reasons set forth at the hearing, that question cannot be resolved in Plaintiffs' favor without improperly second-guessing FDA's review of GSK's other animal studies.

To the extent this Court has any lingering doubt, FDA now has Study 100424 (and all the other information that Plaintiffs invoked in an attempt to defeat preemption). GSK has long been advocating for FDA's involvement, and in light of FDA's likely review of Zofran's labeling following developments in Europe, GSK invoked the only regulatory mechanism available to it to

request agency action: a citizen petition. It did so because it respects FDA's labeling decisions and authority and believes that Plaintiffs' arguments impermissibly subvert that authority.

FDA opened an official agency proceeding upon receipt of GSK's petition.[1] Federal law requires FDA to respond to the petition. Federal law also requires FDA to demand labeling changes if it "becomes aware of . . . new safety information" that it "determines should be included in the labeling of the drug." 21 U.S.C. § 355(o)(4)(A). If FDA believes that Study 100424 is material information that warrants a labeling change, it will act. FDA's response to the citizen petition thus will likely resolve the preemption issue. Although GSK is prepared to try the first bellwether case in January 2020, it would be appropriate and efficient for the Court to stay the trial date to allow FDA sufficient time to consider the citizen petition. It would also be appropriate for the Court to refer the matter to FDA or to send a letter to FDA to inform FDA of the relevance of the citizen petition to this MDL and to request a prompt response.

**I.      The Citizen Petition Will Likely Dispose of the Preemption Issue.**

FDA's resolution of GSK's citizen petition will likely resolve the preemption issue in this MDL. If FDA holds that Plaintiffs' four categories of information do not justify a labeling change and denies the citizen petition under 21 C.F.R. § 10.30, that agency action will establish preemption under *Merck Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668 (2019). In that situation, even Plaintiffs could not dispute that FDA made its labeling decision while "fully informed" of all material information. *Id.* at 1678.

Plaintiffs suggested at the November 5 hearing that GSK's petition is an improper request for an "advisory opinion." Ex. A (11/5/19 Hr'g Tr.) 61:19-21, 69:17-21. Not so. As this Court acknowledged, and as Plaintiffs conceded, "denied action is a form of taking action." *Id.* at 71:12-

---

[1] GSK's citizen petition has been docketed at FDA-2019-P-5151.

14. The FDA's regulation governing citizen petitions expressly provides that a petition may request that FDA "refrain" from taking administrative action. 21 C.F.R. § 10.30(b)(3); *see also* 21 C.F.R. § 10.25(a) ("An interested person may petition the Commissioner to issue, amend, or revoke a regulation or order, or to take or refrain from taking any other form of administrative action."). If FDA "refrains" from requiring a labeling change after reviewing Plaintiffs' information, including Study 100424, and/or denies the petition, that is official agency action. *See* 21 C.F.R. § 10.30(e)(2)(ii) (providing that one agency response to a citizen petition is to "[d]eny the petition"). Notably, Plaintiffs have never disputed that FDA's denial of the Reichmann petition, and accompanying refusal to change the labeling, is agency action that has the force of law. GSK's petition is no different.

Plaintiffs also suggested that there is something improper about the fact that GSK did not analyze the recent epidemiological studies in its petition. Ex. A (11/5/19 Hr'g Tr.) 68:24-69:21. Analysis of those studies will presumably come from Novartis, the current NDA holder. GSK expressly noted the likelihood of that analysis in its petition; it was not hiding anything. It is precisely because FDA will likely be analyzing the labeling that GSK thought it appropriate to provide Study 100424 and Plaintiffs' other information to FDA at the same time. GSK is not asking for a "hypothetical" ruling "in the absence of all this other current science," as Plaintiffs incorrectly contend. *Id.* at 70:1-7, 71:5-11. GSK has asked for concrete FDA action to amend, or refrain from amending, the labeling under 21 C.F.R. § 10.30. Indeed, one possible outcome of the citizen petition is an FDA conclusion that a labeling change is required based on information, most notably recent epidemiological studies, that was not available at the time of the prior labeling decisions (or Plaintiffs' claimed injuries). If FDA requires a labeling change based only on newly available information, and not on Study 100424 or Plaintiffs' other information, preemption would

still be required in these cases since the alleged injuries at issue all occurred before such information was available. That action would confirm that FDA had all available material information at the time it made its prior labeling decisions.

At the November 5 hearing, Plaintiffs suggested that they need to know "why is [GSK] doing this." Ex. A (11/5/19 Hr'g Tr.) 62:18-22. As the Court seemingly recognized, however, a petitioner's motives for requesting agency action are irrelevant. *See id.* at 69:22-24 ("THE COURT: I mean, do the motives matter? In other words, I don't know what Reichmann's motives were. I don't know –"). It is agency action, not a petitioner's motives, that preempts state law under *Merck*. Here, in any event, GSK's motive is simple. GSK views Plaintiffs' argument against preemption as an attack on FDA's labeling decisions and authority. Plaintiffs' October 18 opposition to GSK's renewed motion crystallized their attack on FDA's labeling decisions: they affirmatively stated in their response to GSK's statement of undisputed material facts that FDA's conclusions about GSK's animal studies are "meaningless." Pls.' Resp. to GSK's Statement of Undisputed Material Facts ¶¶ 91, 128. They likewise spent much of their oral argument explaining why their expert believes that FDA's conclusions about the animal studies were wrong even though FDA determined that GSK had submitted the necessary animal reproductive toxicology studies to obtain approval for Zofran. *See* Ex. A (11/5/19 Hr'g Tr.) 39:14-41:23 (arguing, among other things, that "when these studies were done back in the late 1980's and early 1990's, dosing levels were far lower than they are today under modern ICH standards").

Unlike Plaintiffs, GSK welcomes FDA's views. GSK believes that FDA possessed all material information when it made its prior labeling decisions. For that reason, GSK did not initially submit Plaintiffs' categories of information to FDA when the preemption issue was first briefed. Nonetheless, ever since the Supreme Court decided *Albrecht*, GSK has been urging the

4

Court to refer the labeling issue to FDA under the doctrine of primary jurisdiction, to require Plaintiffs to file a citizen petition, or to request FDA to submit an amicus brief in this case. *See, e.g.*, ECF No. 1514, at 8-10 (June 3, 2019); ECF No. 1553, at 3-5 (July 1, 2019); ECF No. 1571, at 2-4 (July 9, 2019). Plaintiffs have resisted those efforts at every step, evidently fearful of what FDA would say. *See* Ex. A (11/5/19 Hr'g Tr.) 70:13-14 (MR. BOGRAD: "[P]laintiffs think that the Citizen's Petition should be dismissed rather than acted on."); Ex. B (7/10/19 Status Conf. Tr.) 26:25-27:1 (MR. MILROOD: "The FDA is not an outpost to resolve the latest updates on science."); *see also, e.g.*, Pls.' Supp. Mem. Addressing *Merck*, ECF No. 1549, at 15-18 (July 1, 2019); ECF No. 1572, at 7-10 (July 9, 2019). As recently as October 15, the Court suggested that it had not yet ruled out asking FDA for its views. *See* Ex. C (10/15/19 Status Conf. Tr.) 11:12-18.

Because GSK is not the NDA holder, its only mechanism for requesting FDA action itself is to file a citizen petition. When it became evident that FDA may soon review Zofran's labeling in light of recent epidemiological studies, GSK decided that it was an appropriate time to inform FDA of Plaintiffs' categories of information by filing a citizen petition. The petition is not an effort to delay this case; GSK is prepared to go to trial if necessary. The petition rather reflects GSK's firm conviction that federal law preempts Plaintiffs' claims and its desire to obtain FDA's confirmation to put this issue to rest.

GSK also believes that FDA's involvement is critical because FDA has repeatedly cautioned that issuing warnings that are not based in science could mislead the public and deter appropriate use of a drug. As this Court has recognized, "even today" pregnant women are being administered Zofran. Ex. A (11/5/19 Hr'g Tr.) 56:11-17. FDA has long been aware of Zofran use in pregnancy, and it has cautioned that warning about birth defects "could be misleading." *See* Ex. D (FDA denial of Reichmann citizen petition) at 19. FDA also "recognize[s] that exaggeration

of risk, or inclusion of speculative or hypothetical risks, could discourage appropriate use of a beneficial drug . . . or decrease the usefulness and accessibility of important information by diluting or obscuring it." *Utts v. Bristol-Myers Squibb Co.*, 251 F. Supp. 3d 644, 659 (S.D.N.Y. 2017) (second alteration in original) (quoting 73 Fed. Reg. 2848, 2851 (Jan. 16, 2008)), *aff'd sub nom. Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699 (2d Cir. 2019).  A jury verdict for Plaintiffs could well mislead physicians and the pregnant women who take Zofran to this very day.  Given its expressed concern about that very result, FDA should weigh in regarding whether Plaintiffs' categories of information would have been material.

## II. It Would Be Appropriate to Stay the Trial to Allow the FDA to Decide the Citizen Petition.

GSK is prepared to go to trial on January 13, 2020 if this Court denies GSK's renewed motion for judgment based on preemption and denies GSK's general and specific causation *Daubert* motions and case-specific summary judgment motion in the *Rodriguez* case.  (GSK believes that this Court can and should grant all of those motions on the current record.)  Although GSK is prepared to try this case, GSK acknowledges that it would be an inefficient use of the parties', Court's, and jurors' time to try this case in January only to have the FDA later hold that Plaintiffs' information does not warrant a labeling change, requiring vacatur of any jury verdict in Plaintiffs' favor.  *See* Fed. R. Civ. P. 52(b), 59, 60.  Accordingly, it would be appropriate for the Court to stay the trial to conserve judicial resources.

If the Court decides to stay the trial, GSK submits that it would be appropriate to continue the trial date, at least through June 2020, subject to trial counsel's availability at that time.  Under FDA regulations, FDA is required to furnish a response to GSK's citizen petition within 180 days of receipt.  *See* 21 C.F.R. § 10.30(e)(2).  Under that regulation, FDA's response would be due on April 29, 2020.  However, the regulation authorizes FDA to "[p]rovide a tentative response,

6

indicating why the agency has been unable to reach a decision on the petition, e.g., because of the existence of other agency priorities, or a need for additional information." 21 C.F.R. § 10.30(e)(2)(iv). "The tentative response may also indicate the likely ultimate agency response, and may specify when a final response may be furnished." *Id.* At this point in time, GSK cannot predict whether FDA will provide a final response on April 29, 2020, or, if not, when it will provide a final response. That said, if the results of Study 100424 were truly material, one would expect FDA to act quickly to inform doctors.

Continuing the trial date at least through June 2020 would give the parties time to brief the implications of FDA's response to the citizen petition and would give this Court time to rule on preemption in light of FDA's response. It would also give the parties and Court time to consider whether the trial should further be postponed in the event that FDA is unable to reach a decision by April 29, 2020.[2]

### III. The Court May Wish to Refer the Matter or Send a Letter to FDA.

Now that FDA will be deciding GSK's citizen petition, it would be particularly appropriate for the Court to invoke the referral mechanism in 21 C.F.R. § 10.25(c) and refer this matter to the FDA "as a means of coordinating administrative and judicial machinery." *Pejepscot Indus. Park, Inc. v. Maine Cent. R. Co.*, 215 F.3d 195, 205 (1st Cir. 2000) (quoting *Mashpee Tribe v. New Seabury Corp.*, 592 F.2d 575, 580 (1st Cir. 1979)); *see* ECF No. 1514, at 8-10 (discussing the doctrine of primary jurisdiction). To be clear, the Court need not invoke § 10.25(c) to "take advantage of [FDA's] special expertise." *Pejepscot Indus. Park*, 215 F.3d at 205. GSK has already invoked the regulatory process by filing a citizen petition, and the Court need only wait for FDA's response. *See Palmer Foundry, Inc. v. Delta-HA, Inc.*, 319 F. Supp. 2d 110, 113 (D. Mass. 2004)

---

[2] Plaintiffs' proposal to postpone trial until March 30, 2020, should be rejected as it would not provide sufficient time for the Court to receive a response from FDA on the citizen petition.

(explaining that when courts invoke the doctrine of primary jurisdiction, they typically stay proceedings "to allow one of the parties to file an administrative complaint seeking resolution of a particular issue"). But, if the Court were to refer the matter to FDA under § 10.25(c), that action may well incentivize FDA to decide the petition more promptly than it otherwise would.

At a minimum, the Court may wish to send a letter to FDA's Chief Counsel's Office advising of the relevance of the citizen petition to preemption and encouraging FDA to provide its views in an amicus brief. Such a letter, which would carry the imprimatur of a co-equal branch of government, may similarly incentivize FDA to decide the petition promptly. GSK proposes the following language for such a letter:

> The Court is presiding over an MDL proceeding in which plaintiffs allege that Zofran causes birth defects. On November 1, 2019, GlaxoSmithKline (GSK), the former NDA holder, submitted a citizen petition requesting "that FDA either refrain from taking action to alter Zofran's pregnancy-related labeling or take action to alter the labeling in light of these four categories of information, as the Agency deems appropriate." The Court is currently assessing GSK's renewed motion for summary judgment based upon federal preemption. GSK's citizen petition raises issues relevant to that motion. The Court encourages FDA to resolve the citizen petition as promptly as possible. Additionally, if FDA wishes to submit an amicus brief setting outs its position on any aspect of the preemption issue before the Court, the Court requests that FDA do so on or before [date].

## CONCLUSION

For these reasons, it would be efficient for the Court to stay the trial while FDA decides GSK's citizen petition, which will likely resolve the preemption issue in this case.

Dated: November 13, 2019

Respectfully submitted,
GLAXOSMITHKLINE LLC,
By its attorneys,

*/s/ Jennifer Stonecipher Hill*
Madeleine M. McDonough
Jennifer M. Stevenson
Jennifer Stonecipher Hill
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
mmcdonough@shb.com
jstevenson@shb.com
jshill@shb.com
*Admitted pro hac vice*

Lisa S. Blatt
Amy Mason Saharia
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
lblatt@wc.com
asaharia@wc.com
*Admitted pro hac vice*

Attorneys for Defendant GlaxoSmithKline LLC

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent via first class mail to those identified as non-registered participants.

                                        */s/ Jennifer Stonecipher Hill*
                                        Jennifer Stonecipher Hill