UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: ZOFRAN® (ONDANSETRON) PRODUCTS LIABILITY LITIGATION | MDL no. 1:15-md-2657-FDS<br><br>This document relates to:<br><br>All Actions |

**DEFENDANT GLAXOSMITHKLINE LLC'S NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT BASED ON PREEMPTION**

Defendant GlaxoSmithKline LLC ("GSK") respectfully submits the attached decision as supplemental authority in support of its pending Renewed Motion for Summary Judgment on Preemption (Dkt. No. 1594). Attached as **Exhibit A** is a copy of the decision of the California Superior Court, San Francisco Division in *Lawson v. Boehringer Ingelheim Pharms., Inc.*, Case No. CJC-16-004863 (Cal. Sup. Ct. Nov. 5, 2019), which is one of the more than 50 consolidated cases in California state court concerning the drug Pradaxa.[1] This decision issued after GSK submitted its original brief and its reply brief in support of its renewed motion for summary judgment on federal preemption. In *Lawson*, the court held that the plaintiff's failure-to-warn claims were preempted because the plaintiff did not identify any "newly acquired information" that would have supported a labeling change under the CBE regulation. Ex. A at 6.[2]

---

[1] In addition, more than 3000 Pradaxa cases are consolidated in Connecticut Superior Court. *See, e.g.*, *Roberto v. Boehringer Ingelheim Pharms., Inc.*, 2019 WL 4806271 (Conn. Super. Sept. 11, 2019) (Ex. B).

[2] Applying *Utts v. Bristol-Myers Squibb Co.*, 251 F. Supp. 3d 644 (S.D.N.Y. 2017), the court held that the plaintiff bore the burden first to identify "newly acquired information" under the CBE regulation and that, if the plaintiff met that burden, the burden would then shift to the defendant to demonstrate clear evidence that FDA would not have approved the labeling change. Ex. A at 4-5. Since this Court's earlier preemption ruling, the Second Circuit embraced this preemption-shifting framework. *See Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 708 (2d Cir. 2019). GSK submits that this Court should apply that burden-shifting framework here, but GSK should prevail no matter

1

*Lawson* supports GSK's argument that Plaintiffs' four categories of information would not have permitted a labeling change under the CBE regulation because, among other reasons, they do not identify risks that were not present in other submissions to FDA or present statistically significant results. In *Lawson*, the plaintiff claimed that various studies and academic articles supported a labeling change to provide a heightened warning about the impact of Pradaxa plasma concentrations on bleeding risks. *Id.* at 6-7. In assessing this argument, the court hewed closely to the regulations that guide this inquiry, emphasizing that any "newly acquired information" must "reveal risks of a different type or greater severity or frequency than previously included in submissions to FDA." *Id.* at 5. The Court reasoned that

> [i]f the newly acquired information meets the definition outlined in 21 C.F.R. § 314.3(b), it also cannot be rooted in conjecture or hypothesis. Rather, it must conclusively establish, by scientifically valid measurable and statistically significant data, that the different or increased risks are actual and real.

*Id.* at 5 (citing *Roberto v. Boehringer Ingelheim Pharms., Inc.*, 2019 WL 4806271, at *13 (Conn. Super. Sept. 11, 2019) (Ex. B)).

Applying this standard, the court concluded that the plaintiff's information was not "newly acquired information" under the CBE regulation because it was not "truly 'new,'" and even if it were, it was "(a) scientifically inconclusive, and and/or hypothetical, and/or (b) does not reveal 'risks of a different type or greater severity or frequency than previously' submitted." *Id.* at 3-4 (quoting 21 C.F.R. § 314.3(b)). The court characterized the information as "conditional and/or preliminary, without the sufficient degree of scientific validity required to constitute newly acquired information." *Id.* at 7. Discussing the study that was the "centerpiece" of the plaintiff's

---

which party bears the burden in connection with identifying newly acquired information. GSK has presented ample evidence proving that Plaintiffs' categories of information are not newly acquired information.

argument, the court noted in particular that the evidence was not "statistically significant" and thus did not warrant a labeling change. *Id.* at 7 n.6, 10.[3]

The record here compels preemption for the same reasons as in *Lawson*. None of Plaintiffs' categories of information constitute newly acquired information because they do not "reveal risks of a different type or greater severity or frequency than previously included in submissions to FDA." 21 C.F.R. § 314.3(b). Although Plaintiffs focus their preemption argument primarily on Japanese Study 100424, even their own experts concede that Study 100424 did not produce statistically significant evidence of an association between Zofran and birth defects. *See* GSK Mot. 33-34. Study 100424 therefore does not present "the sufficient degree of scientific validity required to constitute newly acquired information," and in any event it does not "present any new or different risk" than other studies presented to FDA. *See* Ex. A at 7. And, to the extent Plaintiffs rest their preemption argument on their expert's proposed mechanism of action (which was indisputably submitted to FDA), that proposed mechanism of action is not just "conditional and/or preliminary," *id.*; it is, in the expert's own words, "hypothetical[]." GSK Mot. 19.

As *Lawson* holds, FDA requires much more than conjecture or hypothesis to change labeling. But, in the end, that is all Plaintiffs offer this Court. The Court should grant GSK's renewed motion for summary judgment on preemption.

---

[3] The court's analysis largely followed another recent, thorough preemption analysis by the Connecticut Superior Court in *Roberto*, 2019 WL 4806271, which found that federal law preempted the plaintiffs' claim that the defendant should have provided the same proposed Pradaxa warning (but not a different proposed warning). *See* Ex. B. The *Roberto* court rested its decision on many of the same decisions that GSK has cited to this Court. *See id.* at *13-14; GSK Mot. 24-25.

Dated: November 19, 2019

        Respectfully submitted,
        GLAXOSMITHKLINE LLC,
        By its attorneys,

        */s/ Jennifer Stonecipher Hill*
        Madeleine M. McDonough
        Jennifer M. Stevenson
        Jennifer Stonecipher Hill
        SHOOK, HARDY & BACON L.L.P.
        2555 Grand Blvd
        Kansas City, MO 64108
        Telephone: (816) 474-6550
        Facsimile: (816) 421-5547
        mmcdonough@shb.com
        jstevenson@shb.com
        jshill@shb.com
        *Admitted pro hac vice*

        Lisa S. Blatt
        Amy Mason Saharia
        WILLIAMS & CONNOLLY LLP
        725 Twelfth Street, N.W.
        Washington, DC 20005
        Telephone: (202) 434-5000
        Facsimile: (202) 434-5029
        lblatt@wc.com
        asaharia@wc.com
        *Admitted pro hac vice*

        *Attorneys for Defendant GlaxoSmithKline LLC*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent via first class mail to those identified as non-registered participants.

>*/s/ Jennifer Stonecipher Hill*
>Jennifer Stonecipher Hill