## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

IN RE: ZOFRAN (ONDANSETRON) )  MDL No. 1:15-md-2657-FDS
PRODUCTS LIABILITY LITIGATION )
             )
             )  This document relates to:
_____)  All Actions

### PLAINTIFFS' MEMORANDUM REGARDING CONTACTING THE FDA

The dilemma of how and whether GSK's eleventh hour Citizen Petition to the FDA will affect this litigation can be definitively answered: the question GSK has now directly put to the FDA is guided by different regulatory standards on pregnancy labeling and therefore is different from the labeling question being asked in this litigation. As a result, any judgment the FDA reaches on GSK's Citizen Petition based on today's regulatory standards on pregnancy labeling will necessarily not address the question of what the FDA would have done under the prior regulatory regime. For that reason, this Court should not engage the FDA and bring it in as a participant to this litigation.

Previously, GSK invited this Court to divest authority of deciding GSK's renewed motion for summary judgment on preemption grounds and instead, assign primary jurisdiction to the FDA.[1] When this Court signaled it did not intend to do so, GSK also urged this Court to write to the FDA to seek its amicus curiae participation in the briefing of the preemption issue. Again, this Court deferred doing so.[2] Having failed to enlist the participation of the FDA for years while it was the Zofran sponsor, GSK chose to take matters into its own hands, and on November 1, 2019, just two business days prior to the scheduled preemption oral argument, GSK filed its own Citizen

---

[1] GSK's Memorandum Regarding Preemption, filed July 1, 2019, (Doc. No. 1553, at p. 3).
[2] GSK Supplemental Submission Requesting Amicus Brief, filed on August 21, 2019, (Doc. No. 1646).

Petition, explicitly luring the FDA to take a position on matters in the Zofran litigation. Now with the FDA specifically alerted to the litigation, this Court announced on November 20, 2019 its inclination to write a letter to the FDA to resolve issues relating to the GSK Citizen Petition "expeditiously."[3]   The parties were thereafter invited to advise of their position with regard to such a letter to the FDA. Plaintiffs acknowledge that because GSK has now directly engaged the FDA, the path forward for the Court may seem unclear on the surface. Plaintiffs emphasize, however, that the fact that GSK wrote to the FDA to seek an advisory opinion about its interpretation of various categories of safety information should not be confused with the legal issues pending in this litigation and presently before this Court. In short, Plaintiffs do not believe any communication with the FDA is necessary and that any such communication would serve little purpose.[4]  To the extent this Court deems it appropriate to contact the FDA regarding GSK's Citizen Petition, Plaintiffs respectfully request that this Court limit its communication to informing the FDA of the pending summary judgment motion, while expressly affirming the view that the Court will not be bound by any agency action on the Citizen Petition.

As this Court is now aware, on November 1, 2019, GSK filed a Citizen Petition with the FDA, asking the agency to opine on the relevance of "four other categories of information" to "Zofran's pregnancy-related labeling"—specifically, the four categories of information Plaintiffs have identified as withheld from the agency in its prior reviews of Zofran's pregnancy-related labeling. Doc. 1731-1. Though GSK is not the label holder for Zofran, GSK curiously asks the FDA to review "information that the [Zofran] plaintiffs have identified" and to take whatever

---

[3] Tr. of MDL Proceedings, Nov. 20, 2019, at p. 35.
[4] Plaintiffs refer the Court to their November 13, 2019 memorandum (Doc. 1745), in which Plaintiffs detail the impropriety of GSK's Citizen Petition, as well as the lack of preemptive effect any FDA response would have on GSK's Renewed Motion for Summary Judgment Based on Preemption. *See* Doc. 1594.

action "the Agency deems appropriate" based on this specific information and current regulatory requirements and, "[i]f the Agency deems it appropriate to alter the labeling," to "inform GSK and the public which categories of information (if any) necessitated a labeling change, whether the Agency believes it did not already have the information, and/or why the information is material to the Agency's labeling decision." *Id.* GSK's Petition does not request that the FDA take any specific action concerning its regulations or orders, but merely asks the agency to opine on the relevance of the four categories of information that Plaintiffs highlight in this litigation as material information about which GSK has not fully informed the FDA. GSK also does not request that the FDA consider more recent scientific developments that are directly relevant to Zofran's safety profile, including "newly available epidemiological studies and an assessment of Zofran's labeling by the Pharmacovigilance Risk Assessment Committee (PRAC)" of the European Medicines Agency, which support Plaintiffs' contention that Zofran's labeling should warn about and/or restrict Zofran's use during pregnancy. *See* Doc. 1731-1 at 1.

Perhaps most importantly, GSK does not ask – and likely could not ask - the FDA to assess the relevance of the "four other categories of information" against the regulatory standards that were in place **at the time** of the agency's prior reviews of Zofran's pregnancy-related labeling. To do so, would simply ask the FDA to engage in a hypothetical Monday morning quarterback exercise as to how the FDA would have evaluated the Pregnancy Category status of Zofran in light of the material information not previously presented to the FDA. At the time, and of relevance to the Plaintiffs in this litigation, the Zofran label included in relevant part:

> **Pregnancy:** *Teratogenic Effects:* Pregnancy Category B. Reproduction studies have been performed in pregnant rats and rabbits at daily oral doses up to 15 and 30 mg/kg/day, respectively, and have revealed no evidence of impaired fertility or harm to the fetus due to ondansetron. There are, however, no adequate and well-controlled studies in pregnant women. Because animal reproduction studies are not always predictive of human response, this drug should be used during pregnancy only if clearly needed.

Therefore, during the FDA's **prior** evaluations, the Pregnancy Letter Category system was still in place, under which the primary relevant distinction between a Pregnancy Category B and a Pregnancy Category C drug was whether "animal reproduction studies have shown an adverse effect on the fetus," the precise issue raised by GSK's withholding of certain Japanese animal studies from the FDA that reflected adverse effects on the fetus, including but not limited to heart defects in the treated group, not the control group.

Today, however, the letter category system is no longer in place. The current Novartis label language for Zofran includes seven paragraphs relating to Pregnancy which include, in relevant part:

### 8.1 Pregnancy

Risk Summary

Available data do not reliably inform the association of ZOFRAN and adverse fetal outcomes. Published epidemiological studies on the association between ondansetron and fetal outcomes have reported inconsistent findings and have important methodological limitations hindering interpretation [*see Data*]. Reproductive studies in rats and rabbits did not show evidence of harm to the fetus when ondansetron was administered during organogenesis at approximately 6 and 24 times the maximum recommended human oral dose of 24 mg/day, based on body surface area, respectively [*see Data*].[5]

---

[5] While it does not bear on this Court's current preemption consideration and ultimate decision, the *Human Data* added to the recent Zofran label states in part:

> Methodological limitations of the epidemiology studies preclude a reliable evaluation of the potential risk of adverse fetal outcomes with the use of ondansetron in pregnancy.

> Two large retrospective cohort studies of ondansetron use in pregnancy have been published. In one study…a sub-analysis for specific malformations reported an association between ondansetron exposure and cardiovascular defect (odds ratio (OR) 1.62 [95% CI (1.04, 2.14)]) and cardiac septal defect (OR 2.05 [95% CI (1.10, 3.28)])…

It is within this label language setting that GSK poses its Citizen Petition and request for advisory opinion from the FDA.  Of course, any response by the FDA to the pending petition will not answer the question concerning what the FDA would have done with the withheld information under the prior system.

Importantly, as the FDA itself acknowledged in its amicus brief to the U.S. Supreme Court in *Merck v. Albrecht*, any determination concerning the legal effect of prior FDA actions on the viability of Plaintiffs' state-law claims is a question properly reserved for the Court itself to decide:

> "Where, as here, FDA renders a decision declining to approve a drug labeling change, the interpretation of that administrative decision and its significance for a failure-to-warn claim are legal questions for a court to resolve…."

> "Just as the scope of a prior judicial adjudication is a question of law for a court to decide, so too is the scope of a federal agency adjudication like the one at issue here."

> "Where consideration of such material requires resolution of factual matters for a court to determine the meaning and scope of the agency decision, the court itself should resolve them."

> "To the extent extrinsic evidence may sometimes be relevant in litigation between private parties to determine the meaning and effect of FDA's agency action, the court's evaluation of such subsidiary facts does not alter the ultimate legal character of the inquiry or the court's *exclusive* authority to resolve it."

Brief for the United States as Amicus Curiae at 12–16, *Merck Sharp & Dohme Corp.*, 139 S. Ct. 1668, 1679 (2019) (No. 17-290), 2018 WL 4562163 at *15–21.

---

…A case-control study evaluation associations between several common non-cardiac malformations and multiple antiemetic drugs reported an association between maternal use of ondansetron and isolated cleft palate (reported adjusted OR = 2.37 [95% CI (1.18, 4.76)])….

The Supreme Court expressly concurred with this view in *Albrecht* when it ruled that only agency actions "carrying the force of law" can have preemptive effect under the "clear evidence" preemption rule; a hypothetical or potential conflict is insufficient to warrant … preemption." *Merck Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668, 1679 (2019) (quoting Rice v. Norman Williams Co., 458 U.S. 654, 659 (1982)); *see also id.* at 1682 (Thomas, J., concurring) ("Merck's primary argument, based on various agency communications, is that the FDA would have rejected a hypothetical labeling change submitted via the CBE process. But neither agency musings nor hypothetical future rejections constitute pre-emptive 'Laws' under the Supremacy Clause.")

GSK clearly intends to ask this Court to view the FDA's 2019 (or 2020) opinion about what it would have done with Zofran labeling if GSK had years earlier submitted the withheld information as dispositive of the preemption question. But, as *Albrecht* teaches, neither "agency musings" nor "hypothetical or potential conflicts" are sufficient to justify preemption. Whatever the FDA may today say about what it hypothetically might have done if only GSK had submitted the withheld evidence concerning Zofran use during pregnancy at an earlier point in time—under different regulatory standards—cannot retroactively create the sort of "irreconcilable conflict" between state and federal law that would have given rise to "clear evidence" preemption. *Albrecht*, 139 S. Ct. at 1679 (quoting *Rice*, 458 U.S. at 659). The simple fact is that GSK did not submit this evidence to the FDA at the relevant time and thus any imagined conflict between FDA regulatory requirements and the requirements of the state-law duty to warn remain entirely "hypothetical."

The FDA cannot today decide whether Zofran should now carry a pregnancy warning without regard to the best and most recent scientific information available; yet that is precisely what GSK has asked the Agency to do. Absent such a comprehensive evaluation of the best current scientific information, any FDA statement in response to GSK's petition will constitute only the

sort of "agency musings" that the Supreme Court explained in *Albrecht* lack preemptive effect. Nor can the FDA today decide to retroactively recategorize Zofran as a Pregnancy Category C drug, because those pregnancy categories are no longer in use. Indeed, GSK has not even asked the FDA to evaluate the withheld scientific information under the regulatory standards that were applicable at that time.

As such, any FDA response to GSK's Citizen Petition would not carry preemptive effect. Whether the FDA dismisses, denies, or approves GSK's Citizen Petition, this Court is the sole factfinder with respect to GSK's clear evidence preemption argument. Accordingly, a letter from this Court inviting the FDA to weigh in on the pending motion would serve little purpose, as any FDA decision on GSK's Citizen Petition would not, and should not, determine this Court's decision.

Nevertheless, if this Court is inclined to write to the FDA, Plaintiffs respectfully suggest that any letter be short, limited to the facts, and reaffirm the fundamental principle that the ultimate decision on preemption rests with the Court. Plaintiffs suggest that any such letter be along the following lines:

> Dear _____:
>
> The undersigned is the United States District Court Judge overseeing a federal multidistrict litigation (MDL) concerning the prescription drug Zofran (ondansetron) and the risk of fetal birth defects associated with the off-label use of that drug to treat nausea and vomiting during the first trimester of pregnancy. The Court currently has under consideration a motion by Defendant GlaxoSmithKline (GSK) for summary judgment based on federal preemption. That motion has been fully briefed and argued and currently awaits the Court's decision.
>
> On the eve of the oral argument on that motion, GSK informed the Court of its recent submission of a Citizen Petition to the FDA. That Citizen Petition, FDA Docket No. [1731], submitted on November 1, 2019, presents the FDA with "four categories of information" that Plaintiffs assert GSK did not provide to the agency during its prior reviews of Zofran's pregnancy-related labeling and asks the FDA to either "refrain from taking action" to alter that labeling or to "take action to alter

that labeling in light of these four categories of information" "as the Agency deems appropriate." GSK further requests that FDA, "if it deems it appropriate to alter the labeling," to inform GSK and the public which of the categories of information supported the label change, why the Agency considers the information material, and whether the Agency believes that it did not already possess the information.

The "four categories of information" submitted by GSK to the FDA in its Citizen Petition are the same categories of information that Plaintiffs in the MDL, in response to GSK's summary judgment motion, contend were withheld from the FDA at the time(s) of its prior consideration of Zofran's pregnancy-related labeling. The Court also understands that the Plaintiffs in this litigation will be presenting the FDA with a response and/or other submission of information related to the GSK Citizen Petition. For this reason, the Court invites the FDA to advise the Court how it intends to dispose of the Citizen Petition. Please understand, however, that, as the Supreme Court recently declared in *Merck Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668 (2019), the question of federal preemption is ultimately a question of law for this Court, not the FDA, to decide.

The Court understands that FDA consideration of Citizen Petitions can often take well over a year to complete. Thus, this Court may not be in a position to defer a ruling on the pending summary judgment motion until the Citizen Petition process is completed. The Court therefore would appreciate knowing the Agency timeline for review of this Citizen Petition, if it intends to act on it.

As explained earlier, Plaintiffs firmly believe that any communication to the FDA from this Court will not and should not alter the issue before this the Court—whether the FDA was fully informed when it rejected previous labeling proposals. Thus, a letter to the FDA serves little purpose in resolving GSK's Renewed Motion for Summary Judgment Based on Preemption. But if this Court were to decide that such a letter is necessary, Plaintiffs request this Court limit the substance of its letter as outlined above.

Respectfully submitted,

*/s/ Robert K. Jenner*
Robert K. Jenner (BBO No. 569381)
JENNER LAW, P.C.
1829 Reisterstown Road, Suite 350
Baltimore, MD 21208
410-413-2155
rjenner@jennerlawfirm.com

Tobias L. Millrood
POGUST MILLROOD LLC
161 Washington Street, Suite 940
Conshohocken, PA  19428
610-941-4204
tmillrood@pogustmillrood.com

Kimberly D. Barone Baden
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
843-216-9265
kbarone@motleyrice.com

M. Elizabeth Graham
GRANT & EISENHOFER P.A.
123 S. Justison Street
Wilmington, DE  19801
302-622-7099
egraham@gelaw.com

James D. Gotz
HAUSFELD
One Marina Park Drive, Suite 1410
Boston, MA 02210
617-207-0600
jgotz@hausfeld.com

Dated:  December 2, 2019                    *Attorneys for Plaintiffs*