# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: ZOFRAN (ONDANSETRON) PRODUCTS LIABILITY LITIGATION <br><br> THIS DOCUMENT RELATES TO: <br><br> ALL CASES | ) ) ) ) ) ) ) ) ) ) )   MDL No. 1:15-md-2657-FDS |

**ADDITIONAL SUPPLEMENT TO JOINT APPENDIX FOR *DAUBERT* BRIEFING**

Plaintiffs submit the following supplemental expert report of Thomas W. Sadler, Ph.D. to the Joint Appendix for the *Daubert* Briefing (doc. nos. 1299, 1304 and 1339).  Dr. Sadler's supplemental report is submitted to address three recent publications and in further support of Plaintiff's Brief (Doc. No. 1299, Jan. 18, 2019) in Opposition to GSK's *Daubert* Motion.  The Joint Appendix was originally filed on December 27, 2018:

152.    Second Supplemental Expert Report of T.W. Sadler, PhD., January 28, 2020, JA006639-JA006643

Dated: January 29, 2020                  Respectfully submitted,

/s/ *Thomas V. Ayala*

M. Elizabeth Graham
Thomas V. Ayala
GRANT & EISENHOFER P.A.
123 Justison Street
Wilmington, DE  19801
302-662-7063
egraham@gelaw.com
tayala@gelaw.com

Kimberly D. Barone Baden
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, SC  29464
843-216-9265
kbarone@motleyrice.com

Robert K. Jenner, Esquire
Jenner Law, P.C.
1829 Reistertown Road
Suite 350
Baltimore, Maryland  21208
(410) 653-3200
(410) 653-6903 (fax)
rjenner@jennerlawfirm.com


Tobias L. Millrood
Michael G. Daly
POGUST, BRASLOW & MILLROOD LLC
8 Tower Bridge, Suite 1520
Conshohocken, PA  19428
610-941-4204
tmillrood@pbmattorneys.com
mdaly@pbmattorneys.com

James D. Gotz
HAUSFELD
One Marina Park Drive, Suite 1410
Boston, MA 02210
617-207-0600
jgotz@hausfeld.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I, Thomas V. Ayala, hereby certify that on this 29th day of January, 2020, I electronically filed the foregoing Additional Supplement to Joint Appendix for Plaintiffs' and GSK's Daubert Briefing, using the CM/ECF system and thereby delivered by electronic means to all registered participants as identified on the Notice of Electronic Filing.

/s/ *Thomas V. Ayala*
Thomas V. Ayala

# TAB 152

**Second Supplemental Report of T.W. Sadler, PhD**

I have previously rendered the opinion following my review and analysis of the relevant scientific and epidemiological and stated to a reasonable degree of scientific certainty that Zofran is a cause of congenital cardiac and orofacial defects. Those opinions have been expressed in my expert report dated July 10, 2018, my Supplemental Report in March 2019 and in my depositions taken in this case.  Results from three new scientific studies have been published subsequent to my previous reports and depositions and are the subject of this supplemental report. My opinions, as stated below following my review and analysis of these new references, are stated to a reasonable degree of scientific certainty.

The new investigations include: A letter by Huybrechts et al., titled: Intravenous ondansetron in pregnancy and risk of congenital malformations (JAMA.com/November 2019); An original investigation by Lemon et al., titled: Ondansetron use in first trimester of pregnancy and the risk of neonatal ventricular septal defect (International Journal of Epidemiology 2019; doi:10.1093/ije/dzy 255); and a meta-analysis by the French agency entrusted with protecting their citizens' health, The National Agency for the Safety of Medicines and Products for Health (ANSM) titled: Use of ondansetron during first trimester of pregnancy and risk of congenital anomalies.

One of the references I previously reviewed and discussed in my supplemental report and depositions was an epidemiological study by K.F. Huybrechts et al., titled: Association of maternal first trimester ondansetron use and cardiac malformations and oral clefts in offspring (JAMA 320: 2429-2437, 2018). This 2018 study describes their results from an analysis of a

1

cohort they have employed in previous studies and, which has been used again to obtain results detailed in their latest report, the 2019 letter. This data base is a mother-infant linked cohort nested in the 2000-2014 Medicaid Analytic Extract. The investigators indicate that their evidence from this 2019 study "suggests" that IV administration of ondansetron in the first trimester is not associated with an increased risk for cardiac malformations or orofacial clefts or for congenital malformations overall.  They further note their findings suggest that ondansetron is not a "major" teratogen. Huybrechts et al state they used the same methodology for the 2019 IV study that they had used for their 2018 study, which had limitations I discussed in my March Supplement and my May 2019 deposition. Given the authors utilized the same methodology for the 2019 IV study my opinions on the limitations of that study remain the same, including the estimation of LMP and therefore dates used to document first trimester exposure and restriction of the cohort to live births. These limitations could bias results toward the null.

The Lemon et al. study used a retrospective cohort comprised of liveborn singleton deliveries at Magee-Women's Hospital of the University of Pittsburgh Medical Center with UPMC health plan coverage from 2006-2014 to evaluate the risk of ventricular septal defects (VSDs) associated with first trimester exposure to IV or oral ondansetron. Both demographic and delivery information from the validated hospital MOMI database (Magee Obstetric Medical and Infant Database) was linked with claims data from the UPMC Health Plan and to inpatient and outpatient medical records.  Exposure to ondansetron in the first trimester was extracted from the in-patient medical record for treatment at the hospital and through insurance claims. This approach captured outpatient and inpatient (32%) exposures. Ultrasound or LMP (if ultrasound was not available) was used to estimate gestational age at delivery.  Gestational age at each exposure to ondansetron was estimated using gestational age, date of delivery and start date of

2

therapy. Results from this study demonstrated that ondansetron exposure in the first trimester was associated with an increased risk of ventricular septal defects with risk ratios ranging from 1.7 (CI 1.0-2.9) to 2.1 (CI 1.1-4.0). Thus, results from this study are consistent with others described in my original and supplemental reports showing an association between ondansetron exposure and cardiac defects, particularly septal abnormalities. Importantly, in addition to showing an increased risk for septal defects, this study captured accurate data on prescriptions for ondansetron use and for IV administration of the drug, such that the investigators were able to "calculate a dose" for ondansetron treatment. Results showed that the association between ondansetron use and the occurrence of a VSD was dose dependent with an increased risk for a septal defect occurring in offspring from women receiving the highest cumulative doses compared to those receiving the lowest doses (adjusted risk ratio: 3.2 [CI 1.0-9.9]).

Demonstration of a dose effect is an extremely significant finding and fulfills one of the basic principles of teratology with regard to trying to establish whether or not an agent is a teratogen. In this regard, Wilson, one of the founding fathers of the science of teratology, listed a "dose effect" as the sixth of his principles of the science, stating that: "Manifestations of deviant development increase in frequency and degree as dosage increases." (Wilson, J.G. Current status of teratology: General principles and mechanisms. Chapter 2: *Handbook of Teratology,* J.G. Wilson and F.C. Fraser, eds. Pp47-74, 1977. Plenum Press, NY; See Sadler original report, Section IV: Teratogens; p.8).

The third study is a meta-analysis by the French National Agency for the Safety of Medicines and Products for Health (ANSM). The primary mission of this agency is to assess health risks posed by health products intended for human use and consumption. The agency is responsible for issuing permits for market approval and has become the single authority in

3

JA006641

regulation of biomedical research in France. There are approximately 1000 employees and 2000 experts who assist in evaluating the safety of drugs and other health care products. These experts have conducted a meta-analysis on the potential risk between exposure to ondansetron in the first trimester and congenital anomalies. In their study they have evaluated most of the epidemiology studies reviewed in my original and supplemental reports, including Anderka et al., 2012; Anderson et al., 2013; Colvin et al., 2013; Danielsson et al., 2014; Einarson et al., 2004; Fejzo, et al., 2016; Huybrechts et al., 2018; Parker et al., 2018; Pasternak et al., 2013; Werler et al., 2014 and Zambelli-Weiner et al., 2018.

The meta-analysis of these studies showed that first trimester exposure to ondansetron was associated with a statistically significant increased risk of cardiac malformations (OR 1.45; CI 1.04-1.92) in 5 studies; cardiac septal defects (OR 1.32; CI 1.12-1.56) in 4 studies; oral clefts (OR 1.30; CI 1.04-1.63) in 3 studies and cleft palate (OR 1.4; CI 1.14-1.72) in 5 studies, which led to the agency's conclusion that, "ondansetron is associated with an increased risk of cardiac abnormalities, especially septal defects, and orofacial clefts." The authors note that it was not known if miscarriages due to malformations were considered in the studies, but that inclusion of such data would have probably resulted in an increase in the risk associated with first trimester exposure to ondansetron and the occurrence of birth defects. This conclusion is the same one I myself reached by reviewing the self-same studies.

While it is true that not all epidemiology studies have shown an increased risk of congenital defects following ondansetron exposure, this result is what I would have expected to observe. I am unaware of any body of epidemiological literature studying pregnancy, drug exposure, and birth defect outcomes, that have all been positive. Yet despite this fact, if the weight of the evidence indicates that a drug is teratogenic, then the risk should be communicated

to the public so that informed decisions can be made before exposing a fetus to a teratogen. As the French study shows, the evaluation of quality epidemiology studies clearly demonstrates a significant risk for cardiac defects, especially septal malformations, and for orofacial clefts. Furthermore, results from the French study, demonstrating an increased risk for the occurrence of septal defects, support new findings from the Lemon study (Lemon did not evaluate the occurrence of general cardiac defects or oral clefts). Moreover, the Lemon study provides evidence for a dose effect of the drug that adds significant support for the conclusion that ondansetron is a teratogen when exposure occurs during the first trimester during organogenesis.

Conclusion

Having reviewed the 3 new publications discussed above and considering them in the context of the totality of the evidence my opinion to a reasonable degree of scientific certainty remains that ondansetron exposure during gestation at critical stages of embryogenesis can cause or substantially contribute to congenital heart and orofacial defects. The Lemon et al study, the French Regulatory Agency meta-analysis and the multiple other studies that demonstrate an increased risk for birth defects following maternal exposure to ondansetron in the first trimester should not be ignored as the health of our children is and should be a priority.

Dated: 1/28/2020

Thomas W. Sadler, Ph. D.