**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| IN RE: ZOFRAN (ONDANSETRON) | ) | MDL No. 1:15-md-2657-FDS |
| PRODUCTS LIABILITY LITIGATION | ) | |
| | ) | |
| | ) | This document relates to: |
| _____ | ) | All Actions |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION**
**FOR SANCTIONS AGAINST GSK**

## I.   INTRODUCTION

While frustrated at various times during this litigation by GSK's obstructionist conduct in discovery, requiring occasional motions to compel, never did Plaintiffs feel compelled to have to resort to ask this Court to sanction GSK.  That is, until now.

Having been denied multiple times on its preemption defense, GSK—emboldened by a new Supreme Court opinion and desperate to cloak itself in the immunity that would sweep away its brazen off-label marketing conduct—converted that desperation into inexcusable and sanctionable discovery misconduct.  Despite a continuing obligation to supplement discovery[1] and repeated directives from this Court for GSK to turn over discovery and disclose to Plaintiffs just what was happening between GSK and the FDA and GSK and Novartis, GSK chose instead to thumb its nose at both Plaintiffs and this Court.

Not only did GSK refuse to timely turn over relevant discovery, but GSK attempted to bury (until it was caught) the most material fact of all.  At the very time it was asking both this Court to consider the preemption question and the FDA to consider its Citizen Petition that goes directly to

---

[1] On October 21, 2016, Plaintiffs served GSK with requests for production of documents which included among other applicable requests that GSK: "Produce all documents concerning communications between you and the FDA regarding Zofran's label."

questions of preemption, GSK was secretly meeting and lobbying the FDA between at least late October 2019 and November 8, 2019 to prime the Agency to rule favorably on its petition.

GSK had multiple opportunities to disclose its secretive lobbying efforts to this Court during hearings on November 5th, 15th, 20th, December 16th and January 20th—during all of which preemption and/or FDA discovery were a subject before the Court, yet GSK chose to continue to conceal its covert lobbying.  Indeed, it was not until January 27th, 2020 that the FDA disclosed the fact of this meeting, when it docketed a memorandum of GSK's lobbying effort in the GSK Citizen Petition public file.  While Plaintiffs expected GSK to be contrite and apologize to Plaintiffs and this Court for the failure to disclose this vital information beforehand, such an apology never came. Instead, GSK reacted with an unhinged and personal motion, attacking Plaintiffs' co-lead counsel for doing something that GSK deliberately chose not to do: inform the Court.  Worse yet, when Plaintiffs conferred with GSK asking why it was that GSK never disclosed the fact of the November 8, 2019 lobbying meeting, GSK advised Plaintiffs it was under no obligation whatsoever to disclose the meeting and in fact, GSK took the remarkable and flabbergasting position that "GSK was not present" at the November 8, 2019 meeting with the FDA.  This kind of hubris should not be rewarded with censorship of Plaintiffs' counsel and new rules to protect GSK at status conferences, as GSK now seeks. It would be a chilling result to reward such conduct. Rather, GSK's brazen discovery conduct warrants an appropriate sanction: Neither GSK nor this Court can un-ring the bell from GSK's deliberate, covert lobbying of the FDA and its poisoning of the Citizen Petition process.  GSK should therefore not be afforded the opportunity to raise and pursue the preemption defense that it has now tainted.

GSK counsel's abuse of process, misrepresentations, omissions, and intentional failures to supplement discovery have fueled a waste of this Court's and Plaintiffs' resources. Indeed,

instead of trying the merits of the *Rodriguez* case at this very moment, the parties and this Court are now embroiled in a many months-long discovery dispute created *entirely* as a result of GSK's (and its counsel's) conduct, necessitating this request for the imposition of sanctions. Most significantly, GSK's secretive efforts to circumvent this Court's exclusive authority over preemption through FDA lobbying has caused ***irreparable*** corruption of the Citizen Petition process. Were it not for FDA counsel's email to GSK counsel on October 29, 2019—putting in writing and thus making discoverable GSK's backdoor attempt to influence the FDA—this Court and Plaintiffs would have *no idea* that GSK had been in communication with the FDA regarding its Citizen Petition, because GSK counsel falsely represented to this Court that it was not in communication with the Agency.

Covertly attempting to orchestrate this end-run around the Court's decision not to involve the FDA in the preemption litigation, while claiming ignorance to the FDA's plans, is the kind of abuse of process that warrants the remedy of sanctions by striking GSK's preemption defense. Nothing less will send the right message to GSK, that this kind of conduct will not be tolerated in the post-*Albrecht* MDL landscape.

Since GSK's counsel began its covert communications with its 'Facebook friend' and Chief Counsel at the FDA, Plaintiffs still have no idea when GSK's communications with the FDA actually began. Plaintiffs have been forced to divert their resources from *Rodriguez* trial preparation to extracting the truth from GSK.  That truth reveals secret efforts by GSK to use its connections with the FDA to pressure the Agency into using its imprimatur solely to influence GSK's preemption defense. However, seeking to recover the resources Plaintiffs had to exhaust does not remedy the situation. Instead, given the seriousness of GSK's abuse of process and misrepresentations, Plaintiffs seek the only possible remedy that would yield a fair result: the

striking of GSK's preemption defense. Anything less will send a message to GSK that it is free to alter the public interest mission of a federal agency by using their close ties with FDA to conspire to defend themselves in court against potential tort liability. Doing so would at the least render the Supreme Court's holding in *Albrecht* meaningless in practice, and at worst effectively grant immunity to the pharmaceutical industry.

## II.    FACTS

On February 5, 2019, this Court denied GSK's Motion for Summary Judgment Based on Preemption, finding there were "disputed issues of material fact concerning the availability of a federal preemption defense." *See* Doc. 1325 at 51. In light of the United States Supreme Court's May 20, 2019 decision in *Merck Sharp & Dohme Corp. v. Albrecht*, 139 S.Ct. 1668, 1679 (2019) requiring that a judge (rather than a jury or the FDA) decide the issue of "clear evidence" preemption, this Court vacated portions of its February 5, 2019 Order and permitted GSK to file a renewed motion in the summer of 2019. *See* Doc. 1580. Shortly thereafter, on July 17, 2019, Williams & Connolly LLP attorney Amy M. Saharia entered an appearance in this litigation.[2] *See* Doc. 1585. Not coincidentally, it was at this same time that GSK counsel began its efforts to direct this Court to FDA counsel Stacy Amin either to request an amicus brief or vest primary jurisdiction with the FDA.[3]

Two days later, on July 19, 2019, GSK filed its Renewed Motion for Summary Judgment, with Williams & Connolly appearing for the first time in this MDL. *See* Doc. 1594 at 2. Also

---

[2] GSK counsel also represented at the July 10, 2019 hearing: "You could request [primary jurisdiction] from the FDA, you could request an amicus brief from the FDA, you could request that the plaintiffs submit a Citizen's Petition if they really believe this….**I don't think it's going to take forever. I think, honestly, this might take two months**." Ex. A, July 10, 2019 Tr. 35:12–13.

[3] GSK counsel listed Stacy Amin as a contact person for the FDA in several pleadings since July 2019. *See* Doc. 1553 (July 1, 2019); Doc. 1609-1 (July 24, 2019); Doc. 1646-1 (Aug. 21, 2019).

padded into GSK's Renewed Motion were several declarations that attempted to patch holes pointed out in this Court's February 5, 2019 Order.  *See, e.g.*, Doc. 1325 at 42, 46 ("GSK has submitted no expert or other affidavit concerning the issue.").  After consideration of Plaintiffs' motion, this Court subsequently struck several of these declarations as untimely and prejudicial, including most notably, the opinion of Dr. Patrick Wier, who would have provided the expert opinion that Plaintiffs' evidence would have been immaterial to the FDA. *See* Doc. 1670 at 27–28 ("The Court is mindful that the exclusion of Dr. Wier's declaration could deprive it of useful expert testimony as it decides the issue of federal preemption.").

Then, on November 1, 2019, just one business day before argument of its Renewed Motion for Summary Judgment, Plaintiffs and the Court received notice that GSK had filed a Citizen Petition asking the FDA to review solely for its defense purposes "four other categories of information" at issue in this litigation (which did not include the most recent safety information related to Zofran). *See* Doc. 1731 at 3.  GSK filed the Citizen Petition with the explicit hope, as it wrote, that "[i]f FDA holds that Plaintiffs' four categories of information do not justify a labeling change and denies the citizen petition under 21 C.F.R. § 10.30, that agency action will establish preemption…."  Doc. 1746 at 2.[4]  In the same Citizen Petition, GSK also hinted at its knowledge of imminent FDA action on Zofran when it stated: "GSK understands that FDA may be reviewing or will soon review together with Zofran's current NDA holder, Novartis, Zofran's safety profile and labeling."  Doc. 1731 at 1.

---

[4] To be clear, Plaintiffs do not believe that an FDA finding on the GSK Citizen Petition that is favorable to GSK's requests dictates that this Court must grant GSK's Renewed Motion for Summary Judgment Based on Preemption. But more relevant to this Motion, Plaintiffs now believe it is clear that the FDA's review of GSK's Citizen cannot be separated from GSK's covert attempts to unduly influence the FDA, which has now had three months to consider GSK's Citizen Petition with GSK's one-sided, untruthful, and secretive lobbying.

GSK intentionally chose not to produce any of its communications with FDA prior to, concurrent with, or anytime reasonably soon after its Citizen Petition filing, as Plaintiffs' pending discovery requests and Rule 26 facially required.

On November 5, 2019, at oral argument of its Renewed Motion for Summary Judgment, GSK counsel again hinted of its knowledge of pending FDA action: "the other intervening thing is that in the last few weeks, we do believe that the FDA is or is about to start looking at some of the information that the U.K. people are looking at…." Ex. B, Tr. Nov. 5, 2019 at 57:18–20.  The Court then asked GSK counsel directly:

> Q: So if PRAC is looking at it, does that mean the FDA is looking at it, or, I mean, has there been anything -- **does the FDA have anything** on its docket or **on its radar**?
>
> A: All we know is -- we're not the NDA holder, so there's probably information that we do not know, but we do know that Novartis has been asked for information about that, and **that's really all I know**. GSK has not been asked to submit anything to PRAC or to FDA on that specific Dr. Zambelli-Weiner situation or those epi studies, but **Novartis is in communication with both regulatory agencies, so that's about all I know**.

*Id.* at 59:3–14 (emphasis added).  GSK counsel also stated at the same hearing: "GSK has been accused of burying information. **We have not done that**."[5]  *Id.* at 72:22–23 (emphasis added). Even after filing of its Citizen Petition, GSK continued to recommend this Court contact Ms. Amin.  *See* Doc. 1746 at 8 (November 13, 2019) ("At a minimum, the Court may wish to send a

---

[5] Later, in a January 24, 2020 letter to Plaintiffs, GSK counsel wrote:  "To be clear, **we have no specific information to suggest that FDA has affirmatively requested information about Zofran's pregnancy labeling from Novartis**."  Ex. D, Jan. 24, 2020 Ltr. to Pls. (emphasis added). GSK also wrote in the same letter: "First, GSK has produced 'very few' documents in response to your recent requests because GSK has very few documents to produce. As we have stated repeatedly, GSK no longer owns the product and has not owned it for nearly five years. **The current marketing authorization holder, Novartis, is responsible for communicating with these regulators about Zofran**. GSK cannot produce documents that do not exist or that we do not have." *Id.* (emphasis added).

letter to FDA's Chief Counsel's Office…encouraging FDA to provide its views in an amicus brief.").

Then, at the November 20, 2019 status conference—11 days after already secretively lobbying the FDA on November 8, 2019 to rule favorably on its petition—GSK counsel represented to the Court:

> ***To be totally frank and honest***, GSK sent the petition, the Citizen Petition to CEDAR [sic] after it was filed. That's the Center for Drug Evaluation and Research at FDA as well as to the Office of Chief Counsel when it was filed so FDA would be aware of it.
>
> Contrary to suggestions in the brief, **GSK has no knowledge or reason to believe that FDA has in any way prejudged the petition**, but we are preparing those documents for production and should have that very soon.[6]

Ex. C at 26:16–25 (emphasis added).  Upon Plaintiffs' repeated complaints to the Court regarding GSK's seemingly behind-the-scenes knowledge of the FDA's actions, the Court stated on November 20:

> GSK does have a duty to supplement its discovery requests if they are no longer complete.  **Based on what I was shown, it seems to me that GSK has had recent communications with Novartis or the FDA concerning Zofran or ondansetron, that those are probably discoverable and ought to be produced**.

Ex. C at 33:9–14 (emphasis added).  Why did GSK simply not just tell the Court and Plaintiffs that, "while we did meet with the FDA on November 8, 2019 and lobbied the FDA about why our Petition has merit and should be considered, the FDA did not provide us information at that time

---

[6] As an example of GSK's abject failure to demonstrate any level of contrition, GSK likes to attempt to persuade this Court that the hyper-technical meaning of its words are accurate.  Technically, GSK may not have an answer on whether FDA has prejudged the Petition.  What GSK cannot claim however, is that it did not attempt to get FDA to prejudge the petition.  And most importantly, GSK stands unquestionably guilty of not **disclosing** in that very same comment that it indeed met with the FDA days earlier.

on how it would judge the Petition?"  GSK's sheer absence of candor and disclosure on November 20, all by itself, warrants sanctions.

Of course, GSK *never* produced the fact of its lobbying communications with the FDA on November 8, 2019, even to this day.  Following the November status conference, on December 13, 2019, this Court followed GSK's insistent urging that it advise the FDA of the status this litigation and direct its letter to Stacy Amin.  *See* Doc. 1773.  And on the same day, GSK made a production to Plaintiffs of 3,714 pages—the entirety of its Citizen Petition and exhibits (3,699 pages—all of which were already available to Plaintiffs), but only 9 pages of "new" information (and several were duplicates).  Of these 9 new pages produced on December 13, 2019, GSK produced cover letters from its November 1, 2019 submission to the Director of the Center for Drug Evaluation and Research—signed off by GSK's Chief Medical Officer, Sabine Luik.  Ex. E, ZFN03374796 at -8503–05.  Therein, GSK stated that it was simply enclosing a copy of the Citizen Petition filed by GSK for the FDA's consideration.  *Id.*

At the December 16, 2019 Status Conference, following Plaintiffs' renewed complaints that GSK was not producing all discoverable documents about its communications with FDA concerning Zofran, this Court stated:

> And probably to repeat myself with a trial date in May, it looks like we have lots of time but, you know, actually, we don't, particularly if we're going to be having litigation over this. So let's keep, you know, your efforts up here. **Let's get the documents produced**."

Ex.  F, Tr. Dec. 16, 2019 Status Conference at 9:21–25 (emphasis added). Plaintiffs then wrote to GSK on December 18, 2019 asking explicitly, and again, for what was already required of GSK under its duty to supplement (and by this Court's two admonishments): produce your communications with the FDA.  *See* Ex. G, Pls. Ltr. to GSK (Dec. 18, 2019).  Finally, on December

19, 2019, GSK counsel produce <u>some</u> (but now we know not all) of its communications with the FDA.

In this December 19, 2019 production, Plaintiffs would learn that on October 29, 2019, Stacy Amin, Chief Counsel for the FDA, emailed her FDA subordinate, Sara Beardsley, as well as GSK counsel at Williams & Connolly, instructing Ms. Beardsley to "talk to [GSK counsel] about an issue we may be interested in."  *See* Ex. H, ZOFFDA00000001–25 at -0022.[7]

"**An issue we may be interested in**."  That could only make sense if GSK <u>already</u> had been communicating with Ms. Amin about Zofran, preemption and its Citizen Petition.  And it sets the stage for the November 8 lobbying session that Ms. Amin instructs her staffer to schedule. Plaintiffs subsequently have learned that, through Williams & Connolly, GSK counsel has a personal relationship and private line of communication with FDA counsel Stacy Amin.  *See* Ex. I, Facebook Page; *see also* Ex. H.

Plaintiffs also came to learn via GSK's December 19, 2019 production that GSK had omitted from prior productions a *different* November 1 cover letter to Stacy Amin at the FDA, written not by GSK's CMO Sabine Luik, but Williams & Connolly, in which GSK counsel wrote "GSK would also welcome the opportunity to discuss the facts and claims implicated by the Citizen Petition with OCC."  Ex. H at -0003.

On January 7, 2020, Plaintiff counsel wrote to Ms. Amin to request her voluntary participation in a deposition, to permit the families with Zofran-associated birth defects the same right to access to the Agency, so as to learn fully the scope and substance of GSK's secretive

---

[7] Plaintiffs remain in the dark as to the extent of GSK's communications with the FDA.  This, despite Plaintiffs' still applicable discovery requests from October 21, 2016, which included among other applicable requests that GSK: "Produce all documents concerning communications between you and the FDA regarding Zofran's label."

lobbying of the FDA in its litigation defense.  *See* Ex. J, Pls. Ltr. to FDA (Jan. 7, 2020). On January 23, 2020, Ms. Amin responded to Plaintiffs, copying GSK counsel, and declined to be deposed. *See* Ex. K, FDA Amin Ltr. to Pls. (Jan. 23, 2020).

Then, on January 27, 2020, the FDA published on its public docket for the first time a memorandum prepared by the Agency on January 24, 2020, detailing the **two-month-earlier** November 8, 2019 lobbying conversation between GSK counsel and the FDA about the Defendant's litigation-driven Citizen Petition.  *See* Ex. L, FDA Memorandum (Jan. 24, 2020).  In that conversation, according to Ms. Beardsley at the FDA, at least three GSK lawyers (Amy Saharia and Sarah Harris of Williams & Connolly as well as Tom Sheehan, all of whom have entered appearances in this litigation) spoke with the FDA. *See id.* Ms. Beardsley cautioned GSK counsel: "I explained that the GSK representatives and their counsel should not cover new information, and that any new information should be sent to the citizen petition docket." *Id.* GSK counsel then made numerous litigation-driven lobbying arguments to the FDA to prime a favorable response to its Citizen Petition, as well as several factual representations including:

1. "the Zofran district court litigation is unlike many product liability cases";

2. "no warnings related to the risks in question have been added to the drug's labeling";

3. "the Zofran product liability cases were filed starting in 2015 on the heels of a separate citizen petition, which she characterized as a strategic bet by Plaintiffs' lawyers";

4. "GSK views this case as the first significant decision on preemption";

5. "the case could have an outsized influence on how other courts decide preemption in light of *Albrecht*";

6. "Plaintiffs' view of materiality could mean that FDA would be flooded with information by new drug application (NDA) holders";

7.   "Plaintiffs' theory requires judges to second-guess FDA's prior position, which GSK views
     as an attack on FDA's authority"; and

8.   "a warning under state law that is not required by FDA could mislead the public."  *Id.*

Upon Plaintiffs bringing to the Court's attention this memorandum on January 27, 2020, GSK

counsel represented to the Court:

> **What do those e-mails and correspondence show?** They show that, in fact, a
> lawyer from Williams & Connolly, who knew Stacy Amin, reached out to her and
> said, hey, on behalf of GSK, we're going to file a Citizen Petition. I wanted to give
> you a heads-up, **and I wanted to find out who is the person with whom I should
> correspond**, and that's Sara Beardsley.

Ex. M, Tr. Jan. 27, 2020 Status Conference at 36:4–10.[8] Counsel for GSK also represented: "First,

I just wanted to remind the Court that when I was here and we were speaking about this topic on

November 20th, **I disclosed to the Court that GSK had sent a copy of the Citizen Petition to

FDA**. The Court might remember that. **There's no attempt to hide something or not tell

plaintiffs about it**. That's just not true, your Honor, and we have produced all of those documents."

*Id.* at 45:16–22 (emphasis added). GSK counsel continued: "You would think they would welcome

the FDA's involvement in this, but even today by trying to piece together **some crazy conspiracy

theory** based upon some e-mail traffic between lawyers from Williams & Connolly and lawyers

who were part of the chief counsel's office at the FDA."  *Id.* at 38:5–9 (emphasis added).

These are not some crazy conspiracy theories.  These are facts:

---

[8] Yet, GSK concedes that the FDA's January 24, 2020 memorandum is accurate. *See* Doc. 1812
at 6 ("[T]he summary appears to be accurate based on the recollections of the GSK attorney
participants.").

1. GSK[9] covertly communicated with and used personal ties to lobby the FDA, to influence the Agency to prejudge its Citizen Petition, solely to assist in its litigation defense.[10]

2. It is clear from a plain reading of FDA's January 24, 2020 memorandum that, on November 8 2019, GSK did in fact lobby the FDA to rule favorably on its petition.

3. GSK falsely represented to this Court that it had no idea what the FDA was doing or thinking about Zofran.

4. GSK abused the discovery and litigation process to contravene the clear dictates of *Albrecht*, that this Court—and not the FDA—shall resolve these issues.

## III.   DISCUSSION

The Federal Rules of Civil Procedure are clear:

A party who has responded to an interrogatory, request for production, or request for admission…**must supplement or correct its disclosure or response in a timely manner** if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or as ordered by the court.

Fed. R. Civ. P. 26(e)(1); *see also In re Zofran (Ondansetron) Prod. Liab. Litig.*, No. 1:15-MD-2657-FDS, 2019 WL 4980310, at *4 (D. Mass. Oct. 8, 2019) (observing that under Rule 26(a), parties must "supplement or correct" their discovery "in a timely manner" if a party learns of an omission or error unknown to the other party or "as ordered by the court"). The Advisory Committee Notes to Rule 26(e) further advise: "Supplementations need not be made as each new

---

[9] During the meet-and-confer Plaintiffs undertook prior to filing this Motion, GSK took the position that "GSK was not present" at the November 8, 2019 meeting with the FDA.

[10] GSK also contends that "Because filing a citizen petition was an unusual step, GSK believed it appropriate to notify FDA's Office of Chief Counsel in advance as a courtesy that GSK was going to file a citizen petition." *See* Doc. 1812 at 5.  Yet, based on FDA records, GSK filed Citizen Petitions in: 2001, 2004, 2005, 2009, 2011, 2012, and 2013.

item of information is learned but should be made at appropriate intervals during the discovery period, and **with special promptness as the trial date approaches**." Fed. R. Civ. P. Adv. Comm. (emphasis added).

Where a party fails to provide information, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  Subpart (c)(1)(C) further advises that a Court may impose other appropriate sanctions, including:  prohibiting the disobedient party from supporting defenses, or from introducing designated matters in evidence; or striking pleadings in whole or in part.  *Id.*

As this Court has previously written:

Rule 37(c)(1) provides that: "[a] party that without substantial justification fails to disclose information required by 26(a) ... is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion, any witness or information not so disclosed." Rule 37(c)(1) contemplates strict adherence to the discovery requirements; furthermore, the required sanction in the ordinary case is mandatory preclusion of the untimely disclosed information.  However, Rule 37(c)(1) contains a narrow escape hatch that allows courts to admit untimely evidence if the proponent's failure to reveal it was either substantially justified or harmless.  Plaintiff [here] carries the burden of proving substantial justification or harmlessness.

*Bay State Sav. Bank v. Baystate Fin. Servs., LLC*, No. CIV.A. 03-40273-FDS, 2007 WL 6064455, at *7 (D. Mass. Mar. 23, 2007) (Saylor, J.) (internal citations and quotations omitted). *Klonoski v. Mahlab,* 156 F.3d 255, 269 (1st Cir. 1998) ("Rule 37(c)(1) 'clearly contemplates stricter adherence to discovery requirements, and harsher sanctions for breaches of this rule, and the required sanction in the ordinary case is mandatory preclusion.'").  In acknowledging that the adoption of Rule 37(c)(1) in 1993 "gave teeth to a significantly broadened duty" to comply with case management orders, the First Circuit wrote that "[m]andatory preclusion [is] the required sanction in the ordinary case)."  *Primus v. United States,* 389 F.3d 231, 235 (1st Cir. 2004).

In determining the proper sanction, the court should consider "(1) the party's justification for the late disclosure; (2) the opposing party's ability to overcome any prejudice; (3) the impact on the court docket; (4) the party's history of litigation abuse; and (5) the party's need for the late evidence." *In re Zofran (Ondansetron) Prod. Liab. Litig.*, No. 1:15-MD-2657-FDS, 2019 WL 4980310, at *5 (D. Mass. Oct. 8, 2019). "In weighing the justification for and harm caused by a disclosure violation, [t]he Court must bear in mind the intent of the disclosure rules to facilitate a fair contest with the basic issues and facts disclosed to the fullest practical extent." *Id*. at *5 (internal quotations and citations omitted).

As to the first factor, GSK has no justification for its late disclosure of relevant facts while this Court took action in reliance upon on GSK's representations in court and in its pleadings. GSK could have easily produced its November 1, 2019 cover letter to the FDA asking for "the opportunity to discuss the facts and claims implicated by the Citizen Petition with OCC" when it filed its Citizen Petition or shortly thereafter. Instead, GSK waited until this Court told it twice to do so, and following Plaintiffs repeated requests, on December 19, 2019—48 days later. GSK's only justification for doing so was to hopefully avoid *ever* informing Plaintiffs or the Court that it sought to talk about the substance of its Citizen Petition with the FDA, and to allow enough time for the FDA to react to its lobbying effort by ruling favorably on its Citizen Petition. The same is true of GSK's email communications with the FDA: GSK's belated production was an effort to secure a favorable preemption opinion from the FDA, without Plaintiffs' or the Court's knowledge of its communications.

The second factor, Plaintiffs' ability to overcome any prejudice, also weighs in favor of striking GSK's preemption defense. The FDA has now had three months to consider GSK's slanted point-of-view. GSK will surely point out the FDA has advised the parties they could

present to the FDA, but Plaintiffs' point is this: GSK has already so tilted the playing field in its favor that Plaintiffs could not have faith that a potential FDA denial could be separated from GSK's conduct.

The third factor, the impact on the court's docket, again weighs in favor of striking GSK's preemption defense. GSK's discovery disputes and its failure of candor have already absorbed too much of the Court's time. If the Court does not strike GSK's defense, Plaintiffs will continue to seek discovery on all of the communications among the FDA, GSK, and Novartis, and any related motion practice would continue to impact the Court's docket. Whereas, if this Court were to strike GSK's preemption defense, the parties could re-focus their time and resources to where they should have been by now anyways: the *Rodriguez* trial.

The fourth factor, which this Court addressed in its October 9, 2019 Order, *see* Doc. 1670, also weighs in favor of striking GSK's defense. While the Court then found GSK had not engaged in litigation abuse, GSK's belated additions of the now-struck declarations combined with GSK's discovery abuse here also provides grounds for the Court now finding so.

The fifth factor, GSK's need for the late evidence, also warrants striking GSK's defense. GSK does not need this evidence for any purpose; in fact, it only served to undermine GSK's representations to the Court and Plaintiffs.

Furthermore, "[i]n Massachusetts, like virtually every other state, attorneys are ethically bound to act with candor toward the tribunal, fairness toward opposing counsel, and truthfulness in statements to others." *Siupa v. Astra Tech, Inc.*, No. CIV.A. 10-10525-LTS, 2012 WL 6622492, at *3 (D. Mass. Dec. 18, 2012) (citing Mass. Rules of Prof'l Conduct R. 3.3, 3.4, 4.1.); *In re Stallworth*, No. 11-19919-WCH, 2012 WL 404952, at *6 (Bankr. D. Mass. Feb. 8, 2012)

15

("Massachusetts Rule of Professional Conduct 3.3, titled 'Candor Toward the Tribunal,' requires

that '[a] lawyer shall not knowingly ... make a false statement of material fact... to a tribunal.'").

> The Model Rules of Professional Conduct instruct:
>
> This Rule sets forth the special duties of lawyers as officers of the court to avoid conduct that undermines the integrity of the adjudicative process. A lawyer acting as an advocate in an adjudicative proceeding has an obligation to present the client's case with persuasive force. Performance of that duty while maintaining confidences of the client, however, is qualified by the advocate's duty of candor to the tribunal. Consequently, although a lawyer in an adversary proceeding is not required to present an impartial exposition of the law or to vouch for the evidence submitted in a cause, the lawyer must not allow the tribunal to be misled by false statements of law or fact or evidence that the lawyer knows to be false.

Model Rules of Prof'l Conduct r. 3.3 (Am. Bar Ass'n). In hiding from the Court its communications with, relationship with and lobbying of the FDA on the very issue that this Court has been addressing since *Albrecht*, counsel for GSK utterly failed to satisfy their duties as officers of this Court.

There is only one remedy sufficient to deter future action such as GSK's and also yield the justice Plaintiffs deserve in this case: Plaintiffs respectfully request that the Court strike GSK's preemption defense altogether.[11] Plaintiffs do not take their request lightly, but strongly feel this is the only measure that may cure the serious prejudice of GSK's abuse of process, misrepresentations, omissions, and failure to timely supplement discovery over the past many months.

---

[11] As this Court has previously written in relation to a case in which the Court struck the factual allegations that were obtained by way of attorney misconduct: "A federal court has certain implied powers governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. Pursuant to that power, courts may, for example, discipline attorneys who appear before it or dismiss cases in their entirety as a sanction for conduct that abuses the judicial process." *Leysock v. Forest Labs., Inc.*, No. CV 12-11354-FDS, 2017 WL 1591833, at *13 (D. Mass. Apr. 28, 2017) (internal quotations and citations omitted).

16

GSK's abuse of process, omissions, misrepresentations, and failure to timely supplement discovery related to its pending preemption motion have so eradicated any sense of fairness of the FDA's consideration of GSK's Citizen Petition, such that any reasonable person's faith in the FDA's decision cannot now be restored.  To be clear, GSK could have and should have informed the Court and Plaintiffs of its actions and communications with the FDA, as required of it from its obligations to supplement discovery and its obligations as officers of the Court.  This obligation arose no later than October, 2019, or whenever earlier in time it was that GSK began its campaign to lobby the FDA.  GSK could have and should have informed Plaintiffs that it intended to communicate with the FDA about the substance of its Citizen Petition, so that Plaintiffs and the Court were not left unaware that the FDA was deciding GSK's Citizen Petition after being lobbied and presented with just one side of the story (and indeed, an inaccurate version).  Instead, GSK chose to remain silent, and also misrepresent the nature of its communications, in violation of GSK counsel's duty of candor and discovery obligations.

In sum, GSK's abuse of process, omissions, misrepresentations, and failure to timely supplement its discovery have caused an irreparable corruption of what should be an impartial FDA process in consideration of the Citizen's Petition.  GSK should not be rewarded for its failures and for its waste of the Court's and Plaintiffs' time and energy.  Moreover, as a matter of fundamental fairness, avoiding undue prejudice to Plaintiffs, continued mounting costs, and in the interest of the "just, speedy and inexpensive determination of these proceedings," this Court should strike GSK's preemption defense altogether.  *See* Fed. R. Civ. P. 1.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grants Plaintiffs' Motion for Sanctions against GSK and enter an Order striking GSK's preemption defense.

Respectfully submitted,

*/s/ Robert K. Jenner*
Robert K. Jenner (BBO No. 569381)
JENNER LAW, P.C.
1829 Reisterstown Road, Suite 350
Baltimore, MD 21208
410-413-2155
rjenner@jennerlawfirm.com

Tobias L. Millrood
POGUST MILLROOD LLC
8 Tower Bridge, Suite 940
Conshohocken, PA  19428
610-941-4204
tmillrood@pogustmillrood.com

Kimberly D. Barone Baden
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
843-216-9265
kbarone@motleyrice.com

M. Elizabeth Graham
GRANT & EISENHOFER P.A.
123 S. Justison Street
Wilmington, DE  19801
302-622-7099
egraham@gelaw.com

James D. Gotz
HAUSFELD
One Marina Park Drive, Suite 1410
Boston, MA 02210
617-207-0600
jgotz@hausfeld.com

Dated: February 5, 2020                          *Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Plaintiffs' Memorandum in Support of Their Motion for Sanctions against GSK, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing and paper copies will be sent via first class mail to those identified as non-registered participants.

/s/ *Robert K. Jenner*
Robert K. Jenner