## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **IN RE : ZOFRAN® (ONDANSETRON) PRODUCTS LIABILITY LITIGATION** | MDL NO. 1:15-md-2657-FDS<br>This document relates to:<br>All Actions |

## GLAXOSMITHKLINE LLC'S
## OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS

Plaintiffs' motion is not about any discovery grievance. When viewed without dramatized accusations untethered to the facts, little remains of Plaintiffs' motion. There was nothing inappropriate about GSK's counsel's interactions with FDA, and Plaintiffs' allegations otherwise ignore explicit FDA regulations allowing such interactions. Their efforts to find fault in GSK's counsel's statements to the Court are equally unfounded. To be clear, GSK's counsel have made absolutely no misrepresentations to the Court. Plaintiffs' sole basis for sanctions under the rules— an alleged failure to supplement discovery—likewise fails. GSK's counsel's communications were not responsive to Plaintiffs' original requests for production as limited by the local rules. In any event, GSK voluntarily produced the documents in a timely manner.

Ever since the Citizen Petition was fresh on FDA's docket, Plaintiffs made clear that they want it to be dismissed.[1] They are determined to cast doubt on—or even all together stop—FDA's review of the very four categories of evidence they have touted as so critical to Zofran's labeling. For years, Plaintiffs claimed that if FDA had the four categories of information, this would have

---

[1] Indeed, at the November 5, 2019 hearing, Plaintiffs' counsel, Louis Bograd, acknowledged, "I think plaintiffs think that the Citizen's Petition should be dismissed rather than acted on." Hr'g Tr. at 70 (Nov. 5, 2019), Ex. A.

been the difference-maker for Zofran's labeling.[2] Now that GSK provided that very information to FDA, Plaintiffs chastise and seek sanctions against GSK for doing what Plaintiffs claim should have been done. This hypocritical about-face cannot be ignored and speaks volumes about the merits of Plaintiffs' position then and now.

Their use of a so-called discovery dispute to now further that goal is surprising only in its transparency. But Plaintiffs can point to no harm or prejudice caused by the timing of GSK's production because there is none. While Plaintiffs' counsel may dislike that GSK chose to exercise its constitutional right to petition the government or that its counsel talked to FDA lawyers by phone, there was nothing improper about GSK's actions. Nor is there any general obligation for attorneys to notify their adversaries of phone calls they plan to have. The Court should deny the present motion.

## FACTUAL BACKGROUND

Despite GSK's multiple attempts to clear Plaintiffs' counsel's misconceptions about GSK's contacts with FDA regarding its Citizen Petition,[3] Plaintiffs continue to choose conspiracy theories and conjecture over fact. But the facts demonstrate that there was nothing improper, let alone sanctionable, about conversations that GSK's counsel had with FDA lawyers about Zofran. To be absolutely clear, GSK offers the following facts:

- Prior to October 28, 2019, GSK and its counsel had no contact with FDA, including FDA's Office of Chief Counsel, about this litigation or a Zofran-related citizen petition.

---

[2] *See, e.g.*, ECF No. 1103 at 10, 15, 18, and 20 (alleging that GSK "concealed," "omitted," "buried," and "hid" information that GSK has now provided to FDA as part of the Citizen Petition process); ECF No. 1549 at 2 (alleging that GSK "painted an incomplete picture of the safety of its drug by omitting critical studies from its submissions to the FDA"); ECF No. 1701 at 31 (alleging that GSK "conceal[ed] the Japanese reproduction studies and fail[ed] to disclose complete information about the long-established mechanism of teratogenicity associated with Zofran"); 11/5/19 Tr. at 36 (arguing that "there's no question that there is significant information that was not provided to the agency"), Ex. A.

[3] GSK corrected many of Plaintiffs' unfounded allegations in its Motion for Case Management Order Governing Status Conferences and to Strike Portions of the Record. *See* ECF No. 1812.

- Sarah Harris, a lawyer from Williams & Connolly LLP, first contacted Stacy Amin by telephone on October 28, 2019, to notify FDA's Office of Chief Counsel as a courtesy that GSK intended to file a citizen petition. The call was brief, lasting only several minutes by Ms. Harris's estimate.

- The brief telephone call between Ms. Harris and Ms. Amin on October 28, 2019 was the first time any GSK lawyer spoke to FDA about this litigation or about a Zofran-related citizen petition. Ms. Amin indicated that she was interested in the issue, but did not provide any information on how or when FDA might resolve any forthcoming citizen petition. Ms. Amin said that she would connect Ms. Harris with Sara Beardsley, a lawyer in her office who handles *Albrecht* issues.

- Ms. Harris and Ms. Beardsley then exchanged emails to schedule a time for a telephone call. In the meantime, once GSK filed its Citizen Petition with FDA on November 1, GSK lawyer Amy Saharia sent a courtesy copy of the petition with a cover letter to Ms. Amin, in her role as Chief Counsel, with a copy to Ms. Beardsley. Plaintiffs have copies of these communications because GSK produced them in this litigation.

- Ms. Harris, Ms. Saharia, and Tom Sheehan, spoke with Ms. Beardsley by telephone on November 8, 2019. To the best of counsel's recollection, the conversation lasted approximately 30 minutes. Ms. Beardsley spoke very little during the call, but indicated that the petition had been received and would be considered seriously. Ms. Beardsley did not provide any other information regarding FDA's consideration of the petition, nor did she indicate how or when FDA might resolve the petition.

- FDA posted a summary of the November 8 call on its public docket. Memo. to FDA-2019-P-5151 (Jan. 24, 2020), Ex. B. The summary appears to be accurate, other than a mistaken reference to a participant named "Philip Lidal," which in fact was a reference to Mr. Sheehan's law firm.

On January 23, 2020, Ms. Amin sent a letter to Plaintiffs' Lead Counsel and Ms. Saharia, declining to be deposed, as Plaintiffs had requested. In that letter, Ms. Amin invited both parties to contact her assistant to schedule an in-person meeting, as contemplated by 21 CFR 10.30(h)(1) and 10.65(c). Ltr. From Ms. Amin, Ex. C. GSK's counsel has since been in touch with the Chief Counsel's office (through Ms. Amin's Executive Assistant) to schedule that meeting on behalf of GSK, which is set to take place on March 5, 2020. GSK's communications with FDA regarding this meeting have been purely logistical in nature; GSK's counsel have had no additional substantive conversations with FDA.

Despite having these key facts at their disposal, Plaintiffs still falsely insinuate that GSK had other communications with FDA about this case or the Citizen Petition that were not produced on December 19, 2019.[4] Plaintiffs have the sum total of the communications between GSK or its counsel and FDA about this case or the Citizen Petition, including non-substantive and scheduling correspondence following Ms. Amin's January 23 letter.[5] Plaintiffs have these communications **because GSK produced them**. Nothing was hidden, because there is nothing to hide. Plaintiffs' suggestions otherwise are disingenuous.[6]

GSK made supplemental productions beginning on December 13, 2019, just over three weeks after informing the Court (and Plaintiffs) that supplemental productions were underway. The correspondence at issue was produced on December 19, *one day after* Plaintiffs sent GSK's counsel a letter identifying various requests for production that they believed warranted supplementation. *See* Ltr. From Ms. Barone Baden (Dec. 18, 2019), attached as Ex. D. Plaintiffs specifically requested supplementation by December 20. *Id.* Plaintiffs also served additional requests for production on December 18, which, they acknowledged, overlapped with prior discovery requests. *See id.* at 3. GSK made additional productions on December 31 and January 24. Plaintiffs chose not to meet and confer with GSK about any perceived discovery dispute until January 30, after being specifically directed by the Court to do so. *See* 1/27/20 Tr. at 48 (directing the parties to have a "meaningful, good faith professional meet and confer"); Ex. E.

---

[4] Plaintiffs claim, "Finally, on December 19, 2019, GSK counsel produced some (but now we know not all) of its communications with the FDA." Pls.' Br. at 9.

[5] Plaintiffs have demanded that GSK's counsel produce their attorney notes and work product stemming from the brief telephone call. GSK has objected to this request.

[6] Amazingly, Plaintiffs find it appropriate to claim that they "remain in the dark as to the extent of GSK's communications with the FDA" (*see* Pls.' Br. at 9 n.7), when these key facts were laid out for them in GSK's Motion for CMO on February 3, 2020, and discussed as part of an earlier meet-and-confer on January 30, 2020.

## ARGUMENT

**I.   GSK Has the Right to Communicate with FDA.**

Plaintiffs' motion is premised on the false belief that it is somehow inappropriate for GSK to communicate (through its attorneys) with FDA or FDA's attorneys. It is not. As a basic matter, GSK has a constitutional right, protected by the First Amendment, to petition the government, just as plaintiffs' attorneys have done in other cases. *See, e.g.*, Denial of Petition for Compliance Investigation submitted by Motley Rice, LLC, available at https://www.regulations.gov/document?D=NHTSA-2007-0053-0016; *Cerveny v. Aventis, Inc.*, 855 F.3d 1091, 1099 n.8 (10th Cir. 2017) (rejection of a citizen petition submitted by a plaintiffs' lawyer involved in Clomid litigation constituted clear evidence that FDA would have rejected additional warnings for Clomid). Moreover, FDA regulations specifically authorize meetings and correspondence with the agency:

> In addition to public hearings and proceedings established under this part and other sections of this chapter, meetings may be held and correspondence may be exchanged between representatives of FDA and an interested person outside FDA on a matter within the jurisdiction of the laws administered by the Commissioner.

21 C.F.R. 10.65(a).

Despite Plaintiffs' characterization of the November 8 call as "covert lobbying," the regulations explicitly contemplate that meetings related to citizens petitions may be "private." *Id.* at 10.65(c) ("Every person outside the Federal Government may request a **private** meeting with a representative of FDA in agency offices to discuss a matter.") (emphasis added). The regulations further provide, "A person who wishes to attend a private meeting, but who is not invited to attend either by the person requesting the meeting or by FDA, . . . may request a separate meeting with FDA to discuss the same matter or an additional matter." *Id.* at 10.65(c)(3). Despite Plaintiffs'

sensational labels, they are simply wrong to insinuate that GSK's counsel's interactions with FDA attorneys about Zofran were improper in any way.

Their criticisms of statements made during the 30-minute phone call with FDA lawyers are equally misplaced. While Plaintiffs may disagree with GSK's litigation positions, it was entirely appropriate for GSK's lawyers to have a discussion with FDA's lawyers about litigation related to an FDA-regulated product. Indeed, FDA's lawyers follow preemption issues and have appeared on the United States' briefs related to preemption, including in *Albrecht*. There is nothing improper about FDA's lawyers listening to a regulated party's legal views about preemption. Nothing was misrepresented during the November 8 call. No one was bullied or intimidated. *See* GSK's Mem. in Supp. of Its Mtn. for CMO and to Strike Portions of the Record at 6-8 (ECF No. 1812).

Plaintiffs take the position that they were somehow entitled to know in advance what phone calls GSK's lawyers planned to make. *See* Pls.' Br. at 17 ("GSK . . . should have informed Plaintiffs that it intended to communicate with the FDA about the substance of its Citizen Petition."). But they identify no legal basis for such a position because none exists. No general obligation requires GSK to notify its adversaries of the phone calls its lawyers plan to make. Nonetheless, Plaintiffs now have a summary of the November 8 call, directly from FDA.

Importantly, FDA has offered both parties a one-hour meeting with the Center for Drug Evaluation and Research (CDER) and the Office of Chief Counsel. Plaintiffs will have an opportunity to present their views to FDA, if they are inclined to do so. If they disagree with GSK's counsel's characterization of the issues, as summarized by FDA, they have the opportunity to voice those disagreements to FDA. However, to date, Plaintiffs have provided no indication that they actually intend to accept FDA's invitation for a meeting.

## II.     Plaintiffs' Claim that GSK Made Misrepresentations to the Court Is Baseless.

Plaintiffs' allegation that GSK's counsel made misrepresentations to the Court at the November 20, 2019 status conference is simply incorrect. GSK's counsel made no such misrepresentations.

*First,* GSK's counsel's statement that "GSK has no knowledge or reason to believe that FDA has in anyway prejudged the petition" was true on November 20 and remains true today. *See* 11/20/19 Tr. at 26, attached in full as Ex. F. FDA has not told GSK anything about (1) what it thinks of the Citizen Petition; (2) its view on Plaintiffs' four categories of information; or (3) GSK's request that FDA either change the labeling or refrain from changing Zofran's labeling based on Plaintiffs' four categories. Nor has it told GSK when it is likely to resolve the Petition. FDA has stated only that it received the Petition and, as it would with any Petition, takes it seriously.[7]

FDA's summary of the November 8 phone call between GSK's counsel and FDA's counsel makes this point. In the call summary created by FDA and posted to the public Citizen Petition docket, FDA counsel wrote: ***"I approached the call as a listening session."*** Memo. to FDA-2019-P-5151, at 1 (Jan. 24, 2020), Ex. B. FDA's summary also stated, consistent with federal regulations, that any new information would be sent to the Citizen Petition docket. *Id.* Nowhere in the summary does FDA's counsel state that she or FDA expressed any view on the Petition, Plaintiffs' four categories, or Zofran's labeling.

Moreover, GSK's counsel's statement was specifically tied to inaccurate suggestions in Plaintiffs' brief to this Court regarding the Citizen Petition. *See* 11/20/19 Tr. at 26, Ex. F

---

[7] Plaintiffs also allege that GSK "falsely represented to this Court that it had no idea what FDA was doing or thinking about Zofran." Pls.' Br. at 12. Of course, that was not counsel's statement, and Plaintiffs' allegation is not supported by any citation to the record. Even so, FDA has not shared what it thinks of the Petition or Zofran's labeling with GSK or its counsel.

("***Contrary to the suggestions in the brief***, GSK has no knowledge or reason to believe that FDA has in any way prejudged the Petition."). There, Plaintiffs accused GSK of having frequent contact with FDA "about the possibility of submitting this Citizen Petition." ECF No. 1745 at 8. Plaintiffs went so far as to suggest that GSK submitted the Citizen Petition knowing how FDA would resolve it. *Id.* ("One might almost suggest that GSK seemed quite confident about the response it would receive from the agency even before it filed the Citizen Petition."). Without GSK's counsel's corrective statement, the Court would have been left with the false impression that GSK filed the Petition because it knew how FDA would respond. In sum, GSK's counsel's statement was entirely appropriate to correct the record in this regard.

*Second,* in accusing GSK's counsel of misrepresentations, Plaintiffs take unwarranted liberties with the facts. For example, Plaintiffs claim that "GSK counsel falsely represented to this Court that it was not in communication with the Agency." Pls.' Br. at 3. Plaintiffs do not support this claim with any citation to the record. Nor could they, as it is belied by a plain reading of the transcript. GSK's counsel reported at the November 20 status conference that GSK was planning a supplemental production related to FDA and the Citizen Petition: "GSK is reviewing its files for any additional documents that may be responsive to the plaintiffs' prior document requests. We anticipate that any document production will be limited in size, and we should be in a position to make a production soon, so that is underway." 11/20/19 Tr. at 25, Ex. F. In response to the Court's question about whether GSK was responding to newly served discovery or supplementing requests previously served, GSK's counsel stated again that it planned to supplement its responses to prior requests. *Id.* at 26. Even though its searches were still underway, in an attempt to be forthright, GSK's counsel volunteered that GSK had shared the Citizen Petition with CDER *as well as with the Office of Chief Counsel (OCC)* at FDA and that GSK was preparing those documents for

production. *Id.* at 26-27. GSK not only informed the Court and Plaintiffs that a production was coming, but it specifically disclosed communications with CDER and OCC. Following this report, the Court stated, "Based on what I was shown, it seems to me that GSK has had recent communications with Novartis or the FDA concerning Zofran or ondansetron, that those are probably discoverable and ought to be produced." *Id.* at 33. Plaintiffs cannot rightly claim that GSK made a "false representation" that it had not been in communication with FDA.

Plaintiffs present no evidence that GSK's counsel made any misrepresentation on November 20. They even tacitly admit that GSK's statement that it "has no knowledge or reason to believe that FDA has in any way prejudged the petition" was true. *See* Pls.' Br. at 7, n. 6 ("Technically, GSK may not have an answer on whether FDA has prejudged the Petition."). Unable to point to an actual false statement, Plaintiffs claim that GSK's counsel are "guilty" of intentionally omitting from its discussion of GSK's forthcoming supplemental document production a reference to the November 8 call with FDA. In essence, this assumes that GSK had an obligation to provide an inventory of every document it planned to produce as part of its status conference update. It did not. And the overarching message from GSK's report at the status conference was that documents were forthcoming.

There was never any intention to withhold facts necessary for the Court's consideration. While Plaintiffs bemoan that "vital information" was not shared, GSK learned nothing about FDA's consideration of the Citizen Petition during the November 8 call. FDA did not share what it thought of the Petition or when it might rule. Instead, it treated the call as a listening session. There was no new information to share and no reason to "conceal" or fail to share anything

material.[8] Moreover, Plaintiffs' accusation that GSK attempted to conceal the November 8 meeting cannot be reconciled with the facts. Indeed, it was GSK's counsel who volunteered that GSK had shared the Petition with the Office of Chief Counsel, and it was GSK who voluntarily produced the emails between its counsel and FDA counsel setting up the November 8 call. It is wholly inappropriate for Plaintiffs to make serious allegations of misconduct based on their own hypercritical (and incorrect) reading of a few lines from a three-hour status conference transcript. Plaintiffs' allegations of concealment should be rejected.[9]

## III.    GSK Did Not Fail to Timely Supplement Discovery Responses Related to FDA.

Next, while Plaintiffs devote a significant portion of their brief to discussing whether and what sanction is appropriate for GSK's supposed discovery misconduct, they altogether fail to establish that any misconduct occurred. And the scant argument they do offer on this threshold issue fails at every analytical step. First, the documents discussed in Plaintiffs' motion were not responsive to the only request for production they identify; GSK produced more documents than Plaintiffs were owed related to its counsel's contacts with FDA. Second, even if the documents GSK produced had been responsive to previously served requests, GSK made a timely production. Third, Plaintiffs are wrong that there are additional communications with FDA about the November 8 call that Plaintiffs do not already have.

---

[8] Indeed, the information GSK shared with FDA is entirely consistent with GSK's filings and arguments in this Court.

[9] Plaintiffs' claim that GSK's alleged "belated production" was an attempt to secure a favorable opinion from FDA without Plaintiffs becoming aware of the November 8 call is equally false. *See* Pls.' Br. at 14. Plaintiffs cannot seriously argue that they had an expectation that FDA would resolve a Citizen Petition filed on November 1, 2019 before December 19, 2019 (when GSK voluntarily produced the emails related to the November 8 call). Plaintiffs waited until January 7, 2020 to even tell FDA that they planned to submit a formal comment. As recently as January 31, 2020, Plaintiffs informed FDA that they plan to supplement the record with additional documents. As of the date of this motion, they have yet to do so.

### A.    The Documents at Issue Were Not Responsive to the Only Request for Production on Which Plaintiffs Base Their Motion.

As Plaintiffs note, Rule 26(e)(1) provides that, when a party has responded to a request for production, it must supplement or correct its response in a timely manner if it learns "that in some material respect the . . . response is incomplete or incorrect[.]" Fed. R. Civ. P. 26(e)(1)(A). Under Rule 37, sanctions may only be imposed if a party who has a duty to supplement a discovery response fails to do so and the failure was not substantially justified or harmless. Fed. R. Civ. P. 37(c).

Here, Plaintiffs argue that GSK had a duty to supplement its responses to Plaintiffs' requests for production by producing correspondence between GSK's counsel and FDA – specifically, the cover letter and email correspondence produced to Plaintiffs on December 19, 2019. *See* Pls.' Br. at pp. 14-15. But Plaintiffs' requests were not directed to GSK's outside counsel; they were directed to "GSK," "Defendant," or "you." Indeed, the request on which Plaintiffs base the present motion sought "communications between **you** and the FDA regarding Zofran's label." Pls.' Br. at 1, n.1 (emphasis added). GSK was clear in its responses that it read those terms consistent with Local Rule 26.5(c)(5). *See* Excerpt from GSK's July 14, 2017 Third Amended Responses to Plaintiffs' Requests for Production at 13, Ex. G.[10] That rule, which provides definitions that apply to all discovery requests, defines "defendant" and related terms as including "a party's full or abbreviated name or a pronoun referring to a party [here, 'GSK' or 'you'] . . . and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates." Conspicuously absent from this list are a party's outside lawyers. The

---

[10] GSK objected to Plaintiffs' definitions "to the extent they purport[ed] to define . . . 'Defendant,' 'GSK,' 'you,' or 'your' in a manner that [was] inconsistent with the Local Rules of the District of Massachusetts, Rule 26.5(c)(5)," and noted that where those terms were used, GSK would read them "as they are defined in the Local Rule." *Id.*

rule goes on to note specifically that this definition "is not intended to impose a discovery obligation on any person who is not a party to the litigation." L.R. 26.5(c)(5). Plaintiffs did not challenge that objection in GSK's Third Amended Responses or its definition of these terms consistent with the rules of this Court, nor would they have had any basis for doing so.[11]

### B. Even if Supplementation Had Been Required, GSK's December 19, 2019 Production Would Have Been Timely.

Even if the documents GSK produced on December 19, 2019 had been responsive to previously served requests, such that GSK had a duty to supplement its previous responses, GSK made timely productions under Rule 26(e)(1). As the moving party, Plaintiffs bear the burden of showing that GSK's production was untimely. *See Rivera v. United Parcel Serv.*, 325 F.R.D. 542, 546 (S.D.N.Y. 2018) ("The party seeking Rule 37 sanctions bears the burden of showing that the opposing party failed to timely disclose information."); *Payne v. C.R. Bard, Inc.*, No. 611CV1582ORL37GJK, 2014 WL 12622457, at *3 (M.D. Fla. Apr. 21, 2014) (noting that the moving party "bear[s] the burden to demonstrate that the disclosure was untimely and incomplete"). They cannot do so here.

GSK's counsel disclosed the existence of communications with FDA regarding the Citizen Petition during the November 20 status conference and informed the Court that GSK was reviewing Plaintiffs' prior requests for any responsive documents. Notably, Plaintiffs requested that GSK supplement its responses to several of their original 160 separate requests for production, including those related to FDA, Novartis, and foreign labeling, not just the one request cited in

---

[11] GSK attempted to explain the Local Rule definition to Plaintiffs during a recent meet-and-confer. Plaintiffs twist that discussion to state that GSK took the "remarkable and flabbergasting position" that GSK "was not present at the November 8, 2019 meeting with FDA" and therefore GSK was "under no obligation whatsoever to disclose the meeting." For starters, GSK produced the emails related to the call in December, so the call has been disclosed. GSK's point during the meet-and-confer was that the documents related to the call, *i.e.*, counsel's emails, were not responsive because the definition of "defendant" does not include a party's outside lawyers. GSK has no obligation to produce nonresponsive documents.

their motion. As it has done in the past, GSK produced responsive documents to Plaintiffs on a rolling basis to provide documents to Plaintiffs more quickly. GSK made its first rolling production of more than 3,700 pages of documents on December 13, about three weeks after the November 20 conference. This production included the Citizen Petition and cover lever GSK sent to CDER. Six days later, on December 19, GSK made another rolling production, which included the email correspondence between GSK's counsel and FDA and GSK's counsel's cover letter to the Office of Chief Counsel, notwithstanding its unchallenged objection.[12] GSK made yet another production on December 31, 2019. These productions involved significant time and effort, particularly given the intervening Thanksgiving and Christmas holidays.

The email correspondence and cover letter at issue were produced less than a month after the November 20 status conference when Plaintiffs argued that GSK needed to supplement its previous discovery responses. At this same conference, Plaintiffs requested a 90-day trial delay to conduct discovery, including related to the Citizen Petition. The trial was ultimately delayed even longer than Plaintiffs requested. Plaintiffs received those documents more than five months before any trial in this case and a day sooner than they requested in their December 18 letter. *See* Ltr. from Ms. Barone Baden, Ex. D. On these facts, even if the documents were owed as a supplement

---

[12] GSK produced the communications between its counsel and FDA lawyers along with emails from GSK's outside counsel and the EU's PRAC making the European equivalent of a FOIA request. GSK produced those documents even though it does not believe it had any obligation to do so, in part, because of the unfounded accusations made on and before November 20. For instance, Plaintiffs insinuated in filings leading up to the November 20 conference that GSK was confident about the Citizen Petition because it knew how FDA would resolve it. With regard to PRAC, Plaintiffs claimed that GSK knew about PRAC's actions during the summer of 2019 and made a false representation in its summary judgment brief. Of course, neither allegation is true. GSK hoped that, once Plaintiffs saw how limited in scope those communications were, Plaintiffs would stop making unfounded and inaccurate accusations regarding GSK's interactions with FDA and PRAC. Unfortunately, as discussed in GSK's February 3, 2020 brief, that did not occur.

to a prior production, that supplementation can only be described as timely.[13] Just as the Court determined when considering Plaintiffs' 72-day delay in supplementing Dr. Danielsson's expert report (longer than GSK took to produce the documents at issue here), even a two-month delay should not be considered untimely. *In re Zofran (Ondansetron) Prod. Liab. Litig.*, No. 1:15-MD-2657-FDS, 2019 WL 5423907, at *5 (D. Mass. Oct. 23, 2019) (declining to strike portions of Dr. Danielsson's supplemental expert report and noting that "[w]hile that delay of more than two months is at the outer limits of timeliness, it is not so unreasonable, in the context of this litigation, as to require exclusion"); *see also Schulman v. Saloon Beverage, Inc.*, No. 2:13-CV-193, 2014 WL 1516326 at *8 (D. Vt. Apr. 18, 2014) (supplemental production of records eight weeks after the plaintiffs' demand for supplementation was not sanctionable or untimely under Rule 26(e)).

Plaintiffs' accusations of delay ignore the process required to supplement a production in a litigation like this, particularly when the original requests were voluminous and served years earlier. Instead of haphazardly plucking emails from the inbox of its attorneys, GSK undertook a careful and methodical approach to identifying, compiling, reviewing, and electronically processing documents for production. Indeed, the Advisory Committee Notes to Rule 26 acknowledge that "[s]upplementations need not be made as each new item of information is learned but should be made at appropriate intervals during the discovery period, and with special promptness as the trial date approaches." GSK did so here. Even if the FDA correspondence at issue were owed to Plaintiffs as a supplemental response to their October 2016 requests, GSK produced it in a timely manner and without any motion practice.

---

[13] Plaintiffs' complaints also ignore that they have not provided a supplemental Plaintiff Fact Sheet in the *Rodriguez* case in over a year, despite more recent medical procedures that would otherwise need to be described.

C.    **Plaintiffs Have the Responsive Communications Regarding the November 8 Call.**

Next, while not altogether clear from their brief, Plaintiffs appear to be arguing that GSK still has failed to make supplemental productions of documents in response to the above-mentioned request. Plaintiffs write in their brief: "[f]inally, on December 19, 2019, GSK counsel produce[d] some (but now we know not all) of its communications with the FDA." *See* Pls.' Br. at 8–9. GSK's counsel has no idea what communications Plaintiffs' parenthetical comment refers to, and Plaintiffs should not ask GSK or the Court to guess. Nevertheless, to the extent Plaintiffs are arguing that there are further communications between GSK's counsel and FDA about the November 8 call that Plaintiffs do not already have, Plaintiffs are wrong. Following GSK's December 19, 2019 production, GSK's counsel has provided Plaintiffs' counsel with logistical email correspondence in response to FDA's invitation to schedule meetings with either side to discuss the Citizen Petition. Plaintiffs' insinuations otherwise are misplaced.

IV.    **Plaintiffs Lack Any Valid Justification for Striking GSK's Preemption Defense.**

Plaintiffs' hyperbolic assertions of prejudice lack any merit. Even if Plaintiffs had a legal basis for believing that GSK's counsel's correspondence with FDA should have been produced (or affirmatively discussed) in November instead of December, which they do not, they have identified no actual harm and certainly no basis to strike GSK's preemption defense. Their requested relief only demonstrates their true motivation for filing the present motion—to avoid FDA scrutiny of the flawed theories that they have relied on in this courtroom for years. GSK has now provided FDA with the very information Plaintiffs have claimed was missing. *See, e.g.*, ECF No. 1103 at 10, 15, 18, and 20 (alleging that GSK "concealed," "omitted," "buried," and "hid" information that GSK has now provided to FDA as part of the Citizen Petition process); ECF No. 1549 at 2 (alleging that GSK "painted an incomplete picture of the safety of its drug by omitting

critical studies from its submissions to the FDA"); ECF No. 1701 at 31 (alleging that GSK "conceal[ed] the Japanese reproduction studies and fail[ed] to disclose complete information about the long-established mechanism of teratogenicity associated with Zofran"); 11/5/19 Tr. at 36 (arguing that "there's no question that there is significant information that was not provided to the agency"), Ex. A.

Plaintiffs skip directly to factors for the Court to consider in fashioning a sanction without establishing that any prejudice or harm exists in the first place. That is not surprising because GSK produced the documents at issue voluntarily and without motion practice (or even a meet-and-confer). While they make the unsubstantiated claim that GSK's actions have "fueled a waste of this Court's and Plaintiffs' resources" (Pls.' Br. at 2), the only waste of resources on this topic is the energy required from all involved (GSK included) in addressing this baseless motion. And the unfounded notion that GSK has "so tilted the playing field" that Plaintiffs could not have faith in FDA's future action has nothing to do with the timing of GSK's disclosures (or any statements made in court). Plaintiffs' true grievance is that GSK exercised its constitutional right to petition the government in response to Plaintiffs' litigation theories. But there was nothing inappropriate about GSK's decision to submit its Citizen Petition or its counsel's discussions with FDA lawyers. And their insinuation that FDA has been acting with corrupt motives is offensive and completely unfounded.

Plaintiffs provide absolutely no case law supporting their assertion that striking GSK's preemption defense would be anywhere close to proportional to their complaints, even if they could identify misconduct (which they cannot). The requested remedy simply does not fit the charge. The cases they do cite stand only for the proposition that an untimely disclosure of evidence can lead to the exclusion of that evidence at trial. *See*, *e.g.*, *Bay State Sav. Bank v.*

*Baystate Fin. Servs., LLC*, No. 03-40273-FDS, 2007 WL 6064455, *7 (D. Mass. Mar. 23, 2007) (striking an expert's untimely rebuttal report). But what they are asking the Court to do here, in striking an entire defense, goes far beyond the authority they provide and is entirely unjustified based on the facts.

Their attempted analysis of the five factors considered by the Court in the context of the declarations submitted with GSK's renewed motion for summary judgment only underscores the flaws in their reasoning. In its October 8, 2019, opinion, the Court explained, "In determining the proper sanction, the court should consider '(1) the party's justification for the late disclosure; (2) the opposing party's ability to overcome any prejudice; (3) the impact on the court docket; (4) the party's history of litigation abuse; and (5) the party's need for the late evidence.'" Order at 8-9 (ECF No. 1670). Courts have applied these five factors specifically in the context of evaluating preclusion of supposedly late-disclosed evidence. *See, e.g.*, *Esposito v. Home Depot U.S.A., Inc.*, 590 F.3d 72, 78 (1st Cir. 2009) (applying the five factors to review a district court's decision in favor of preclusion). Plaintiffs do not cite, nor is GSK aware of, any cases applying the same analysis to the more severe sanction of striking an affirmative defense.

In any event, none of these factors supports Plaintiffs' request. *First*, as explained in detail above, GSK's disclosure was not late, and its actions have been entirely consistent with the rules. *Second*, even if Plaintiffs could credibly argue that a disclosure should have occurred in November instead of December, they are in no worse position, save for their own decision to waste time litigating this baseless motion. Indeed, the Court has not ruled on GSK's renewed preemption motion; FDA, which has made no statement about the merits of GSK's Citizen Petition, has invited both sides to present their respective views about that Petition; and the first trial is scheduled several months from now. As noted by the First Circuit, "in the absence of harm to a party, a

district court may not invoke the severe exclusionary penalty provided for by Rule 37(c)(1)." *Cruz-Vázquez v. Mennonite Gen. Hosp., Inc.*, 613 F.3d 54, 58 n.1 (1st Cir. 2010). *Third*, Plaintiffs' threat to take unnecessary, retributive discovery does not create an "impact on the court docket" to justify the relief they are now requesting. Again, other than the resources lost because of the present motion, there has been absolutely no impact on the Court's docket, particularly when Plaintiffs had already obtained a continuation of the trial date, notwithstanding the timing of GSK's production. *See, e.g., Diaz-Garcia v. Surillo-Ruiz*, 98 F. Supp. 3d 396, 403 (D.P.R. 2015) (finding a party's purportedly late disclosure was unlikely to impact court's docket when trial had already been postponed). Furthermore, they waited until December 18 to serve additional requests for production, to which GSK had 30 days to respond. *Fourth*, there was no history of litigation abuse by GSK in October (when the Court so concluded), and the same is true today, irrespective of Plaintiffs' accusations. *Fifth*, while neither party needs the attorney communications as evidence in this case, GSK certainly has a compelling need to assert its preemption defense, which is dispositive of all of the cases in this litigation. Striking a defense is a drastic remedy, and there is no justification for such a measure here. *See Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013) (recognizing that "striking a portion of a pleading is a drastic remedy and . . . it is often sought by the movant simply as a dilatory or harassing tactic") (internal citations omitted).

Plaintiffs' requested relief, striking GSK's preemption defense, would not remedy any purported discovery failure. Their actions in lashing out at GSK's counsel and even FDA—the very agency they claim would have endorsed different pregnancy labeling from the beginning— further demonstrates that Plaintiffs' counsel lack the courage of their convictions. The Court should not condone these tactics.

## **CONCLUSION**

Plaintiffs' attempts to mar GSK's counsel's reputation with unfounded accusations of misconduct are entirely misplaced. There were no misrepresentations or untimely disclosures. The Court should deny the motion in its entirety.

Dated: February 18, 2020

Respectfully submitted,

*/s/ Jennifer Stonecipher Hill*
Madeleine M. McDonough
Jennifer M. Stevenson
Jennifer Stonecipher Hill
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
mmcdonough@shb.com
jstevenson@shb.com
jshill@shb.com
*Admitted pro hac vice*

Lisa S. Blatt
Amy Mason Saharia
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
lblatt@wc.com
asaharia@wc.com
*Admitted pro hac vice*

Attorneys for Defendant GlaxoSmithKline LLC

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent via first class mail to those identified as non-registered participants.

*/s/ Jennifer Stonecipher Hill*
Jennifer Stonecipher Hill