UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: ZOFRAN (ONDANSETRON) PRODUCTS LIABILITY LITIGATION | ) ) ) ) MDL No. 1:15-md-2657-FDS |
| THIS DOCUMENT RELATES TO: ALL CASES | ) ) ) ) ) ) |

**PLAINTIFFS' OPPOSITION TO DEFENDANT GLAXOSMITHKLINE LLC'S MOTION FOR CASE MANAGEMENT ORDER GOVERNING STATUS CONFERENCES AND TO STRIKE PORTIONS OF THE RECORD**

For four-plus years, this Court has successfully managed this Zofran MDL litigation. It is hard-fought and complex litigation, with significant outcomes at stake: will Plaintiffs prove that GSK hoodwinked pregnant women and their doctors with a sly off-label marketing campaign, without ever adequately testing or being vigilant to follow the risks to a fetus from Zofran, all the while purposefully choosing not to disclose the data from animal studies revealing such birth defect risks to the FDA? Or will GSK prevail in its claims that as the result of FDA action, GSK never needed to reveal to American women the potential risks of Zofran in pregnancy, and that after all, Zofran is not capable of causing heart defects and cleft defects in children, even when used in the first trimester? There are indeed critical stakes at issue. Yet, despite the pressures involved and despite the zealous advocacy of the skilled lawyers involved, in four years, not once has a party had to come to this Court to complain of the management of this case, or the conduct of counsel that required specific regulations of this Court's management. Indeed, to the contrary, more than once this Court has lauded both the counsel representing the PSC and GSK for their skillful advocacy and management of this case. Dozens of status conferences were held over the last four-plus years. Not once did a party come to this Court to complain the proceedings were

1

mismanaged or that there was attorney misconduct, let alone a pattern of misconduct. As a result, GSK's current motion, which reads like a tantrum, should not be taken seriously for its claimed merit or the relief it seeks. What should be taken seriously is the incredibly chilling message that would be sent if GSK's tantrum were rewarded: censorship of open court proceedings? Striking from the record advocacy so as to pretend that the GSK's secret dealings with the FDA never happened? Scripted status conferences where parties telegraph their work product? These are the product of GSK's histrionic reaction. As indicated in Plaintiffs' Motion for Sanctions, what is actually due from GSK is an apology for its lack of candor to both Plaintiffs and the Court after having been caught secretly lobbying the FDA to bolster its preemption defense. Instead, in a worrisome misdirection effort, GSK now advances with a dismiss-and-distract motion. Product Liability MDL litigation is a special patchwork quilt of common law. In a narrow niche of the law, MDLs build upon one another. GSK invites this Court down this dangerous path. That invitation should be declined.

This Court has done nothing wrong. Plaintiffs have done nothing wrong. Tobi Millrood and Plaintiffs' leadership have done nothing wrong. GSK's motion should be denied and seen for what it really is: a dark but thin veil that should not, and indeed cannot block the light.

On October 13, 2015, the Judicial Panel on Multidistrict Litigation transferred pending Zofran cases nationwide to the District of Massachusetts and assigned them to this Court. J.P.M.L. Doc. 116 (Oct. 13, 2015).[1] Since then, the parties have litigated dozens of issues, month-in, month-out before this Court, including strongly contested issues of GSK's Department of Justice production, *Daubert* motions, and preemption. It is curious that only *now*—four years into this

---

[1] The Judicial Panel on Multidistrict Litigation noted, "Judge Saylor is an experienced transferee judge who we are confident will steer this litigation on a prudent course." *Id.*

MDL—GSK tells this Court it needs to better manage its courtroom. GSK advises this Court that it needs to "control conduct at status conferences," "exercise control over its docket," and "implement controls on status conferences." *See* Doc. 1812 at 11, 14. Presumably, prior to the January 2020 status conference, the Court managed its courtroom just fine in GSK's eyes. Now, GSK and its newest counsel claim that the same status conference updates on discovery and other issues Plaintiffs have provided for four years must be censored and silenced.

What changed four years into this MDL is this: GSK was caught lobbying the FDA on a potentially dispositive issue in this case, all the while telling this Court and Plaintiffs that it knew nothing about FDA's consideration of its Citizen's Petition. And GSK, now angered that Plaintiffs did not tell GSK exactly what it would say ahead of time,[2] seeks to punish Plaintiffs for doing the thing the very thing GSK refused to do: inform the Court. GSK now demands that Plaintiffs turn over their work product in advance of hearing, proscribes new rules for *how* to present updates to the Court, and wishes to whitewash the public record revealing GSK's conduct. GSK has no right to control how Plaintiffs' counsel advocates for their clients, it has no right to instruct this Court how to manage its courtroom, and—*unqualifiedly*—has no right to hide its actions from the public eye. GSK's Motion should be denied in its entirety.

I. **The Court Has Managed this Litigation for Four Years Without Issue.**

GSK knows that this Court not only permits, but also encourages updates and previews of potential issues when they are necessary and relevant. The Court has from time to time asked for such previews during the course of this MDL, and without objection both sides have initiated such previews in advance of motion practice. GSK now tells this Court that it needs to "control conduct

---

[2] Lost on GSK is the irony of its efforts to re-write the rules for status conferences. It is the very fact that GSK *failed to disclose* that it was communicating with the FDA that prompted Plaintiffs' disclosures at the status conference.

at status conferences," "exercise control over its docket," and "implement controls on status conferences." *See* Doc. 1812 at 11, 14.  Sparing no hyperbole, GSK writes:

- "Recent conduct by Plaintiffs' counsel, if unchecked, presents the very real risk of derailing the fair and efficient management of this litigation on the eve of trial."
- "Plaintiffs' Counsel, Tobias Millrood, Has Engaged in a **Pattern** of Misconduct."
- "Plaintiffs' counsel's repeated misconduct makes it necessary for the Court to enter a Case Management Order to control conduct at status conferences."
- "Regrettably, there is no end in sight to this troubling behavior."

Doc. 1812 at 1, 11.  GSK proposes alongside these exaggerations equally absurd requirements that it tells this Court it must implement four years into this MDL or else it will lose control of its courtroom, including: "not present[ing] theories and speculation as fact," limiting counsel's speaking to five minutes per issue, moving back filing updates, state court updates, and discovery updates to the end of status conferences, and requiring the parties to exchange work product a day before every hearing.  *Id.* at 12.

Plaintiffs firmly believe that the Court has managed this MDL appropriately for the past four years, giving both parties sufficient latitude to bring issues before the Court as they see fit, in the form of a preview for a motion or otherwise.

The reality is that GSK is not honoring its obligation of candor to update the Court on relevant matters. On November 1, 2019, GSK should have disclosed its FDA communications when it filed its Citizen Petition.  It did not.  On November 8, 2019, following GSK counsel's conversation with the FDA, it again did not tell the Court or Plaintiffs that it had a substantive discussion about GSK's Citizen Petition, all the while insisting that this Court reach out to solicit

the FDA's guidance and exhorting this Court to toss the entire litigation on FDA preemption grounds. Instead, GSK remained silent.

GSK had hoped that Plaintiffs would not ask for this information,[3] and that this Court would not insist upon its production. Plaintiffs' continued demands resulted in this Court telling GSK to produce its communications on November 20, 2019. GSK waited until December 13, 2019 to produce anything, and then still chose not to produce its communications. Instead, it effectively threw 3,714 pages at Plaintiffs, which included the entirety of their already-produced Citizen Petition totaling 3,699 pages. Plaintiffs again demanded GSK's communications. On December 16, 2019, this Court told GSK again: produce your communications. Plaintiffs wrote GSK on December 18, 2019, and GSK, realizing that it could not wait any longer, produced *some* communications with the FDA on December 19, 2019—11 pages of FDA communications that it easily could have produced and should have produced as late as November 8, 2019.

On January 27, 2020, Plaintiffs' counsel presented these facts, along with Plaintiffs' view of them, to the Court.[4] At any point, the Court could have stopped counsel's presentation if it saw fit, but as the Court later noted, consistent with its litigation management practice: "I've been indulgent, something is on people's mind, I at least want to get a prelude so I can begin thinking about what it ought to look like, but the fact of the matter is I rule on motions." Ex. A, Tr. of Jan. 27, 2020 Status Conference 59:3–6.

The January 27, 2020 hearing was like all the hearings that came before it in this litigation, with one exception: GSK didn't like being caught in its misconduct. So it filed this Motion.

---

[3] GSK counsel takes the curious positions that it was under no obligation to update Plaintiffs on its FDA communications, yet that if Plaintiffs would have simply called, GSK counsel would have told Plaintiffs—while simultaneously producing some of its FDA communications following the Court's reminder that GSK does have a duty to supplement.
[4] *See* Ex. B, PowerPoint of Plaintiffs' Counsel; *see also* Ex. A.

## II.     Plaintiffs' Counsel are Permitted to Advocate for Their Clients.

Make no mistake: GSK's Motion was prompted *solely* by Plaintiffs' apprising this Court of GSK's undisclosed regulatory communications.  GSK takes personal aim at Plaintiffs' co-lead counsel, when it wrote: "Plaintiffs' Counsel, Tobias Millrood, Has Engaged in a Pattern of Misconduct."  Doc. 1812 at 1.

There is no pattern warranting a wholesale revamping of status conference protocol because no such pattern exists.  Instead, GSK makes personal accusations against Plaintiffs' counsel for pointing out GSK's own failures in its obligation of candor with the Court.

Plaintiffs' counsel are not only free, but also obligated as zealous advocates to present relevant facts and their interpretation of those facts.  If GSK does not like that Plaintiffs present the facts of regulatory communications, including the facts of their production juxtaposed against GSK's representations to the Court, GSK is equally free to advocate and explain those facts and circumstances after Plaintiffs' counsel has presented their viewpoint—just as GSK did when its counsel misrepresented to the Court that GSK's communications to FDA were just "to find out who is the person with whom I should correspond." *See* Ex. A at 36:4–10.

GSK's proposal seeks not to further flush out the facts, but to instead limit the parties' ability to communicate relevant facts to the Court, even without a motion.  As a truth-seeking process, litigation necessarily requires the sharing of relevant facts *by both parties*—and advocacy on behalf of their clients related to those facts.  Under GSK's proposed rules, Plaintiffs would not have been able to tell this Court about the FDA's memorandum revealing GSK's lobbying, which posted the same morning as the January 27, 2020 status conference.  And that is exactly what GSK desires. But Plaintiffs were duty-bound to disclose those very relevant facts to the Court while

GSK's Renewed Motion for Summary Judgment was under advisement and while the parties await a response from the FDA on GSK's Citizen Petition.[5]

Given the personal nature of GSK's attacks on Plaintiffs' co-lead counsel, Plaintiffs find it necessary to dispute the representations of GSK in its Motion.

First, GSK contests many of Plaintiffs' counsel's statements by making factual representations for which no support is given. GSK represents certain facts to have occurred or not occurred, but offers no document or affidavit attesting to its veracity. For example, GSK makes the following representations for the first time in its Motion, without any support:

- To set the record straight, before the FDA's January 24, 2020 letter to both parties in this case, GSK's lawyers had a total of two conversations with FDA lawyers about this case and GSK's citizen petition—on October 28 and November 8, 2019.

- Before October 28, 2019, none of GSK's counsel (or any GSK employee to our knowledge) had discussed this litigation with FDA. Mr. Millrood's insinuation that GSK's lawyers have been talking to FDA about this case since *Albrecht* was decided is false.

- Sarah Harris… is a professional acquaintance of FDA Chief Counsel Stacy Amin due to their service in the federal government at the same time.

- When GSK urged this Court to approach FDA in the wake of *Albrecht*, none of GSK's counsel (or any GSK employee to our knowledge) had discussed this litigation with FDA, and GSK had no inside knowledge regarding how FDA would respond to such outreach from the Court.

---

[5] Moreover, GSK concern about "unfair surprise" is misplaced and, with respect to January 27, 2020, untrue. GSK had sufficient notice of the facts presented at the Status Conference when the parties jointly submitted the agenda, which included "Update on GSK and Novartis Discovery" and "Update on GSK Citizen Petition and FDA." *See* Doc. 1798. GSK, aware of what it had produced to Plaintiffs, knew that its communications with the FDA would be discussed before the Court. GSK's surprise is further belied by its statement at the January 15 hearing when its counsel advocated for delaying the presentation of these issues until January 27: "I think we're going to hear a lot of manufactured disputes that are really just not ripe for the Court's consideration, so GSK, we're pleased to reconvene on the update items at the Court's convenience either in person, by phone. We're also happy to provide a paperwork update to the Court to save everyone time, but in the interests of time, I'd ask that we just move straight to the Rodriguez motions." Ex. E, Tr. Jan. 15, 2020 at 5:23–6:4.

- At the time of those filings, none of GSK's counsel (again, including Ms. Harris) had discussed this case with Ms. Amin or anyone in her office.

- When GSK made the decision to file a citizen petition, none of GSK's counsel (and to our knowledge no GSK employee) had communicated with FDA about this case or about a potential citizen petition.

- GSK had no such knowledge when it filed the petition, and it has no such knowledge now.

- Because Ms. Harris is a professional acquaintance of Ms. Amin, she contacted Ms. Amin by telephone on October 28, 2019. That is the first time any GSK lawyer spoke to FDA about this case or about a Zofran-related citizen petition. The call was very brief—by Ms. Harris's estimate, only several minutes. Ms. Amin said that she would put Ms. Harris in touch with a lawyer in her office, Sara Beardsley.

- Ms. Saharia, Ms. Harris, and Tom Sheehan, another GSK lawyer, spoke with Ms. Beardsley by telephone on November 8, 2019. To the best of counsel's recollection, the conversation lasted approximately 30 minutes. Ms. Beardsley spoke very little in the conversation. She did not provide any information regarding FDA's consideration of the citizen petition, other than to say that the petition had been received and would be considered seriously. To counsel's recollection, Ms. Beardsley also said that if GSK's lawyers provided new information, that information would be placed on the public docket.

- Other than the mistaken reference to a participant named "Philip Lidal" (which is in reality a reference to Mr. Sheehan's law firm Phillips Lytle), the summary appears to be accurate based on the recollections of the GSK attorney participants.

- GSK and its counsel have had no substantive communications with FDA about this case since then.

- Again, GSK has no inside information—none—regarding what FDA thinks about the citizen petition. And GSK has no inside information regarding what FDA thinks about the current Zofran labeling.

- Ms. Saharia did not say that the Reichmann petition itself was a "strategic bet" by Plaintiffs' lawyers.

Doc. 1812. As such, these representations remain attorney argument, insufficient to prove or disprove alleged "misstatements."

Second, in its brief, GSK wrote that Plaintiffs' counsel told "a fictitious conspiracy theory about GSK's interactions with FDA that has no basis in reality." Doc. 1812 at 2. The record (as now revealed in detail and supported by competent evidence in Plaintiffs' motion for sanctions) is

8

clear as to GSK's actions: GSK, through its counsel with a friend at the FDA, lobbied the FDA about the substance of its Citizen Petition in hopes of swaying the FDA in its favor, and then chose never to tell this Court or Plaintiffs.

It is telling that GSK begins its argument by declaring a need to "set the record straight" and then offering five pages of unsupported averments of fact <u>disclosed for the very first time</u> about its secret FDA communications.  After spending five pages downplaying its FDA communications, GSK finally identifies two FDA-related statements it takes issue with: that Plaintiffs believe the Citizen Petition process has been "tainted," and that GSK counsel and FDA Chief Counsel seemingly had a "cozy relationship."  Based on these statements, GSK tells the Court is must "control conduct at status conferences," "exercise control over its docket," and "implement controls on status conferences."  *See* Doc. 1812 at 11, 14.  Plaintiffs' counsel firmly stands by both opinions.

As made clear in Plaintiffs' Motion for Sanctions against GSK (Doc. 1820), Plaintiffs do believe that GSK's actions and subsequent silence have irreparably harmed the purported objectiveness of the Citizen Petition process.  GSK is free to disagree with that; but it is unquestionably the right of Plaintiffs' counsel to make that argument based on the facts.  To prevent otherwise because GSK does not like it would be to censor advocates in their zealous representation of their clients.

Plaintiffs are further free to characterize what they perceive as a seemingly close relationship between GSK counsel and FDA counsel.  Plaintiffs' counsel explained the significance from their perspective of learning of these communications more than a month after they occurred, and then to further learn that GSK counsel and FDA counsel were Facebook friends:

> Now, we were wondering like this seems like awfully cozy, and how is it that Sarah Harris just has an open line with Stacy Amin, so we investigated ourselves, and we see that Stacy Amin and Sarah Harris are friends on Facebook.
>
> Now, you might think that that's just a silly little aside, but here's our perspective. We represent families that have been injured by the drug Zofran, that's our claim. Those families believe that the FDA is an independent arbiter who is following their mission, which is to protect the public safety, and those families have a right to know that there's going to be impartiality of the FDA and not this kind of back channel and not this kind of cozy relationship, and so, you know, that bothered us to see this is like they're in a corner having a conversation about one of the main issues in the case, and we're not being included, and the families aren't being included. This is really troublesome.

Ex. A at 15:13–16:3. GSK could have avoided all this by not using its counsel to lobby a "professional acquaintance" and Facebook friend at the FDA before and after filing its Citizen Petition.[6] But censoring Plaintiffs' counsel after GSK has done so, is an impermissible and unsupportable attempt to sweep under the rug the facts of this case and handcuff Plaintiffs' counsel's right to advocate for their clients.

GSK also takes issue with Plaintiffs' counsel argument regarding the substance of the FDA's January 27, 2020 memorandum. Plaintiffs remind the Court that Plaintiffs became aware of this memo not through GSK, but through the FDA following Plaintiffs' request for an FDA deposition. GSK, meanwhile, has yet to produce <u>any</u> records related to this conversation (or its October 28, 2019 call with FDA) and instead hides behind its claim of privilege, while contesting Plaintiffs' views of the memorandum as inaccurate, based solely on attorney argument. In reality, GSK simply quibbles with Plaintiffs' view of what the FDA represented had occurred:

- "In GSK's experience, the fact that there has been no recall and no labeling changes does make this case unlike many product-liability cases."

- "In context, it is clear that Ms. Saharia was discussing the FDA-approved labeling."

---

[6] GSK indeed admits that it has in fact had substantive communications with the FDA regarding its Citizen Petition: "GSK and its counsel have had no substantive communications with FDA about this case since then." Doc. 1812 at 6.

10

- "Ms. Saharia did not say that the Reichmann petition itself was a 'strategic bet' by Plaintiffs' lawyers."

- "GSK does not view the *Taxotere* decision as significantly advancing the law in the wake of Albrecht."

- "And there is nothing inappropriate about GSK's view that these lawsuits are an attack on FDA's authority."

Doc. 1812 at 7–8.  GSK also complains that counsel's statements—that it was improper for industry to try to bully and intimidate the FDA—should be struck.  Plaintiffs' counsel is free to argue that GSK counsel's representations to the FDA were exactly that.  GSK counsel told the FDA its resolution of the Citizen Petition "could have an outsized influence on how other courts decide preemption in light of *Albrecht*," that if it FDA didn't agree with GSK's position it "would be flooded with information," that Plaintiffs' lawsuits were "an attack on FDA's authority," and that siding with Plaintiffs—warning pregnant women of the risk of birth defects (which Europe had done just 3 months earlier) could "mislead the public."  Plaintiffs stand firmly behind their opinion of GSK's actions.

Just as GSK is free to advocate to the Court what it believes this FDA memorandum and undisclosed communications represent, so too are Plaintiffs—but attorney statements should not be struck from the record simply because a party disagrees with it.  Especially when GSK avers to unsupported facts and hides behind privilege when denying Plaintiffs' view of the true facts of its communications.

With its motion, GSK also takes a dangerous tack of mischaracterizing the facts and record before this Court.  For example, Plaintiffs' counsel did not claim that "FDA is in the pocket of GSK's lawyers," as GSK alleged.  That was never said. Rather, Plaintiffs' counsel remarked that, as advocates of consumers, they are not on an even playing field with GSK after learning of GSK's

one-sided lobbying efforts. Such secretive action on GSK's part, which only came to light because the FDA shined a light on GSK's actions, are what undermines Plaintiffs' faith in seeking the FDA's involvement. It is clear the FDA is independent of GSK given their willingness to publicly post its recounting of GSK's conversation—an action which GSK has yet to do.

Third, with the regard to the PRAC, GSK points to another two statements from the November 20, 2019 status conference that it believes are "misstatements" by Plaintiffs' counsel, so offensive that this Court must not only strike them from the public record, but also: "control conduct at status conferences," "exercise control over its docket," and "implement controls on status conferences." *See* Doc. 1812 at 11, 14. First, GSK takes issue with Plaintiffs' counsel's statement that Novartis changed its position on warning pregnant women "curiously." And second, that GSK's July 18, 2019 statement that "There is no regulatory body in the world that lists Zofran as a developmental toxicant" is now false.

As to the first statement, GSK ignores its own failure to supplement relevant discovery by seizing on Plaintiffs' counsel's legitimate questions regarding GSK's repeated representations, that it was aware of pending FDA action with Novartis, and whether GSK and Novartis were in communication about Zofran's labeling, considering that from 2016 through March 2019, Novartis supported a labeling change.

Plaintiffs do not need to speculate: the record is clear. On November 5, the Court asked GSK counsel a straightforward question: is the FDA aware of the labeling changes occurring in Europe with Novartis? GSK counsel stated the following:

> All we know is -- we're not the NDA holder, so there's probably information that we do not know, but **we do know that Novartis has been asked for information about that**, and **that's really all I know**. GSK has not been asked to submit anything to PRAC or to FDA on that specific Dr. Zambelli-Weiner situation or those epi studies, but **Novartis is in communication with both regulatory agencies, so that's about all I know**.

Ex. C, Tr. Nov. 5, 2019 at 59:3–14 (emphasis added).  GSK clearly represented to the Court that it *knew* Novartis has been asked for information by the FDA and was in communication with both the FDA and EMA.[7]  The Court then told GSK to produce its communication with Novartis and the regulatory bodies.  "Based on what I was shown, it seems to me that GSK has had recent communications with Novartis or the FDA concerning Zofran or ondansetron, that those are probably discoverable and ought to be produced."  Ex. D, Tr. Nov. 20, 2019 at 33:10–14.  It is worth noting again, if this Court were to operate under GSK's rules, Plaintiffs may never have brought to light this information, which explains why GSK is now urging a new protocol on the Court.

GSK continues to hide behind its "joint defense" with Novartis, without actually disputing Plaintiffs' counsel's statement, to argue that Plaintiffs' counsel "had no support for his statements and speculations." Doc. 1812 at 9.[8]  Yet still, GSK provides no support for its defense: there is no document or affidavit attesting to the veracity of its statements (and proving Plaintiffs' counsel incorrect), and GSK refuses to produce communications with Novartis' as to its discussions regarding the labeling changes.  But through the very thing GSK now complains about—attorney advocacy—GSK says its word should trump that of Plaintiffs.

---

[7] Outside of the presence of the Court, GSK later wrote to Plaintiffs: "To be clear, **we have no specific information to suggest that FDA has affirmatively requested information about Zofran's pregnancy labeling from Novartis**." Ex. F, Jan. 24, 2020 Ltr. to Pls. (emphasis added).
[8] Moreover, based upon a privilege log produced to Plaintiffs on February 11, 2020, it appears that GSK has asserted privilege over 3 communications regarding PRAC regulatory matters that are dated July 11, 2019. On this same date—a week before GSK's representation that "There is no regulatory body in the world that lists Zofran as a developmental toxicant," the European Medicines Agency adopted PRAC's recommendation that label holders must now update Zofran's labeling to state "ondansetron is suspected to cause orofacial malformations when administered during the first trimester of pregnancy" and "Ondansetron should not be used during the first trimester of pregnancy." Ex. G, PRAC recommendations on signals at 6.

      As for Plaintiffs' counsel second statement, below is exactly what counsel stated:

> [GSK] went to get protection from Magistrate Judge Dein, and Magistrate Judge Dein said for now I'm not going to require that you turn over stuff on foreign regulatory bodies.
>
> Now GSK comes to this Court in July and said nobody in the world, no foreign regulatory body or U.S. regulatory body says Zofran is causative. We now have information as of November 8th that that's clearly a false statement, and we believe this regulatory discovery, including foreign regulatory discovery, at least passes the test for something that's discoverable.

Ex. A at 17:8–14. Considering that the EMA has required a labeling change following PRAC's analysis, to warn about birth defects in Europe, it is clear that GSK's July 28, 2019 statement is no longer true—and that is exactly what Plaintiffs' counsel argued. And considering that GSK refuses to produce a single document supporting how it came to know of its representation on November 5, 2019 "we do know that Novartis has been asked for information about [PRAC]," Plaintiffs' counsel stands on its position that GSK has failed to properly supplement its production to Plaintiffs. *See* Doc. 1812 at 11.

    **III.**    **Courts Do Not Permit Litigants to Create Rules or Censor Other Parties.**

      Not one of GSK's cited cases stand for the proposition that attorney argument should be struck from the public record or that opposing counsel should be censored based on the present record. The First Circuit case to which GSK cites, in fact works *against* GSK, as it found abuse of judicial process where, as here, one party (GSK) has "sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989).

GSK also relies upon a case from the Southern District of New York, in which defense counsel included "an intemperate attack upon the integrity of plaintiffs' attorney, stating counsel had engaged "dishonest practice," which the court found not only unfair but utterly without justification. *Mount Sinai Hosp. v. Borg-Warner Corp.*, 527 F. Supp. 922, 926 (S.D.N.Y. 1981). The final case GSK relies upon involves four *pro se* litigants who filed 24 motions, each out of compliance with the local rules, some of which included "motion for civil arrest" and "motion for video conference." *Wright v. Am.'s Bulletin*, No. CV 09-10-PK, 2010 WL 816164, at *4 (D. Or. Mar. 9, 2010) ("Motions to strike are disfavored and infrequently granted."). Not at all what occurred here.  Plaintiffs' counsel's statements were true, offered in good faith and above, all, completely necessary to satisfy our obligations of zealous advocacy and as officers of this Court. Nothing here justifies the extreme remedy that GSK seeks, to strike from the public record their argument.  Doing so would be an injustice, and absolutely contravene all notions of public policy and transparency in the courts.

GSK's Motion and requested relief are entirely misplaced and without merit.

For the foregoing reasons, this Court should deny GSK's Motion for Case Management Order Governing Status Conferences and to Strike Portions of the Record.

Respectfully submitted,

*/s/ Robert K. Jenner*
Robert K. Jenner (BBO No. 569381)
JENNER LAW, P.C.
1829 Reisterstown Road, Suite 350
Baltimore, MD 21208
410-413-2155
rjenner@jennerlawfirm.com

<div style="margin-left: 50%;">

Tobias L. Millrood
POGUST MILLROOD LLC
161 Washington Street, Suite 940
Conshohocken, PA 19428
610-941-4204
tmillrood@pogustmillrood.com

Kimberly D. Barone Baden
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
843-216-9265
kbarone@motleyrice.com

M. Elizabeth Graham
GRANT & EISENHOFER P.A.
123 S. Justison Street
Wilmington, DE 19801
302-622-7099
egraham@gelaw.com

James D. Gotz
HAUSFELD
One Marina Park Drive, Suite 1410
Boston, MA 02210
617-207-0600
jgotz@hausfeld.com

</div>

Dated: February 18, 2020                                   *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Plaintiffs' Response in Opposition to GSK's Motion for Case Management Order and to Strike Portions of the Record, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing and paper copies will be sent via first class mail to those identified as non-registered participants.

/s/ *Robert K. Jenner*
Robert K. Jenner