UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: ZOFRAN (ONDANSETRON)  ) <br> PRODUCTS LIABILITY LITIGATION  ) <br> ) <br> ) <br> _____) | MDL No. 1:15-md-2657-FDS <br><br> This document relates to: <br> All Actions |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION
FOR SANCTIONS AGAINST GSK**

GSK is unrepentant. GSK believes it is entitled to not only what is tantamount to *ex parte* contact with the FDA, but also that its secretive contact is not discoverable. GSK has the temerity to tell this Court that its claimed violation is not a "discovery grievance." In GSK's view, the only rules relevant to the instant dispute are FDA regulations. What GSK deliberately ignores, however, is that it has discovery obligations. Because it flouted those obligations, and because the damage cannot be undone, sanctions must be imposed. GSK has now so tainted FDA's consideration of the Citizen Petition that the only fair and just sanction is to strike the defendant's preemption defense and remove the FDA from this poisoned process.

In complete contrast to the sentiment of this Court's letter of December 13, in which the Court asked the FDA to resolve the Citizen Petition "without regard to its potential impact on the litigation," it is clear from the FDA's memorandum of January 27, 2020 that the potential impact of the litigation on GSK, on its industry, and on the FDA is ***exactly*** what GSK discussed in the hopes of persuading the agency to rule favorably on its petition. *See* Doc. 1773 and Ex. L to Pls. Mot. for Sanctions.

According to GSK, being "***totally frank and honest***" with the Court while its showstopper preemption motion is under advisement apparently means: it is ok to omit its lobbying with the FDA before and after filing its Citizen Petition; it is ok to play "gotcha" discovery in which its

counsel's communications with the FDA, it argues, are somehow immune from disclosure; and that a purported "constitutional right" to petition the government absolves GSK of its ethical and discovery obligations to Plaintiffs and the Court.

While GSK's response intimates it can do no wrong, in fact, GSK can and did do wrong, and its wrong can only be remedied by the imposition of sanctions because the company has made it clear that no apology is forthcoming. Rather than acknowledge that it owed Plaintiffs supplements to discovery, instead, GSK's response is filled with post-hoc excuses to rationalize its undisclosed lobbying—none of which actually excuse GSK's wrongs: its failures to timely supplement its discovery and its failures of candor with the Court and Plaintiffs.

As evidence of such, GSK completely ignores the misrepresentations identified in Plaintiffs' Motion, or omits significant information altogether. As Plaintiffs point to in their Motion, on November 20, 2019, GSK counsel told this Court:

> ***To be totally frank and honest***, GSK sent the petition, the Citizen Petition to CEDAR [sic] after it was filed. That's the Center for Drug Evaluation and Research at FDA as well as to the Office of Chief Counsel when it was filed so FDA would be aware of it.
>
> Contrary to suggestions in the brief, GSK has no knowledge or reason to believe that FDA has in any way prejudged the petition, but we are preparing those documents for production and should have that very soon.

Ex. C to Pls. Motion for Sanctions, at 26:16–25.  GSK simply cannot reconcile this statement that it was being totally frank and honest with the Court, with the fact it did not tell this Court that just 11 days earlier it had a not a first, but a *second* substantive conversation to lobby the FDA regarding its Citizen Petition—an *ex parte* call filled with Plaintiffs'-lawyer-bashing and discussion wholly disconnected from the merits of its November 1st Citizen Petition.

GSK must have just believed it would and could get away with not disclosing its lobbying, until Plaintiffs persisted in demanding and the Court twice ordered GSK to produce its

2

communications. GSK slowly trickled out information in its possession since October 28, 2019—and only on December 19, 2019 did GSK produce communications related to these lobbying conversations, well after GSK's duty to supplement required. And because GSK counsel has claimed protection over its memoranda related these conversations, it was left to Plaintiffs to learn *from the FDA* what was actually discussed—two and a half months after this second call occurred.

Yet, GSK now tries to persuade the Court with a claim that does not even remotely pass the smell test: that Plaintiffs' discovery is limited to GSK the company and its employees, and was not targeting GSK's representatives, the outside counsel communicating with the FDA. Therefore, GSK creatively reasons that it has committed no wrong in failing to disclose its lobbying efforts. That is utterly specious.

On December 18, 2019, Plaintiffs wrote to GSK counsel seeking supplemental responses to its requests for its FDA communications, including the following request:

> REQUEST NO. I.9: If you ever engaged any agent to communicate with the FDA concerning Zofran on your behalf produce: a. the documents and communications between the FDA and said agent(s) and b. the documents and communications between you and said agent(s).

Ex. G to Pls. Mot. for Sanctions at 2.[1] Moreover, Plaintiffs also made clear in their Motion for Sanctions that "On October 21, 2016, Plaintiffs served GSK with requests for production of documents *which included among other applicable requests* that GSK: "Produce all documents concerning communications between you and the FDA regarding Zofran's label." Pls. Mot. at 1. Clearly, Plaintiffs' requests included communications of GSK counsel (acting as GSK's agent) with the FDA. GSK's continued post-hoc excuses simply do not pass muster. And in fact, GSK

---

[1] As noted, this December 18, 2019 letter was included as an exhibit in Plaintiffs' Motion for Sanctions. Plaintiffs made reference to the same request in its November 13, 2019 memorandum to the Court seeking additional discovery related to GSK's Citizen Petition. *See* Doc. 1745 at 8.

continues to communicate with the FDA without Plaintiffs' presence, including as recently as February 12, 2019. *See* Ex. N, February 2020 Emails between GSK and FDA.

And GSK's opposition altogether fails to address its representation to this Court that it *knew* the FDA had asked Novartis about the PRAC action referenced in its Citizen Petition:

> Q: So if PRAC is looking at it, does that mean the FDA is looking at it, or, I mean, has there been anything -- **does the FDA have anything** on its docket or **on its radar**?
>
> A: All we know is -- we're not the NDA holder, so there's probably information that we do not know, but **we do know that Novartis has been asked for information** about that, and **that's really all I know**. GSK has not been asked to submit anything to PRAC or to FDA on that specific Dr. Zambelli-Weiner situation or those epi studies, but **Novartis is in communication with both regulatory agencies, so that's about all I know**.

Ex. B to Pls. Motion for Sanctions, Tr. Nov. 5, 2019 at 59:3–14 (emphasis added). GSK still cannot reconcile that statement with its representation to Plaintiffs on January 24, 2020 that: "To be clear, **we have no specific information to suggest that FDA has affirmatively requested information about Zofran's pregnancy labeling from Novartis**." Ex. D to Pls. Motion for Sanctions, Jan. 24, 2020 Ltr. to Pls. (emphasis added).

GSK instead hopes to explain away its conduct by arguing, "There is nothing improper about FDA's lawyers listening to a regulated party's legal views about preemption." GSK Br. at 6. First, GSK is *not* a regulated party as it relates to Zofran because it is not the NDA holder. Second, GSK admits that its conversation did not relate to the substance of its Citizen Petition, but its legal position in this case. These mischaracterizations are yet another example of GSK's post-hoc rationalization of its discovery failures. But third, and most importantly, the issue is not whether GSK's lawyers can talk to FDA's lawyers. The issue is that they lobbied secretly, while at the same time causing the Court and the Plaintiffs to believe that GSK had no knowledge about how and when FDA would act on its Petition. The issue is that GSK was not "talking"; it was

lobbying. The issue is that the Court and Plaintiffs expected and understood—and GSK falsely created the impression—that the agency could be expected to act as a neutral party when GSK knew it was lobbying the agency to *not* act as a neutral party. The issue is that GSK was under an obligation to disclose these secret communications timely. The issue is that GSK has now so tainted FDA's consideration of the Citizen Petition, that the only fair and just result is to strike the defendant's preemption defense and remove the FDA from this poisoned process.

GSK argues that, somehow, federal regulations (which only control the appearance of private parties appearing before the FDA) trump its obligations before this Court. That is not and cannot be the law. Indeed, the First Circuit does not tolerate the kind of discovery abuse and bad faith that GSK unrepentantly declares to be "right":

> In short, Rule 26 promotes fairness both in the discovery process and at trial. For Rule 26 to play its proper part in this salutary scheme, discovery must not be allowed to degenerate into a game of cat and mouse….
>
> This circuit has recommended a straightforward approach to ensure that the spirit of open discovery embodied in Rule 26 is not undermined either by evasion or by dilatory tactics….
>
> The federal courts' supervision of the discovery process, and the courts' concomitant authority to upbraid those who do not play by the rules, is rooted in the need for maintaining the integrity of the trial process. Hence, the impetus behind a court's deployment of sanctions is not merely to punish a party for untoward acts or omissions; it is, equally, to deter other litigants from disregarding the imperatives of the Civil Rules.

*Thibeault v. Square D Co.*, 960 F.2d 239, 244–45 (1st Cir. 1992).

The First Circuit further observed, "the focus of a preclusion inquiry is mainly upon surprise and prejudice, including the opponent's ability to palliate the ill effects stemming from the late disclosure." *Id.* There, "the importance of the evidence to appellant's case was heavily outweighed by unfair prejudice to [the moving party] and the lack of any semblance of a good excuse for so raw a violation of the duty to supplement." *Id.*

The First Circuit has expressly permitted the sanction of preclusion where surprise and prejudice to the other party cannot be undone.  Such is the case here.  Accordingly, there is only one remedy sufficient to deter future action such as GSK's and also yield the justice Plaintiffs deserve: Plaintiffs respectfully request that the Court strike GSK's preemption defense altogether.

Finally, the significance of Plaintiffs' Motion cannot be understated.  If GSK's conduct is deemed acceptable by this Court, other pharmaceutical corporate defendants will rely on GSK's post-*Albrecht* playbook in the next MDL, and the MDLs to come, secretly lobbying to contaminate independent government agency action and secure preemption victory in product liability litigation and then if caught, arguing as GSK repeatedly urges upon this Court, it is ok…get over it.[2]  Plaintiffs urge this Court to announce to GSK and its industry: it is not ok.

For the foregoing reasons, Plaintiffs respectfully request the Court grants Plaintiffs' Motion for Sanctions against GSK and enter an Order striking GSK's preemption defense.

        Respectfully submitted,

        */s/ Robert K. Jenner*
        Robert K. Jenner (BBO No. 569381)
        JENNER LAW, P.C.
        1829 Reisterstown Road, Suite 350
        Baltimore, MD 21208
        410-413-2155
        rjenner@jennerlawfirm.com

---

[2] Industry is watching what happens in this case to see if such conduct will be tolerated by the courts.  One defense blog recently described ways in which a pharmaceutical defendant can "create" preemption: "[A]nother way is via citizen petition.  That was done recently in the Zofran, MDL, with the MDL judge telling the FDA he would express 'no view as to the merits,' while urging the agency to 'make its decision based on the relevant scientific and medical criteria, and according to the law, without regard to its potential impact on the litigation,' and to do so "without undue delay."  Drug & Device Law, "Response/Rebuttal to Plaintiffs' Albrecht Arguments" (https://www.druganddevicelawblog.com/2020/02/response-rebuttal-to-plaintiffs-albrecht-arguments.html) (Feb. 3, 2020).

Tobias L. Millrood
POGUST MILLROOD LLC
8 Tower Bridge, Suite 940
Conshohocken, PA  19428
610-941-4204
tmillrood@pogustmillrood.com

Kimberly D. Barone Baden
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
843-216-9265
kbarone@motleyrice.com

M. Elizabeth Graham
GRANT & EISENHOFER P.A.
123 S. Justison Street
Wilmington, DE  19801
302-622-7099
egraham@gelaw.com

James D. Gotz
HAUSFELD
One Marina Park Drive, Suite 1410
Boston, MA 02210
617-207-0600
jgotz@hausfeld.com

Dated: February 19, 2020                *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

    I hereby certify that the foregoing Plaintiffs' Reply in Support of Their Motion for Sanctions against GSK, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing and paper copies will be sent via first class mail to those identified as non-registered participants.

                                                                      /s/ *Robert K. Jenner*
                                                                      Robert K. Jenner