UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE : ZOFRAN® (ONDANSETRON) PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br>All Actions | MDL No. 1:15-md-2657-FDS |

**GLAXOSMITHKLINE LLC'S REPLY
IN SUPPORT OF ITS MOTION TO DE-DESIGNATE CERTAIN
DOCUMENTS AS CONFIDENTIAL UNDER THE PROTECTIVE ORDER**

Dr. Zambelli-Weiner fails to carry her burden of demonstrating that the four documents contain proprietary business information. The gist of her Opposition merely argues that the four documents should remain confidential *because Dr. Zambelli-Weiner says so*. However, her self-serving claims are refuted by the plain text of the produced documents, professional guidance papers, the testimony and reports of Drs. Kimmel and Shaw, and—most importantly—common sense. Still, even if these documents were properly designated confidential (and they were not), Dr. Zambelli-Weiner waived any protection by the prior false statements she made to the Court in her public affidavit. Dr. Zambelli-Weiner's Opposition offers no response to this point. While Dr. Zambelli-Weiner attempts to deflect and discount the public impact of her selective disclosures about her study, she cannot deny that one regulatory authority has already relied on incomplete information about her study to make changes to ondansetron's labeling.

In sum, Dr. Zambelli-Weiner offers no justification for why these four documents should remain confidential under the Court's protective order. GSK's motion should be granted. GSK respectfully requests a brief oral argument and, in light of the time-sensitive nature, can be available by telephone at the Court's earliest convenience.

1

**ARGUMENT**

I.   **Dr. Zambelli-Weiner Still Provides No Legitimate Basis for Designating Any of the Four Documents as Confidential.**

The Protective Order provides that the designating party bears the burden of establishing the propriety of its confidentiality designation.[1] To carry this burden, Dr. Zambelli-Weiner cannot rest "on conclusory statements." *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986); *see also Miller v. City of Boston*, 549 F. Supp. 2d 140, 141 (D. Mass. 2008) (same). Yet, that is exactly what she attempts to do in arguing that the documents qualify as "proprietary, non-public business information."[2] Absent proof that the documents are, in fact, proprietary and non-public, de-designation is appropriate. Dr. Zambelli-Weiner's own assessment that the four documents qualify as confidential, proprietary information merely because they are internal documents fails to suffice. *Amica Mut. Ins. Co. v. W.C. Bradley Co.*, 217 F.R.D. 79, 84 (D. Mass. 2003), *as supplemented* (Apr. 16, 2003) (description of document as "confidential internal claims handling guidelines and checklists . . . is not enough to withhold the documents as proprietary"). The term "proprietary information" refers to "[i]nformation in which the owner has a protectable interest." Proprietary Information, *Black's Law Dictionary* (11th ed. 2019). Dr. Zambelli-Weiner fails to prove that she possesses such an interest in the four documents GSK seeks to de-designate.

   A.   **GSK Seeks to De-Designate the ▮▮▮▮▮▮▮▮▮▮ Not One Related to Some Broader Project.**

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dr. Zambelli-Weiner offers absolutely no rational reason why the protocol for a ***published*** study should be shielded from

---

[1] Protective Order Governing Confidential and Privileged Materials, MDL Order No. 13, Doc. No. 242 (filed May 18, 2016) at 8.
[2] Protective Order at 2.

public disclosure. Nor does her Opposition cite to a single decision holding that a study protocol for a published study contains confidential or proprietary research information. This is unsurprising since a study protocol is supposed to reflect what the researchers actually did so as to arrive at research worthy of publication. Dr. Zambelli-Weiner also offers no response to the research standards that encourage study authors to share their protocols with the public.

**B.** ████████████████████████████████████████
    **Are Relevant to Interpreting the Published Study.**

---

[3] ████████████████████ (AZW-1093-1098) (GSK's Motion, Ex. 1, at AZW-1096).

- █████████████████████████████████████

- █████████████████████████████████████

███████████████████████████████████████

---

[4] ███████████████████████████ DRK00001250 (emphasis added).
[5] ███████████████████████████
[6] GSK's Motion, Ex. 1, at AZW-1096.
[7] Supplemental Expert Report By Gary M. Shaw, Dr.Ph. ("Shaw Supplemental Report") (GSK's Motion, Ex. 9, at 5).
[8] *Id.; see also*, Kirby Dep. (Ex. C) 175:14-22 ███████████████.

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████ ██████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████

In her Opposition, Dr. Zambelli-Weiner offers no response to professional guidelines that obligate study authors to disseminate findings of potential scientific or public health importance.[11]

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████ ████████████████████████████████

███████████████████████████████████████████████████████████████

██████████[ ]

    ███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

---

[9] A "sensitivity analysis" is a method of "[a]nalyzing data in different ways to see how results depend on methods or assumptions." Federal Judicial Center, *Reference Manual on Scientific Evidence* 296, 593-595 (3d ed. 2011) (Ex. D) (sensitivity analyses test the robustness of the results in a given study).

[10] Kirby Dep. (Ex. C) 189:16-190:2.

[11] ISPE Guidelines for Good Pharmacoepidemiology Practices (GSK's Motion, Ex. 16, at 5, 8).

[12] ████████████████████████████████████████████████████████ (GSK's Motion, Ex. 6, at AZW-1264-65).

[13] Kimmel Supplemental Report (GSK's Motion, Ex. 10, at 6) █████████████████████████████████████████████; Shaw Supplemental Report (GSK's Motion, Ex. 9, at 5) ████████████████.

[14] Shaw Supplemental Report (GSK's Motion, Ex. 9, at 5) (emphasis added).

c█████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
████████████
      ████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
████████████████████████  ████████████████████████████
██████████████████████████████████████████████████████
████████████████████████████

**C.   Dr. Zambelli-Weiner Mischaracterizes ███████████████ and Provides No Basis for Designating It Confidential.**

██████████████████████████████████████████████████████
██████████████████████████████████████████████████████

---

[15] Zambelli-Weiner Dep. Part II (Ex. E) 375:3-379:5, 291:5-292:10, 301:13-23, 321:9-15.
[16] Kirby Dep. (Ex. C) 321:8-12; *see also id.* 277:18-23 ████████████████████████
█████████████████████████████████████████; *id.* 280:22-281:5
██████████████████████████████████████████████████████
[17] GSK's Motion at 7.

6

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████ █

███████████████████████████████████████████████

██████████████████████████████████████████████ █

███████████████████████████████████████████████

████████████████████████████████

**D.** ████████████████████████████████████████ **and Critical Facts Hidden From the Public.**

████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████ The limited and incomplete nature of her conflict of interest statement is all the more reason to de-designate the ████████ document. ████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

---

[18] Opposition at 16.
[19] ███████████████████████████████████████
███████████████████████████████████████████████
[20] GSK's Motion, Ex. 3, at AZW-1248.

7



████████████████████████████████████████ It serves no "proprietary" interest to conceal this fact under the Court's Protective Order.

## II. Dr. Zambelli-Weiner Offers No Response to GSK's Point That Any Confidentiality Protections Have Been Waived.

As discussed in GSK's motion,[22] the Court has already found that Dr. Zambelli-Weiner has submitted multiple false statements, all on the public record. Her submission of false statements "effectively waived whatever protections might otherwise apply. The need to discover the truth and correct the record surely outweighs any countervailing policy in favor of secrecy, particularly where plaintiffs' testifying experts have relied heavily on Dr. Zambelli-Weiner's study as a basis for their causation opinions." *In re Zofran (Ondansetron) Prods. Liab. Litig.*, 392 F.

---

[21] Kirby Dep. (Ex. C) at 364:25-365:5; 55:24-56:8.
[22] GSK's Motion at 12-14.

Supp. 3d 179, 186 (D. Mass. 2019).[23] Dr. Zambelli-Weiner's Opposition neither responds to, nor disputes, these conclusions. Thus, even for this reason alone, the Court can and should grant GSK's motion.

## **CONCLUSION**

Dr. Zambelli-Weiner provides no legitimate factual or legal basis for shielding the four documents at issue from the public eye. Even if such a basis existed, it has been waived by her prior false statements to the Court. As a result, the Court should grant GSK's motion in its entirety.

---

[23] [redacted]

Dated: February 25, 2020

Respectfully submitted,

*/s/ Thomas Sheehan*
Thomas Sheehan
Eva Canaan
PHILLIPS LYTLE L.L.P.
One Canalside
125 Main Street
Buffalo, NY 14203-2887
tsheehan@phillipslytle.com
ecanaan@phillipslytle.com

Madeleine M. McDonough
Jennifer M. Stevenson
Jennifer Stonecipher Hill
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
mmcdonough@shb.com
jstevenson@shb.com
jshill@shb.com
*Admitted pro hac vice*

Attorneys for Defendant GlaxoSmithKline LLC

## CERTIFICATE OF SERVICE

      I hereby certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent via first class mail to those identified as non-registered participants.

                                              /s/ *Jennifer Stonecipher Hill*
                                              Jennifer Stonecipher Hill