# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: ZOFRAN® (ONDANSETRON) PRODUCTS LIABILITY LITIGATION | MDL No. 1:15-md-2657-FDS<br><br>This document relates to:<br>All Actions |

## GLAXOSMITHKLINE LLC'S SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF ITS MOTION TO EXCLUDE PLAINTIFFS' GENERAL CAUSATION EXPERTS

At the *Daubert* hearings and in the *Daubert* briefing, Plaintiffs repeatedly pointed to an unpublished abstract by Dr. Jon T. Andersen and a study by Dr. Krista Huybrechts as evidence that Zofran causes cardiac and orofacial defects, respectively. Yet, documents revealed since the Court heard argument on *Daubert* motions show that neither Dr. Andersen, nor Dr. Huybrechts, agrees with Plaintiffs' interpretation of their studies. In fact, Dr. Andersen is a co-investigator of ***an ongoing randomized placebo-controlled trial ("RCT")*** in which, with approval by appropriate regulatory and ethics committees, pregnant women will be randomized to receive ondansetron during their first trimester of pregnancy.[1] Moreover, Dr. Andersen and Dr. Huybrechts have co-signed a public letter to the European regulatory agency, taking issue with labeling suggesting any causal relationship between Zofran and orofacial clefts. These recent developments and the views expressed publicly by Dr. Andersen and Dr. Huybrechts directly undercut Plaintiffs' experts' assertions that the current epidemiological evidence supports a causal association between Zofran and birth defects.

---

[1] Ostenfeld A, Petersen TS, Futtrup TB, et al. Validating the effect of Ondansetron and Mirtazapine In Treating hyperemesis gravidarum (VOMIT): protocol for a randomised placebo-controlled trial. *BMJ Open* 2020;10:e034712. ("Ostenfeld 2020") (Joint Daubert Appendix Tab 164).

1

### A. Ostenfeld Study Protocol.

The protocol describes an ongoing RCT of pregnant women in Denmark with hyperemesis gravidarum ("HG"), who are being randomized to ondansetron.[2] The primary outcome of the study is efficacy, with safety (including birth outcomes) considered as a secondary outcome.[3] The RCT will include a total of 180 pregnant women, in the first to early second trimester of pregnancy.[4] Patients will be randomly allocated to 14-day treatment with either ondansetron, mirtazapine (another anti-emetic), or placebo.[5] The protocol allows for administration of up to 32 milligrams of ondansetron per day[6]—twice the highest recommended dose of ondansetron for nausea and vomiting of pregnancy ("NVP") by the American College of Obstetricians and Gynecologists ("ACOG").[7] Results of the trial "will be published in peer-reviewed journals and submitted to relevant conferences."[8]

The Regional Committees on Health Research Ethics in the Capital Region of Denmark and the Danish Medicines Agency (agency charged with the oversight and regulation of pharmaceutical products in Denmark) approved this RCT and the ethics of providing Zofran to women who are pregnant.[9] The "trial is considered a priority by the Danish Society of Obstetrics and Gynecology's Multi-centre Consortium."[10] While participants will be informed of a potential

---

[2] Recruiting started in March 2019 and the trial is currently recruiting at five sites. *Id.* at 8.
[3] *Id.* at 5.
[4] *Id.* at 2-3.
[5] *Id.* at 3.
[6] *Id.* at 3.
[7] American College of Obstetricians and Gynecologists (ACOG). Nausea and Vomiting of Pregnancy. Practice Bulletin No. 189. Obstet Gynecol 2018 Jan;131(1):e15-e30 (Tab 165) at e20; *see also* Third Supplemental Expert Report of Sarah Običan, MD (Tab 160) at 1-2.
[8] Ostenfeld 2020 at 1 (Tab 164).
[9] *Id.* at 8. *See also* https://laegemiddelstyrelsen.dk/en/licensing/clinical-trials/ (last visited June 25, 2020) ("The Danish Medicines Agency evaluates both the quality of the investigation and the patient safety of clinical trials.").
[10] Ostenfeld 2020 at 6 (Tab 164).

"small increased risk of oral cleft," trial participants are not advised of any potential increased risk of cardiac defects.[11]

The fact that the Danish central regulatory and ethics committees approved a study in which pregnant women are being randomized to take high doses of Zofran in the first trimester (including the entire period of heart development), without being warned regarding an increased risk of cardiac defects, re-affirms GSK's position that the current scientific data simply fail to support a causal association between birth defects and use of Zofran during pregnancy. *See In re Viagra*, 424 F. Supp. 3d 781, 787, n.2 (N.D. Cal. 2020) (noting that "[w]hile the existence of a clinical trial does not conclusively establish [that medication] use cannot contribute to [the alleged disease], it does support defendants' argument that the medical community does not believe there is evidence of such a causal link."). As noted by Dr. Stephen Kimmel, "the fact that a randomized controlled clinical trial of ondansetron in pregnant women has been deemed ethically sound after review by a group of scientists, physicians, patient groups, ethics committees, and national agencies and is being supported by the Danish Society of Obstetrics and Gynaecology's Multicentre Consortium is consistent with my previously written opinions that the current epidemiological evidence does not support a conclusion that ondansetron has an established association with, let alone causes, birth defects of any type."[12]

---

[11] *Id*. at 6. Similarly, English translations of the "informed consent" and "participant information" documents show that trial participants are not advised of any increased risk of cardiac defects with ondansetron. *See* Validating the effect of Ondansetron and Mirtazapine In Treating hyperemesis gravidarum (VOMIT). Participant information for trial participant. A research project on the medical treatment of severe pregnancy nausea and vomiting. Version 6 – August 2019, EudraCT: 2018-002285-39 (Tab 166); Validating the effect of Ondansetron and Mirtazapine In Treating hyperemesis gravidarum (VOMIT). Informed consent for participation in a health sciences research project. Consent form. Version 5 – May 2019, EudraCT: 2018-002285-39 (Tab 167).

[12] Third Supplemental Expert Report of Stephen E. Kimmel, MD, MSCE, FACC, FAHA, FISPE (Tab 161) at 8. *See also* Zofran MDL Expert Third Supplemental Report of F. Scott Baldwin, MD (Tab 162) at 2 ("The VOMIT trial is consonant with my opinion that the available evidence does not establish a

Furthermore, it is telling that one of the co-investigators of the Ostenfeld study is none other than Dr. Andersen—the author of an unpublished abstract on Zofran and cardiac birth defects on which Plaintiffs' experts rely. Plaintiffs have argued to this Court that the Andersen abstract is reliable because it has "been cited repeatedly in the Zofran medical literature."[13] Yet, Dr. Andersen and his co-authors do not cite his unpublished abstract in the Ostenfeld protocol.[14] Dr. Andersen's recently published review article on "Drugs in pregnancy" is also telling.[15] In this article, Dr. Andersen lists Zofran as one of the treatment options for NVP, without any notation of an increased risk of cardiac or other birth defects or citation to his unpublished abstract.[16] By contrast, he warns of an increased risk of cardiac defects with ibuprofen (brand name Advil, Motrin) and other drugs discussed in the article, and advises against the use of those drugs in the first trimester.[17] These recent publications refute the conclusions Plaintiffs attempt to draw from Dr. Andersen's unpublished abstract and significantly undermine Plaintiffs' claim that Zofran causes birth defects.

### B. Correspondence from Dr. Andersen, Dr. Huybrechts, and Others Related to Zofran.

In addition to the Ostenfeld RCT, correspondence from a group of healthcare providers, patient advocacy groups, and scientists, including Dr. Andersen and Dr. Huybrechts, issued after

---

reliable association or causal relationship between gestational exposure to ondansetron and any type of congenital heart defect."); Third Supplemental Expert Report of Gary M. Shaw, DrPH (Tab 163) at 2.

[13] Plaintiffs' *Daubert* Opposition (Dkt. No. 1299) at 98.

[14] Nor do they cite the Danielsson study or the Zambelli-Weiner study. Instead, Dr. Anderson and his co-authors cite and rely upon the two published Huybrechts studies (2018 and 2019), neither of which found any association between Zofran and cardiac defects.

[15] Andersen JT, Futtrup TB, April 2020. Drugs in Pregnancy. *Adverse Drug Reaction Bulletin* 2020, 321:1243-46 (Tab 168).

[16] *Id.* at 1245.

[17] *Id.* at 1244-45; *see also* Kimmel Third Supp. Report (Tab 161) at 7 ("The Ostenfeld protocol is consistent with a recent review article written by Dr. Andersen on the safety of drugs commonly used in pregnancy (Andersen and Futtrup 2020), where in the context of birth defects, they discuss an increased risk with several drugs, but do not attribute any risk to ondansetron.").

the *Daubert* hearing, sheds further light on the state of the epidemiological literature and the appropriate interpretation of the Andersen abstract and Huybrechts study.

In September 2019, Pregnancy Sickness Support (a United Kingdom support and advocacy group for patients with hyperemesis gravidarum (HG)) sent a letter to the European Medicines Agency's Pharmacovigilance Risk Assessment Committee (PRAC) relating to the new labeling on Zofran use during pregnancy.[18] The letter was co-signed by numerous HG and pregnancy patient support groups from the various European Union countries and the UK.[19] The letter was also co-signed by 17 healthcare providers, birth defect researchers, and other scientists, including Dr. Huybrechts, Dr. Andersen, and nearly every investigator involved in the Ostenfeld study.[20]

The authors expressed concern regarding PRAC's recommendation that Zofran should not be used during the first trimester of pregnancy and urged PRAC to reconsider this decision.[21] Specifically, the authors described the serious risks to the mother and fetus from untreated or poorly-controlled HG, highlighting that "[t]he termination rate of <u>otherwise healthy, wanted pregnancies</u> for HG has been estimated to be between 5-20%."[22] They noted that "ondansetron is one of our few effective treatments, and for some people could be considered a life-saving treatment."[23] According to the authors, "[t]o deny women the option of ondansetron will result in a vast increase in maternal morbidity, an increase in the termination of wanted pregnancies, and a potential increase in maternal mortality."[24] The authors concluded that "[t]he recommendation that

---

[18] September 12, 2019 Letter (Tab 169).
[19] *Id.* at 2-3.
[20] *Id.* at 3-4.
[21] *Id.* at 1.
[22] *Id.* at 1 (emphasis in the original).
[23] *Id.*
[24] *Id.*

5

ondansetron must not be used in the first trimester due to a very small *possible* increased risk of oral cleft will have dire real-world consequences."[25]

With respect to the Huybrechts paper, the authors noted that "[t]he epidemiological evidence points to a potential association, ***not a causal relationship*** between ondansetron and orofacial malformations."[26]  They discussed that the possibility that this association is driven by causes other than ondansetron, such as HG-associated nutritional deficiency, cannot be ruled out.[27]

In a response dated September 26, 2019, PRAC clarified that "[t]he recommendation not to use ondansetron in pregnancy by EMA's safety Committee PRAC only applies to its licensed indications."[28]  For off-label use—such as for NVP or HG—use of ondansetron in pregnancy "is a matter of clinical judgment and expertise based on an individual benefit-risk assessment."[29]

Pregnancy Sickness Support, along with Dr. Huybrechts and other healthcare providers and scientists, replied to PRAC and expressed the view that, even in relation to Zofran's licensed indications—chemotherapy/radiotherapy and postoperative nausea and vomiting, "the interpretation of the data and wording of the warning is still inaccurate and disproportional to the level of risk."[30]

The PRAC correspondence makes clear that Dr. Huybrechts does not view her study as establishing a causal association between Zofran and orofacial clefts, as Plaintiffs' experts suggest. It also shows that Dr. Andersen's concern is not about any purported risk of heart defects, as Plaintiffs' experts claim, but rather about the consequences of not making Zofran available

---

[25] *Id.* at 2 (emphasis in the original).
[26] *Id.* at 2 (emphasis added).
[27] *Id.*
[28] September 26, 2019 Letter (Tab 170) at 1-2.
[29] *Id.* at 2.
[30] October 2, 2019 Letter (Tab 171) at 1.

pregnant women. In short, Plaintiffs and their experts draw conclusions from epidemiological studies that the authors themselves disavow. *See*, *e.g.*, *McClain v. Metabolife Int'l*, 401 F.3d 1233, 1249-1250 (11th Cir. 2005) (excluding expert who "draws unauthorized conclusions from limited data – conclusions the authors of the study do not make").

### C.  Conclusion

The Ostenfeld RCT and PRAC correspondence highlight the wisdom of the oft-cited *Daubert* adage that "law lags science; it does not lead it." *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir 1996). While Plaintiffs and their experts claim that Zofran causes any type of heart defect, in the real world, ethics review boards approved a trial on pregnant women who are not even warned of the possibility of heart defects. These recent developments also demonstrate that Plaintiffs' experts draw conclusions about the Andersen abstract and the Huybrechts study that the researchers themselves dispute, and the Court should consider this evidence as it weighs GSK's pending Motion To Exclude Plaintiffs' General Causation Experts Under Federal Rule of Evidence 702.

Dated: June 25, 2020

Respectfully submitted,

*/s/ Thomas Sheehan*
Thomas Sheehan
PHILLIPS LYTLE L.L.P.
One Canalside
125 Main Street
Buffalo, NY 14203-2887
tsheehan@phillipslytle.com

Todd P. Davis
Eva Canaan
KING & SPALDING L.L.P.
1180 Peachtree Street, NE
Suite 1600
Atlanta, GA 30309-3521
tdavis@kslaw.com
ecanaan@kslaw.com

Madeleine M. McDonough
Jennifer M. Stevenson
Jennifer Stonecipher Hill
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
mmcdonough@shb.com
jstevenson@shb.com
jshill@shb.com
*Admitted pro hac vice*

Attorneys for Defendant GlaxoSmithKline LLC

**CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent via first class mail to those identified as non-registered participants.

                                                    /s/ *Jennifer Stonecipher Hill*
                                                    Jennifer Stonecipher Hill