**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

**IN RE: ZOFRAN (ONDANSETRON) PRODUCTS LIABILITY LITIGATION**

MDL no. 1:15-md-2657-FDS

This document relates to:
All Actions

FILED UNDER SEAL

**DEFENDANT GLAXOSMITHKLINE LLC'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS RENEWED MOTION FOR SUMMARY JUDGMENT BASED ON FEDERAL PREEMPTION**

In support of its Renewed Motion for Summary Judgment Based on Federal Preemption, Defendant GlaxoSmithKline ("GSK") attaches Novartis's recent regulatory submissions to FDA proposing changes to the Zofran pregnancy labeling and justifying those changes based on recently published human epidemiological data.[1] Novartis's recent Zofran submission provides additional evidence that FDA had all available material information when it twice refused to add pregnancy warnings to Zofran's labeling. With respect to the principal two categories of evidence advanced by Plaintiffs as "material" to FDA's labeling decisions—GSK's animal studies and Dr. Danielsson's hypothetical mechanism of action—now the current New Drug Application ("NDA") holder (Novartis) has concluded that this information would not have justified, and does not justify, enhanced pregnancy warnings for Zofran.[2] In sum, Novartis's action further disproves Plaintiffs'

[1] Novartis's red-lined copy of the Zofran labeling showing the proposed changes is attached as Exhibit 1. Novartis's Cover Letter to FDA is attached as Exhibit 2. Novartis's Clinical Overview justifying the proposed changes is attached as Exhibit 3.

[2] If FDA approves Novartis's proposed labeling change or implements other changes to Zofran's labeling but does not change the animal data portion of the labeling, that would provide ***dispositive*** evidence that the Japanese animal studies are immaterial given that FDA is unquestionably aware of those studies and

claim that "GSK never alerted Novartis that there were three Japanese studies that showed signs of teratogenicity" and that this somehow would have made a difference. *See* Pls.' Opp'n to GSK's MSJ, at 20 (filed Oct. 18, 2019). As for the recent epidemiology studies cited in Novartis's proposed labeling, these studies cannot defeat GSK's preemption motion as they are "newly acquired information" that did not even exist at the time that GSK was the NDA holder for Zofran. The Novartis submission thus confirms GSK's position that federal preemption bars Plaintiffs' claims.

**FACTUAL BACKGROUND**

Since 2015, Novartis has been the NDA holder for Zofran. As the NDA holder, Novartis has the duty to propose updates to the Zofran labeling "to include a warning about a clinically significant hazard as soon as there is reasonable evidence of a causal association with a drug." 21 C.F.R. § 201.57(c)(6)(i). [REDACTED]

Novartis's Zofran labeling is subject to FDA's Pregnancy and Lactation Labeling Rule ("PLLR"), which was promulgated in 2014. *See* PLLR, 79 Fed. Reg. 72,064 (Dec. 4, 2014). The PLLR requires sponsors to inform healthcare providers in narrative form of the potential risks and benefits of using a prescription drug during pregnancy and lactation. 21 C.F.R. §§ 201.57(c)(9)(i), 201.80(f)(6); 79 Fed. Reg. 72,064. The PLLR requires sponsors to describe, in *separate* subsections of the labeling, relevant human and animal data. *See* 21 C.F.R. § 201.57(c)(9)(i).

---

Plaintiffs' allegations about those studies. *See* 21 U.S.C. § 355(o)(4)(A)(requiring FDA to demand labeling changes if it "becomes aware of new safety information" that it "believes should be included in the labeling of the drug.").

Additionally, the "risk summary" portion of the pregnancy-related labeling must summarize the findings of human and animal data and describe potential risks based on those findings. *Id.*

[redacted]

---

3 [redacted]

[redacted]

## ARGUMENT

Novartis's regulatory submissions provide further evidence that two of Plaintiffs' categories of evidence (and indeed the categories on which Plaintiffs hang their hat) are not material. Neither of these two categories of evidence provides a basis to change the Zofran pregnancy labeling: [redacted]

### I. Novartis Determined that the Japanese Studies Do Not Show Evidence of Teratogenicity or Otherwise Justify a Labeling Change.

In their Opposition to GSK's Renewed Motion for Summary Judgment, Plaintiffs acknowledged that GSK had provided Novartis with all of the data from Zofran animal studies and that the section of the Zofran pregnancy labeling discussing animal data continues to state that the animal data do not contain evidence of teratogenicity. *See* Pls.' Opp'n to GSK's MSJ, at 20 (filed Oct. 18, 2019). Plaintiffs attempted to explain this fact away by arguing that "GSK never alerted Novartis that there were three Japanese studies that showed signs of teratogenicity" and "buried the studies in a document dump" when Novartis acquired Zofran from GSK. *See id.* That speculative argument no longer holds water. [redacted]

[redacted]

[redacted]

Novartis's findings further support the inescapable conclusion that the Japanese animal studies do not reveal "risks of a different type or greater severity or frequency than previously included in submissions to FDA" that constitutes "reasonable evidence of a causal association," and thus could not have formed the basis for a labeling change under the Changes Being Effected ("CBE") regulation. *See* 21 C.F.R. § 201.57(c)(6)(i); *id.* § 314.3. After its review, the current

NDA holder—with the responsibility to update the Zofran labeling to reflect new safety information, and with full knowledge of Plaintiffs' allegations—disagreed that the Japanese animal studies support a labeling change or demonstrate any teratogenicity. Ex. 3 (Clinical Overview) at 9. Instead, as FDA knew all along, the Japanese studies were "repetitive and provide[d] no new safety information." *See* GSK MSJ Ex. 107 at -3819.

Even before Novartis's submission, Dr. Danielsson stood on an island by himself in interpreting GSK's animal studies to show teratogenicity. Every other entity to have reviewed GSK's animal data—including the study authors, GSK, FDA, and GSK's experts—disagrees with Dr. Danielsson. Novartis's submission re-confirms that it too disagrees with Dr. Danielsson. *See* Ex. 4 (updated version of Addendum 4 to GSK's Reply Brief, ECF No. 1723-4). His unreliable opinions, which contradict FDA's own findings, cannot support a conclusion that the Japanese rat studies are material. Notably, 21 U.S.C. § 355(o)(4)(A) requires FDA to demand labeling changes if it "becomes aware of new safety information" that it "determines should be included in the labeling of the drug." Thus, if FDA approves Novartis's proposed labeling change or implements other changes to Zofran's labeling but does not change the animal data portion of the labeling that would provide dispositive evidence that the Japanese animal studies are immaterial given that FDA is unquestionably aware of those studies and Plaintiffs' allegations about them.

## II. Novartis Again Rejected Dr. Danielsson's Hypothetical Mechanism of Action.

Novartis's recent submission to FDA also refutes Plaintiffs' contention that, had GSK provided FDA with Dr. Danielsson's hypothetical theory of mechanism of action, FDA would have permitted GSK to add a Zofran birth-defect warning.

As a preliminary matter, Novartis and FDA already considered Dr. Danielsson's hypothesized mechanism of action in connection with Novartis's 2015 proposed labeling change.

Novartis devoted significant attention to the issue, citing Dr. Danielsson's 2014 article and explaining his hypothesis. FDA rejected that hypothesis and Novartis's label proposal in 2016, just as it had in connection with Dr. Reichmann's citizen petition. *See* GSK MSJ at 19-20. [redacted] Dr. Danielsson's repetition of his mechanism-of-action theory in his 2018 article would not have changed FDA's conclusion that the proposed

mechanism of action does not constitute "reasonable evidence of a causal association," 21 C.F.R. § 201.57(c)(6)(i); *see* GSK MSJ Ex. 39 at -4451 ("[T]here is no evidence, nonclinical *or mechanism of action*, that raises concerns for adverse fetal outcomes with Zofran." (emphasis added)).

* * *

In 2019, based on the undisputed regulatory history, this Court concluded that "there is little doubt that the FDA *would have* rejected plaintiffs' proposed warning: it in fact *did* reject it, at least in substance." Mem. & Order on GSK's Mot. for Summ. J. Based on Federal Preemption, Feb. 5, 2019 (ECF No. 1325), at 3. The preemption question has thus boiled down to whether Plaintiffs' four categories of evidence would have been material to FDA's conclusion. *Id.* at 15-16. Now, Novartis's submission, made with full knowledge of Plaintiffs' allegations, adds yet more support to the existing evidence before the Court demonstrating that the four categories of information are immaterial and that it is time to bring these cases to a close. And FDA's forthcoming decision should further demonstrate that none of the four categories of information would have been material.

**CONCLUSION**

For the foregoing reasons, and for the reasons outlined in GSK's prior Memoranda in support of its Renewed Motion for Summary Judgment Based on Federal Preemption, the Court should enter judgment in favor of GSK.

Dated: July 24, 2020

Respectfully submitted,
GLAXOSMITHKLINE LLC,
By its attorneys,

*/s/ Jennifer Stonecipher Hill*
Madeleine M. McDonough
Jennifer M. Stevenson
Jennifer Stonecipher Hill
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
mmcdonough@shb.com
jstevenson@shb.com
jshill@shb.com
*Admitted pro hac vice*

Lisa S. Blatt
Amy Mason Saharia
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
lblatt@wc.com
asaharia@wc.com
*Admitted pro hac vice*

*Attorneys for Defendant GlaxoSmithKline LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent via first class mail to those identified as non-registered participants.

*/s/ Jennifer Stonecipher Hill*
Jennifer Stonecipher Hill