UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: ZOFRAN (ONDANSETRON) PRODUCTS LIABILITY LITIGATION | MDL no. 1:15-md-2657-FDS<br><br>This document relates to:<br><br>All Actions<br><br>FILED UNDER SEAL |

### GLAXOSMITHKLINE LLC'S NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF ITS RENEWED MOTION FOR SUMMARY JUDGMENT BASED ON PREEMPTION

GlaxoSmithKline LLC ("GSK") respectfully submits this notice of supplemental authority to inform the Court of the Fourth Circuit's January 6, 2021, decision in *Knight v. Boehringer Ingelheim Pharmaceuticals, Inc.*, No. 19-1636 (4th Cir. Jan. 6, 2021) (attached as Ex. 1). In *Knight*, the Fourth Circuit held the plaintiffs' failure-to-warn claim preempted under the first step of *Wyeth*'s two-step inquiry, concluding that the study at the heart of plaintiffs' claims was not "newly acquired information" under the CBE regulation. *Knight*, slip op. at 2-3. Applying the Fourth Circuit's analysis in *Knight* leads to the inevitable conclusion here that Japanese Study 100424 is not "newly acquired information" and would not have permitted GSK to invoke the CBE regulation to add pregnancy warnings to Zofran's labeling. *Knight* therefore supports preemption under *Wyeth* step one.

The plaintiffs in *Knight* alleged that the defendant should have warned patients with impaired kidney function to undergo blood testing before taking Pradaxa to avoid a risk of serious bleeding. *Id.* at 14. FDA approved Pradaxa relying in part on data from a study called the "RE-LY" study. *Id.* at 4-6. After approval, the company continued to analyze the RE-LY data, applying

1

"additional analytical approaches" to state in a draft paper—the "Reilly paper"—that, contrary to the company's earlier representation to FDA, patients taking Pradaxa should have their blood monitored to ensure the drug remained at optimal levels in their system. *Id.* at 7-9. The company did not, it appears, share the draft paper with FDA. The company eventually published the paper, and "[t]he final version mirrored the draft version with one major exception: it did not conclude there was an optimal therapeutic blood concentration range for all patients." *Id.* at 9.

Plaintiffs sued, alleging that the post-approval study of the RE-LY data "provided 'newly acquired information' about the risks Pradaxa posed to certain patients and the need for blood monitoring." *Id.* at 15. Plaintiffs prevailed at trial but the Fourth Circuit reversed, finding the study was not "newly acquired information" and could not overcome preemption. *Id.* at 3.

As the Fourth Circuit explained, a drug manufacturer may invoke the CBE regulation to add warnings only when it has "'newly acquired information' about 'evidence of a causal association' between the drug and a risk of harm." *Id.* at 2 (quoting 21 C.F.R. § 314.70(c)(6)(iii)). It further observed that "newly acquired information" is information that "reveal[s] risks of a different type or greater severity or frequency than previously included in submissions to [the] FDA." *Id.* at 15 (quoting 21 C.F.R. § 314.3(b)). Applying *Merck Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668 (2019), the Fourth Circuit explained that applying the first step of *Wyeth*, including determining whether information constitutes "newly acquired information," is a question of law for the court.[1] *Knight*, slip op. at 13 n.8. Deciding this question de novo, the Fourth Circuit

---

[1] For this reason, Plaintiffs' argument at the recent hearing that causation questions are relevant only to the merits, and not preemption, is wrong. Hr'g Tr. 68, Dec. 16, 2020. To reject GSK's preemption defense, this Court would need to conclude, despite all reliable evidence to the contrary, that Study 100424 constitutes "newly acquired information"—*i.e.*, information that "reveal[s] risks of a different type or greater severity or frequency than previously included in submissions to [the] FDA"—of a "*causal association*" between Zofran and birth defects. 21 C.F.R. §§ 314.3(b), 314.70(c)(6)(iii)(A) (emphasis added).

concluded that the Reilly paper was not "newly acquired information." *Id.* at 16-17.[2]

Several elements of the Fourth Circuit's analysis are instructive:

First, the court concluded the final paper was not "newly acquired information" in part because FDA was already aware of the general correlation between Pradaxa blood concentration levels and bleeding risk when it approved the Pradaxa labeling. *Id.* at 15-16. The same is true here: when FDA rejected pregnancy warnings and a Category C designation for Zofran in 2015, it had reviewed Studies R10590, L10649, L10873, and 100422, which together reported ten heart defects in the treatment groups and another three in control groups, and had concluded that they did not show evidence of teratogenicity. GSK Am. MSJ Exs. 58 at -7904-7908; 59 at -2187; 130 at -0202; 131 at -0497; 135 at -0361, -0380-426; 116 at -2554, -2575-579, -2638-641 (attached to Notice of Filing, ECF No. 1757). Study 100424, which produced another two heart defects in treatment groups, did not "reveal risks of a different type or greater severity or frequency than previously included in submissions to [the] FDA." *Knight*, slip op. at 15 (quoting 21 C.F.R. § 314.3(b)). For that reason alone, preemption is required.

Next, the Fourth Circuit held that the Reilly paper was not newly acquired information because its conclusion "plainly [did] not establish any new risk," but merely supported what the company previously understood—that "[t]here is no single plasma concentration range that

---

[2] The court had no occasion to address *Wyeth*'s second step as clarified by *Albrecht*, instead basing preemption entirely on the lack of "newly acquired information" that would permit a labeling change under the CBE regulation at *Wyeth* step one. Thus, the Fourth Circuit found preemption without asking whether FDA had ever been "fully informed" of the draft Reilly paper. In other words, the court did not need to consider whether the company had provided the paper to FDA or breached any regulatory duty to do so. Likewise, here, because Study 100424 was not "newly acquired information," the Court need not consider whether GSK had a regulatory duty to provide it to FDA. *See, e.g.*, Hr'g Tr. 19-20, Dec. 16, 2020. In any event, as Plaintiffs and their expert Dr. Harvey concede, GSK properly met its annual reporting obligations by disclosing Study 100424 in an annual report. *See* GSK Am. MSJ Mem. 18-19 (ECF No. 1813); MSJ Reply Mem. 13-14 & n.7 (ECF No. 1725).

provides optimal benefit-risk for all patients." *Id.* at 16-17. So, too, here: Despite Plaintiffs' and Dr. Danielsson's insistence that Study 100424 shows a risk of birth defects, that interpretation is at odds with the findings of the independent study author, who concluded that it did not show teratogenicity. GSK Supp. MSJ Ex. 165 (ECF No. 2042-6). ███████████████████████████████████████████[3]

Next, the Fourth Circuit considered whether "the preliminary conclusions that emerged before the analysis was complete"—that is, the draft conclusion that patients should receive blood monitoring to ensure an optimal concentration range—constituted newly acquired information. *Knight*, slip op. at 17. The court held that it did not, placing great weight on the company's ultimate conclusion that the data did not support requiring blood monitoring. *Id.* Regardless of the preliminary analysis, the company "came to a different conclusion," and "the scientific and regulatory community accepted [that] conclusion." *Id.* at 17-18.

Similar reasoning pertains here. The independent study author of Study 100424, the authors of peer-reviewed publications evaluating Study 100424, GSK, and ███████████████████████████████████████████ Contrary to Plaintiffs' suggestion at the recent hearing, *see* Hr'g Tr. 44-45, Dec. 16, 2020, GSK also offered this Court the opinions of three timely disclosed experts who opine that the Japanese animal studies, including Study 100424, do not show evidence of teratogenicity. *See* GSK MSJ Exs. 148-150 (ECF Nos. 1723-12, 1723-13, 1723-14); *see also* GSK MSJ Reply at 7-13 (ECF No. 1725). Dr. Danielsson is alone in opining to the contrary. Although Plaintiffs conspicuously ignored *Wyeth* step one and the "newly acquired information" requirement in their recent

---

[3] Notably, Dr. Danielsson also opined that Studies 100422, L10873, and R10937 show evidence of teratogenicity. That opinion squarely conflicts with, and improperly second-guesses, FDA's own conclusions about those studies. *See* GSK MSJ Reply at 5-6 (ECF No. 1725).

supplemental briefing, they are effectively asking this Court to base a conclusion that Study 100424 constitutes "newly acquired information" of a "causal association" by crediting the outlier opinion of Dr. Danielsson while ignoring the actual conclusion of the study and the findings of its authors.

Finally, and critically, the Fourth Circuit found it significant that, "after reviewing the Reilly Paper, the FDA has continued to approve labels with no monitoring requirement." *Knight*, slip op. at 18. According to the Fourth Circuit, that fact "undermine[d]" the plaintiffs' claim that the information at issue was "newly acquired information." *Id.* This point devastates Plaintiffs' arguments. FDA indisputably has all the information that Plaintiffs claim it lacked, including Study 100424, when it made its prior labeling decisions. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ GSK attached the full study report to its citizen petition, and Plaintiffs presented their arguments directly to FDA and provided their expert reports. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ As the Fourth Circuit held in *Knight*, FDA's continuing decision not to warn about animal data allegedly showing teratogenicity reaffirms that Study 100424 is not "newly acquired information" under the CBE regulation.

In sum, *Knight* further confirms that federal law preempts Plaintiffs' claim under *Wyeth* step one. *See* GSK Supp. Mem. ISO MSJ at 17-18 (ECF No. 2046). As in *Knight*, this Court can and should decide the preemption question in GSK's favor on that ground.

Dated: January 11, 2021

                                      Respectfully submitted,

                                      */s/ Jennifer Stonecipher Hill*
Madeleine M. McDonough
Jennifer M. Stevenson
Jennifer Stonecipher Hill
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
mmcdonough@shb.com
jstevenson@shb.com
jshill@shb.com
*Admitted pro hac vice*

Lisa S. Blatt
Amy Mason Saharia
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
lblatt@wc.com
asaharia@wc.com
*Admitted pro hac vice*

*Attorneys for Defendant GlaxoSmithKline LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent via first class mail to those identified as non-registered participants.

                                            */s/ Jennifer Stonecipher Hill*
                                            Jennifer Stonecipher Hill