UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: ZOFRAN (ONDANSETRON) PRODUCTS LIABILITY LITIGATION | MDL no. 1:15-md-2657-FDS<br><br>This document relates to:<br><br>All Actions |

### GLAXOSMITHKLINE LLC'S NOTICE
### REGARDING FDA'S RESPONSE TO CITIZEN PETITION

GlaxoSmithKline LLC ("GSK") respectfully submits this notice regarding FDA's January 15, 2021 response to GSK's citizen petition (attached as Ex. 1). In its response, signed by Patrizia Cavazzoni, Acting Director of the Center for Drug Evaluation and Research, FDA declined to assess whether—"separate and apart from FDA's ongoing product review," Ex. 1 at 2—Plaintiffs' four categories of information "in isolation" warrant a labeling change, *id.* at 15. It did so because, according to FDA, it "evaluates whether safety-related labeling changes are warranted based on the review of *all* relevant information available to the Agency." *Id.* at 2 (emphasis in original). FDA discussed at length "the depth of FDA's engagement in the scientific evaluation of relevant data and information in determining the safety-related information that should be included in FDA-approved labeling." *Id.* In particular, with respect to pregnancy labeling, FDA noted its awareness of "unapproved use of ondansetron" to treat nausea and vomiting in pregnancy, *id.* at 13, and emphasized that "FDA's approach to postmarketing surveillance of the use of drugs during pregnancy has a specific focus on detecting product-induced fetal effects," *id.* at 9. FDA also highlighted its ongoing, active assessment of *all* available scientific data to fulfill its own statutory obligation to mandate labeling changes when it "becomes aware of new information, including any new safety information or

1

information related to reduced effectiveness, that the [FDA] determines should be included in the labeling of the drug." *Id.* at 12 (internal quotation marks omitted and alteration in original) (quoting 21 U.S.C. § 355(o)(4)(A)).

Notably, FDA specifically highlighted its ongoing review of Novartis' labeling supplement—a review that is being conducted by the same division of FDA that considered GSK's citizen petition. *Id.* at 2. It emphasized that its "evaluation" of "proposed labeling changes" (such as those proposed by Novartis) "requires the review of *all* relevant information before the Agency (see, *e.g.*, § 201.57(b)(9)(i)(B) (requiring the pregnancy Risk Summary to be "based on data from all relevant sources"))." *Id.* at 15 (emphasis in original). There is no longer any question, therefore, that FDA considered and evaluated Plaintiffs' four categories of information, including Study 100424, in rejecting Novartis' proposed labeling supplement. Indeed, FDA affirmatively stated that it "considered" the petition and the corresponding materials submitted by GSK and Plaintiffs. *Id.* at 2.

As FDA's response makes clear, if any of Plaintiffs' information were relevant to Zofran's labeling, FDA would include it in the labeling. Critically, with respect to animal data, FDA wrote: "The Risk Summary *must* contain risk statement(s) that describe for the drug the risk of adverse developmental outcomes based on *all* relevant . . . animal data." *Id.* at 7 (emphases added). It added: "When animal data are available, the risk statement based on such data must describe the potential risk for adverse developmental outcomes in humans and summarize the available data. This statement must include: the number and type(s) of species affected; timing of exposure; animal doses expressed in terms of human dose or exposure equivalents; and outcomes for pregnant animals and offspring." *Id.* at 8 (footnote omitted); *see also id.* (discussing "Data" section of the labeling).[1]

---

[1] Likewise, with respect to mechanism of action, FDA wrote: "[W]hen the drug has a well-understood pharmacologic mechanism of action that may result in adverse developmental outcomes, the Risk Summary *must* explain the mechanism of action and the potential associated risks." Ex. 1 at 8 (emphasis added).

Plaintiffs have repeatedly argued that there can be no preemption unless GSK or Novartis asks FDA to change the animal data portion of the labeling based on Study 100424. FDA's response exposes the flaws in that argument. As FDA explains, only "reasonable evidence of a causal association with a drug" permits a labeling change. *Id.* at 10 (quoting 21 C.F.R. § 201.57(c)(6)(i)). And a manufacturer may invoke the CBE regulation to make such a labeling change only if it possesses "newly acquired information" of such a causal association. *Id.* at 11. As FDA further explains, "nominally new information concerning risks of a materially similar type, severity, and frequency as those revealed in information previously evaluated by FDA is cumulative and not considered to be newly acquired information that could justify a CBE[] supplement." *Id.* Because such "cumulative" information cannot justify a CBE supplement, it cannot overcome preemption under *Wyeth*.

The simple truth is that FDA fully knows about Study 100424 (as well as Dr. Danielsson's take on it and all of Plaintiffs' other information) and has made the decision not to warn about birth defects even though the study is readily available to the Agency. The reason for that decision rests squarely on the regulatory requirements for labeling: Study 100424 is not "reasonable evidence of a causal association" between birth defects and Zofran, nor is it "newly acquired information." As GSK has explained, it is "cumulative" of other information that FDA "previously evaluated," *id.*, including Study 100422.

FDA's response to GSK's citizen petition proves that point. Plaintiffs can no longer claim that FDA simply failed to consider Study 100424 when it considered Novartis' recent labeling supplement. As FDA's response makes clear, if FDA agreed with Dr. Danielsson, that information *must* be reflected in the labeling. Yet FDA decided not to alter the animal data portion of the labeling in its recent response to Novartis. That proves that FDA agrees with GSK—and with everyone else who has looked at Study 100424—that it does not contain "reasonable evidence of a causal association." FDA's recent action—taken with full knowledge of Study 100424—proves that GSK could not have revised the

labeling based on Study 100424 at an earlier date.  *See* GSK Supp. Mem. in Supp. of Renewed Mot. for Summ. J. Based on Federal Preemption, ECF No. 2043, at 21-22 (citing cases).

Preemption is required.

Dated: January 15, 2021

                                      Respectfully submitted,

*/s/ Jennifer Stonecipher Hill*
Madeleine M. McDonough
Jennifer M. Stevenson
Jennifer Stonecipher Hill
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
mmcdonough@shb.com
jstevenson@shb.com
jshill@shb.com
*Admitted pro hac vice*

Lisa S. Blatt
Amy Mason Saharia
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
lblatt@wc.com
asaharia@wc.com
*Admitted pro hac vice*

*Attorneys for Defendant GlaxoSmithKline LLC*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent via first class mail to those identified as non-registered participants.

>*/s/ Jennifer Stonecipher Hill*
>Jennifer Stonecipher Hill